1  STEPHEN L. ANDERSON  (CBN 150860)
   ANDERSON LAW
2  41923 Second Street, Suite 201
   Temecula, California 92590
3  Tel. (951) 296-1700
   Fax (951) 296-0614
4  E: attorneys@brandxperts.com

5  Attorneys for Defendant
   MIGUEL FLORES
6

7              UNITED STATES DISTRICT COURT

8            SOUTHERN DISTRICT OF CALIFORNIA

9

10

11  THE UPPER DECK COMPANY,          )   Case No:   3:21-cv-01182-GPC-KSC
    A Nevada corporation,            )
12                                   )   MEMORANDUM OF POINTS &
                                     )   AUTHORITIES IN SUPPORT OF
13                 Plaintiff,        )   DEFENDANT MIGUEL FLORES'
                                     )   MOTION TO DISMISS
14  v.                               )
                                     )   Hearing Date: October 29, 2021
15  MIGUEL FLORES, an individual,    )   Time: 1:30 p.m.
    and DOES 1-100, inclusive,       )   Courtroom: 2D
16                                   )
                                     )   Honorable Gonzalo P. Curiel
17                 Defendants.       )

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.  INTRODUCTION..................................................................................... 1

II. LEGAL STANDARD............................................................................ 7

III. ARGUMENT......................................................................................... 7

   A.  Plaintiff's First Claim Fails to State a Claim under 15 U.S.C. § 1125(a)... 7

      1.  Upper Deck Fails To State a § 1125(A)(1)(A) Claim Because It Has Not Plausibly Alleged That Defendant's Use Is Likely To Cause Confusion As To Origin, Sponsorship Or Approval.......... 8

      2.  Upper Deck Fails To State a § 1125(A)(1)(B) Claim Because It Has Not Alleged Any False Statement Of Material Fact To State a False advertising Claim Under § 1125(a)(1)(B).......................... 9

        a.  The Fact That The Jordan Card Listed And Sold By Flores Had Been Graded As a "Facsimile Reprint is a Truthful Statement And Is Not An Actionable False Statement.............. 11

        b.  Upper Deck Fails to Allege That Acts By Defendant Have a Tendency to Deceive a Substantial Segment of Its Audience.... 11

        c.  Flores has the absolute right to sell his own property............ 12

   B.  Plaintiff's Second Claim Fails to State a Claim for Trademark Dilution under 15 U.S.C. § 1125(c).....................................................................13

      1.  Upper Deck and its sundry list of marks are not sufficiently famous to warrant a "Dilution" claim under the Lanham Act.......... 13

      2.  Upper Deck has failed to allege any Act by Flores that Plausibly Amounts to "Use" or "Dilution" of Any of Its Alleged Trademarks... 14

      3.  Flores has the absolute right to the nominative fair use of words and marks that correctly identify the cards he has offered and sold......... 14

   C.  Plaintiff's Third Claim Fails to State a Claim for Trademark Infringement under 15 U.S.C. § 1114........................................................................ 14

   D.  Plaintiff's Supplemental Causes of Action Each Fail to State a Claim........... 16

      1.  Upper Deck Has Not Alleged Standing to Assert Jordan's Claims... 17

      2.  Upper Deck Has Not Plausibly Alleged Facts To Support Its Claims. 17

3.    Plaintiff Failed to Join Parties Who Are Indispensable Herein……. 18

E. Plaintiff's Claims Fail to State a Claim for Commercial Misappropriation........ 18

F. Plaintiff's 6th and 7th Causes of Action Fail To State an Unfair Competition Claim.18

1.    Upper Deck Has Not Alleged Any Predicate Act, no Actual Disruption to Its Relationship with Anyone Nor Any Other Resulting Harm……………… 19

G.    Upper Deck's Claim For "Unjust Enrichment/Quasi Contract is Invalid…… 21

IV. CONCLUSION ............................................................................................ 23

1

### TABLE OF AUTHORITIES

Page(s)

2

**Cases**

3

*Abbott Labs. v. Adelphia Supply USA,*
      15-CV-5826 (CBA) (LB), 2019 WL 5696148

4

      (E.D.N.Y. Sept. 30, 2019) ………………………………………   13

5

*Allison v. Vintage Sports Plaques,*
      136 F.3d 1443 (11th Cir. 1998)……………………………………...   13

6

7

*AlterG, Inc. v. Boost Treadmills LLC,*
      388 F. Supp. 3d 1133 (N.D. Cal. 2019).....................................................   20

8

9

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)...............................   9

10

*Appliance Recycling Ctrs. of Am., Inc. v. JACO Envtl., Inc.,*
      378 F. App'x 652 (9th Cir. 2010)....................................................   12

11

12

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)............................................................... 7, 15

13

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007).................................................. 7, 16

14

*Bel Canto Design, Ltd. v. MSS Hifi, Inc.,*
      837 F. Supp.2d 208, 222-23 (S.D.N.Y. 2011)…………….……………… 13

15

16

*Biolase, Inc. v. Fotona Proizvodnja Optoelektronskih Naprav D. D.,*
      No. SACV 14-0248 AG (ANx), 2014 WL 12579802

17

      (C.D. Cal. June 4, 2014)................................................................. 12

18

19

*Cairns v. Franklin Mint Co.,* 107 F. Supp. 2d 1212
      (C.D. Cal. 2000)........................................................................   9

20

21

*Chanel, Inc., v, The Realreal, Inc.,* 18-CV-10626 (VSB)
      (1:18-cv-10626 – March 30, 2020) District Court, S.D. New York……… 10, 11

22

*Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090 (N.D. Cal. 2011)........................   19

23

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003)..............   9

24

25

*Davis v. Elec. Arts Inc.*, 775 F.3d 1172 (9th Cir. 2015)..........................................   18

26

*Dinosaur Development, Inc. v. White* 216 Cal.App.3d 1310, 265 Cal.Rptr. 525…. 22

27

*Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 108 Cal.Rptr.3d 682… 22

28

*Eastwood v. Superior Court,* 149 Cal. App. 3d 409 (1983).......................................17

*First Nationwide Savings v. Perry,*
    11 Cal.App.4th 1657, 15 Cal.Rptr.2d 173, (1992)…………………………22

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.,* 778 F.3d 1059 (9th Cir. 2015)... 9

*Fighters Inc., LLC v. Elec. Arts Inc.,*
    No. CV 09-06389 SJO, 2009 WL 10699504 (C.D. Cal. Oct. 30, 2009)......... 17

*FLIR Sys., Inc. v. Sierra Media, Inc.*, 903 F. Supp. 2d 1120 (D. Or. 2012)............... 10

*Gibson v. BTS North, Inc.*, No. 16-24548-Civ, 2018 WL 888872
    (S.D. Fla. Feb. 14, 2018)................................................................ 10, 11

*Golden W. Baseball Co. v. City of Anaheim,* 25 Cal. App. 4th 11 (1994)................. 20

*In re Google, Inc. Privacy Policy Litig.,* No. C-12-01382-PSG,
    2013 WL 6248499 (N.D. Cal. Dec. 3, 2013)..................................... 19

*Grateful Dead Prods. v. Sagan*, No. C 06-07727 JW, 2008 WL 11389542
    (N.D. Cal. Dec. 18, 2008)................................................................ 20

*Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.,*
    No. C 12-05523 WHA, 2013 WL 1007666 (N.D. Cal. Mar. 13, 2013)............ 15

*Integrated Storage Consulting Servs., Inc., v. NetApp,*
    No. 5:12-CV-06209-EJD, 2013 WL 3974537 (N.D. Cal. July 31, 2013)......... 16

*Julian Bakery, Inc. Healthsource Int'l, Inc.,*
    No. 16cv2594-JAH (KSC), 2018 WL 1524499 (S.D. Cal. Mar. 28, 2018)....... 16

*Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 133 S. Ct. 1351,
    185 L. Ed. 2d 392 (2013)……………………………………………………12

*Kische USA LLC v. Simsek,*
    No. C16-0168JLR, 2016 WL 7212534 (N.D. Cal. Dec. 13, 2016)....................10

*Lasco Fittings, Inc. v. Lesso Am., Inc.,*
    No. EDCV 13-02015-VAP, 2014 WL 12601016 (C.D. Cal. Feb. 21, 2014)...... 15

*Lasoff v. Amazon.com, Inc.,* 741 F. App'x 400 (9th Cir. 2018)..................................... 10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) .............. 8

*Low v. LinkedIn Corp.*
    900 F.Supp.2d 1010 (N.D. Cal. 2012)…………………………………………… 22

*Luxpro Corp. v. Apple Inc.,*
    No. C 10-0308 JSW, 2011 WL 1086027 (N.D. Cal. Mar. 24, 2011) ................ 15

*Melchior v. New Line Productions, Inc.*
    106 Cal.App.4th 779, [131 Cal.Rptr.2d 347 (2003)……………………………. 22

*Mintz v. Subaru of Am., Inc.*, 716 F. App'x 618 (9th Cir. 2017)................................... 9

*Mohebbi v. Khazen* (N.D. Cal. 2014) 50 F.Supp.3d 1234 …………………………..   22

*Newcombe v. Adolf Coors Co.*, 157 F.3d 686 (9th Cir. 1998)..................................... 16, 17

*Peterson v. Cellco Partnership* 164 Cal.App.4th 1583, 80 Cal.Rptr.3d 316, (2008).... 21

*Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004)....................................................  20

*Sensible Foods, LLC v. World Gourmet, Inc.,*
    No. 11-2819 SC, 2012 WL 566304 (N.D. Cal. Feb. 21, 2012) ........................11

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.,*
    983 F. Supp. 1303 (N.D. Cal. 1997)................................................................ 20, 21

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997)................... 10

*STX, Inc. v. Bauer USA, Inc.,*
    No. C 96-1140 FMS, 1997 WL 337578 (N.D. Cal. June 5, 1997) ....................14

*Sybersound Records Inc. v. UAV Corp.,* 517 F.3d 1137 (9th Cir. 2008)...................... 21

*Upper Deck Authenticated, Ltd. v. CPG Direct*, 971 F. Supp. 1337
    (S.D. Cal. 1997) ............................................................................... 5 n.2, 17

*Upper Deck Co. v. Panini America, Inc.*, 3:20-cv-00185-GPC-KSC (April 13, 2021)… 4, 17

*Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097 (9th Cir. 2003)...................................... 16

**Statutes**

Fed. R. Civ. P. 12(b)(6) .......................................................................... 7, 18
Fed. Rule Civ. P. 19………………………………………………………………… 18
15 U.S.C. § 1114 ...................................................................................14,15
§ 1125 ................................................................................ 7, 8, 9, 13, 14

17 U.S.C. § 109………………………………………………………………. 12, 13

Cal. Bus. & Prof. Code § 17200.................................................................. 18, 19

Cal. Civ. Code § 3344 ................................................................................ 16, 17

**Other Authorities**

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition

(5th ed. 2019)............................................................................................. 15, 18

M. Nimmer and D. Nimmer, Nimmer on Copyright (2015)……………………………12

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.    **INTRODUCTION** – <u>Procedural History and Background</u>

Defendant Miguel Flores is an individual, residing in Riverside County, who has had a lifelong interest occasionally collecting sports trading cards as a hobby. He is not and has never been a professional dealer or seller of trading cards, however, from time to time, he has listed very limited quantities of his own trading cards that he purchased from others, on his Ebay store account. He has never manufactured, printed, copied, or created any cards or made any advertisements for any such goods.  He has never used Upper Deck's trademarks or logos or insignia in any sales offers, materials or otherwise in or in conjunction with any of his limited offers to sell his own trading cards.

