**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Shaun Markley (SBN 291785)
Ethan T. Litney (SBN 295603)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: elitney@nicholaslaw.org

Attorneys for Plaintiff.
THE UPPER DECK COMPANY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UPPER DECK COMPANY, a Nevada corporation,<br><br>     Plaintiff,<br><br>  vs.<br><br>MIGUEL FLORES, an individual, and DOES 1-100, inclusive,<br><br>     Defendants. | Case No. 3:21-cv-01182-GPC-KSC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SET ASIDE DEFAULT**<br><br>**Judge**: Hon. Gonzalo P. Curiel<br>**Magistrate**: Hon. Karen S. Crawford<br><br>**Case Removed**: June 28, 2021<br>**Trial Date**: None Set |

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................1

II.     FACTUAL AND PROCEDURAL HISTORY ..................................2

III.    DEFENDANT IDENTIFIES INCORRECT LEGAL
        STANDARDS...................................................................................11

IV.     ARGUMENT ...................................................................................13

        A.      Defendant Engaged in Culpable Conduct that Led to
                His Default............................................................................14

                1.      Defendant is Subject to the "Sophisticated"
                        Culpability Standard ..............................................14

                2.      Defendant's Conduct is Indisputably Culpable In
                        His Default Under the Sophisticated Party
                        Culpability Standard ..............................................15

                3.      Defendant's Conduct was Culpable Even Under
                        the More Lenient "Unsophisticated Party"
                        Standard...................................................................15

                4.      The Court Should Disregard Any Arguments
                        Predicated Upon the Unexecuted and
                        Inadmissible Declaration of Stephen Anderson ...................22

        B.      Defendant Fails to Raise a Meritorious Defense .................22

        C.      Plaintiff Would be Severely Prejudiced by Reopening
                this Action ............................................................................24

V.      CONCLUSION ...............................................................................25

## TABLE OF AUTHORITIES

**CASES**

*Allmerica Financial Life Ins. and Annuity Co. v. Llewellyn*,
  139 F.3d 664 (9th Cir. 1997) ................................................................14

*Balboa Capital Corp. v. New Image Dental Laboratory, Inc.*,
  2021 WL 2670736 (C.D. Cal. May 28, 2021)................................13, 16

*Bay Area Painters and Tapers Pension Trust Fund v.
  Ventura Finishing Systems*,
  2016 WL 2343019 (N.D. Cal. Mar. 31, 2016) ..........................14, 15

*Bury v. Bradish*,
  2006 WL 2792864 (E.D. Cal. Sept. 28, 2006) ................................22

*Casey v. Albertson's, Inc.*,
  362 F.3d 1254 (9th Cir. 2004) ......................................................12

*Cassidy v. Tenorio*,
  856 F.2d 1412 (9th Cir. 1988) ................................................13, 23

*Charlebois v. Angels Baseball, LP*,
  No. 10-CV-0853, 2011 WL 2610122 (C.D. Cal. June 30, 2011)....................22

*Commodity Futures Trading Comm'n v. Saffron*,
  2020 WL 3060739 (D. Nev. June 9, 2020) ................................19, 23

*Duralar Techs. LLC v. Plasma Coating Techs. Inc.*,
  2020 WL 10090874 (D. Ariz. Mar. 6, 2020)................................18

*Falk v. Allen*,
  739 F.2d 461 (9th Cir. 1984) ....................................................13, 25

*Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*,
  375 F.3d 922925–26 (9th Cir. 2004) ............................11, 12, 13, 14

*Hart v. Larson*,
  2019 WL 6684521 (S.D. Cal. Dec. 5, 2019) ................................4

*Hawaii Carpenters' Trust Funds v. Stone*,
  794 F.2d 508 (9th Cir. 1986) ....................................................18

*Herman Miller Inc. v. Alphaville Design Inc.*,
  2009 WL 3429739 (N.D. Cal. Oct. 22, 2009) ................................24

*Huang v. Baolin Ge*,
  2020 WL 7428618 (N.D. Cal. Dec. 18, 2020)................................23

*Lights Out Holdings, LLC v. Lights Out Apparel, LLC*,
  2017 WL 313790 (S.D. Cal. July 24, 2017)................................20

*Louis Vuitton Malletier, S.A. v. Mido Trading, Inc.*,
  2009 WL 10671574 (C.D. Cal. June 9, 2009)................................13, 18

*Markel Ins. Co. v. Dahn Yoga & Health Ctrs. Inc.*,
   2010 WL 1980307 (W.D. Wash. May 17, 2010) .............................................20

*McManus v. Am. States Ins. Co.*,
   201 F.R.D. 493 (C.D. Cal. 2000).................................................................20

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
   507 U.S. 380 (1993)..........................................................................12, 18

*Reflex Media, Inc. v. SuccessfulMatch.com*,
   2020 WL 8459143 (D. Nev. Dec. 29, 2020) ...................................................23

*Riley v. Dozier Internet Law*,
   2010 WL 1141079 (4th Cir. Mar. 24, 2010) .................................................19

*Soto v. Castlerock Farming and Transportation, Inc.*,
   No. 09-cv-00701,
   2013 WL 6844377 (E.D. Cal. Dec. 23, 2013) .................................................22

*Sustainable Pavement Technologies LLC v. Holiday*,
   2018 WL 3656115 (E.D. Cal. Aug. 2, 2018)...................................................20

*TCI Group Life Ins. Plan v. Knoebber*,
   244 F.3d 691 (9th Cir. 2001) ..................................................12, 13, 14, 20, 25

*U.S. v. Scharringhausen*,
   226 F.R.D. 406 (S.D. Cal. 2005) .............................................................13, 25

*United States of America v. Babichenko*,
   2021 WL 1994227 (D. Idaho May 18, 2021) ..................................................24

*United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*,
   615 F.3d 1085 (9th Cir. 2010) ..........................................................11, 12, 15

*Valdez v. Sanford*,
   2010 WL 11601045 (C.D. Cal. Oct. 20, 2010) ...............................................19

*Xuefeng Huang v. Baolin Ge*,
   2020 WL 7428618 (N.D. Cal. Dec. 18, 2020).........................12, 14, 15, 17, 18

**STATUTES**

28 U.S.C. § 1746.................................................................................22

**RULES**

Fed. R. Civ. P.  55(c) ........................................................................................4, 11

Fed. R. Civ. P. 15(a)(3) .........................................................................................7

Fed. R. Civ. P. 60(b) ...........................................................................................14

S.D. Cal. CivLR 2.1 ..............................................................................................3

S.D. Cal. CivLR 5.2 .......................................................................................7, 15

S.D. Cal. CivLR 5.4(c)...................................................................................7, 15

# I.    <u>INTRODUCTION</u>

Contrary to what Defendant would have the Court believe, this is not a case of Plaintiff harassing an innocent hobbyist. To the contrary, there is no meaningful dispute that Defendant sold counterfeit Upper Deck cards for profit. Further, Defendant is the party that dragged Plaintiff to federal court and purposefully availed itself of the Federal Rules of Civil Procedure that it has so blatantly ignored. Defendant is the party that has repeatedly insulted Plaintiff and its counsel, repeatedly threatened sanctions, repeatedly threatened professional discipline, and repeatedly asserted frivolous legal positions; all before filing a responsive pleading. It is Defendant who has omitted crucially relevant facts and misquoted the relevant legal standards in the instant motion. Here, the record demonstrates Defendant's default is entirely of his and his counsel's own making and is a textbook example of a party's own culpability leading to its default. The default should not be set aside.