At the beginning of this year, Flores created a few product listings on Ebay offering little more than a *dozen* cards that he had recently purchased online. A few of the cards bore Upper Deck insignia, while others bore brands such as "Star '85" or "Topps". Because Flores was unaware of the origin of these particular cards other than the seller where he had acquired them, knowing not whether they were exclusive, limited edition, or limited copies, whether the cards were "authentic", "original", or of any special collectible value, he sent some of them off to be examined, numbered and graded by a third party professional card grading company, named: GMA Grading {www.GMAgrading.com}.  When GMA Grading returned the cards, they were numbered and identified as (*e.g.,* "Grade 10 - Gem Mint" versions of "Facsimile Reprints" by a card insert placed in a plastic case above the actual card as shown at Paragraph 23 of Plaintiff's First Amended Complaint. ("FAC §23). For comparison, this "1999 UD Authentics" card and a similarly GMA graded Michael Jordan card, identified as a "1984 Star – Michael Jordan #101 Rookie Reprint" are shown below.

Despite additional research, Mr. Flores remains uncertain of any industry standard or generally accepted meaning of the term "facsimile reprint". As a hobbyist, Flores knew only that GMA Grading described the card(s) as "Facsimile Reprints" which was not too surprising inasmuch as he was generally aware that the original, authentic version of these older 1984 and 1999 Michael Jordan trading cards in "mint" condition, would be very rare and thus, their

value would be exponentially more than he had recently paid to acquire them. Accordingly, he believes that these cards are simply less collectable, **reprints**. However, at no time has he been advised that the few cards he photographed and listed for sale were "counterfeit", no cease and desist or other letter precipitated any legal filing, and in each of its Complaints, Plaintiff has failed to offer any factual grounds supporting its claim that <u>any</u> trading card in Flores' possession was ever "illegal or "unauthorized'. Flores never had any inkling nor was he ever advised that any card in his possession was "unauthorized". "illegal" or "counterfeit". Flores still believes that Plaintiff, Upper Deck, Jordan or others authorized by Plaintiff and/or Jordan had made or authorized at least some, of the "upper Deck" styled card(s) that Defendant recently purchased, had graded and numbered and listed them for sale via Ebay. and he reasonably believes that all of the "facsimile reprint" cards were licensed or authorized at the time the seller where he purchased them put them into the stream of commerce.

     On or about February 11, 2021, a singular card featuring Michael Jordan, shown at Paragraph 23 of Plaintiff's FAC, and reproduced here:

FRONT               BACK



as had been truthfully and listed and described (by GMA Grading) as an "**1999 UD Authentics - Michael Jordan #MJ Facsimile Reprint**". This card was purchased by Plaintiff's Counsel, Ethan Litney, and mailed by Flores to Mr. Litney at Plaintiff's counsel's office in San Diego. (See FAC Paragraph 23, **Exhibit A – Sales Invoice**).

     For comparison, another (apparently non-infringing") card Mr. Flores offered on Ebay, is shown immediately below:

1
2
3
4
5
6
7
8
9



"1984 Star Michael Jordan
#101 Rookie Reprint"

On April 28, 2021, Upper Deck filed an Eight-Count Complaint against Flores alleging "Federal Trademark Infringement, Trademark Dilution, Registered Trademark and Counterfeiting, Deprivation of Rights of Publicity, Violation of Rights of Publicity Under Cal. Common law…" (inexplicably) in the Superior Court of California, San Diego County (*See* State Court Complaint, Dkt. No. 1-4)

On June 28, 2021, Defendant Miguel Flores removed the action from the Superior Court of California, San Diego Country, Case No. 37-2021-00018912-CU-IP-CTL, to this District Court.  The next day, June 29, 2021, Plaintiff filed its First Amended Complaint in this action, (Dkt. No. 4) which contains and repeats all of the salient allegations alleged in the State Court action, with three general modifications:

1:   At Paragraph 11 of the FAC, Upper Deck added eighteen (irrelevant and immaterial) Applications and Registrations for various trademarks, service marks, and logo designs that it asserts, (most of which relate to goods and services other than trading cards);

2:   At Paragraph 25 of the FAC, Plaintiff has added some immaterial surplusage, including hearsay allegations related to an alleged posting on a Facebook page of a non party, namely GMA Grading, occurring after the filing of the State Court action herein. Although none of the allegations refer or related to Mr. Flores, instead, referring to GMA Grading as "one of the only, if not the only, card

quality grader that graded counterfeit cards", Defendant objects to these vague, scandalous, spurious (and likely false) allegations inasmuch as GMA Grading is neither a party to this action, nor would its alleged statements made after the fact in any way be attributable to Mr. Flores.  Upper Deck further unfairly misquotes the text of its embedded "Facebook Post" that it alleges was made by GMA Grading on May 13, 2021, and plainly mischaracterizes the very third party double-hearsay it references in Paragraph 25 of the FAC, as related thereto. In short, the allegations of FAC ¶25 are completely devoid of any evidentiary value herein.

3:      At Paragraph 17, of the FAC, Upper Deck deleted only the first of the two misleading footnotes and did so only weeks after the undersigned counsel sent several "meet and confer" and Fed. Rule 11 "Safe Harbor" letters to Upper Deck's counsel demanding that Footnotes 1 and 2 to Paragraph 17 of their State Court Complaint be stricken. Such footnotes respectively allege:

i)      "Indeed, Upper Deck's exclusive license related to Jordan has been recognized by state and federal courts. *See, e.g., Merrick Mint, Inc. v. Upper Deck Co.,* (D. Nev. Sept. 21, 2007) 2007 WL 9754544 at *1)"; and

ii)     "For example, the Seventh Circuit Court of Appeals has recognized: "[Michael] Jordan is a sports icon whose name and image are deeply embedded in the popular culture and easily recognized around the globe. His singular achievements on the basketball court have made him highly sought after as a celebrity endorser; as a retired player who continues to reap the economic value of his reputation in the history of the game, he understandably guards the use of his identity very closely." (See *Jordan v. Jewel Food Stores, Inc.* (7th Cir. 2014) 743 F.3d 509, 513.

Defendant has maintained that these footnotes be stricken and withdrawn because at the time these allegations were filed, they were false, and at best blatantly misleading within this Judicial District, *inter alia*, in view of this Court's prior April 13, 2021 ruling in *The Upper Deck Company v. Panini America, Inc.* 3:20-cv-00185-GPC-KSC (Dkt. 63 – filed 04/13/21) (**Exhibit B**). Though the latter footnote is wholly inapplicable to any of the allegations brought against Flores, to the contrary of its posturing, Upper Deck's claims of exclusive publicity

1  rights, licenses and standing on behalf of numerous sports figures, (including Jordan) have
2  been rejected more often than "recognized" by the Courts.[1]

3       Upper Deck's complaint should be dismissed in its entirety because it fails to plead
4  facts sufficient to show basic elements of each claim, including Upper Deck's standing to sue
5  on its false association, trademark dilution, and right of publicity claims. Neither the NBA nor
6  Jordan (nor GMA Grading) are party to this case.  Upper Deck has not alleged that it has, or
7  could receive from Jordan, an exclusive right to produce trading cards featuring images of
8  Jordan, nor has it alleged that it has never manufactured or distributed any "Facsimile
9  Reprints", nor that it (and Jordan) have never authorized any and all third-parties (including its
10  overseas distributors, factories and manufacturers) to do so.

11       Miguel Flores has never been a manufacturer nor professional dealer of trading cards.
12  As alleged at FAC Paragraphs 3 and 19, he is an individual who *"markets products for sale*
13  *online . . .  under the eBay account name "migflo_3800."* Paragraph 22 of the FAC further
14  alleges he *"is selling non-authentic, counterfeit trading cards with the Upper Deck*
15  *Trademarks and featuring Jordan's likeness without Upper Deck's or Jordan's permission,*
16  *consent or authority*."  Although it uses the plural form throughout the FAC, Upper Deck did
17  not describe or specify any "example" of any "non-authentic" trading cards other than the one
18  alleged at Paragraph 23 of the FAC, nor has Upper Deck provided a sufficient factual basis for
19  its conclusory allegations.

20       Without question, Upper Deck has itself and many other manufacturers have produced
21  and sold trading cards featuring Jordan.  The Jordan trading card shown and alleged at
22  Paragraph 23 appears to be a legitimate trading card reprint. By offering this card for (re)sale
23  on Ebay, Defendant certainly did not violate any publicity right of Jordan nor did Mr. Flores
24  use any Upper Deck trademarks in any manner, nor make any actionable false statements
25  whatsoever in connection with his listing and sale of this single Ebay listing. The only

26  
27  [1] Upper Deck has also misrepresented the scope of its rights to athlete likenesses in prior cases. *Upper Deck Authenticated, Ltd. v. CPG Direct*, 971 F. Supp. 1337, 1348-49 (S.D. Cal. 1997) (where Upper Deck claimed it held "exclusive rights" to exploit athlete's name and likeness,
28  athlete submitted declaration for defendant attesting the rights were non-exclusive).

1   description was that by GMA Grading, via an insert card, as shown at Paragraph 23 of the

2   FAC, which **nominally** and **correctly** describes the card as a "1999 UD Authentics Michael

3   Jordan #MJ Facsmile Reprint". No additional words or images were included in the listing and

4   no actual use by Flores of any of Jordan's or Upper Deck's alleged trademarks was made, nor

5   was there any false statement nor misrepresentation made with respect thereto.

6          Certainly, Plaintiff's counsel, Ethan Litney, the purchaser of the trading card was not

7   confused about what he was buying or who he was purchasing the card from. Thus, no

8   plausible suggestion of any false association or misrepresentation of the relationship between

9   Mr. Flores (as the seller) and Upper Deck, or Michael Jordan (or anyone else) has been alleged

10  and none can be shown.

11         Moreover, because Flores had every right under the First Sale Doctrine to list, sell and

12  dispose of his own property, (in this case, by selling a card on Ebay to Plaintiff's counsel), and

13  did so absent any false statements in connection with the "listing" and sale, Upper Deck's

14  pleading deficiencies are fatal.

15         As for Upper Deck's relationship or alleged relationship as the exclusive owner of

16  publicity rights and standing to enforce Michael Jordan's purported intellectual property rights

17  herein, Mr. Flores is hardly the appropriate party for Plaintiff to vent its frustrations and thusly

18  further challenges Upper Deck's "standing" to assert any claims on behalf of Jordan herein.  In

19  addition to standing, Upper Deck's false association claim fails as a matter of law because it is

20  implausible that any consumer would believe Flores' Ebay account: "migflo_3800" (*See* FAC

21  ¶3) or his few trading card listings to be in any manner sponsored or related to Upper Deck or

22  Jordan, or that his card listings originated or were endorsed thereby. Thus, no likelihood of

23  customer confusion under the Lanham Act exists and the false advertising claim fails because

24  Upper Deck has failed to allege any actionable false statement that will affect a customer's

25  purchasing decision.

26         Upper Deck's supplemental claims for right of publicity, commercial misappropriation

27  and unfair competition similarly fail because Upper Deck has not alleged any facts supporting

28  liability by Defendant; nor facts plausibly supporting its alleged damages, nor any consumer

misperception, nor change (actual or likely) in its economic relationship with the relevant consumers of trading cards, athletes, including Michael Jordan, or anyone else, as a result of the alleged sale of a single trading card to Plaintiff's counsel, Ethan Litney. In short, there is no factual basis for any of the State of common law claims alleged in this action which itself, apparently resulted following a single "trap buy" by Plaintiff's lawyer.  Thus, if anyone is guilty of misrepresentation, it is Plaintiff and its counsel, who have filed blatantly false and misguided allegations, including claims to Jordan "trademarks" and "publicity rights" that Upper Deck's counsel were previously advised were insufficient, invalid and baseless, including, for example, those in Footnote 1 to Paragraph 17 of its FAC.