Notwithstanding the fact that Defendant's motion should be summarily denied for failing to include any admissible evidence, Defendant's flimsy excuses for its failure to timely respond are inapposite, inadequate, and have been thoroughly rejected by Courts of this Circuit. In addition, Defendant fails to adequately explain what transpired between June 30, 2021, when Plaintiff filed its First Amended Complaint, and August 10, 2021, when the Court entered Defendant's default, as Defendant did not once attempt to communicate with Plaintiff or the Court during this time. This glaring omission renders any suggestion that Defendant was not culpable for its own default inconceivable.

Further, neither the instant motion nor Defendant's untimely Rule 12(b)(6) motion to dismiss identify any facts sufficient to raise a meritorious defense to any (much less all) of Plaintiff's claims. For this additional reason, Defendant's motion should be denied.

Finally, the fact that Defendant has utilized the delay since this action was pending to apparently spoliate relevant evidence means that Plaintiff would be substantially prejudiced if the default were set aside.

Any of the above reasons are sufficient to deny Defendant's motion. Taken together, they strongly impel the denial of Defendant's motion in its entirety.

## II.   FACTUAL AND PROCEDURAL HISTORY

Defendant's characterization of the factual and procedural history of this matter is inaccurate and riddled with omissions that substantiate Defendant's culpability throughout this action, despite its procedural infancy.

On April 28, 2021, Plaintiff filed its Complaint against Defendant Miguel Flores ("Defendant") in the Superior Court for the County of San Diego, Case No. 37-2021-00018912-CU-IT-CTL. Declaration of Ethan T. Litney in Support of Opposition ("Litney Decl."), ¶ 2. On May 4, 2021, Defendant was personally served with the summons and Complaint. Litney Decl., ¶ 3, Ex. A (Proof of Service); Dkt. No. 1-4, p. 1. Plaintiff was first contacted by Stephen Anderson ("Mr. Anderson"), counsel for Defendant, on May 19, 2021. Litney Decl., ¶ 4.

**May 19, 2021 – Mr. Anderson First Threatens Plaintiff and its Counsel**

Mr. Anderson's initial May 19, 2021 letter to Plaintiff threatened Plaintiff and its counsel with: (1) sanctions under California Code of Civil Procedure Section 128.7; (2) sanctions under Federal Rule of Civil Procedure 11; (3) misleading the Court in violation of California Rules of Professional Conduct, Rule 5-200(B); (4) violation of ABA Model Code of Professional Responsibility, DR 7-106(b)(1); (5) violation of ABA Model Rules of Professional Conduct, Rule 3.3; (6) violation of the California Rules of Professional Conduct, Rule 3.3; and (7) violation of an attorney's duties under Business and Professions Code § 6068. Litney Decl., ¶ 4, Ex. B (Defendant's May 19, 2021 letter).

**May 20, 2021 – Mr. Anderson Calls Plaintiff's Counsel, Yells At And Berates Plaintiff's Counsel, Hangs Up, And Then Misrepresents the Nature of Call**

The next day, at approximately 12:45 p.m., Mr. Anderson called Plaintiff's counsel, Ethan Litney. Litney Decl., ¶ 5. Mr. Anderson immediately took an aggressive and unprofessional posture, repeatedly interrupted Plaintiff's counsel and asked counsel to "take a deep breath and start over" rather than address Plaintiff's counsel's comments. Litney Decl., ¶ 5.  Mr. Anderson twice explicitly threatened to report Plaintiff's counsel to the California State Bar for ethical violations unless Plaintiff modified its Complaint. *Id.* When Plaintiff's counsel informed Mr. Anderson that his attempt to utilize a threat of reporting Plaintiff's counsel to the California State Bar to gain advantage in civil litigation was itself a potential violation of the California Rules of Professional Conduct, Rule 5-100, Mr. Anderson flew into a rage, yelled at and berated Plaintiff's counsel, and informed Plaintiff's counsel that he would take the matter "directly to Judge Curiel." *Id.* Despite Plaintiff's counsel's repeated suggestions that the matter should be further discussed, Mr. Anderson unceremoniously hung up the phone on Plaintiff's counsel. *Id.* Given Mr. Anderson's strange conduct, Mr. Litney immediately discussed the nature of the call with Plaintiff's other counsel, including Shaun Markley, and memorialized the same in writing prior to 1:00 p.m. that day. *Id.*[1]

---

[1] Plaintiff is cognizant of the importance of professional conduct in the practice of law, and that this District's Local Rules expect a high level of civility from all practitioners. *See* Southern District of California Local Rules, Rule 2.1. Further, Plaintiff's counsel would not typically question the credibility of counsel in an adversarial proceeding or raise instances of acrimonious behavior that are irrelevant to the proceedings before the Court. However, given Mr. Anderson's repeated misrepresentations to counsel in an apparent attempt to create a counterfactual record (*see* S.D. Cal. CivLR 2.1(a)(3)(f) (lawyers have a duty not to attempt to create a false record through written communications), Plaintiff is concerned Mr. Anderson may attempt to mischaracterize the nature of this telephone call or other communications between the parties to have the "last word" in reply. *See* Litney Decl., ¶¶ 5-7, Exs. C, D (mischaracterizing meet and confer call); Declaration of Lacey Gribble, ¶ 2, Ex. A (Mr. Anderson yelled at Plaintiff's counsel's staff not for the first time, then denied it when it was brought to his attention, stating: "MORE SELF SERVING BS[.] I DID NOT RAISE MY VOICE TO YOUR STAFF[.] YOU HACK!"). Further, Plaintiff believes that Mr. Anderson's behavior in out-of-court

At approximately 1:18 p.m. the same day, Mr. Anderson sent a rambling follow-up email that materially misstated and mischaracterized the content of the parties' call, claimed that he "was forced to terminate the call," and painted Plaintiff's counsel as "thoughtless, black-hearted, and cavalier," among other inflammatory language, including:

> …I have advised you and maintain that in my view, you have violated and continue to violate your respective duties under FRCP Rule 11 and Cal Civ Code 128.7. Moreover, as you are no doubt aware, it is and remains my duty to report serious misconduct of counsel to the State Bar when required…

> …As I attempted to obtain answers to the simplest of questions, Mr. Litney's thoughtless, black-hearted and cavalier attitude towards my client and my letter was highlighted not only by his incessant laughter, and his interspersed threats of his own, wherein he hardly allowed me to get a word in edgewise and totally refused to answer the questions set forth in my earlier letter --- instead, he commanded my audience- and disregarded the burdens and hardships put upon Mr. Flores in this matter…

> …I was forced to trerminate [sic] the call -- DESPITE THAT MY LETTER AND MY CALL WAS SENT AS A PART OF A MEET AND CONFER EFFORT - AND AS AN INITIAL NOTICE OF "SAFE HARBOR" TO YOU AND YOUR CLIENT - PRIOR TO BEING FORCED TO TAKE THE ACTIONS CONTEMPLATED THEREIN, WITHOUT LIMITATION!