Despite Eight Causes of Action, Upper Deck has failed to allege any plausible act or conduct by Mr. Flores, only one of hundreds of thousands of Ebay users selling trading cards, nor any act by this Defendant which would support any of its redundant, yet threadbare claims for violations of "publicity rights, "commercial misappropriation" and "unfair competition" repeated in the latter five claims asserted in its FAC.  Thus, for the reasons discussed more below, Upper Deck's complaint should be dismissed in its entirety.

## II.   LEGAL STANDARD

A complaint must be dismissed for failure to state a claim if plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a claim. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must not only allege facts to state a claim "plausible on its face," but also "enough to raise a right to relief above the speculative level." Id. at 555, 570. "[M]ere conclusory statements" couched as factual allegations "do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.   ARGUMENT

### A. **Plaintiff's First Claim Fails to State a Claim under 15 U.S.C. § 1125(a)**

In its First Claim, Upper Deck alleges that "it has the rights to use Jordan's likeness and

marks"[2] (FAC. ¶ 29), and further claims that "*Defendant infringed on Upper Deck Trademarks and Jordan's likeness and marks, on and in connection with the sale of Defendant's unauthorized products[3] in interstate commerce.*" (FAC ¶ 32) However, without otherwise describing any actual act, representation or "example" of any conduct by Defendant Flores which would justify its claims, Upper Deck then attaches various labels to Flores' singular sale of a Michael Jordan trading card, to its own counsel as "false affiliation/endorsement, false advertising and unfair competition." (FAC ¶ 33).  Without reference to any other act than a singular sale of one trading card on Ebay, Upper Deck "threw the book" (of jargon) at Flores, vaguely alleging without any facts, that Defendants':

> *"acts are: (A) is (sic) likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, right to use, or association of Defendant with Upper Deck or Jordan and as to the origin, sponsorship, or approval of Defendant's Products by Upper Deck or Jordan; and (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or origin of Defendant's Products, and/or Upper Deck's or Jordan's authorized products, services, or commercial activities."*

Despite Upper Deck's cryptic, circular, vague and plainly, insufficient pleading, the Lanham Act, Section 1125(a), creates just "two distinct bases of liability: false association, [under] § 1125(a)(1)(A) and false advertising, [under] § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 122 (2014). Because Upper Deck fails to allege facts that support a plausible claim under either theory, the First Claim must be dismissed.

1.  **Upper Deck Fails to State a § 1125(a)(1)(A) Claim Because It Has Not Plausibly Alleged That Flores' Use is Likely to Cause Confusion As to Origin, Sponsorship or Approval**

To state a false association claim under § 1125(a)(1)(A), Upper Deck must first identify

---

[2] Upper Deck has not identified any trade or service marks related to "Jordan" in its FAC.

[3] Although it repeats the plural form (e.g. .. "*[e]xamples of Defendant's Products (the 'Cards') for sale featuring Upper Deck Trademarks and Jordan's name, image, likeness and/or autograph on the listings*" (FAC ¶¶ 23, 32, 33) Plaintiff has only alleged one single "[e]xample" of what it sees as "unauthorized." (FAC ¶23)

an act where Flores "uses" its various and sundry marks asserted, let alone those of Jordan. However, nowhere in the FAC does Plaintiff describe any act where Defendant "used" any marks, other than in the nominative manner, to correctly describe the product that he offered and sold on Ebay.

Moreover, the facts pled in the entirety of the FAC are fatally insufficient to plausibly allege that Flores' use of the asserted marks is likely to cause consumer confusion as to the origin, sponsorship, or approval of his sale of a trading card to Plaintiff's counsel. 15 U.S.C. § 1125(a)(1)(A); see also *Mintz v. Subaru of Am., Inc.*, 716 F. App'x 618, 620 (9th Cir. 2017). Confusion as to "origin" arises if a purchaser believes that Jordan or Upper Deck, not Flores is the source of the trading cards. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31-32 (2003) (construing "origin" as the trademark owner or actual producer of goods). Confusion as to "sponsorship or approval" occurs, in contrast, only if a purchaser believes that the appearance of the (name, likeness or trademark alleged in any product implies Upper Deck and/or Jordan's endorsement. *Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1214 (C.D. Cal. 2000).

In all cases, "the particular use and placement of the mark is probative of likelihood of confusion." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1072 (9th Cir. 2015); see also *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 351 (9th Cir. 1979) (marks "must be considered as they are encountered in the marketplace"). And the "confusion must be probable, not simply a possibility." *Mintz,* 716 F. App'x at 620 (citation omitted).

Nowhere does Upper Deck describe how any consumer might be confused by Mr. Flores "listing of a Jordan card on Ebay" nor could it ever plausibly do so, inasmuch as there are hundreds of thousands of sellers on eBay and hundreds of thousands of card traders online.

2. <u>Upper Deck Fails to State a § 1125(a)(1)(B) Claim Because It Has Not Alleged a False Statement of Material Fact To State a False Advertising Claim Under § 1125(a)(1)(B),</u>

Upper Deck must allege, among other things, (1) that Flores made false statements of fact about his own or another's product, which (2) actually deceived or have the tendency to

deceive a substantial segment of its audience, and (3) is material in that it is likely to influence the consumer's purchasing decision. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).   Sections 1125(a)(1)(A) and (B) provide distinct bases of liability. Where no distinct facts support a claim under § 1125(a)(1)(B), dismissal is warranted. *Lasoff v. Amazon.com, Inc.*, 741 F. App'x 400, 402 (9th Cir. 2018) (affirming dismissal of false advertising claim as "duplicative" of trademark infringement claim because defendant did not make a statement about the quality of plaintiff's products). Here, Upper Deck fails to allege the requisite elements of false advertising under § 1125(a)(1)(B).

To establish falsity under § 1125(a)(1)(B), Upper Deck must show Flores' statement was (1) literally false, either on its face or by necessary implication, or (2) literally true but likely to mislead or confuse consumers. *Southland Sod Farms*, 108 F.3d at 1139. To constitute false advertising, the statement must also concern a misrepresentation about the "nature, characteristics, qualities, or geographic origin" of Flores' or another's product. 15 U.S.C. § 1125(a)(1)(B).

While Flores did not actually use any Upper Deck or Jordan marks in connection with the alleged "listings" he has the absolute right to use the nominative words and even marks of others that accurately describe the product(s) in his alleged "listings".  For the trading card(s) to constitute a "false statement," in the absence of an explicit assertion, Upper Deck must show that "the[ir] words and images, considered in context, necessarily and unambiguously imply a false message." *FLIR Sys., Inc. v. Sierra Media, Inc.,* 903 F. Supp. 2d 1120, 1130 (D. Or. 2012) (citation omitted). The court in *Gibson v. BTS North, Inc.* addressed a similar claim based on use of plaintiffs' photographs on the Facebook page of defendant's adult entertainment club, which plaintiffs argued were false, implying statements of endorsements of the club. No. 16-24548-Civ, 2018 WL 888872, at *4 (S.D. Fla. Feb. 14, 2018). However, because the photographs were actual images of plaintiffs, the court found "[w]ithout more, such use [of the photographs] is not literally false," and could not be actionable. *Id.*

In *Chanel, Inc. v. The RealReal, Inc.*, the District Court, in Southern District of New

York[4] found that resale of used goods is not actionable under the Lanham Act. "the Lanham Act 'does not prevent one who trades a branded product from accurately describing it by its brand name, so long as the trader does not create confusion by implying an affiliation with the owner of the product.' Citing *Tiffany (NJ) Inc.*, 600 F.3d at 103 (quoting Dow Jones & Co., 451 F.3d at 308) Id at 17 wherein, "eBay used the mark to describe accurately the genuine Tiffany goods offered for sale on its website. And none of eBay's uses of the mark suggested that Tiffany affiliated itself with eBay or endorsed the sale of its products through eBay's website.")   Courts have dismissed false advertising claims based on the "use" of designs or symbols that, on their own, did not convey false statements about a product. See, e.g., K*ische USA LLC v. Simsek,* No. C16- 0168JLR, 2016 WL 7212534, at *10 (N.D. Cal. Dec. 13, 2016) (finding defendant's use of clothing designs is not a statement of fact that describes the product's characteristics); *Sensible Foods, LLC v. World Gourmet, Inc.,* No. 11- 2819 SC, 2012 WL 566304, at *6 (N.D. Cal. Feb. 21, 2012) (finding use of logo with a heart symbol is not a statement capable of being proved false). Although Flores photographed a card in his possession and listed it for sale on eBay, just like in *Gibson,* such use of a photographed image cannot constitute an actionable false statement under § 1125(a)(1)(B).

### a. The Fact That The Card Sold By Flores Had Been Graded As a "Facsimile Reprint" Is Truthful, And Is Not An Actionable False Statement.

Flores' listing merely shows the product, a trading card, with a title card above it, (created by a non-party, GMA Grading) which numbered and graded the card, describing it as as a "Facsimile Reprint". No false statement was made, and certainly, no consumer was confused about the "listing(s)".

### b. Upper Deck Fails to Allege Any Act by Flores That Has a Tendency to Deceive a Substantial Segment of Its Audience

As discussed above, Upper Deck fails to allege any literally false statement. While literally false statements may be entitled to a rebuttable presumption of actual deception, "[a]n advertisement that is not literally false may support a Lanham Act claim only if it is shown

---

[4] *Chanel v. The Real Real* 1:18-cv-10626, (S.D. NY March 30, 2020)

1  'that the advertisement has misled, confused, or deceived the consuming public.'" *Appliance*

2  *Recycling Ctrs. of Am., Inc. v. JACO Envtl., Inc.,* 378 F. App'x 652, 655 (9th Cir. 2010)

3  (citation omitted). To meet its burden, Upper Deck is required to allege that the cards sold by

4  Flores have a tendency to deceive the public. *Biolase, Inc. v. Fotona Proizvodnja*

5  *Optoelektronskih Naprav D. D.*, No. SACV 14-0248 AG (ANx), 2014 WL 12579802, at *5

6  (C.D. Cal. June 4, 2014) (granting defendant's motion to dismiss, finding "a false advertising

7  claim must adequately plead that the statement actually deceived or has the tendency to

8  deceive a substantial segment of its audience.") Here, Upper Deck has failed to allege that the

9  cards have a tendency to deceive, let alone that any customers were actually deceived.

10  Therefore, the false advertising claim fails for this independent reason.

11   **c.  Flores Has The Absolute Right To Sell His Own Property.**

12   As an individual who bought and resold a trading card, Flores is entitled to the benefit

13  of several obvious defenses to Plaintiff's claims, including the ***First Sale Doctrine*** which

14  protects his right to sell, trade and dispose of his own property.  Section 109 of the Copyright

15  Act expressly permits "the owner of a particular copy" . . ."to sell or  to sell or otherwise

16  dispose of the possession of that copy or phonorecord." (17 U.S.C. § 109).

17   This right to resell one's own property, approved by the United States Supreme Court

18  in *Kirtsaeng v. John Wiley & Sons, Inc*., 568 U.S. 519 (2013), 133 S. Ct. 1351, 185 L. Ed. 2d

19  392, 2013 U.S. LEXIS 2371 has been protected from limitations on resale of "books" and

20  copies of products bearing trademarks, including even trading cards.