> …Instead, he tried to trun the tables by accusing me that in my letter, I had somehow inappropriately made threats (e.g., to seek a change of venue, to remove the matter to the USDC, and/or to advise the Superior Court and/or report your apparent misconduct to the State Bar) WITH REGARD TO THE FALSE AND MISLEADING STATEMENTS

---

communications is relevant to the Court's analysis of culpability under the Rule 55(c) good cause standard as discussed in more detail *infra*. As such, Plaintiff references several communications from Mr. Anderson believed to be relevant. Further, Plaintiff requests that the Court treat any attempt by Mr. Anderson to contradict the evidence presented by Plaintiff with scrutiny given Mr. Anderson's critical omissions to this Court, his internally contradictory motion, his memorialized communications relating to this case, and his prior criminal conviction of intentionally misrepresenting that he was a Los Angeles County deputy district attorney to a peace officer in violation of California Vehicle Code § 31 and professional discipline for conduct involving moral turpitude relating to the same event. *See* Plaintiff's Request for Judicial Notice ("RJN"), Ex. A, Cal. Supreme Court Case No. 00-C-10316, pp. 6-9 (Attachment to Stipulation Re Facts, Conclusions of Law And Disposition); *see Hart v. Larson*, 2019 WL 6684521, at *2 (S.D. Cal. Dec. 5, 2019), *aff'd*, 833 F. App'x 693 (9th Cir. 2021) ("Here, evidence of Hart's discipline by the State Bar for an act of moral turpitude is highly probative of his credibility as a witness because, as Larson argues, **it bears on his willingness to lie to advance his personal interests**.") (emphasis added).

SUBMITTED TO COURT IN THE COMPLAINT ON FILE - that I have requested be stricken therefrom…

Litney Decl., ¶ 6, Ex. C (May 20, 2021 Email from Anderson) (emphasis in original). Mr. Anderson also requested "that all correspondence thereafter be in writing." *Id*. Plaintiff responded to Mr. Anderson's phone call and follow-up email the next day on May 21, 2021. Litney Decl., ¶ 7, Ex. D (May 21, 2021 email); Ex. E (Excerpt from May 21, 2021 Letter). The letter refuted Mr. Anderson's characterization of the May 20 phone call, stating:

> We are perplexed by your course of conduct in this matter. First, you wrote to us the day before yesterday with a string of baseless, threatening positions. We address those below per your request. Next, you contacted our office and proceeded to yell at and berate me. You then unceremoniously hung up despite my protests that we should further discuss this matter. This conduct is unbecoming of a member of our State's Bar, and we trust that communications will be professional going forward. I have never had to insist on written-only communications, but we will in this case if you will insist on yelling at otherwise acting unprofessionally towards anyone from my office again.

> Separately, note that we do not intend to respond to your ranting email following your call earlier today except to say that we strongly disagree with your depiction of the events that transpired (notably failing to reference your own tirade in addition to mischaracterizing my own comments). I simply sought to meet and confer regarding the basis for your upcoming pleadings challenge as is contemplated under CCP §§ 430.41, 435.5, and/or 439. Yelling and hanging up the phone in response is not productive to a meet and confer process.

*Id*. Despite Mr. Anderson's abusive conduct, Plaintiff's counsel asked if Defendant would be willing to consider informal cooperation regarding where he obtained the counterfeit products at issue as part of an effort to settle this action, and stated that "We hope to have a productive and professional conversation in the coming days regarding your client's cooperation." *Id*.

**May 26, 2021 – Plaintiff Grants Defendant A 30-Day Extension to Respond to the Complaint, and Again Seeks to Discuss Informal Resolution of This Case**

On May 26, 2021, Mr. Anderson requested a 30-day extension to respond to the Complaint. Plaintiff offered to stipulate to the extension on the condition that Mr. Anderson agreed to accept service on behalf of Defendant (i.e., for the purpose of serving discovery) so that Plaintiff would not be prejudiced by Defendant's delay in filing a responsive pleading given that time was of the essence. Litney Decl., ¶ 8, Ex. F (May 26, 2021 Email). Plaintiff again reiterated:

> We would also still like to discuss your client's potential cooperation to resolve this matter to avoid further unnecessary waste of the parties' resources. If your client remains willing to cooperate in disclosing the alleged origin of the counterfeit products, please let us know immediately.

*Id.*

**May 26, 2021 –Mr. Anderson Accepts the Extension, and Again Threatens Plaintiff and Its Counsel**

On May 26 2021, Defendant accepted Plaintiff's offer for the extension. Litney Decl., ¶ 9, Ex. G (Anderson May 26, 2021 Email). However, Defendant refused to provide information regarding where he obtained the counterfeit products unless Plaintiff dismissed the action or accepted Mr. Anderson's purported offer to compromise of $500.01, and again threatened Plaintiff and his counsel with sanctions, fraud, and malicious prosecution against stating, in pertinent part:

> If you should fail to accept this offer, or rather, more appropriately simply agree to dismiss the matter with prejudice in exchange for the information regarding the seller where he procured his handful of cards, undoubtedly the parties shall engage in hotly contested litigation wherein your client has NOTHING to gain, yet much to lose, particularly in view, not only of the attached Section 408 Offer to Compromise, but, rather more importantly, with respect to what I consider to be sanctionable conduct, including, inter alia, -submitting false and overruled suggestions of facts and law to the Superior Court within the Complaint, your own knowing refusal and failure to strike and/or correct such incorrect and false information to a tribunal; fraudulent and malicious prosecution against Mr. Flores, and finally, your and Mr. NICHOLAS' own acts, conduct and OMISSIONS in this

already "uncivil" action.

ONE FINAL NOTE- I do not actually plan to file a RESPONSE to the Complaint until after the time for your client to accept the Offer to Compromise has expired and indeed, WE HAVE NO INTENT TO DEFAULT IN THIS ACTION AND THEREBY DEMAND THAT IN ANY FUTURE FILINGS YOU ADVISE THE COURT THAT COUNSEL FOR DEFENDANT HAS ADVISED YOU IN WRITING THAT WE WILL FILE A RESPONSE TO THE COMPLAINT ON JUNE 28, 2021.

SHOULD YOU FILE A REQUEST FOR DEFAULT; FILE ANY MOTION OF ANY KIND; OR TAKE ANY ACTION OTHER THAN 1) DISMISSING THE ACTION IN ITS ENTIRETY - OR 2) FILING AND SERVING ACCEPTANCE OF THE STATUTORY OFFER TO COMPROMISE - AT ANY TIME PRIOR TO JUNE 29, 2021, (TO AVOID A MANIFEST UNFAIRNESS AND MISCARRIAGE OF JUSTICE - I SHALL THEREAFTER HANDLE THIS MATTER PRO BONO AND SHALL SWIFTLY AND METICULOUSLY TAKE ANY AND ALL APPROPRIATE LEGAL ACTION AGAINST YOU AND YOUR CLIENT!

Litney Decl., ¶ 9, Ex. G (Anderson May 26, 2021 Email) (emphasis in original). Despite Defendant's demand, rather than request, for a de facto extension to respond to the Complaint, Plaintiff did not seek a default at that time, and refused to accept Defendant's purported "offer to compromise." *Id*. at ¶ 9.

### June 28, 2021 – Defendant Removes This Action to This District

On June 28, 2021, Defendant removed this action to this District. *See* Dkt. No. 1-2. On June 29, 2021, Plaintiff filed a First Amended Complaint using the Court's CM/ECF electronic filing system. *See* Dkt. No. 4. Electronic filing of the First Amended Complaint automatically generated a Notice of Electronic Filing that was emailed to Defendant, by and through his counsel of record; this constituted service of the First Amended Complaint. *See* S.D. Cal. CivLR 5.4(c). No proof of service or certificate of service is required when a paper is served by filing it with the Court's electronic filing system. *See* S.D. Cal. CivLR 5.2; 5.4(c). Consequently, the applicable time limit for Defendant to respond to the First Amended Complaint expired on July 14, 2021. Fed. R. Civ. P. 15(a)(3) (time to respond to amended

complaint is the time to respond to the original pleading or within 14 days of service of the amended pleading, whichever is later).