21   The first-sale doctrine provides that once the holder of an intellectual property right

22  "consents to the sale of particular copies . . . of his work, he may not thereafter exercise the

23  distribution right with respect to such copies . . . ." M. Nimmer and D. Nimmer, Nimmer on

24  Copyright § 8.12[B][1] (2015). Any other rule would extend the monopoly created by the

25  intellectual property right so far as to permit control by the right-holder over the disposition of

26  lawfully obtained tangible  personal property. Therefore, "the policy favoring [an intellectual

27  property right monopoly] . . . gives way to the policy opposing restraints of trade and restraints

28  on alienation." Id. at § 8.12[A].  The first-sale doctrine limits the three principal forms of

---

1    intellectual property rights: (1) copyright, see 17 U.S.C. § 109(a) ("[T]he owner of a particular

2    copy or phonorecord lawfully made under this title, or any person authorized by such owner, is

3    entitled, without the authority of the copyright owner, to sell or otherwise dispose of the

4    possession of that copy or phonorecord."); (2) patent, see *Intel Corp. v. ULSI Sys. Tech., Inc.,*

5    995 F.2d 1566, 1568 (Fed. Cir. 1993) ("The law is well settled that an authorized sale of a

6    patented product places that product beyond the reach of the patent. The patent owner's rights

7    with respect to the product end with its sale, and a purchaser of such a product may use or

8    resell the product free of the patent.") (internal cites omitted); and (3) trademark, see *NEC*

9    *Elec. v. Cal Circuit ABCO, 810 F.2d 1506, 1509* (9th Cir. 1987) ("Once a trademark owner

10   sells his product, the buyer ordinarily may resell the product under the original mark without

11   incurring any trademark liability.") (citing *Prestonettes, Inc. v. Coty,* 264 U.S. 359, 368-69, 44

12   S.Ct. 350, 351-52 (1924)).

13         In *Allison et al. v. Vintage Sports Plaques et al[5]*; (involving trading cards), the 11th

14   Circuit observed: "[a]s a general rule, trademark law does not reach the sale of genuine goods

15   bearing a true mark even though the sale is not authorized by the mark owner." *Polymer Tech.*

16   *Corp. v. Mimran*, 975 F.2d 58, 61 (2d Cir. 1992). This general rule flows from the principle

17   that the right of a manufacturer to control distribution of its products does not extend beyond

18   the first sale of the product. *See also: Abbott Labs. v. Adelphia Supply* USA, 15-CV-5826

19   (CBA) (LB), 2019 WL 5696148, at *4-5 (E.D.N.Y. Sept. 30, 2019); *Bel Canto Design, Ltd. v.*

20   *MSS Hifi, Inc.,* 837 F. Supp.2d 208, 222-23 (S.D.N.Y. 2011).

21         Because Upper Deck has failed to plausibly allege any facts that would suggest a false

22   association, or statement of any false statement of any material fact made in Mr. Flores Ebay

23   "listing", (because there are none) all of Trademark claims must fail.

### B.  Plaintiff's Allegations of Dilution Fails to State 15 U.S.C. § 1125(c) Claim.

####    1.  Upper Deck and its sundry list of marks are not sufficiently famous
####        to warrant a dilution claim under the Lanham Act

---

[5] 136 F.3d 1443 (U.S.C.A. - 11th Circuit, No. 96-6809, March 18, 1998)

The Second Claim should be dismissed because Upper Deck is not itself famous, nor is it the owner of any of asserted rights of Jordan.  It has failed to allege that any of its particular marks are famous within the meaning of the act and alleges only that it has "used" or owns certain marks, and that it owns an "exclusive license to certain of Jordan's marks." (Id. ¶¶ 23, 58.). Even assuming this is true, and that the asserted marks are "famous" under § 1125(c), the statute only provides relief to "the owner" of a famous mark, which Upper Deck is not. 15 U.S.C. §§ 1125(c)(1) & (5); *STX, Inc. v. Bauer USA, Inc.*, No. C 96-1140 FMS, 1997 WL 337578, at *4 (N.D. Cal. June 5, 1997) (holding that exclusive licensee lacks standing to pursue claim for trademark dilution as it is not the trademark owner). Thus, Upper Deck's claim for dilution under § 1125(c) must be dismissed with prejudice.

### 2. Upper Deck has failed to allege any act by Defendant that would plausibly amount to "dilution" of any marks Plaintiff allegedly owns.

Upper Deck has failed to identify or describe any act constituting dilution of its alleged marks and has totally failed to allege the manner in which any trademark owned or asserted by Upper Deck was "used" by Flores in connection with the alleged sale of any products. It has further failed to identify any act by Flores that would confuse the public or harm any of Plaintiff's alleged rights in any particular trademark.

### 3. Flores has the absolute right to the nominative fair use of any words and/or marks that correctly identify the products he has offered and sold…...

It is indisputable black-letter law that Flores can use any words or marks to accurately describe what he is selling. Plaintiff's claims for "infringement" "dilution" are baseless.

## C. Plaintiff's Third Claim Fails to State a Claim for Trademark Infringement under 15 U.S.C. § 1114.

The Third Claim for "infringement of a registered trademark and counterfeiting" should be dismissed because Upper Deck is not the registrant of "Jordan's marks" and because despite Upper Deck's conclusory allegations made on "information and belief", it has failed to identify any act by Flores that would constitute "use" let alone "infringement and

---

1   counterfeiting" of its alleged marks. (Compl. ¶¶ 23, 58.)

2       Upper Deck does not even properly identify, produce or attach a single trademark

3   registration certificate, much less the goods, classification, or registrant of any of the sundry

4   mark it purports to rely on. Moreover, it has failed to identify which if any of the marks, it

5   claims that Flores has somehow used, let alone violated its's alleged rights.

6       Only the registrant of a mark may  bring a § 1114 claim. 15 U.S.C. § 1114(1)(b) ("Any

7   person . . . shall be liable in a  civil action by the registrant for the remedies hereinafter

8   provided.") (emphasis added); 6 McCarthy on Trademarks and Unfair Competition § 32:3 (5th

9   ed.) ("The majority of cases hold that the statute means what it says: only the federal

10  'registrant' has standing to sue for infringement of a federally registered mark."). However,

11  some courts have held that an exclusive licensee may bring a § 1114 claim if "the licensing

12  agreement both grants an exclusive license and grants to the exclusive licensee a property

13  interest in the trademark, or rights that amount to those of an assignee." *Innovation Ventures,*

14  *LLC v. Pittsburg Wholesale Grocers, Inc.*, No. C  12-05523 WHA, 2013 WL 1007666, at *3

15  (N.D. Cal. Mar. 13, 2013) (citation omitted and emphasis added). The license must be "for the

16  trademark in its entirety," not merely for "certain types of products." *Lasco Fittings, Inc. v.*

17  *Lesso Am., Inc.*, No. EDCV 13-02015-VAP (DTBx), 2014 WL 12601016, at *Section 32(1)(b)

18  of the Lanham Act imposes civil liability on any person who, without authorization,

19  reproduce[s], counterfeit[s], cop[ies], or colorably imitate[s] a registered mark and appl[ies]

20  such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages,

21  wrappers, receptacles, or advertisements intended to be used in commerce upon or in

22  connection with the sale, offering for sale, distribution, or advertising of goods or services on

23  or in connection with which such use is likely to cause confusion, or to cause mistake, or to

24  deceive . . . . 15 U.S.C. § 1114(1)(b).

25      While Upper Deck's FAC Paragraphs 45 and 46 contains a long list of conclusory and

26  conjunctive claims, consisting again of nothing but legal jargon, nowhere in the FAC does

27  Plaintiff plausibly suggest sufficient allegations other than a single sale of a single card to

28  Plaintiff's attorney.  Upper Deck's claims do not meet the Rule 8 standard under *Iqbal* or

1   *Twombly*: Instead of pleading facts, based on some unidentified "information and belief"

2   Plaintiff simply alleges that Flores is a "counterfeiter." Although Flores does not dispute the

3   seriousness of such allegations, he strenuously disputes the broad and overstated brushstrokes,

4   and is certainly entitled to be advised of a specific factual basis supporting Plaintiff's

5   conclusions. Indeed, the law requires that these threadbare claims be pleaded "to the hilt", and

6   one is entitled to fair notice before one is ordinarily required to defend such a case. Given

7   Upper Deck's serious allegations of false advertising and counterfeiting are grounded in fraud,

8   Upper Deck must plead the allegedly false statements with the particularity required by the

9   Federal Rules. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)

10   ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the

11   misconduct charged."); *Julian Bakery, Inc. Healthsource Int'l, Inc.*, No. 16cv2594-JAH

12   (KSC), 2018 WL 1524499, at *5-6 (S.D. Cal. Mar. 28, 2018) (applying Rule 9(b) to false

13   advertising claims). Since it has not done so, this claim must be dismissed.

14   ### D. Plaintiff's Remaining Causes of Action Each Fail to State a Claim

15   Upper Deck's Fourth, Fifth, Sixth, Eighth (sic) and Ninth (sic) claims for relief all rely

16   upon Upper Deck's claims to the "rights of publicity" of a third party, for whom it has no

17   standing to seek such claims. Plaintiff's Fourth Cause of Action claims that Flores "*knowingly,*

18   *and without authorization, used Jordan's name, likeness, and/or autograph in its Products,*

19   *including the Cards, that were sold in interstate commerce via their Store among other*

20   *channels."* (FAC ¶ 52) However, without any factual or legal basis, Upper Deck further

21   claims that it "*has a license to utilize Jordan's likeness in connection with trading cards and*

22   *has the right to assert claims for deprivation of rights of publicity in connection with trading*

23   *cards. Defendant's Products include trading cards"* Id. ¶ 53.

24   California's common law and statutory rights of publicity prohibit the commercial use

25   of "another's name, voice, signature, photograph, or likeness" without that person's consent.

26   Cal. Civ. Code § 3344; *Newcombe v. Adolf Coors Co.,* 157 F.3d 686, 691-92 (9th Cir. 1998).

27   The Complaint addresses a single trading card that allegedly displays the image of Jordan

28   (FAC ¶¶ 23, 52.) Accordingly, Upper Deck must demonstrate that it has standing to pursue

1  such claims based on Jordan's right of publicity and must demonstrate that it has such right to

2  pursue these rights that are owned by Jordan. For the reasons below, Upper Deck fails to state

3  a claim for both common law and statutory right of publicity.

4        **1.  Upper Deck Has No Standing to Assert Claims Based on Jordan**

5        Upper Deck has not alleged standing to sue as an exclusive licensee of the rights

6  necessary to support the claims asserted. Unless a license is exclusive in all respects relevant

7  to the allegations in the complaint, it is insufficient to grant standing to sue on a right-of-

8  publicity claim. *Fighters Inc., LLC v. Elec. Arts Inc.*, No. CV 09-06389 SJO (VBKx), 2009

9  WL 10699504, at *5- 6 (C.D. Cal. Oct. 30, 2009) (nonexclusive license insufficient); *Upper*

10 *Deck Authenticated, Ltd. v. CPG Direct*, 971 F. Supp. at 1349 (Upper Deck's purported

11 exclusive license was insufficient and contradicted by athlete whom Upper Deck claimed to

12 represent).  Upper Deck alleged that it had an exclusive license with NFL player Joe Montana

13 to sell sports memorabilia, yet that court found that the license was non-exclusive because it

14 contained various exceptions that would allow Montana to sell memorabilia during the term of

15 the agreement. 971 F. Supp. at 1349.

16       **2.  Upper Deck Has Not Alleged Facts in Support of Its Right of Publicity**

17       To state a claim for common law right of publicity, plaintiff must allege "(1) the

18 defendant's use of plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to

19 defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting

20 injury." *Newcombe*, 157 F.3d at 691 (quoting *Eastwood v. Superior Court*, 149 Cal. App. 3d

21 409, 417 (1983)). To state a claim under Cal. Civ. Code § 3344, plaintiff must plead all four

22 elements of the common law claim, and further allege (5) "a knowing use" by the defendant

23 "of the plaintiff's name, photograph or likeness for purposes of advertising or solicitation of

24 purchases" and (6) "a 'direct' connection" between the alleged "use and the commercial

25 purpose." *Eastwood,* 149 Cal. App. 3d at 417-18.