**June 30, 2021 – Plaintiff Amends the Complaint, Mr. Anderson Refuses to Participate In Discovery, And Again Threatens Plaintiff and Its Counsel**

On June 30, 2021, Plaintiff asked Defendant for his availability for a Rule 26(f) conference and provided Plaintiff's availability for the same. Litney Decl., ¶ 10, Ex. H (June 30 Email Chain). In response, Mr. Anderson again referred to Plaintiff's counsel as "black hearted," and "cavalier," asked "what is wrong with you?" and perplexingly stated that Plaintiff would regret amending the Complaint, notwithstanding the amendment obviated several of the issues raised by Mr. Anderson:

> You amended the Complaint? You What is wrong with you? You didn't serve it either...
>
> ?    No. I won't be talking to you for a long time now.. I have 40 more days to answer and a sanctions motion to pursue.
>
> You will regret your cavalier and black hearted approach...

*Id*. (all typographical errors in original).

**July/August 2021 – Defendant Defaults, Ignores Plaintiff's Offer of Additional Time to Answer, and the Court Enters Defendant's Default**

On July 14, 2021, Plaintiff informed Defendant that he was in default, and in accordance with this District's Code of Conduct for Civility and Professionalism, provided Defendant until July 15 to file an Answer without Plaintiff seeking entry of default. Litney Decl., ¶ 11, Ex. I. Defendant never responded to this email or answered the Complaint. *See generally* Docket. Indeed, even under Defendant's apparent misapprehension regarding his time to answer (August 9, 2021, assuming 40 days from June 30), Defendant failed to timely file an answer. *Id*.

On July 16, 2021, Plaintiff requested entry of default. Dkt. No. 6. On August 10, 2021, default was entered against Defendant. Dkt. No. 7.

Despite Mr. Anderson's prior request that the parties limit their communications to writing, and Plaintiff's insistence that further abusive conduct would require all further communications to be in writing, Mr. Anderson called Plaintiff's counsel on August 10, 2021 within two hours of the Court entering his client's default. Litney Decl., ¶ 12. Plaintiff's counsel responded to Mr. Anderson by email stating:

> Hi Stephen, I just received word that you called our office, which is the first communication we've received from you since June 30, 2021.
>
> Given our substantial disagreements regarding the nature our last meet and confer call in this case, I'd ask that you follow-up via email. I will try to provide you a response as soon as possible.

Litney Decl., ¶ 12, Ex. J. Defendant did not respond. *Id*. at ¶ 12.

Later that day, Defendant filed the instant motion to set aside default characterizing Plaintiff's email as "reject[ing]" Mr. Anderson's call, and filed an untimely and improper Rule 12(b)(6) motion to dismiss. *See* Dkt. Nos. 8, 9.

On August 13, 2021, Plaintiff learned that Defendant had apparently spoliated evidence relating to the conduct at issue in this litigation. Litney Decl., ¶ 13. The same day, Plaintiff sent Defendant a lengthy meet and confer email identifying the spoliation at issue at issue, and asking Defendant "to cease from committing any further spoliation, and clarify the full extent of the destruction of documents or electronically stored information that has taken place thus far." Litney Decl., ¶ 13, Ex. K (spoliation letter email chain). On August 16, 2021, Defendant flatly denied spoliating any evidence, and asked Plaintiff to: "provide any evidence wh[ich] supports your latest (baseless and spurious) claim [regarding spoliation]." Further, Mr. Anderson stated: "Once again, you are apparently continuing to harass my client and vexa[t]iously increase the costs of your ill-founded litigation." *Id.* Less than an hour later, Plaintiff clarified that "your request attempts to put my client in a further untenable position by requesting that we identify every incidence of spoliation of which we are aware. Obviously, this could facilitate your client admitting only to

the spoliation attempts that we know about, while taking additional efforts to conceal further spoliation of evidence." *Id.*  Nonetheless, Plaintiff identified a particular post from Defendant's Instagram page (Instagram.com/check_dz_out08) and provided the URL to the deleted post in question, which was deleted after the filing of this action. *Id.*

As seen in the attached declaration of Ethan Litney, the card described in Defendant's deleted Instagram post is a counterfeit Upper Deck branded card. Litney Decl., ¶ 14, Ex. L. Indeed, this particular card is so heavily counterfeited that it is presently the at issue in multiple pending lawsuits. Litney Decl., ¶ 14, Exs. M (*Catalfamo* Complaint), N (*Trudsoe* Complaint). Plaintiff can only assume that Defendant deleted this Instagram post without notice to Plaintiff in order to conceal evidence of previous sales of this additional counterfeit Upper Deck card. After providing the above URL, Mr. Anderson again engaged in a slew of pejorative attacks on Plaintiff's counsel, including:

> …. I should expect so much from counsel who more typically makes ADA claims and Prop 69 claims rather than intellectual property claims. Neither me nor my client have been given the courtesy of any factual allegations - JUST ACCUSATIONS.  Again, Mr. Flores and I don't know what you are referring to and your repeated accusations against my client - NOW FOR SPOLIATION (without any basis) is itself untenable AND RIDICULOUS. Perhaps you could quit concealing the truth and hiding behind your billable hours…
>
> …it seems your claims of spoliation are as flimsy as your expensive ties…
>
> …WE THINK YOU ARE MORE THAN A BIT OFF BASE ETHAN -- MY CLIENT HAS NOTHING TO DO WITH YOUR SUSPICIONS  and YOUR continued nonsensical accusations and litigation warfare is tiring, at best….
>
> PERHAPS YOU COULD OFFER SOME EVIDENCE OF YOUR OWN FOR ONCE!

Litney Decl., ¶ 15, Ex. K.

Given Defendant and his counsel's conduct in this litigation, and Mr. Anderson's personal history (as described in footnote 1), Plaintiff sought documents from Defendant to substantiate the representations in Mr. Anderson's declaration (which was not executed under penalty of perjury) and sought evidence of any other destruction of relevant information. Litney Decl., ¶ 16, Ex. O. Defendant provided a ten-page meet and confer letter that raised several purported threshold issues with the nature of Plaintiff's document requests, and raised boilerplate objections to the specific requests at issue. *Id.*, Ex. P (Flores meet and confer letter). The same day, Plaintiff responded to Defendant's letter, and thoroughly addressed the threshold issues raised by Defendant. *Id.*, Ex. Q (meet and confer email chain). After two weeks with no response, Plaintiff sent a further meet and confer email regarding the document requests. *Id.* As of this date, Defendant has resisted providing any substantive evidence supporting the allegations in the unsigned Anderson declaration (despite the ease at which such evidence could be presented), and has not produced any additional evidence relating to spoliation. Litney Decl., ¶ 17.

## III. <u>DEFENDANT IDENTIFIES INCORRECT LEGAL STANDARDS</u>

The Federal Rules provide that a "court may set aside an entry of default for good cause...." Fed. R. Civ. P. 55(c). "To determine 'good cause', a court must 'consider[ ] three factors: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default [] would prejudice' the other party." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) ("*Mesle*") (quoting *Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922925–26 (9th Cir. 2004) ("*Franchise Holding*"). "This standard, which is the same as is used to determine whether a default judgment should be set aside under Rule 60(b), is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to **refuse** to set aside the default." *Id.* (bold added). Notably, Defendant's motion

1    omits the word "refuse" in the above quotation, incorrectly suggesting that if any of

2    the factors weigh in Defendant's favor, a default can be set aside. Motion, p. 5. The

3    moving party bears the burden of demonstrating that these factors favor setting aside

4    the default. *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001)

5    ("*TCI Group*").