26       In this case, no factual basis for any liability exists as the result of Flores' resale of a

27 trading card. Indeed, the claims of intellectual property rights are plainly incidental to Upper

28

---

1   Deck's other related claims which are plainly misdirected at Defendant Flores. The Ninth

2   Circuit has explained that the incidental use defense is "widely recognized" in right of

3   publicity claims. *Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1180 n.5 (9th Cir. 2015). As such, a

4   plaintiff cannot recover for a "mere trivial or fleeting use of" name, photograph, or likeness

5   "when such a usage will have only a de minimis commercial implication." J. Thomas

6   McCarthy, McCarthy on Trademarks and Unfair Competition § 28:7.50 (5th ed. 2019).

7   Accordingly, dismissal based on Flores incidental use inasmuch as trading cards are in and of

8   themselves inappropriate subjects for enforcement of Upper Deck's publicity rights of Jordan.

9   is warranted at the 12(b)(6) stage.

### 3.  Plaintiff Failed to Join Parties Who Are Indispensable Herein

11       Upper Deck's has failed to include Michael Jordan (and GMA Grading) each of whom

12   are "indispensable parties" within the meaning of Fed. Rule Civ. Pro. 19, because in their

13   absence, the court cannot accord complete relief among the parties; because Upper Deck

14   claims an interest relating to Michael Jordan and based opn conduct of GMA Grading, thusly

15   making the action so situated that disposing in their absence will impair or impede the

16   Jordan's and GMA Gradings separate interests, and leave Defendant Flores subject to a

17   substantial risk of incurring double, multiple, or otherwise inconsistent obligations thereby.

18   For such reasons, these parties must be joined or the matter must be dismissed.

### E.    Plaintiff's Fifth Cause of Action For Fails To State a Claim

20       Plaintiff's redundant Fifth Cause of Action for "Commercial Misappropriation" Fails to

21   State a Claim and it adds nothing other than an unsubstantiated surplusage alleging

22   "Defendant knows it had not right to use these publicity rights on trading cards. Defendant did

23   not obtain any consent from Upper Deck to use Jordan's publicity rights on trading cards."

24   (FAC ¶ 60.) However, as stated above, First Sale Doctrine and the nature of the goods

25   themselves, gives Flores the right to sell, trade and dispose of his own trading cards.

### F.    Plaintiff's Unfair Competition Allegations Fail to State a Claim

27       For its Sixth Cause of Action for Unfair Competition under Cal. Bus. & Prof. Code §

28   17200, Upper Deck merely alleges that *"Defendant's misappropriation of the Upper Deck*

---

1   *Trademarks, and Jordan's name, image, likeness, and/or autograph permit, and will permit,*

2   *Defendant to use and benefit from the goodwill and reputation of Jordan. By selling trading*

3   *cards which bear the Upper Deck Trademarks or Jordan's likeness, Defendant is benefitting*

4   *from the positive reputation and value customers have given Upper Deck and Jordan to which*

5   *Defendant would not otherwise have, at Upper Deck's expense.* (FAC ¶65); that such "*conduct*

6   *constitutes unlawful, unfair, and deceptive trade practices and unfair completion in violation*

7   *of California Business & Professions Code § 17200 et seq.*"; (Id. ¶66) and "*[b]y continuing to*

8   *sell the misappropriated Products, Upper Deck will suffer substantial injury, including*

9   *possible loss of customers who will lose trust in the Upper Deck name, brand, and tenet to*

10  *provide authentic products, and injury to its business relationship with Jordan.*"  Although it

11  redundantly labels such facts as "common law" unfair competition, in its 7th (mislabeled as 8th)

12  Cause of Action, Plaintiff offers no additional facts to support that claim either.

### 1.  Upper Deck Has Not Alleged Any Predicate Act By Flores, nor Any Actual Disruption to Its Relationship with Anyone Nor Any Other Resulting Harm

15  Upper Deck fails to allege any act or conduct of Flores which would support a claim for

16  Unfair Competition. To plead a UCL violation, a plaintiff must allege that she was harmed by

17  "unlawful, unfair or fraudulent business act[s] or practice[s]." Cal. Bus. & Prof. Code § 17200.

18  A plaintiff's claim that alleged conduct is "unlawful" "is derivative of, and dependent on the

19  viability of [plaintiff's] other claims." *Cohen v. Facebook, Inc.,* 798 F. Supp. 2d 1090, 1098

20  (N.D. Cal. 2011). Thus, if plaintiff's other claims fail, the UCL claim also fails. Id.; see also *In*

21  *re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *15 (N.D.

22  Cal. Dec. 3, 2013) (finding plaintiffs' UCL claim failed as a matter of law because they "failed

23  to set forth sufficient factual allegations to support the underlying [claims]").

24  Upper Deck generally alleges that Flores engaged in "unlawful" practices, premising its

25  UCL claim on its other claims. It has not however, sufficiently alleged in support of its claims,

26  any act, or conduct by Defendant Flores, which is proximately causing or could plausibly

27  cause Upper Deck any actual harm. Instead, it alleges only that it might presumably suffer a

28  "possible loss of customers who will lose trust in the Upper Deck name, brand, and tenet to

---

1    provide authentic products, and injury to its business relationship with Jordan."  (FAC ¶67)

2    Because Upper Deck has not plausibly suggested any factual basis for its UCL claims, they

3    must be dismissed.

4           Plaintiff's UCL allegations are bare and insufficient to show any disruption and

5    resulting harm to Upper Deck.  Plaintiff's claims require a factual basis of an "unlawful" act

6    by the Defendant, of which there is none, and further require allegations that Plaintiff's

7    relationship was "actually" disrupted as a result of the defendant's conduct. *Silicon Knights,*

8    *Inc. v. Crystal Dynamics, Inc*., 983 F. Supp. 1303, 1311 (N.D. Cal. 1997); *Reeves v. Hanlon*,

9    33 Cal. 4th 1140, 1148 (2004). A plaintiff alleging disruption of contractual relations can

10   satisfy this element by showing that "the defendant's conduct made the plaintiff's

11   performance, and inferentially enjoyment, under the contract more burdensome or costly."

12   *Golden W. Baseball Co. v. City of Anaheim,* 25 Cal. App. 4th 11, 51 (1994) (citation omitted).

13   While Upper Deck claims that it might suffer "possible loss of customers" (FAC ¶ 67) the

14   element of harm is plainly lacking in the FAC.  Plaintiff has not plausibly suggested any basis

15   for its alleged economic harm or damage. *Grateful Dead Prods.*, 2008 WL 11389542, at *5,

16   *7.  It does not allege in what way or how its contract or future relationship with any customer

17   or prospective customer, nor Jordan was or could be disrupted by any act of Flores. Upper

18   Deck has not alleged that its contract with Jordan has been breached, that it has lost sales, or

19   that it is otherwise in jeopardy of being terminated due to Flores' conduct. Upper Deck cannot

20   claim any disruption where it continues to enjoy a contractual relationship with Jordan, and

21   has not alleged how its performance of any obligations has been made more costly or

22   burdensome. *See AlterG, Inc. v. Boost Treadmills LLC,* 388 F. Supp. 3d 1133, 1152 (N.D. Cal.

23   2019) (finding plaintiff failed to plead actual disruption where it had an ongoing contract with

24   the third party). Thus, Upper Deck's conclusory allegation is insufficient. See, e.g., *Luxpro*

25   *Corp. v. Apple Inc.,* No. C 10-0308 JSW, 2011 WL 1086027, at *10 (N.D. Cal. Mar. 24, 2011)

26   (finding plaintiff failed to allege "any facts about how [its relationships with third parties]

27   ended except that the contracts terminated because of [the defendant's] illegal conduct, a bare

28   legal conclusion"); *Integrated Storage Consulting Servs., Inc., v. NetApp, Inc.*, No. 5:12-CV-

---

06209-EJD, 2013 WL 3974537, at *10 (N.D. Cal. July 31, 2013) (finding allegation that plaintiff's contractual rights were "frustrated" by defendant was insufficient to allege disruption, as plaintiff did not "specifically state that one of its contracts with a third party was actually breached or disrupted by [the d]efendant's conduct"). In *Silicon Knights*, plaintiff similarly "relied on general allegations of 'loss of business opportunities' with unidentified 'existing and potential clients and customers.'" 983 F. Supp. 1303 at 1312. The court found these allegations insufficient because plaintiff did not allege specific facts in support, for example, that "sales of a[ny] particular software . . . decreased" as a result of defendant's actions. Id.; *Sybersound Records Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (holding plaintiff's alleged disruptions were conclusory and did not plead "for example, that it lost a contract nor that a negotiation with a [c]ustomer failed");

Rather than pleading facts, Upper Deck has repeated and realleged the same claims via its various legal theories, namely including that the unspecified acts of Flores provide Upper Deck with claims to Jordan's rights of publicity, that these acts amounted to "commercial misappropriation" as well as giving rise to supplemental State claims of unfair competition and quasi contract, each of which are inappropriate here.

### G. Upper Deck's Claim For "Unjust Enrichment/Quasi Contract is Invalid

Plaintiff's Ninth Claim for Unjust Enrichment and Quasi-Contract alleges that "[b]y unlawfully using the Upper Deck Trademarks and Jordan's likeness for its own commercial benefit, Defendant unjustly profited from the goodwill and reputation associated with Upper Deck and Jordan. Defendant's acts created a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Upper Deck. Because Defendant's retention of its ill-gotten gains would be unjust and inequitable, Defendant must pay restitution to Upper Deck." (FAC ¶74) Nothing more. Thusly, this claim is plainly insufficient.

"The elements of an unjust enrichment claim are the 'receipt of a benefit and [the] unjust retention of the benefit at the expense of another.'"*Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1593 [80 Cal.Rptr.3d 316, 323] (quoting *Lectrodryer v. SeoulBank* (2000) 77 Cal.App.4th 723, 726 [91 Cal.Rptr.2d 881]. "A person is enriched if the

1    person receives a benefit at another's expense." *First Nationwide Savings v. Perry (*1992) 11

2    Cal.App.4th 1657, 1662 [15 Cal.Rptr.2d 173, 176] (citing Rest., Restitution, supra, § 1, com.

3    a.).  "[T]here is a division in the law" on the question whether unjust enrichment is a valid

4    claim in California . *Mohebbi v. Khazen* (N.D. Cal. 2014) 50 F.Supp.3d 1234, 1260. In one

5    line of cases, the courts have held that "there is no cause of action in California for unjust

6    enrichment." *Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 793 [131

7    Cal.Rptr.2d 347, 357]. This same line has held that "California does not recognize a stand-

8    alone cause of action for unjust enrichment: '[u]njust enrichment is not a cause of action, just a

9    restitution claim.'" *Low v. LinkedIn Corp.* (N.D. Cal. 2012) 900 F.Supp.2d 1010, 1031

10   (quoting *Hill v. Roll Intern. Corp.* (2011) 195 Cal.App.4th 1295, 1307 [128 Cal.Rptr.3d 109,

11   118].

12          California courts "have frequently construed causes of action labeled 'unjust

13   enrichment' as a 'quasi-contract claim seeking restitution.'" <u>Mohebbi</u>, supra, 50 F.Supp.3d at

14   1260 (quoting <u>Rutherford Holdings, LLC v. Plaza Del Rey</u>, (2014) 223 Cal.App.4th 221, 231

15   [166 Cal.Rptr.3d 864]. The appellate court has also held that "[u]njust enrichment is

16   synonymous with restitution." <u>Durell v. Sharp Healthcare</u> (2010) 183 Cal.App.4th 1350, 1370

17   [108 Cal.Rptr.3d 682, 699] (citing <u>Dinosaur Development, Inc. v. White </u>(1989) 216

18   Cal.App.3d 1310, 1314 [265 Cal.Rptr. 525].

19          However, each of the California cases upholding a claim for quasi contract are easily

20   distinguishable for the present case, inasmuch as they all involved restitution claims based on

21   direct relationships between the parties, where there was some prior contractual obligation or

22   duty to the other party at its core. Here, there has never been any relationship between Flores

23   and Upper Deck, as alleged or otherwise which would support a claim for quasi contract under

24   California law. Moreover, Upper Deck has not identified any particular benefit to Flores nor

25   any act by Upper Deck which would suggest a contractual relationship, nor any other basis for

26   a debt of restitution.  Accordingly, Plaintiff's claims for "unjust enrichment/quasi-contract"

27   must be dismissed.