6         "If a defendant has received actual or constructive notice of the filing of the

7    action and failed to answer, its conduct is culpable." *Franchise Holding*, 375 F.3d at

8    926. "In the context of culpability under the good cause standard, defense counsel's

9    conduct is attributable to Defendant because, "[a]s a general rule, parties are bound

10   by the actions of their lawyers." *Xuefeng Huang v. Baolin Ge*, 2020 WL 7428618,

11   at *5 (N.D. Cal. Dec. 18, 2020) (citing *Casey v. Albertson's, Inc.*, 362 F.3d 1254,

12   1260 (9th Cir. 2004); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507

13   U.S. 380, 396 (1993) (explaining that "petitioner voluntarily chose this attorney as

14   his representative in the action, and he cannot now avoid the consequences of the

15   acts or omissions of this freely selected agent."")).

16        Relevantly, Defendant's motion incorrectly identifies a more lenient legal

17   standard of culpable conduct applicable to unrepresented parties articulated in *TCI

18   Group*, 244 F.3d at 696-697. *See* Motion, p. 8. Legally sophisticated defendants,

19   including those represented by counsel, are subject to the *Franchise Holding*

20   standard of culpable conduct, as Defendant's own-cited authority recognizes. *See

21   Mesle*, 615 F.3d at 1093 ("It is possible to reconcile the language in *Franchise

22   Holding* [] with the standard in *TCI Group*. When considering a legally sophisticated

23   party's culpability in a default, an understanding of the consequences of its actions

24   may be assumed, and with it, intentionality."). Rule 60(b)(1) "excusable neglect"

25   "largely overlaps with the issue of culpability[;] [b]ecause 'good cause' is typically

26   enough to demonstrate 'excusable neglect,' no reason exists to analyze [excusable

27   neglect] separately." *Franchise Holding*, 375 F.3d at 927. Where the Court

28   concludes that a defendant engaged in culpable conduct that led to the default, "the

Court need not address the other two factors relevant to a good cause analysis." *Balboa Capital Corp. v. New Image Dental Laboratory, Inc.*, 2021 WL 2670736, at *3 (C.D. Cal. May 28, 2021).

Further, to demonstrate it has a meritorious defense a defendant "ha[s] to present the district court with specific facts that would constitute a defense…A mere general denial without facts to support it is not enough to justify vacating a default or default judgment." *Franchise Holdings II*, 375 F.3d at 926 (internal quotation marks omitted). Indeed, "a naked, conclusory allegation, without a statement of underlying facts which tend to support such an allegation, is insufficient to make out a colorable claim to a meritorious defense." *Cassidy v. Tenorio*, 856 F.2d 1412, 1416 (9th Cir. 1988). Where a defendant presents only a partial defense, a default or default judgment may be set aside in part. *See, e.g., Louis Vuitton Malletier, S.A. v. Mido Trading, Inc.*, 2009 WL 10671574, at *3 (C.D. Cal. June 9, 2009) (granting motion to vacate default judgment in part where "the Court finds that Defendants' may not state a defense as to infringement. However, the Court finds that Defendants' have raised a meritorious defense as to willfulness….").

Finally, a Court should not reopen a default where it could cause prejudice to the nonmoving party. *See U.S. v. Scharringhausen*, 226 F.R.D. 406, 412 (S.D. Cal. 2005) ("Finally, reopening the default [] could prejudice the United States"). The standard for determining whether a plaintiff will be prejudiced if a defendant's default is set aside is whether its ability to pursue its claims will be hindered. *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). In the context of defaults, this can include "tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *TCI Group*, 244 F.3d at 701.

## IV.    <u>ARGUMENT</u>

Here, all relevant good cause[2] factors counsel against setting aside the default

---

[2] Defendant's notice of motion states that "the motion is grounded on the mistake, surprise, inadvertence and excusable neglect by Defendant, and the excusable

1  in this action. Defendant's default is undisputedly of his own making, Defendant has

2  failed to state sufficient facts to demonstrate a meritorious defense against any (much

3  less all) of Plaintiff's claims, and Defendant has utilized its delay at bringing this

4  case to issue to destroy relevant evidence without notice to Plaintiff, causing Plaintiff

5  substantial prejudice. Each of these factors separately and independently warrants

6  denial of Defendant's motion.

7  **A.    Defendant Engaged in Culpable Conduct that Led to His Default**

8  ***1.    Defendant is Subject to the "Sophisticated" Culpability Standard***

9

10  As a preliminary matter, Defendant focuses on the incorrect legal standard for

11  culpability. Unrepresented parties unfamiliar with the legal system are subject to a

12  more lenient standard, identified by Defendant, that requires showing an intentional

13  failure to answer the lawsuit for the purpose of taking advantage of an opposing

14  party, interfering with judicial decision making, or manipulating the legal process.

15  Motion, p. 6 (citing *TCI Group*, 244 F.3d at 697).

16  However, "culpability under Rule 55(c) is more readily found where the

17  defaulting defendant was legally sophisticated **or was represented by counsel**.

18  There is then no need to show that the defendant acted in bad faith." *Bay Area*

19  *Painters and Tapers Pension Trust Fund v. Ventura Finishing Systems*, 2016 WL

20  2343019, at *5 (N.D. Cal. Mar. 31, 2016) ("*Bay Area Painters*") (emphasis added,

21

22  neglect on the part of Defendant's attorney, Stephen L. Anderson and further due
23  special and other extenuating circumstances as are described in the declaration of
attorney Anderson." Motion, p. 1. However, Defendant's argument focuses
24  exclusively on the "good cause" criteria under Federal Rule 55(c), and does not make
any separate argument as to "excusable neglect" under Federal Rule 60(b), nor
25  mention Defendant personally whatsoever. For these reasons, and because the Ninth
Circuit has found the "good cause" criteria to functionally subsume the "excusable
26  neglect" criteria, Plaintiff evaluates the "good cause" criteria in its opposition. *See*
*Franchise Holding*, 375 F.3d at 927. Further, "an alleged mistake by a legally
27  sophisticated party suffice to establish 'excusable neglect' in the context of Rule
60(b)(1)." *Xuefeng Huang*, 2020 WL 7428618, at *8 (citing *Allmerica Financial Life
28  Ins. and Annuity Co. v. Llewellyn*, 139 F.3d 664, 666 (9th Cir. 1997) ("Neither
ignorance nor carelessness on the part of the litigant or his attorney provide grounds
for relief under Rule 60(b)(1).") (internal quotation marks and citations omitted)).

internal citations omitted) (citing *Mesle*, 615 F.3d at 1093); *see Xuefeng*, 2020 WL 7428618, at *5 ("the Court considers Defendant's conduct while pro se under the "not legally sophisticated" standard, and Defendant's conduct while represented by counsel under the "legally sophisticated" standard.").

"When considering a legally sophisticated party's culpability in a default, an understanding of the consequences of its actions may be assumed, and with it, intentionality." *Mesle*, 615 F.3d at 1093. "With notice of the lawsuit, in other words, a represented party who defaults is culpable under Rule 55(c)." *Id.*

### 2. Defendant's Conduct is Indisputably Culpable In His Default Under the Sophisticated Party Culpability Standard

Here, Defendant admits he was represented by counsel as of May 18, 2021, long before the time this action was removed to this District, and before Plaintiff filed the First Amended Complaint. Motion, p. 2; *see* Dkt. Nos. 1, 2. Defendant's representation by counsel renders him "sophisticated" under the Rule 55(c) culpability standard. *Bay Area Painters*, 2016 WL 2343019, at *5.