28

## III.   CONCLUSION

For the foregoing reasons, Miguel Flores respectfully requests the Court dismiss Upper Deck's First Amended Complaint, in its entirety without leave to amend.

Respectfully submitted,                    ANDERSON LAW

BY:   /StephenL Anderson/_____
STEPHEN L. ANDERSON
ATTORNEY FOR DEFENDANT
MIGUEL FLORES.

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system on this day, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those that are indicated as non-registered participants, if any.

BY:   /StephenL Anderson/_____
STEPHEN L. ANDERSON
ATTORNEY FOR DEFENDANT
MIGUEL FLORES.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

Sales Invoice – Ethan Litney

MENU

ebay **eBay - Brittany Hysni (etlit_63)**
February 10, 2021                                           + $152.54
Payment Received

**Paid by**
eBay - Brittany Hysni (etlit_63)

**Shipped to**
Ethan Litney
225 Broadway
Ste 1900
San Diego, CA 92101-5047
United States

**Seller protection**
Eligible

**What should I do now?**
Ship to the address on this page.
Save your tracking or shipping info.

**Have you received this order?**

Domestic: 9400108205496293232788
February 11, 2021, Sent by USPS
Status: Shipped

**Transaction ID**
6GY199869K3211912

**Purchase details**
1999 MICHAEL JORDAN UD AUTHENTICS AUTO REPRINT GMA                $150.00
10
Item #293983004725

**Shipping**                                                      $7.75

**Tax**                                                           $11.63

1
2
3
4
5
6
7
8
9
10
11

# EXHIBIT B

12
13

*The Upper Deck Company v. Panini America, Inc.*
3:20-cv-00185-GPC-KSC (Dkt. 63 – filed 04/13/21)

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No.: 20cv185-GPC(KSC)

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

# Upper Deck Co. v. Panini Am., Inc.

Decided Apr 13, 2021

Case No.: 20cv185-GPC(KSC)

04-13-2021

THE UPPER DECK COMPANY, a Nevada corporation, Plaintiff, v. PANINI AMERICA, INC., Defendant.

Hon. Gonzalo P. Curiel United States District Judge

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS [REDACTED - ORIGINAL FILED UNDER SEAL]

[Dkt. No. 42.]

Before the Court is Defendant's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Dkt. No. 42.) Plaintiff filed an opposition and Defendant replied. (Dkt. Nos. 47, 51.) Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendant's motion for judgment on the pleadings.

## Background

On August 24, 2020, Plaintiff Upper Deck Company ("Plaintiff" or "Upper Deck") filed the operative second amended complaint ("SAC") against Defendant Panini America, Inc. ("Defendant" or "Panini") alleging six causes of action for 1) false affiliation/false endorsement, false advertising, and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); 2) trademark dilution under the Lanham Act, 15 U.S.C. § *2 1125(c); 3) trademark infringement under 15 U.S.C. § 1114; 4) commercial misappropriation; 5) right of publicity under California Civil Code section 3344 et seq.; and 6) unfair competition pursuant to California Business & Professions Code sections 17200 et seq. ("UCL"). (Dkt. No. 28, SAC.)

Upper Deck is a worldwide sports and entertainment company that produces sports memorabilia products, trading card products, as well as many other sports and entertainment products. (Id. ¶ 2.) For decades, Upper Deck has been and continues to have an exclusive license with Michael Jordan ("Jordan") to "use his image, name, likeness, marks, and other rights on and in connection with, among other products, trading cards." (Id. ¶ 4.) It has been the only trading card manufacturer to have a license agreement for trading cards with Jordan. (Id. ¶ 7.) Jordan's name has been registered as a trademark with the U.S. Patent and Trademark Office since at least 1988. (Id. ¶ 16.) Jordan's jersey number 23 is also a federally registered trademark (collectively "Jordan Marks"). (Id. ¶ 17.)

Panini is one of Upper Deck's main competitors in the trading card market and also enters into exclusive license agreements for, among other licensed products, trading cards and since 2009 has had exclusive license agreements with current active players of the National Basketball Association ("NBA"). (Id. ¶¶ 6, 8.) However, its license does not include the right to feature Jordan in any of Panini's trading cards. (Id. ¶¶ 8, 32.)

Jordan's name is distinctive, famous and easily recognized throughout the world. (*Id*. ¶ 16.) In 1984, the Chicago Bulls drafted Jordan third overall in the NBA draft after a stellar collegiate career. (*Id*. ¶ 18.) While in the NBA, Jordan won six championships with the Chicago Bulls; as a result, his name and image along with the number 23 is and continues to be legendary and may be the most famous name and jersey number in the history of professional sports. (*Id*. ¶ 19-20.) Millions around the world easily recognize these marks. (*Id*. ¶ 21.) As a result, trading cards featuring Jordan's publicity rights are highly valuable and highly sought after in the marketplace in the primary and secondary markets. (*Id*. ¶ 22.) Further, a new trading card featuring Jordan in his 23 number jersey *3 has not been released for at least 10 years which has left collectors with an insatiable appetite for any Jordan trading card. (*Id*. ¶ 25.)

The market for sports trading cards is extremely lucrative; for example, a single rare trading card featuring Jordan sold on eBay for $350,100. (*Id*. ¶ 26.) Moreover, the background imagery of a trading card can have substantial bearing on the value of the card. (*Id*. ¶ 44.) Use of cameos featuring ancillary figures in the background of trading cards increases the value of those cards, and individuals in the background of an image on a trading card can dramatically increase the value of both the trading card and the trading card release. (*Id*. ¶¶ 44-45.)

In November 2017, Panini printed the 2017-2018 "Donruss Basketball Retro Series" card featuring Scottie Pippen which did not include any image of Jordan. (*Id*. ¶¶ 35, 37 (photo).) Four months later, in April 2018, Panini released its 2017-2018 Donruss Optic Retro trading card set which was its more expensive and higher end version of the Donruss Basketball Retro Series released in November 2017. (*Id*. ¶ 36.) Within that set, Panini included the same exact image featuring Scottie Pippen ("Pippen Card") on the 2017-2018 Donruss Basketball Retro Series, but this card included a

small image of Jordan in the bottom right corner of the card. (*Id*. ¶ 37 (photo).) Panini later released its 2018-19 Panini Contenders Basketball trading card set. (*Id*. ¶ 38.) Within this set, Panini included a card of Dennis Rodman ("Rodman Card"), the background of which prominently featured Jordan. (*Id*.)

Upper Deck alleges that Panini deliberately altered and manipulated Jordan's image into the background of these two trading card releases to market and increase the sale of its products and brand equity, to use Jordan for commercial gain, to confuse the market, and to harm Upper Deck including Upper Deck's brands, goodwill, and exclusive contract. (*Id*. ¶¶ 9-10, 39.) As part of the exclusive license, Jordan assigned Upper Deck the right to begin an action relating to a third party's infringing use of Jordan's rights. (*Id*. ¶¶ 27, 50.) *4

During discovery, Plaintiff produced the license agreement entitled [Redacted] Agreement ("Agreement") between Upper Deck [Redacted] .¹ (Dkt. No. 54, Agreement, (UNDER SEAL).) In its motion, Defendant moves for judgment on the pleadings on a part of the first and sixth causes of action and on the second, third, fourth and fifth causes of action for lack of standing. Plaintiff opposes arguing it has standing to bring these causes of action.

> ¹ [Redacted] (Dkt. No. 54, Agreement ¶ 15 (UNDER SEAL).)

## Discussion

## A. Legal Standard as to Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure ("Rule") 12(c) allows parties to move for judgment on the pleadings after the pleadings have been closed but prior to trial, and "within such time as not to delay the trial." Fed. R. Civ. P. 12(c). The standard for determining a Rule 12(c) motion for judgment on the pleadings is the same as the standard for a Rule 12(b)(6) motion to dismiss. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d

1047, 1053 & n.4 (9th Cir. 2011) (the same standard of review applies to motions brought under Rule 12(c) as motions brought under Rule 12(b)(6)). On a Rule 12(c) motion, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios*, *Inc. v. Richard Feiner and Co.*, *Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Id.* A court must not consider matters beyond the pleadings as such a proceeding must be treated as a motion for summary judgment. *Id.* *5

Under the incorporation by reference doctrine, the Court may consider in a motion to dismiss any documents referenced in the complaint or on which the complaint necessarily relies. *Davis v. HSBC Bank Nevada*, *N.A.*, 691 F.3d 1152, 1159-60 (9th Cir. 2012); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999-1002 (9th Cir. 2018) ("A plaintiff incorporates a document by reference where the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim."). "Specifically, courts may take into account 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Davis*, 691 F.3d at 1160 (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)).

The parties do not dispute that the Agreement, though not attached to the SAC, may be incorporated by reference on the motion for judgment on the pleadings. (Dkt. No. 42 at 9; Dkt. No. 47 at 13.) Because the Agreement is referred to repeatedly in the SAC, forms the basis for Plaintiff's claims and the parties do not dispute the authenticity of the document, the Court will consider the Agreement as incorporated by reference in the SAC without converting the

motion into one for summary judgment. *See Davis*, 691 F.3d at 1160. **B. Standing on First, Second and Third Causes of Action**

First of all, Defendant moves to dismiss part of the SAC's first claim[2], as well as the second and third claims for lack of standing because Plaintiff has not explicitly been granted a license to use the Jordan Marks given that the Agreement does not specifically convey a license in any trademark and only references right to use "Jordan's name and likeness." (Dkt. No. 42 at 11.) Upper Deck responds that the Agreement provides for an express license to use the Jordan Marks as it encompasses "Michael's Jordan's name and *6 likeness" which are registered trademarks. (Dkt. No. 47 at 17-18.) It claims that Jordan's "likeness" reasonably extends to his jersey number "23". (*Id.* at 18.) Moreover, Panini argues, at most, Upper Deck's argument demonstrates the Agreement is ambiguous and warrants an examination of extrinsic evidence to determine the parties' intent. (*Id.* at 19.)

> 2 Defendant moves to dismiss paragraph 58 of the first cause of action alleging that Upper Deck has exclusive rights to use certain of Jordan's marks including Michael Jordan and "23." (Dkt. No. 28, SAC ¶ 58.)

While there is no explicit reference allowing Upper Deck to use the Jordan Marks, the Agreement [Redacted] ." (Dkt. No. 54, Agreement ¶ 2(A) (UNDER SEAL).) [Redacted] (*Id.* ¶ 1(A) (UNDER SEAL).) [Redacted] (*Id.* ¶ 2(A) (UNDER SEAL).) The SAC alleges and Defendant does not challenge that "Michael Jordan" and his jersey number "23" are federally registered trademarks. (Dkt. No. 28, SAC ¶¶ 16, 17.) The Court questions Plaintiff's position that a license to Jordan's "likeness" extends to Jordan's jersey number "23" and whether a license to Jordan's "name" equates to a license to his trademark. However, on a motion for judgment on the pleading, the Court concludes the SAC has plausibly alleged that the Agreement includes use

of the Jordan Marks and the Court cannot conclude that it is clearly established that no material issue of fact remains to be resolved. Moreover, because the Agreement is reasonably susceptible to Upper Deck's interpretation, to the extent that these terms are ambiguous, extrinsic evidence should be considered, and such an analysis is also not proper on a motion for judgment on the pleadings. Accordingly, the Court DENIES Defendant's motion for judgment on the pleading on this issue.