Further, Defendant admits that Plaintiff's filing and service of the First Amended Complaint provided Defendant 14 days to file his response under Fed. R. Civ. P. 15(a)(3). Motion p. 4; *see also* S.D. Cal. CivLR 5.2; 5.4(c). Here, as intentionality is presumed where a sophisticated party has notice of a complaint and fails to respond, Defendant's own culpable acts led to his default, and warrant denial of his motion to set aside the default.

### 3. Defendant's Conduct was Culpable Even Under the More Lenient "Unsophisticated Party" Standard

Defendant's conduct is also highly culpable even under the more lenient "unsophisticated party" standard, and none of the representations in Defendant's motion or Mr. Anderson's unsigned declaration demonstrate otherwise.

Defendant claims that the following facts and circumstances demonstrate a lack of culpability and/or excusable neglect, which "was unavoidable."

- Mr. Anderson took Mr. Flores' case on a "highly reduced and practically 'pro bono' fee schedule." (Dkt. No. 8-1, ¶ 15);
- The death of Mr. Anderson's mother on June 5, 2021. (*Id.*, ¶ 16);
- Mr. Anderson's mother's funeral on June 9, 2021. (*Id.*);
- Mr. Anderson choosing not to work from June 9 until more than two weeks later. (*Id.*);
- Mr. Anderson developing a cranio-facial infection after at some point in June. (*Id.*);
- Mr. Anderson developing an infection on his right buttock at some point in June. (*Id.*);
- Mr. Anderson suffering from irritable bowel disease for the past year. (*Id.*);
- Mr. Anderson's daughter undergoing surgery out of state in Tucson, Arizona on June 11, 2021, where "for nearly a week, my wife was away traveling for my child's care while I took on several additional duties, visited several Doctors, and fell into a bout of depression." (*Id.*, ¶ 17.); and
- Mr. Anderson having to deal with meeting with other clients and prospective clients, and engaging in a number of other pressing legal matters. (*Id.*, ¶ 18.)

In a vacuum, the above circumstances (all of which exclusively relate to Mr. Anderson) are ostensibly sympathetic. Unfortunately, the undisputed record of Mr. Anderson's communications and conduct in this matter, as well as Defendant's own admissions, completely undercut the above justifications for his failure to timely respond to Plaintiff's First Amended Complaint.

First, absolutely none of the above circumstances demonstrating Mr. Anderson's alleged hardships occurred ***prior to***: (1) Mr. Anderson removing this action to this District on June 28; (2) Plaintiff filing the First Amended Complaint on June 29; (3) Defendant refusing to participate in a Rule 26(f) conference on June 30, and calling Plaintiff's counsel "black hearted," and "cavalier," asking "what is wrong with you?" and threatening that Plaintiff's counsel would regret amending the complaint and that Mr. Anderson was preparing a sanctions motion. Litney Decl., Ex. H; *see also Balboa Capital Corp. v. New Image Dental Laboratory, Inc.*, 2021 WL 2670736, at *3 (C.D. Cal. May 28, 2021) (finding failure to participate in preparation of a Rule 26(f) report demonstrated culpable conduct).

Therefore, it simply strains credulity that these alleged prior events precluded Defendant from filing a responsive pleading, when it did not preclude Defendant

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SET ASIDE DEFAULT

from removing this action, threating Plaintiff's counsel, or apparently preparing a sanctions motion.

Further, Mr. Anderson's claim that he has "sincerely tried to reasonably discuss this case with Plaintiff's attorneys' but they have failed to respond to most of my overtures, making the somewhat sensitive explanation of my personal, family and health issues warranting a brief delay, and further written meet and confer discussions, more difficult, if not impossible" is frivolous. Dkt. No. 8-1, ¶ 19. The communications and record in this matter demonstrate Mr. Anderson never attempted to raise any of these alleged personal or professional issues with Plaintiff or the Court, or otherwise sought to extend the time to file a responsive pleading. In *Xuefeng Huang*, the Northern District found similar excuses particularly uncompelling where the party made no attempt to previously raise them with the Court. *Xuefeng Huang*, 2020 WL 7428618, at *6 ("[A]t no point during this period of alleged upheaval did defense counsel communicate with the Court about these issues or offer any path forward to participate in the case in a timely manner. Rather than communicate with the Court, Defendant … missed deadlines."). Indeed, Defendant appears to admit that he simply ignored the applicable deadlines until he was satisfied with Defendant's "complex points and authorities" in support of Defendant's motion to dismiss. Motion, p. 4 ("on August 10, 2021, the Defendant filed … his Motion to Dismiss, which itself, plainly shows the merits of Defendant's Flores [sic] defenses and further bears the earmarks that demonstrate that during the brief time afforded to prepare the complex points and authorities and documentation filed herewith, Defendant had no culpable conduct nor any intention nor effect of delaying this action."). The only other plausible alternative explanation of Defendant's admission is that Defendant was able to prepare his motion to dismiss the day the Court entered Defendant's default, which is perhaps even more culpable, as it demonstrates that Defendant could and should have been able to timely file a responsive pleading within the fourteen days allowed under the Federal Rules, but

1    simply chose not to until the Court entered his client's default almost a month after

2    that applicable deadline.

3         Still further, "the United States Supreme Court has made clear that '[i]n

4    assessing the culpability of respondents' counsel, we give little weight to the fact

5    that counsel was experiencing upheaval in his law practice.'" *Xuefeng Huang*, 2020

6    WL 7428618, at *6 (quoting *Pioneer Inv. Servs. v. Brunswick Assocs.*, 507 U.S. 380,

7    398 (1993)). However, it particularly troubling that Mr. Anderson admits he was too

8    busy to file a responsive pleading in this action because, in part, he was meeting with

9    ***prospective clients***, i.e., Mr. Anderson was neglecting his present clients to spend

10   time trying to obtain additional clients. Dkt. No. 8-1, ¶ 18. This admission further

11   underscores Defendant's culpability, and lack of excusable neglect.

12        Still further, Defendant's motion critically omits that Plaintiff extended the

13   professional courtesy of notifying Defendant that he was in default on July 14, 2021,

14   and that Plaintiff intended to move for entry of default two days later unless a

15   responsive pleading was filed. *See Louis Vuitton Malletier, S.A. v. Mido Trading,*

16   *Inc.*, 2009 WL 10671574, at *3 (C.D. Cal. June 9, 2009) (Finding culpability where

17   party was independently advised by plaintiff's counsel of the need to file an answer,

18   "yet he chose not to do so."); s*ee also Hawaii Carpenters' Trust Funds v. Stone*, 794

19   F.2d 508, 512 (9th Cir. 1986) (No notice to a defaulting party is required prior to

20   entry of default). Defendant also omits any discussion of why he did not file a

21   responsive pleading or attempt to communicate with Plaintiff or the Court after this

22   July 14 notification, why he did file a responsive pleading or attempt to communicate

23   with Plaintiff or the Court after Plaintiff moved for entry of default on July 16, or

24   why he did not file a responsive pleading or communicate at all with Plaintiff or the

25   Court until the date the Court entered Defendant's default. *See Duralar Techs. LLC*

26   *v. Plasma Coating Techs. Inc.*, 2020 WL 10090874, at *4 (D. Ariz. Mar. 6, 2020),

27   aff'd, 848 F. App'x 252 (9th Cir. 2021) (Finding culpability in failure to respond for

28   a similar time period, as "PCT has resisted providing a credible explanation for its

1  failure to respond—either by way of seeking an extension, filing an answer, or
2  contesting the entry of default—until nearly a month and a half after Duralar's
3  Motion for Entry of Default Judgment.").