## C. Standing on Second and Third Causes of Action

Next, Defendant argues the second cause of action for trademark dilution, under 15 U.S.C. § 1125(c), and third cause of action for trademark infringement, under 15 U.S.C. § 1114, must be dismissed for lack of standing because Upper Deck is not an exclusive licensee of the Jordan Marks and it has no property interest in the name Michael Jordan and the "23" marks for all goods and services. (Dkt. No. 42 at 12-13; 17-18.) Plaintiff *7 contends that it has a sole, exclusive, worldwide license to use Jordan's name and likeness worldwide for 10 years in trading cards. (Dkt. No. 47 at 22.) Further, Plaintiff asserts that the property rights argument raised by Defendant is without merit. (*Id.* at 25-26.)

15 U.S.C. § 1114 allows an action for trademark infringement to be brought by the "registrant" of the mark. 15 U.S.C. § 1114. The term registrant includes the "legal representatives, predecessors, successors and assigns of such applicant or registrant." 15 U.S.C. § 1127. "To establish standing to sue for trademark infringement under the Lanham Act, a plaintiff must show that he or she is either (1) the owner of a federal mark registration, (2) the owner of an unregistered mark, or (3) a nonowner with a cognizable interest in the allegedly infringed trademark." *Halicki Films, LLC v. Sanderson Sales and Mktg.*, 547 F.3d 1213, 1225 (9th Cir. 2008). In this case, the issue is whether Plaintiff is a "nonowner with a

cognizable interest in the allegedly infringed trademark." *See id*. In addition, a claim for trademark dilution limits standing to the "owner" of the mark. *See* 15 U.S.C. § 1125(c).

As the Court noted in its prior order, the Ninth Circuit has not addressed whether an exclusive licensee has standing to sue for trademark infringement under § 1114 or standing to sue for trademark dilution under § 1125(c)(1). *Upper Deck Co. v. Panini America, Inc.*, 469 F. Supp. 3d 963, 977, 979 (S.D. Cal. 2020). For standing under § 1114, the prevailing approach by district courts in this circuit has been to hold "that standing may exist where the licensing agreement both [1] grants an exclusive license and [2] grants to the exclusive licensee a property interest in the trademark, or rights that amount to those of an assignee." *Halcyon Horizons, Inc. v. Delphi Behavioral Health Grp., LLC*, No. 17-cv-00756-JST, 2017 WL 1956997, at *3 (N.D. Cal. May 11, 2017) (*quoting Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*, No. C 12-05523 WHA, 2013 WL 1007666, at *3 (N.D. Cal. Mar. 13, 2013)); *Lasco Fittings, Inc. v. Lesso Am., Inc.*, No. EDCV 13-02015-VAP (DTBx), 2014 WL 12601016, at *4 (C.D. Cal. Feb. 21, 2014) (same); *see also Visa U.S.A., Inc. v. First Data Corp.*, No. C 02-01786 JSW, *8 2005 WL 6271242, at *4 (N.D. Cal. Aug. 16, 2005) (no standing for a non-exclusive licensee without significant property rights to the trademark); *Nat'l Licensing Ass'n, LLC v. Inland Joseph Fruit Co.*, 361 F. Supp. 2d 1244, 1254 (E.D. Wash. 2004) ("Where a licensing agreement does not grant the licensee a property interest in the mark or otherwise assign to the licensee the registrant-licensor's ownership rights, the licensee, even if exclusive, cannot enforce the mark under [15 U.S.C. § 1114(1)]"); *see also DEP Corp. v. Interstate Cigar Co.*, 622 F.2d 621, 623 (2nd Cir. 1980) (licensee lacks standing when provisions in the contract indicate the licensor retains exclusive ownership of the mark).

"The determination of whether a licensee has standing to sue under § 1114 largely depends on the rights granted to the licensee in the licensing agreement." *Ultrapure Sys*., *Inc*. *v. Ham-Let Grp*., 921 F. Supp. 659, 665 (N.D. Cal. 1996). For example, no standing exists if the license is non-exclusive or where the licensing contract indicates that the licensor retains exclusive ownership of the mark. *Id*. In *Ultrapure*, the court denied dismissal of the trademark infringement claim because the contract gave exclusive use of the trademark in the United States and did not set forth any restrictions on the licensee's ability to enforce the trademarks. *Id*. at 665-66. The court concluded that the plaintiff, as the exclusive licensee, had a property interest in the trademark and qualified as an assignee or successor of the registrant. *Id*.

In its prior order, the Court also noted that district courts have applied a similar § 1114 analysis to establish standing under § 1125(c)(1) by looking at the terms of the licensing agreement and what rights were granted to the licensee. *Upper Deck Co*., 469 F. Supp. 3d at 979 (citing *STX, Inc. v. Bauer USA*, *Inc*., No. C 96-1140 FMS, 1997 WL 337578, at *4 (N.D. Cal. June 5, 1997); *Williams v. SBE Entm't Grp*., Case No. CV 07-7006 GAF (PJWx), 2008 WL 11339999, at *4 (C.D. Cal. Nov. 10, 2008)).

The primary case cited by Plaintiff, *Innovation Ventures*, involved an assignment and a reciprocal license back agreement commonly recognized in trademark law. *Innovation Ventures* 2013 WL 1007666, at *2. The court noted that the rights conveyed *9 by the licensor to the exclusive licensee appeared to be substantial and included (1) the right to use all intellectual property including the "exclusive right to use, make, have made, import, offer to sell, and sell any product or process including the right to sublicense in the United States and throughout the world"; and (2) the right to sue for infringement and to compel the licensor to join the lawsuit. *Id*. at *5. The court noted that the licensor "lost its ability to use the trademarks in any way" and the "rights retained

[by the licensor] were few." *Id*. Because some rights were retained by the licensor, such as whether the rights retained by the licensor included the title and ownership of the mark, some control over litigation related to the mark, and the right to inspect the licensee's use of the marks to ensure the quality of the products", the court stated it was a "close call" whether "all" significant rights to the trademarks-in-suit were granted and declined to rule on it on a motion to dismiss. *Id*. at 6.

Alternatively, in *Lasco Fittings*, the court distinguished the licensing agreement before it from the one granted in *Innovation Ventures*, and on a motion to dismiss, found the plaintiff lacked standing to bring suit. 2014 WL 12601016, at *4. The *Lasco* court relied on four distinctions in finding the license agreement was limited in scope; (1) the "[l]icense is only for certain types of products and not for the trademark in its entirety," (2) "the license contains clauses explicitly stating that the licensor retains title and ownership of the mark and all rights not expressly granted in this exclusive license," (3) "the licensor retains control over the nature and quality of the products sold by LASCO using the mark, a requirement that is not consistent with an assignment," and (4) "although the [l]icense gives LASCO the right to sue to enforce the mark for certain products covered under the license, LASCO must notify the licensor and may not enforce the trademark in relation to other products." *Id*. Finally, the court concluded the "structure of the [l]icense agreement d[id] not suggest the parties intended the exclusive [l]icense to be equivalent to an assignment." *Id*.

To establish standing, the Agreement must grant to the exclusive licensee "a property interest in the trademark, or rights that amount to those of an assignee." *See* *10 *Halcyon Horizons, Inc*., 2017 WL 1956997, at *3. In distinguishing between an assignment and a license, one district court explained that "[a] assignment passes legal and equitable title to the property while a license is mere permission to use. Assignment is the transfer

of the whole of the interest in the right while in a license the owner retains the legal ownership of the property." *Innovation Ventures*, *LLC*, 2013 WL 1007666, at *3 (quoting *Presley's Estate v. Russen*, 513 F. Supp. 1339, 1350 (D.N.J. 1981)). Therefore, a property right that amounts to those of an assignee requires an assignment of the entirety of the trademark for all goods and not limited to certain types of products and the licensor retains significant title and ownership of the mark. *See Lasco Fittings*, 2014 WL 12601016, at *4 (no standing because, *inter alia*, "[l]icense is only for certain types of products and not for the trademark in its entirety,"); *Nova Wines*, *Inc. v. Adler Fels Winery LLC*, 467 F. Supp. 2d 965, 974 (N.D. Cal. 2006) (licensee did not have standing where exclusive license was only for certain types of wine and a clause reserved to the licensor all rights not explicitly granted; therefore, the license was non-exclusive and did not convey a property interest).

In this case, the parties do not dispute that the analysis for standing under § 1114 and § 1125 are similar and agree that standing will depend on the terms of the Agreement nor do they appear to dispute the material rights granted or not granted to Upper Deck in the Agreement. (*See* Dkt. No. 42; Dkt. No. 47.) They disagree on the legal standard to support standing. Defendant argues that an exclusive licensee has standing to pursue trademark infringement and trademark dilution claims only if the licensee has rights that amount to an assignment of the trademark which means the right to use the Jordan Marks in all products. On the other hand, Plaintiff argues that it has standing to sue because it has an exclusive worldwide license to use Jordan Marks in a specific product, that is, trading cards. The Court concludes that Defendant's argument is in line with caselaw. *11

11

Here, the Agreement [Redacted] , (Dkt. No. 54, Agreement ¶¶ 2(A); 10[4] (UNDER SEAL)); it does not grant an exclusive license to use the Jordan Marks in all products. Moreover, the Agreement

unambiguously states [Redacted] (Dkt. No. 54, Agreement ¶ 3[5] (UNDER SEAL).) Because the Agreement grants Plaintiff exclusive rights to [Redacted] and not exclusive rights to the trademarks, Plaintiff does not have a property right to the trademarks akin to an assignment. *See Nova Wines*, *Inc.*, 467 F. Supp. 2d at 974 (licensee did not have standing where exclusive license was only for certain types of wine and a clause reserved to the licensor all rights not explicitly granted).

> [4] The Agreement states that Upper Deck owns, [Redacted] (Dkt. No. 54, Agreement ¶ 10 (UNDER SEAL).) This provision limits Upper Deck rights and ownership solely to certain types of products and not for the trademark in its entirety.

> [5] The licensor [Redacted] and not [Redacted] " (Dkt. No. 54. Agreement ¶ 3 (UNDER SEAL).)

Upper Deck responds that it has standing as an exclusive licensee of trading cards because the Agreement grants it the ability to pursue litigation against third party infringers and because it has exclusive rights to make a designated product bearing the marks at issue citing *Hem & Thread*, *Inc. v. Wholesalefashionsquare.com*, *Inc.*, Case No. 2:19-cv-283-CBM-AFMx, 2019 WL 6486039, at *1 (C.D. Cal. Aug. 23, 2019). In *Hem & Thread*, in a summary analysis and also without the benefit of the written license agreement, the court denied dismissal based on standing because the complaint alleged that the agreement "specifically provides that either Plaintiff. . . may prosecute any infringement or otherwise unauthorized use of the Trademark" and it had the exclusive *12 right to use the trademark in connection with its products. *Id*. (citing *Lasco Fittings*, 2014 WL 12601016, at *4). However, the district court's reliance on *Lasco Fittings* does not support its conclusion. In *Lasco Fittings*, the court granted dismissal of the trademark infringement claim because the exclusive license of the trademark was limited to certain products and

12

Upper Deck Co. v. Panini Am., Inc.    Case No.: 20cv185-GPC(KSC) (S.D. Cal. Apr. 13, 2021)

does not support Plaintiff's argument. *See Lasco Fittings*, 2014 WL 12601016, at *4. Upper Deck also cites to *Novartis Animal Health US, Inc. v. LM Connelly & Sons, Pty Ltd.*, No. 04 Civ. 10213(BSJ), 2005 WL 1902085, at *3 (S.D.N.Y. June 14, 2005); however, in that case Novartis Animal Health US, Inc. had standing to sue for trademark infringement because while it had an exclusive license of certain trademarks used in connection with pet medicine it was also an "indirect subsidiary" of the trademark owner, Novartis USA. *Id.* In this case, there is no corporate relationship between Upper Deck [Redacted] and *Novartis Animal Health US* is not supportive of Plaintiff's argument.