4      Indeed, after ignoring Plaintiff for almost six weeks, Mr. Anderson attempted
5  to contact Plaintiff's counsel within **two hours** after the Court entered Defendant's
6  default. Litney Decl., ¶ 12. Given Defendant's omission of any explanation for
7  Defendant's and/or Mr. Anderson's complete failure to take any action or
8  communicate with Plaintiff or the Court between June 30 and August 10, the Court
9  should find that Defendant was culpable, and should not find that Defendant's
10 neglect was excusable in any way. To the contrary, the above facts appear to
11 demonstrate that Defendant simply ignored communications from Plaintiff and the
12 Federal Rules of Civil Procedure until the Court ultimately took the step of entering
13 his default and placing Defendant in peril. *See generally Commodity Futures*
14 *Trading Comm'n v. Saffron*, 2020 WL 3060739, at *2 (D. Nev. June 9, 2020)
15 ("Typically, striking a late motion or brief is an appropriate means to correct course
16 when a litigant or attorney proceeds according to his own timetable and not the one
17 set by the court and the rules of procedure.").

18      In addition, Plaintiff properly[3] filed this action in the Superior Court for the
19 County of San Diego. *See* Dkt. No. 1. Defendant made the intentional choice to avail
20 himself of the Federal Rules of Civil Procedure when he removed this action and
21 forced Plaintiff to litigate in federal court. *Id.* Relevantly, Defendant's counsel has
22 been a federal court practitioner since at least 1993 and has practiced in the Southern
23 District of California since at least 2003. RJN Ex. D (Docket Report from C.D. Cal.
24 Case No. 2:93-cv-04275 identifying Stephen Anderson as counsel of record); RJN

25 ───────────────
26 [3] Defendant provides no support for his suggestions that this action was
   "inexplicably" or "improperly filed in State Court." Motion, p. 4. Indeed, "state
27 courts have concurrent jurisdiction under the Lanham Act and there are literally
   hundreds of state court cases adjudicating Lanham Act claims." *Valdez v. Sanford*,
   2010 WL 11601045, at *4 (C.D. Cal. Oct. 20, 2010) (internal quotations omitted)
28 (quoting *Riley v. Dozier Internet Law,* 371 Fed. Appx. 399, 405, 2010 WL 1141079,
   at *6 (4th Cir. Mar. 24, 2010)).

Ex. E (Docket Report from S.D. Cal. Case No. 3:03-cv-00958 identifying Stephen Anderson as counsel of record). Defendant's culpability should be augmented by the fact that he completely ignored the procedural rules to which he purposefully availed himself. *See generally McManus v. Am. States Ins. Co.*, 201 F.R.D. 493, 500 (C.D. Cal. 2000) ("The Court requires compliance with its rules even from those who are appearing in federal court for the first time; it certainly will require compliance from those who have purposefully availed themselves of the federal forum in the past."). Similarly, the suggestion that Plaintiff has engaged in sharp tactics by utilizing Defendant's preferred rules of procedure is frivolous, particularly as the record demonstrates that Plaintiff has repeatedly attempted to extend professional courtesies to Defendant notwithstanding an endless stream of insults and threats from Defendant's counsel, including providing Defendant an opportunity to avoid entry of default entirely.

Finally, Mr. Anderson's continual personal and professional insults directed toward Plaintiff's counsel, repeated threats of sanctions, repeated threats of professional disciplinary proceedings, and other abusive communications should weigh in favor of a finding of culpability given the other circumstances of this case.

Even under the more lenient culpability standard, "The Ninth Circuit has 'typically held that a defendant's conduct was culpable for purposes of the [good cause] factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond.'" *Lights Out Holdings, LLC v. Lights Out Apparel, LLC*, 2017 WL 313790 (S.D. Cal. July 24, 2017) (quoting *TCI Group*, 244 F.3d at 698); *see also Markel Ins. Co. v. Dahn Yoga & Health Ctrs. Inc.*, 2010 WL 1980307 (W.D. Wash. May 17, 2010) (district court declines to set aside default where defendant fails to offer credible explanation as to why he did not timely respond to the lawsuit); *Sustainable Pavement Technologies LLC v. Holiday*, 2018 WL 3656115 (E.D. Cal. Aug. 2, 2018) (finding that a default will not be set aside and the defendant acted culpable where defendant's excuse as

to why it did not respond to the lawsuit is not compelling). For the reasons stated above, there is no explanation of Defendant's default that is inconsistent with a devious, deliberate, willful, or bad faith failure to respond; indeed, Defendant appears to admit his intentional disregard of the Federal Rules of Civil Procedure in his motion to spend more time on his untimely Rule 12(b)(6) motion. As such, Defendant's conduct was culpable in the entry of his default even under the more lenient standard of an unrepresented party, and Defendant's motion should be denied.

The only authority offered by Defendant to militate against finding culpability is highly distinguishable. *See* RJN, Ex. B (*Ewing v. McCarthy*, S.D. Cal. Case No. 3:17-cv-01554 (Curiel, J.), Dkt. No. 33 (Motion to Set Aside Default)); Ex. C (*Ewing* Dkt. No. 34 (Order Granting Motion to Set Aside Default)). In *Ewing*, the unrepresented Defendant alleged the following, supported by a notarized affidavit, the obituary of his late wife, and his late wife's death certificate:

> [Defendant] was not able to answer because he literally lived in the hospital 24 hours a day for a few months battling to keep his wife & soulmate alive from end-stage brain cancer. The suit was filed one month before his wife passed, and he was inundated with grief, financial stress, consoling his children, nine grandchildren, and so much more. Thereafter, Defendant fell ill, went to the emergency room, and is still under doctor's care and testing. He is recovering from a very fragile state prompted in large part by the death of his life partner … Defendant at first lacked knowledge of the procedural requirements, and did not realize the implication of the pleadings….

RJN, Ex. B. In *Ewing*, unlike the instant action, the defendant was unrepresented and did not appreciate the Federal Rules of Civil Procedure. RJN, Ex. B. Further, the *Ewing* defendant provided a sworn and notarized affidavit with documentary evidence of far more grievous personal circumstances and justifications for failure to timely respond, including medical issues that occurred concurrently to the time where the defendant failed to answer. *Id.* Finally, it appears the *Ewing* defendant's

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SET ASIDE DEFAULT

motion was unopposed. *Compare* RJN Exs. B, C. As described above, Defendant's conduct is far more culpable and warrants denial of his motion.

### 4. The Court Should Disregard Any Arguments Predicated Upon the Unexecuted and Inadmissible Declaration of Stephen Anderson

Evidence supporting an argument that a defaulted party was not culpable in their default must be supported by admissible evidence. *See, e.g., Bury v. Bradish*, 2006 WL 2792864, at *2 (E.D. Cal. Sept. 28, 2006) ("Mr. Reager's attestation in his declaration… does not constitute admissible evidence …   Accordingly, the Court cannot reach the merits of this argument.").