Further, "the structure of the [l]icense agreement does not suggest the parties intended the exclusive [l]icense to be equivalent to an assignment." *See Lasco Fittings*, 2014 WL 12601016, at *4. Throughout the Agreement are provisions requiring Upper Deck to obtain the [Redacted] of the licensor. The licensor's extended retention of control illustrate that the Agreement does not transfer all substantive rights in the Jordan Marks to Plaintiff, as the licensor retained the rights to (1) [Redacted] , (Dkt. No. 54, Agreement ¶ 4 (UNDER SEAL)), (2) [Redacted] (*id.* ¶ 25(A), (3) [Redacted] (*id.* ¶ 23 (UNDER SEAL)), (4) a [Redacted] , (*id.* ¶ 12 (UNDER SEAL)), and (5) [Redacted] , (*id.* ¶ 8(B) (UNDER SEAL)).

The Agreement does not grant Upper Deck a property interest in the trademark, or rights that amount to those of an assignee. *See Innovation Ventures*, 2013 WL 1007666, at *3. Accordingly, Plaintiff lacks standing to bring the second and third cause of action *13 and the Court GRANTS Defendant's motion to dismiss the second and third causes of action.[6]

[13]

---

[6] Because the Court concludes that Plaintiff was not granted a property interest in the Jordan Marks that is akin to an assignment, which is dispositive of the standing issue, the Court need not address Defendant's additional argument that the Agreement did

---

not grant an exclusive license, (Dkt. No. 42 at 13-17). *See Halcyon Horizons, Inc.*, 2017 WL 1956997, at *3 (to establish standing the exclusive license must "[1] grant[] an exclusive license and [2] grant[] to the exclusive licensee a property interest in the trademark, or rights that amount to those of an assignee.").

**1. Extrinsic Evidence**

Plaintiff additionally argues that the Court should decline to address standing based solely on the Agreement because it should consider additional integral extrinsic evidence. (Dkt. No. 47 at 12-15.) Defendant replies the Agreement is clear and unambiguous. (Dkt No. 51 at 8-9.)

In California, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636; *Bank of the West v. Superior Ct.*, 2 Cal. 4th 1254, 1264 (1992). "If contractual language is clear and explicit, it governs." *Bank of the West*, 2 Cal. 4th at 1264.

Under California contract law, "[w]here parties dispute the meaning of contractual language, 'the first question to be decided is whether the disputed language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over." *Halicki*, 547 F.3d at 1223. The Court must provisionally receive extrinsic evidence to determine whether the contract at issue is "reasonably susceptible" to the interpretation urged by a party, even if the court concludes "'that the language of the contract appears to be clear and unambiguous on its face.'" *Id.* While extrinsic evidence may not "vary, alter or add to" the terms of a contract, it may be examined "'to prove a meaning to which the language of the instrument is reasonably susceptible'"; if the evidence supports the interpretation urged, then it is "'admitted to aid in . . . interpreting the contract.'" *Id.*; *14 see also Spin Master, Ltd. v. Zobmondo

[14]

*Entm't, LLC*, Nos. CV 06-3459 ABC (PLAx), CV 07-0571 ABC (PLAx), 2011 WL 3714772, at *7 (C.D. Cal. Aug 22, 2011).

The Court concludes that the Agreement is unambiguous and not susceptible to different interpretations on the rights granted to Upper Deck in the Agreement to support standing on the second and third causes of action. Moreover, consideration of extrinsic evidence is not proper on a motion for judgment on the pleadings. However, even if the Court were to consider the extrinsic evidence, they do not offer an interpretation that differ from the explicit terms of the Agreement and are merely cumulative. Here, the extrinsic evidence offered by Plaintiff includes declarations by (1) Estee R. Portnoy, a personal representative of Michael Jordan, the licensor, (Dkt. No. 47-12, Portnoy Decl.); and (2) Jason Masherah, President of Upper Deck, (Dkt. No. 47-8. Masherah Decl.). First, they state that the licensor is fully aware of and support Plaintiff's legal action in this case, (Dkt. No. 47-12, Portnoy Decl. ¶ 7; Dkt. No. 47-8, Masherah Decl. ¶ 12.) However, [Redacted] , these declarations do not add any alternative interpretations. (*See* Dkt. No. 54, Agreement, ¶ 25(A) (UNDER SEAL) [Redacted]

Second, the declarations provide that "Jordan will not grant any rights of any kind to any competitor of Upper Deck (e.g. other trading card manufacturers)." (Dkt. No. 47-12, Portnoy Decl. ¶ 4; *see also* Dkt. No. 47-9 Masherah Decl. ¶ 5.) Because Nike is not a trading card manufacturer the Agreement should not be construed to limit Jordan's ability to license his rights for non-trading card products to Nike and its subsidiaries. (Dkt. No. 47-12, Portnoy Decl. ¶ 4; *see also* Dkt. No. 47-9 Masherah Decl. ¶ 5.) No other entity can make trading cards featuring Jordan's name or likeness during the term of the Agreement. (Dkt. No. 47-12, Portnoy Decl. ¶ 5; *see also* Dkt. No. 47-9, Masherah Decl. ¶ 7.)

Again, the declarations do not provide any alternative interpretation of the contract. (*See* Dkt. No. 54, Agreement ¶ 8(A) (UNDER SEAL) (" [Redacted] *15* )."); *id*. ¶ 11 (UNDER SEAL)) [Redacted] These declarations do not provide an interpretation of the contract that differ from the contract language.

Thus, in summary, the Court GRANTS Defendant's motion to dismiss the second cause of action for trademark dilution and third cause of action for trademark infringement.

## D. Fourth Cause of Action - Common Law Commercial Misappropriation and Fifth Cause of action - Right of Publicity

Defendant argues that Plaintiff lacks standing to pursue the fourth claim for common law commercial misappropriation and fifth claim for right of publicity because it is not the exclusive licensee of Jordan's publicity rights. (Dkt. No. 42 at 18.) Plaintiff responds that it has the right to sue as an assignee and as an exclusive licensee. (Dkt. No. 47 at 26.)

In California, "the right of publicity is both a statutory and a common law right." *Timed Out, LLC v. Youabian, Inc*., 229 Cal. App. 4th 1001, 1005 (2014) (quoting *Comedy III Prods*., *Inc*. *v*. *Gary Saderup*, *Inc*., 25 Cal. 4th 387, 391 (2001)). Civil Code section 3344 "complements the common law tort of misappropriation of likeness." *Id*. at 1006. Both protect the "economic value of one's name, voice, signature, photograph, or likeness" and holder of the right of publicity possesses "a right to prevent others from misappropriating the economic value generated . . . through the merchandising of the 'name, voice, signature, photograph, or likeness' of the [holder]." *Id*. (quoting *Comedy III*, 25 Cal. 4th at 403). *16*

The right to publicity and section 3344 claims are assignable under California law. *Timed Out*, *LLC v. Youabian*, *Inc*., 229 Cal. App. 4th 1001, 1008

Upper Deck Co. v. Panini Am., Inc.    Case No.: 20cv185-GPC(KSC) (S.D. Cal. Apr. 13, 2021)

(2014); *Del Amo v. Baccash*, No. CV 07-663 PSG (JWJx), 2008 WL 2780978, at *9 (C.D. Cal. July 15, 2008) (citing *KNB Enters. v. Matthews*, 78 Cal. 4th 362, 365 n. 2 (2000) (holding that "the right of publicity is assignable for purposes of a [§] 3344 claim.")).

In *Timed Out*, the plaintiff was a company that "specialize[d] in the protection of personal image rights." *Timed Out*, *LLC*, 229 Cal. App. 4th at 1004. Professional models who earned a living modeling and selling their images to companies for advertising products and services learned that the defendants had been using their images on their website without the models' consent. *Id*. After this was discovered, the models "assigned their rights to bring suit for misappropriation of their images" to the plaintiff. *Id*. Plaintiff sued the defendants for common law and statutory misappropriation of likeness based on the defendants' alleged unauthorized display of the models' images in connection with advertising the defendants' cosmetic medical services. *Id*. On the issue of standing, the court of appeal held that the pecuniary interest in the right of publicity and misappropriations claims are assignable. *Id*. at 1010. Moreover, the court of appeal rejected the defendant's argument that "even if a misappropriation of likeness claim can be assigned, an 'exclusive license' is required to assert the claim" because the right to sue necessarily suggests Plaintiff obtained an exclusive right even though it was a limited one. *Id*. at 1011. The court explained that the assignment does not have to transfer the entire right of publicity to be enforced. *Id*.

Here, the Agreement grants Upper Deck [Redacted] , (Dkt. No. 54, Agreement ¶ 25[7] (UNDER SEAL)), which the court of appeal in *Timed Out* held was sufficient to establish standing. Defendant's reliance on *Upper Deck* *17 *Authenticated Ltd. v. CPG Direct*, 971 F. Supp. 1337 (S.D. Cal. 1997) to support its position is not persuasive as the court of appeal in *Timed Out* criticized the standing analysis of Upper Deck as

not based in California law. *Timed Out*, *LLC*, 229 Cal. App. 4th at 1008 n. 6. The Court declines to rely on the ruling in *Upper Deck Authenticated Ltd*. and instead relies on the reasoning in *Timed Out*. Accordingly, the Court DENIES Defendant's motion for judgment on the pleadings on the fourth and fifth causes of action.

[7] Paragraph 25 provides, in part, that [Redacted] " (Dkt. No. 54, Agreement ¶ 25 (UNDER SEAL).) --------

## E. Unfair Competition

Finally, Defendant moves for judgment on the pleading for part of the sixth claim under the unlawful prong of the UCL claim based on violations of part of the first claim and fourth and fifth claims for common law and statutory rights of publicity. (Dkt. No. 42 at 19.) Plaintiff opposes.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted). A UCL claim based on the unlawful prong rises or falls with the underlying claim. *See Aleksick v. 7-Eleven, Inc*., 205 Cal. App. 4th 1176, 1185 (2012) (a UCL cause of action under the "unlawful" prong fails if a statutory predicate is not stated); *Wolski v. Fremont Inv. & Loan*, 127 Cal. App. 4th 347, 357 (2005) (holding that a UCL claim rises or falls with the underlying claim on which it is predicated). Accordingly, because the Court DENIES dismissal of the claims on the first, fourth and fifth claims, the Court DENIES dismissal of the UCL claim based on these claims.

## F. Leave to Amend

Plaintiff seeks leave to amend if the Court grants dismissal of any of its claims. (Dkt. No. 47 at 29-30.) However, the Court concludes that it would be futile to grant leave to amend the second and

third causes of action. Accordingly, the Court DENIES Plaintiff's request seeking leave to amend. / / / *18

## Conclusion

Based on the above, the Courts GRANTS Defendant's motion for judgment on the pleadings on the second and third causes of action and DENIES on the first, fourth, fifth and sixth causes of action.

The hearing set on April 16, 2021 shall be **vacated.**

IT IS SO ORDERED. Dated: April 13, 2021

/s/

Hon. Gonzalo P. Curiel

United States District Judge

3 The Court must take as true the allegation in the SAC on a Rule 12(c) motion. Here, the SAC alleges that the Agreement covers Jordan's name and jersey number "23" trademarks.

 casetext