Here, Defendant has failed to meet his burden to demonstrate lack of culpability to set aside the default with admissible evidence, as the only evidence relied upon in support of Defendant's motion is the declaration of his attorney, Stephen Anderson, which is not signed under penalty of perjury and therefore inadmissible. *See* Dkt. No. 8-1. Generally, for a declaration to be admissible, the declarant must "declare ... under penalty of perjury ...." 28 U.S.C. § 1746. Further, even in contexts where "strict adherence to the Federal Rules of Evidence" is not required, such as class certification, many courts reject declarations not signed under penalty of perjury. *See Soto v. Castlerock Farming and Transportation, Inc.*, No. 09-cv-00701, 2013 WL 6844377, at *10 (E.D. Cal. Dec. 23, 2013) report and recommendation adopted, No. 09-CV-00701, 2014 WL 200706 (E.D. Cal. Jan. 16, 2014) (striking declarations not signed under penalty of perjury); *Charlebois v. Angels Baseball, LP*, No. 10-CV-0853, 2011 WL 2610122, at *8 (C.D. Cal. June 30, 2011) (declining "to consider any evidence submitted by Plaintiff that comes by way of an unsigned declaration" because such evidence "lack[ed] any indicia of reliability"). Therefore, the Court should disregard Mr. Anderson's declaration.

## B.   Defendant Fails to Raise a Meritorious Defense

Defendant also fails to raise a meritorious defense. Defendant's argument in support of his supposed defenses merely refers the Court to his concurrently filed

Rule 12(b)(6) motion to dismiss. *See* Dkt. No. 9. However, Defendant's Rule 12(b)(6) motion does not sufficiently raise any meritorious defenses.

As a preliminary matter, Defendant's Rule 12(b)(6) motion should be stricken for failing to comport with the timelines set out in the Federal Rules of Civil Procedure. *See Saffron*, 2020 WL 3060739, at *2 ("Typically, striking a late motion or brief is an appropriate means to correct course when a litigant or attorney proceeds according to his own timetable and not the one set by the court and the rules of procedure."). It would be more appropriate for Defendant to raise potential defenses in a proposed answer. *See* RJN Exs. B, C (*Ewing* motion to set aside default, where the defendant included a proposed answer).

Further, for the reasons described more fully in Plaintiff's concurrently filed opposition to Defendant's motion to dismiss, the motion to dismiss entirely lacks merit. Defendant fails to raise any facts sufficient to establish a meritorious defense to any (much less all) of Plaintiff's causes of action and does not meaningfully dispute any material facts. *See Huang v. Baolin Ge*, 2020 WL 7428618, at *9 (N.D. Cal. Dec. 18, 2020) ("Defendant has not explained why these brief factual allegations establish a meritorious defense to Plaintiff's four causes of action. Defendant's two-sentence dispute of Plaintiff's factual allegations is insufficient to meet this burden. The Court therefore finds that Defendant has failed to establish a meritorious defense of Plaintiff's claims.").

Indeed, the Court must take all allegations in a well-pleaded complaint as true after the Clerk entered a default, and Defendant does not assert disputes about material facts other than to baselessly claim that the cards at issue are not counterfeit. *See generally* Dkt. No. 9; *see also Cassidy v. Tenorio*, 856 F.2d 1412, 1416 (9th Cir. 1988) ("[A] naked, conclusory allegation, without a statement of underlying facts which tend to support such an allegation, is insufficient to make out a colorable claim to a meritorious defense."); *Reflex Media, Inc. v. SuccessfulMatch.com*, 2020 WL 8459143, at *9 (D. Nev. Dec. 29, 2020), report and recommendation adopted, 2021

WL 240816 (D. Nev. Jan. 22, 2021) ("Because this Court takes all allegations in a well pleaded complaint as true after the Clerk enters default judgement, there is no likelihood that any genuine issue of material facts exists in this case. In addition, trademark and trade dress infringement are both strict liability claims, thereby limiting the scope of factual disputes.") (internal citations and quotations omitted) (citing *Herman Miller Inc. v. Alphaville Design Inc.*, 2009 WL 3429739, at *8 (N.D. Cal. Oct. 22, 2009)). Further, the only general legal defenses raised by Defendant are that the first sale doctrine protects his sales of counterfeit products; of course, this runs counter to Ninth Circuit law:

> The Court does not see how the first-sale doctrine is applicable in this case. *See Au-Tomotive Gold*, 603 F.3d [1133,] 1136 [(9th Cir. 2010)] (We emphasized that this rule "preserves an area of competition by limiting the producer's power to control the resale of its product," while ensuring that "the consumer gets exactly what the consumer bargains for, the genuine product of the particular producer." (quoting *Sebastian*, [*Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1075 (9th Cir.1995)]). The Government is not alleging the defendants legitimately purchased cellphones or accessories from the trademark holder and then resold them to consumers. **Instead, the Government is alleging that the defendants trafficked in goods with a counterfeit mark.**

*United States of America v. Babichenko*, 2021 WL 1994227, at *2 (D. Idaho May 18, 2021) (bold added).

Indeed, Defendant's motion primarily alleges only that Plaintiff failed to include sufficient factual specificity in its Complaint to survive dismissal and does not provide any legal justification for its request that Plaintiff not be allowed leave to amend. *See generally* Dkt. No. 9. This is insufficient to raise a meritorious defense to any of Plaintiff's claims, and therefore Defendant's motion should be denied.

### C.     Plaintiff Would be Severely Prejudiced by Reopening this Action

Plaintiff would also be severely prejudiced by reopening this action. A court should not reopen a default where it could cause prejudice to the nonmoving party. The standard for determining whether a plaintiff will be prejudiced if a defendant's

default is set aside is whether its ability to pursue its claims will be hindered. *Falk v. Allen*, 739 F.2d at 463. In the context of defaults, this can include "tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *TCI Group*, 244 F.3d at 701.

As described above, Plaintiff has been concerned about the potential prejudice of delaying resolution of this action from its inception. Litney Decl., ¶ 8, Ex. F. More recently, Plaintiff learned that Defendant has destroyed relevant evidence of marketing and potentially selling counterfeit products including Upper Deck's marks during the pendency of this action. *See* Litney Decl., ¶ 13, Exs. K, L. This District has denied a motion to set aside default under similar circumstances based on a finding of prejudice. *See Scharringhause*, 226 F.R.D. 406, 412-13. In *Scharringhause*, the plaintiff received evidence that the defendant *may have been* actively hiding assets during the pendency of the action, and found that "the delay resulting from reopening this action would prejudice the [plaintiff] by providing Defendant with a greater opportunity to conceal assets in an attempt to avoid his tax liabilities, a process in which Defendant *may* already be engaged." *Id.* (italics added).

Here, by contrast, Plaintiff has certain proof that Defendant has spoliated relevant evidence, which Defendant has failed to adequately cure or explain, and would be prejudiced by the loss of evidence relevant to Plaintiff's claims, and the increased difficulties of discovery relating to the same. Therefore, as Plaintiff would suffer prejudice if the default were reopened, Defendant's motion should be denied on this ground as well.

## V.    **CONCLUSION**

For the above reasons, the Court should deny Defendant's motion in its entirety, and should not set aside the default in this action in any respect.

Respectfully submitted:

Dated: September 17, 2021                    **NICHOLAS & TOMASEVIC, LLP**

                                            By:    */s/ Ethan T. Litney*
                                                   Craig M. Nicholas (SBN 178444)

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SET ASIDE DEFAULT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Shaun Markley (SBN 291785)
Ethan T. Litney (SBN 295603)
225 Broadway, 19th Floor
San Diego, California 92101
Tel:  (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: elitney@nicholaslaw.org

Attorneys for Plaintiff,
THE UPPER DECK COMPANY

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SET ASIDE DEFAULT