# EXHIBIT A

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| Nicholas & Tomasevic, LLP<br>Craig M. Nicholas, Esq. SBN 178444<br>225 Broadway 19th Floor<br>San Diego, CA 92101<br>TELEPHONE NO: 619-325-0492          FAX NO *(Optional)*:<br>ATTORNEY FOR *(Name)*:  Plaintiff | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF    San Diego
STREET ADDRESS:   330 W. Broadway
MAILING ADDRESS:
CITY AND ZIP CODE:   San Diego, 92101
BRANCH NAME:   San Diego County Superior Court - Hall of Justice

| PLAINTIFF / PETITIONER:  The Upper Deck Company, a Nevada corporation<br>DEFENDANT / RESPONDENT:  Miguel Flores, an individual, et al. | CASE NUMBER:<br>37-2021-00018912-CU-IP-CTL |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>5628485 |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [X] Summons
   b. [X] Complaint
   c. [X] Alternative Dispute Resolution (ADR) Package
   d. [X] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] Cross-Complaint
   f. [X] Other *(specify documents):*   Notice of Case Assignment and Case Management Conference (Civil); (Blank) Stipulation to Use Alternative Dispute Resolution (ADR)
3. a. Party served *(specify name of party as shown on documents served)*:
      Miguel Flores, an individual
   b. [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:

4. Address where the party was served:
   16919 Bell Ave., Lake Elsinore, CA 92530
5. I served the party *(check proper box)*
   a. [X] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*:   Tue, May 04 2021          (2) at *(time)*:   08:05 PM
   b. [ ] **by substituted service.** On *(date)*:                    at *(time)*:                    I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) [ ]  **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) [ ]  **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) [ ]  **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) [ ]  I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*: from *(city)*:                    or [ ] a declaration of mailing is attached.
      (5) [ ]  I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| PLAINTIFF / PETITIONER:   The Upper Deck Company, a Nevada corporation | CASE NUMBER: |
|---|---|
| DEFENDANT / RESPONDENT:   Miguel Flores, an individual, et al. | 37-2021-00018912-CU-IP-CTL |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date)*:         (2)  from *(city)*:

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgment of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section)*:

     ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☒ as an individual defendant.

  b. ☐ as the person sued under the fictitious name of *(specify)*:

  c. ☐ as occupant.

  d. ☐ On behalf of *(specify)*:

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| ☐ other: | |

7. **Person who served papers**

  a. Name:         Dianne Loch

  b. Address:      4651 Brookhollow Cir. Ste. C, Riverside, CA 92509

  c. Telephone number:  951-353-8281

  d. **The fee for service was:**  $89.95

  e. I am:

    (1) ☐ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☒ a registered California process server:

        (i) ☐ owner  ☐ employee  ☒ independent contractor

        (ii) Registration No:  1682

        (iii) County:  Riverside

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date:  05/05/2021

Dianne Loch

    (NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL)          (SIGNATURE)

# EXHIBIT B

**Anderson Law - We Protect Imagination**®
41923 2nd Street #201
Temecula, California 92590
(951) 296-1700
attorneys@brandxperts.com

May 19, 2021

Craig M. Nicholas and/or
Shaun Markley & Ethan T. Litney
Nicholas & Tomasevic, LLP
225 Broadway
19th Floor
San Diego, CA 92101

     and via email to:    cnicholas@nicholaslaw.org, smarkley@nicholaslaw.org,
                      ELitney@nicholaslaw.org

     RE:    *The Upper Deck Company v. Miguel Flores*
           San Diego Superior Court No. 37-2021-00018912-CU-IP-CTL

Dear Counsel:

This office has been retained to represent the interests of Miguel Flores, Defendant in the above-identified action filed by your client in the San Diego Superior Court. Please therefore address any communications or correspondence regarding this matter solely to the undersigned counsel.

I note that there is an indication on the Summons that the Defendant was personally served on May 4, however, he has advised me that the date written thereon was incorrect, and rather, that he was actually served with the Summons and Complaint on May 8, 2021. We would therefore appreciate if you could confirm the actual service date and forward me any proofs of service concerning same.

Next, please be advised that my client respects the intellectual property rights of others, and that while he most certainly denies the allegations, as for the few relevant basketball cards that my client offered for sale on eBay, he neither manufactured the cards, nor are we aware of any evidence suggesting that the cards were counterfeit as alleged in your client's Complaint. Moreover, he is agreeable to identifying the source of the cards, and his records concerning these relatively *de minimus* sales. Thus, once we are able to more clearly understand the nature and basis of your client's serious, (and somewhat erroneous, invalid and plainly over-stated)_legal claims, we hope and expect that we can reach a swift and amicable resolution of this action.

For now, I have just begun my own investigation of your client's claims and allegations and already have serious concerns, not only regarding the factual allegations, but also regarding several important legal issues that "jump off the page", even at first blush.

Indeed, in view of Fed. R. Civ. Pro. Rule 11, as well as California Code of Civ. Procedure Section 128.7(b), I would be eager to speak with you concerning the factual allegations and legal grounds underlying your client's Complaint, in view of a number of obvious preliminary issues and concerns, which already seem to require the implication of a huge amount of litigation time,

Craig M. Nichoas  – for The Upper Deck Company
May 19, 2021
Page **2**

particularly as compared to the dwarflike, de minimus and indeed relatively improbable, if not completely devoid claims of liability and damages that Upper Deck might ever conceivably be entitled to recover against Mr. Flores.

As a legal draftsman and attorney for over 30 years, it seems to me that your client's Complaint alleges some factual matter that appears vague, overbroad and even plainly incorrect in context of the claims, suggesting that the work was drafted based on a prior complaint filed by your office; perhaps the allegations were first drafted for filing in the Federal Court in *Upper Deck v. Panini America, Inc.* and later amended for a different case, E.g., *Upper Deck v. Ronald Brinza* or *Upper Deck v. William Trudsoe.*

Besides the erroneous notion that the few cards Mr. Flores sold were allegedly "counterfeit", a few other matters remain highly questioned and will likely be vigorously disputed: One particular question lingers as to why despite the respective requirements of both Cal. Rules of Professional Conduct 3.3[1], and California Code, Business and Professions Code § 6068, you would falsely include at page 3 of your client's Complaint, footnotes 1 and 2 purporting that "*Upper Deck's exclusive license related to Jordan has been recognized by state and federal courts*"

In view of the attached ruling by Judge Curiel's Order, Dkt. 63 in USDC San Diego Case No. 20cv185-GPC(KSC) (S.D. Cal. Apr. 13, 2021) I would dare suggest that at the time you filed the Complaint against Mr. Flores, you were plainly aware that the matters alleged in such footnotes are misleading, at best, if not totally false. Either way, in my humble view, by submitting such statements to the Court, you plainly violated the duty that an attorney owes a tribunal and such false, denounced and incomplete allegations must be stricken from the Complaint.

Indeed, it has oft-been said and is the controlling law of this District that:

*Under the rules of practice applicable in federal courts and the courts of virtually every state, an attorney may not knowingly fail to disclose controlling authority that is directly adverse to*

---

[1] *See e.g.*, *Precision Specialty Metals, Inc. v. US*, 315 F.3d 1346 (Fed. Cir. 2003)("Other courts of appeals that have considered the application of Rule 11 to attorney-case-citation issues have reached differing results. … In some of the cases that have rejected sanctions, the attorney's alleged violation was failure to discover precedents that negated his position. See, e.g., *United States v. Stringfellow,* 911 F.2d 225, 227 (9th Cir.1990). … In the present case, however, Walser was sanctioned not for failure to discover pertinent precedents or to cite adverse decisions. She violated Rule 11 because, in quoting from and citing published opinions, she distorted what the opinions stated by leaving out significant portions of the citations or cropping one of them, and failed to show that she and not the court has supplied the emphasis in one of them. We know of no appellate decision holding that Rule 11 does not cover such misstatements of legal authority. *Cf. Teamsters Local No. 579 v. B & M Transit., Inc*., 882 F.2d 274, 280 (7th Cir.1989) (upholding Rule 11 sanction for "misstating the law"); *Borowski v. DePuy, Inc.*, 850 F.2d 297, 304-05 (7th Cir.1988) **(Counsel's "ostrich-like tactic of pretending that potentially dispositive authority against [his] contention does not exist[] [is] precisely the type of behavior that would justify imposing Rule 11 sanctions**." (internal citation omitted, emphasis added).

Craig M. Nichoas  – for The Upper Deck Company
May 19, 2021
Page **3**

*the position he or she advocates. See, e.g., Cal. Rules Prof. Conduct, Rule 5-200(B) (counsel shall not mislead the court regarding the facts or law); ABA Model Code Prof. Responsibility, DR 7-106(B)(1) (lawyer shall disclose to the court legal authority in the controlling jurisdiction known to him to be directly adverse to the position of his client and which is not disclosed by opposing counsel); ABA Model Rules Prof. Conduct, Rule 3.3 (lawyer shall not knowingly fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel). The Ninth Circuit has observed that this rule "is an important one, especially in the district courts, where its faithful observance by attorneys assures that judges are not the victims of lawyers hiding the legal ball." Transamerica Leasing, Inc v. Compania Anonima Venezolana de Navegacion, 93 F.3d 675, 675-76 (9th Cir.1996). Ensuring candor toward the court is especially important when, as here, both / / / parties advocate a particular result, and the pleadings lack the usual adversarial sharpness that characterize motion practice.*

*Examples abound of courts approving disciplinary action against attorneys who knowingly fail to disclose adverse authority. See, e.g., Southern Pacific Transp. Co. v. Public Utilities Comm'n. of State of Cal., 716 F.2d 1285, 1291 (9th Cir.1983) (characterizing an attorney's failure to acknowledge controlling precedent as "a dereliction of [its] duty to the court ..."); United States v. Stringfellow, 911 F.2d 225, 226 (9th Cir.1990) (where counsel fails to cite controlling case law that renders its position frivolous, he or she "should not be able to proceed with impunity in real or feigned ignorance of them, and sanctions should be upheld."); Malhiot v. Southern California Retail Clerks Union, 735 F.2d 1133, 1138 (9th Cir.1984) (sanctioning party sua sponte under 28 U.S.C. § 1927 for deliberately misquoting statute); Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., 833 F.2d 208, 212 (9th Cir.1987) (awarding sanctions in part because argument on appeal ignored controlling Supreme Court authority); McEnery v. Merit Sys. Protection Bd., 963 F.2d 1512, 1516-17 (Fed.Cir.1992) (awarding sanctions on appeal for failing to reference or discuss controlling precedent); DeSisto College, Inc. v. Line, 888 F.2d 755, 766 (11th Cir.1989) (noting that counsel must acknowledge the binding precedent of the circuit). These cases recognize that while courts should encourage attorneys to assert novel legal theories, attorneys must nonetheless acknowledge authority that is directly adverse to their positions. Counsel are reminded of these standards going forward.*

*United States v. Blondeau, No. 10-CR-3871-LAB, at \*2-3 (S.D. Cal. Mar. 15, 2016).*

Another important consideration herein is the First Sale Doctrine.

As the legitimate owner of these (few) Upper Deck trading cards that Mr. Flores, offered for sale on eBay (for a mere pittance and with little potential for profit), although he did not create, display or use any marks allegedly owned by your client, Mr. Flores had the absolute right to nominally use of Upper Deck's alleged trademarks in connection with the disposition of his own personal property, which he maintains were lawfully obtained and are not apparent "counterfeits," by any means. Indeed, you client has no apparent right of suit under the First Sale Doctrine[2],

---

[2] See also *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519 (2013);

Craig M. Nichoas – for The Upper Deck Company
May 19, 2021
Page **4**

codified at 17 U.S.C. § 109, which provides that an individual who knowingly purchases a copy of a copyrighted work receives the right to sell, display or otherwise dispose of that particular copy, notwithstanding the interests of the copyright owner.

Meanwhile, your client has alleged in support of its claims for Federal Trademark Infringement (Complaint, Counts 1 and 3) and Trademark Dilution (Count 2), *inter alia,* that it is the licensee of the rights to the name and image of Michael Jordan and that it has the right to enforce his rights of publicity under Cal Civ. Code Section 3344; however, as you are plainly aware, and you were explicitly advised by Judge Curiel, prior to your filing of this action, your client, Upper Deck lacks any "property interest in the trademark" alleged in this same action, and "lacks standing to bring" an action for allegations of trademark infringement involving the marks of Michael Jordan and because these very goods, a few trading cards legitimately obtained by Mr. Flores (and only apparently offered for sale by him, for small dollar amounts, while lawfully disposing of his own property to cover for a recent job loss) plainly do not infringe any right of the licensee, Upper Deck. Please consult Judge Curiel's Order in USDC San Diego Case No. 3:20-cv-00185 for further analysis regarding these important issues: (Dkt. 63, April 13, 2021)

On that subject, another issue that jumped out at me was the curious fact that you had recently filed this (and at least two other) civil complaints by Upper Deck in the Superior Court.

In view of the important Federal questions and the interest that Judge Curiel has in overseeing the fair and consistent administration of justice within this District, should we be forced to respond to the unfounded and plainly inadequate, invalid and misguided claims alleged in this action, we will most certainly seek to file a motion to dismiss this action, and in the alternative, to remove the matter to the Federal Court, and in view of the facts before me, in such motion(s) we will more than likely seek sanctions against you and your client in such regard.

On that subject, and for such reasons, to avoid the potential for imminent legal motions and the likelihood of an award of sanctions should you and your client persist in this misguided mission, I have at least three "wishes", or rather requests for your immediate consideration, namely:

---

*Allison et al. v. Vintage Sports Plaques et al.*, U.S.C.A. 11th Circuit, No. 96-6809, (March 18, 1998); "As a general rule, trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner." *Polymer Tech. Corp. v. Mimran,* 975 F.2d 58, 61 (2d Cir. 1992); This general rule flows from the principle that the right of a manufacturer to control distribution of its products does not extend beyond the first sale of the product, *as long as the product sold is genuine. See Abbott Labs. v. Adelphia Supply USA,* 15-CV-5826 (CBA) (LB), 2019 WL 5696148, at *4-5 (E.D.N.Y. Sept. 30, 2019); *Bel Canto Design, Ltd. v. MSS Hifi, Inc.,* 837 F. Supp.2d 208, 222-23 (S.D.N.Y. 2011);
The First Sale Doctrine Defense as a Limit on the Right of Publicity: Allison v. Vintage Sports Plaques *LMU Law Review* 1-1999
https://digitalcommons.lmu.edu/cgi/viewcontent.cgi?article=1385&context=elr
The First Sale Doctrine and the Economics of PostSale Restraints *BYU Law Review,* V2014 I1
https://digitalcommons.law.byu.edu/cgi/viewcontent.cgi?article=2912&context=lawreview

Craig M. Nichoas  – for The Upper Deck Company
May 19, 2021
Page **5**

1)  Please provide any proofs of service regarding this matter; and advise me in writing within three (3) days, if Plaintiff intends to Amend the Complaint on file herein;

2)  Inasmuch as I was only retained yesterday afternoon, please advise if you will grant to Mr. Flores an extension of time to file a response or to otherwise plead in this matter, through and including July 8, 2021; and

3)  Please advise when you are available for a brief teleconference wherein I can fill you in on some additional factual details and where I hope to learn more about your client's claims and legal theories.

In the interim, if you require any further information or wish to enlighten me with any additional facts or claims omitted from your pleading, please feel free to advise me immediately. Otherwise, I look forward to hearing from you soon.

Sincerely yours,

/S/
*Stephen L. Anderson*

cc:    client

Case No.: 20cv185-GPC(KSC)

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

# Upper Deck Co. v. Panini Am., Inc.

Decided Apr 13, 2021

Case No.: 20cv185-GPC(KSC)

04-13-2021

THE UPPER DECK COMPANY, a Nevada corporation, Plaintiff, v. PANINI AMERICA, INC., Defendant.

Hon. Gonzalo P. Curiel United States District Judge

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS [REDACTED - ORIGINAL FILED UNDER SEAL]

## [Dkt. No. 42.]

Before the Court is Defendant's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Dkt. No. 42.) Plaintiff filed an opposition and Defendant replied. (Dkt. Nos. 47, 51.) Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendant's motion for judgment on the pleadings.

## Background

On August 24, 2020, Plaintiff Upper Deck Company ("Plaintiff" or "Upper Deck") filed the operative second amended complaint ("SAC") against Defendant Panini America, Inc. ("Defendant" or "Panini") alleging six causes of action for 1) false affiliation/false endorsement, false advertising, and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); 2) trademark dilution under the Lanham Act, 15 U.S.C. § *2

1125(c); 3) trademark infringement under 15 U.S.C. § 1114; 4) commercial misappropriation; 5) right of publicity under California Civil Code section 3344 *et seq.*; and 6) unfair competition pursuant to California Business & Professions Code sections 17200 *et seq.* ("UCL"). (Dkt. No. 28, SAC.)

Upper Deck is a worldwide sports and entertainment company that produces sports memorabilia products, trading card products, as well as many other sports and entertainment products. (*Id.* ¶ 2.) For decades, Upper Deck has been and continues to have an exclusive license with Michael Jordan ("Jordan") to "use his image, name, likeness, marks, and other rights on and in connection with, among other products, trading cards." (*Id.* ¶ 4.) It has been the only trading card manufacturer to have a license agreement for trading cards with Jordan. (*Id.* ¶ 7.) Jordan's name has been registered as a trademark with the U.S. Patent and Trademark Office since at least 1988. (*Id.* ¶ 16.) Jordan's jersey number 23 is also a federally registered trademark (collectively "Jordan Marks"). (*Id.* ¶ 17.)

Panini is one of Upper Deck's main competitors in the trading card market and also enters into exclusive license agreements for, among other licensed products, trading cards and since 2009 has had exclusive license agreements with current active players of the National Basketball Association ("NBA"). (*Id.* ¶¶ 6, 8.) However, its license does not include the right to feature Jordan in any of Panini's trading cards. (*Id.* ¶¶ 8, 32.)

Jordan's name is distinctive, famous and easily recognized throughout the world. (*Id*. ¶ 16.) In 1984, the Chicago Bulls drafted Jordan third overall in the NBA draft after a stellar collegiate career. (*Id*. ¶ 18.) While in the NBA, Jordan won six championships with the Chicago Bulls; as a result, his name and image along with the number 23 is and continues to be legendary and may be the most famous name and jersey number in the history of professional sports. (*Id*. ¶ 19-20.) Millions around the world easily recognize these marks. (*Id*. ¶ 21.) As a result, trading cards featuring Jordan's publicity rights are highly valuable and highly sought after in the marketplace in the primary and secondary markets. (*Id*. ¶ 22.) Further, a new trading card featuring Jordan in his 23 number jersey *3 has not been released for at least 10 years which has left collectors with an insatiable appetite for any Jordan trading card. (*Id*. ¶ 25.)

The market for sports trading cards is extremely lucrative; for example, a single rare trading card featuring Jordan sold on eBay for $350,100. (*Id*. ¶ 26.) Moreover, the background imagery of a trading card can have substantial bearing on the value of the card. (*Id*. ¶ 44.) Use of cameos featuring ancillary figures in the background of trading cards increases the value of those cards, and individuals in the background of an image on a trading card can dramatically increase the value of both the trading card and the trading card release. (*Id*. ¶¶ 44-45.)

In November 2017, Panini printed the 2017-2018 "Donruss Basketball Retro Series" card featuring Scottie Pippen which did not include any image of Jordan. (*Id*. ¶¶ 35, 37 (photo).) Four months later, in April 2018, Panini released its 2017-2018 Donruss Optic Retro trading card set which was its more expensive and higher end version of the Donruss Basketball Retro Series released in November 2017. (*Id*. ¶ 36.) Within the set, Panini included the same exact image featuring Scottie Pippen ("Pippen Card") on the 2017-2018 Donruss Basketball Retro Series, but this card included a

small image of Jordan in the bottom right corner of the card. (*Id*. ¶ 37 (photo).) Panini later released its 2018-19 Panini Contenders Basketball trading card set. (*Id*. ¶ 38.) Within this set, Panini included a card of Dennis Rodman ("Rodman Card"), the background of which prominently featured Jordan. (*Id*.)

Upper Deck alleges that Panini deliberately altered and manipulated Jordan's image into the background of these two trading card releases to market and increase the sale of its products and brand equity, to use Jordan for commercial gain, to confuse the market, and to harm Upper Deck including Upper Deck's brands, goodwill, and exclusive contract. (*Id*. ¶¶ 9-10, 39.) As part of the exclusive license, Jordan assigned Upper Deck the right to begin an action relating to a third party's infringing use of Jordan's rights. (*Id*. ¶¶ 27, 50.) *4

During discovery, Plaintiff produced the license agreement entitled [Redacted] Agreement ("Agreement") between Upper Deck [Redacted] .[1] (Dkt. No. 54, Agreement, (UNDER SEAL).) In its motion, Defendant moves for judgment on the pleadings on a part of the first and sixth causes of action and on the second, third, fourth and fifth causes of action for lack of standing. Plaintiff opposes arguing it has standing to bring these causes of action.

[1] [Redacted] (Dkt. No. 54, Agreement ¶ 15 (UNDER SEAL).)

## Discussion

## A. Legal Standard as to Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure ("Rule") 12(c) allows parties to move for judgment on the pleadings after the pleadings have been closed but prior to trial, and "within such time as not to delay the trial." Fed. R. Civ. P. 12(c). The standard for determining a Rule 12(c) motion for judgment on the pleadings is the same as the standard for a Rule 12(b)(6) motion to dismiss. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d

1047, 1053 & n.4 (9th Cir. 2011) (the same standard of review applies to motions brought under Rule 12(c) as motions brought under Rule 12(b)(6)). On a Rule 12(c) motion, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios*, *Inc. v. Richard Feiner and Co.*, *Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Id.* A court must not consider matters beyond the pleadings as such a proceeding must be treated as a motion for summary judgment. *Id.* \*5

Under the incorporation by reference doctrine, the Court may consider in a motion to dismiss any documents referenced in the complaint or on which the complaint necessarily relies. *Davis v. HSBC Bank Nevada*, *N.A.*, 691 F.3d 1152, 1159-60 (9th Cir. 2012); *Khoja v. Orexigen Therapeutics*, *Inc.*, 899 F.3d 988, 999-1002 (9th Cir. 2018) ("A plaintiff incorporates a document by reference where the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim."). "Specifically, courts may take into account 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Davis*, 691 F.3d at 1160 (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)).

The parties do not dispute that the Agreement, though not attached to the SAC, may be incorporated by reference on the motion for judgment on the pleadings. (Dkt. No. 42 at 9; Dkt. No. 47 at 13.) Because the Agreement is referred to repeatedly in the SAC, forms the basis for Plaintiff's claims and the parties do not dispute the authenticity of the document, the Court will consider the Agreement as incorporated by reference in the SAC without converting the motion into one for summary judgment. *See Davis*, 691 F.3d at 1160. **B. Standing on First**, **Second and Third Causes of Action**

First of all, Defendant moves to dismiss part of the SAC's first claim[2], as well as the second and third claims for lack of standing because Plaintiff has not explicitly been granted a license to use the Jordan Marks given that the Agreement does not specifically convey a license in any trademark and only references right to use "Jordan's name and likeness." (Dkt. No. 42 at 11.) Upper Deck responds that the Agreement provides for an express license to use the Jordan Marks as it encompasses "Michael's Jordan's name and \*6 likeness" which are registered trademarks. (Dkt. No. 47 at 17-18.) It claims that Jordan's "likeness" reasonably extends to his jersey number "23". (*Id.* at 18.) Moreover, Panini argues, at most, Upper Deck's argument demonstrates the Agreement is ambiguous and warrants an examination of extrinsic evidence to determine the parties' intent. (*Id.* at 19.)

> 2  Defendant moves to dismiss paragraph 58 of the first cause of action alleging that Upper Deck has exclusive rights to use certain of Jordan's marks including Michael Jordan and "23." (Dkt. No. 28, SAC ¶ 58.)

While there is no explicit reference allowing Upper Deck to use the Jordan Marks, the Agreement [Redacted] ." (Dkt. No. 54, Agreement ¶ 2(A) (UNDER SEAL).) [Redacted] (*Id.* ¶ 1(A) (UNDER SEAL).) [Redacted] (*Id.* ¶ 2(A) (UNDER SEAL).) The SAC alleges and Defendant does not challenge that "Michael Jordan" and his jersey number "23" are federally registered trademarks. (Dkt. No. 28, SAC ¶¶ 16, 17.) The Court questions Plaintiff's position that a license to Jordan's "likeness" extends to Jordan's jersey number "23" and whether a license to Jordan's "name" equates to a license to his trademark. However, on a motion for judgment on the pleading, the Court concludes the SAC has plausibly alleged that the Agreement includes use

of the Jordan Marks and the Court cannot conclude that it is clearly established that no material issue of fact remains to be resolved. Moreover, because the Agreement is reasonably susceptible to Upper Deck's interpretation, to the extent that these terms are ambiguous, extrinsic evidence should be considered, and such an analysis is also not proper on a motion for judgment on the pleadings. Accordingly, the Court DENIES Defendant's motion for judgment on the pleading on this issue.

## C. Standing on Second and Third Causes of Action

Next, Defendant argues the second cause of action for trademark dilution, under 15 U.S.C. § 1125(c), and third cause of action for trademark infringement, under 15 U.S.C. § 1114, must be dismissed for lack of standing because Upper Deck is not an exclusive licensee of the Jordan Marks and it has no property interest in the name Michael Jordan and the "23" marks for all goods and services. (Dkt. No. 42 at 12-13; 17-18.) Plaintiff *7 contends that it has a sole, exclusive, worldwide license to use Jordan's name and likeness worldwide for 10 years in trading cards. (Dkt. No. 47 at 22.) Further, Plaintiff asserts that the property rights argument raised by Defendant is without merit. (*Id.* at 25-26.)

15 U.S.C. § 1114 allows an action for trademark infringement to be brought by the "registrant" of the mark. 15 U.S.C. § 1114. The term registrant includes the "legal representatives, predecessors, successors and assigns of such applicant or registrant." 15 U.S.C. § 1127. "To establish standing to sue for trademark infringement under the Lanham Act, a plaintiff must show that he or she is either (1) the owner of a federal mark registration, (2) the owner of an unregistered mark, or (3) a nonowner with a cognizable interest in the allegedly infringed trademark." *Halicki Films, LLC v. Sanderson Sales and Mktg.*, 547 F.3d 1213, 1225 (9th Cir. 2008). In this case, the issue is whether Plaintiff is a "nonowner with a

cognizable interest in the allegedly infringed trademark." *See id.* In addition, a claim for trademark dilution limits standing to the "owner" of the mark. *See* 15 U.S.C. § 1125(c).

As the Court noted in its prior order, the Ninth Circuit has not addressed whether an exclusive licensee has standing to sue for trademark infringement under § 1114 or standing to sue for trademark dilution under § 1125(c)(1). *Upper Deck Co. v. Panini America, Inc.*, 469 F. Supp. 3d 963, 977, 979 (S.D. Cal. 2020). For standing under § 1114, the prevailing approach by district courts in this circuit has been to hold "that standing may exist where the licensing agreement both [1] grants an exclusive license and [2] grants to the exclusive licensee a property interest in the trademark, or rights that amount to those of an assignee." *Halcyon Horizons, Inc. v. Delphi Behavioral Health Grp., LLC*, No. 17-cv-00756-JST, 2017 WL 1956997, at *3 (N.D. Cal. May 11, 2017) (*quoting Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*, No. C 12-05523 WHA, 2013 WL 1007666, at *3 (N.D. Cal. Mar. 13, 2013)); *Lasco Fittings, Inc. v. Lesso Am., Inc.*, No. EDCV 13-02015-VAP (DTBx), 2014 WL 12601016, at *4 (C.D. Cal. Feb. 21, 2014) (same); *see also Visa U.S.A., Inc. v. First Data Corp.*, No. C 02-01786 JSW, *8 2005 WL 6271242, at *4 (N.D. Cal. Aug. 16, 2005) (no standing for a non-exclusive licensee without significant property rights to the trademark); *Nat'l Licensing Ass'n, LLC v. Inland Joseph Fruit Co.*, 361 F. Supp. 2d 1244, 1254 (E.D. Wash. 2004) ("Where a licensing agreement does not grant the licensee a property interest in the mark or otherwise assign to the licensee the registrant-licensor's ownership rights, the licensee, even if exclusive, cannot enforce the mark under [15 U.S.C. § 1114(1)]"); *see also DEP Corp. v. Interstate Cigar Co.*, 622 F.2d 621, 623 (2nd Cir. 1980) (licensee lacks standing when provisions in the contract indicate the licensor retains exclusive ownership of the mark).

"The determination of whether a licensee has standing to sue under § 1114 largely depends on the rights granted to the licensee in the licensing agreement." *Ultrapure Sys.*, *Inc. v. Ham-Let Grp.*, 921 F. Supp. 659, 665 (N.D. Cal. 1996). For example, no standing exists if the license is non-exclusive or where the licensing contract indicates that the licensor retains exclusive ownership of the mark. *Id*. In *Ultrapure*, the court denied dismissal of the trademark infringement claim because the contract gave exclusive use of the trademark in the United States and did not set forth any restrictions on the licensee's ability to enforce the trademarks. *Id*. at 665-66. The court concluded that the plaintiff, as the exclusive licensee, had a property interest in the trademark and qualified as an assignee or successor of the registrant. *Id*.

In its prior order, the Court also noted that district courts have applied a similar § 1114 analysis to establish standing under § 1125(c)(1) by looking at the terms of the licensing agreement and what rights were granted to the licensee. *Upper Deck Co.*, 469 F. Supp. 3d at 979 (citing *STX, Inc. v. Bauer USA*, *Inc.*, No. C 96-1140 FMS, 1997 WL 337578, at *4 (N.D. Cal. June 5, 1997); *Williams v. SBE Entm't Grp.*, Case No. CV 07-7006 GAF (PJWx), 2008 WL 11339999, at *4 (C.D. Cal. Nov. 10, 2008)).

The primary case cited by Plaintiff, *Innovation Ventures*, involved an assignment and a reciprocal license back agreement commonly recognized in trademark law. *Innovation Ventures* 2013 WL 1007666, at *2. The court noted that the rights conveyed [9] *9 by the licensor to the exclusive licensee appeared to be substantial and included (1) the right to use all intellectual property including the "exclusive right to use, make, have made, import, offer to sell, and sell any product or process including the right to sublicense in the United States and throughout the world"; and (2) the right to sue for infringement and to compel the licensor to join the lawsuit. *Id*. at *5. The court noted that the licensor "lost its ability to use the trademarks in any way" and the "rights retained

[by the licensor] were few." *Id*. Because some rights were retained by the licensor, such as whether the rights retained by the licensor included the title and ownership of the mark, some control over litigation related to the mark, and the right to inspect the licensee's use of the marks to ensure the quality of the products", the court stated it was a "close call" whether "all" significant rights to the trademarks-in-suit were granted and declined to rule on it on a motion to dismiss. *Id*. at 6.

Alternatively, in *Lasco Fittings*, the court distinguished the licensing agreement before it from the one granted in *Innovation Ventures*, and on a motion to dismiss, found the plaintiff lacked standing to bring suit. 2014 WL 12601016, at *4. The *Lasco* court relied on four distinctions in finding the license agreement was limited in scope; (1) the "[l]icense is only for certain types of products and not for the trademark in its entirety," (2) "the license contains clauses explicitly stating that the licensor retains title and ownership of the mark and all rights not expressly granted in this exclusive license," (3) "the licensor retains control over the nature and quality of the products sold by LASCO using the mark, a requirement that is not consistent with an assignment," and (4) "although the [l]icense gives LASCO the right to sue to enforce the mark for certain products covered under the license, LASCO must notify the licensor and may not enforce the trademark in relation to other products." *Id*. Finally, the court concluded the "structure of the [l]icense agreement d[id] not suggest the parties intended the exclusive [l]icense to be equivalent to an assignment." *Id*.

To establish standing, the Agreement must grant to the exclusive licensee "a property interest in the trademark, or rights that amount to those of an assignee." *See* [10] *10 *Halcyon Horizons*, *Inc*., 2017 WL 1956997, at *3. In distinguishing between an assignment and a license, one district court explained that "[a] assignment passes legal and equitable title to the property while a license is mere permission to use. Assignment is the transfer

of the whole of the interest in the right while in a license the owner retains the legal ownership of the property." *Innovation Ventures, LLC*, 2013 WL 1007666, at *3 (quoting *Presley's Estate v. Russen*, 513 F. Supp. 1339, 1350 (D.N.J. 1981)). Therefore, a property right that amounts to those of an assignee requires an assignment of the entirety of the trademark for all goods and not limited to certain types of products and the licensor retains significant title and ownership of the mark. *See Lasco Fittings*, 2014 WL 12601016, at *4 (no standing because, *inter alia*, "[l]icense is only for certain types of products and not for the trademark in its entirety,"); *Nova Wines, Inc. v. Adler Fels Winery LLC*, 467 F. Supp. 2d 965, 974 (N.D. Cal. 2006) (licensee did not have standing where exclusive license was only for certain types of wine and a clause reserved to the licensor all rights not explicitly granted; therefore, the license was non-exclusive and did not convey a property interest).

In this case, the parties do not dispute that the analysis for standing under § 1114 and § 1125 are similar and agree that standing will depend on the terms of the Agreement nor do they appear to dispute the material rights granted or not granted to Upper Deck in the Agreement. (*See* Dkt. No. 42; Dkt. No. 47.) They disagree on the legal standard to support standing. Defendant argues that an exclusive licensee has standing to pursue trademark infringement and trademark dilution claims only if the licensee has rights that amount to an assignment of the trademark which means the right to use the Jordan Marks in all products. On the other hand, Plaintiff argues that it has standing to sue because it has an exclusive worldwide license to use Jordan Marks in a specific product, that is, trading cards. The Court concludes that Defendant's argument is in line with caselaw. *11

Here, the Agreement [Redacted] , (Dkt. No. 54, Agreement ¶¶ 2(A); 10[4] (UNDER SEAL)); it does not grant an exclusive license to use the Jordan Marks in all products. Moreover, the Agreement

unambiguously states [Redacted] (Dkt. No. 54, Agreement ¶ 3[5] (UNDER SEAL).) Because the Agreement grants Plaintiff exclusive rights to [Redacted] and not exclusive rights to the trademarks, Plaintiff does not have a property right to the trademarks akin to an assignment. *See Nova Wines, Inc.*, 467 F. Supp. 2d at 974 (licensee did not have standing where exclusive license was only for certain types of wine and a clause reserved to the licensor all rights not explicitly granted).

4   The Agreement states that Upper Deck owns, [Redacted] (Dkt. No. 54, Agreement ¶ 10 (UNDER SEAL).) This provision limits Upper Deck rights and ownership solely to certain types of products and not for the trademark in its entirety.

5   The licensor [Redacted] and not [Redacted] " (Dkt. No. 54. Agreement ¶ 3 (UNDER SEAL).)

Upper Deck responds that it has standing as an exclusive licensee of trading cards because the Agreement grants it the ability to pursue litigation against third party infringers and because it has exclusive rights to make a designated product bearing the marks at issue citing *Hem & Thread, Inc. v. Wholesalefashionsquare.com, Inc.*, Case No. 2:19-cv-283-CBM-AFMx, 2019 WL 6486039, at *1 (C.D. Cal. Aug. 23, 2019). In *Hem & Thread*, in a summary analysis and also without the benefit of the written license agreement, the court denied dismissal based on standing because the complaint alleged that the agreement "specifically provides that either Plaintiff. . . may prosecute any infringement or otherwise unauthorized use of the Trademark" and it had the exclusive *12 right to use the trademark in connection with its products. *Id.* (citing *Lasco Fittings*, 2014 WL 12601016, at *4). However, the district court's reliance on *Lasco Fittings* does not support its conclusion. In *Lasco Fittings*, the court granted dismissal of the trademark infringement claim because the exclusive license of the trademark was limited to certain products and

does not support Plaintiff's argument. *See Lasco Fittings*, 2014 WL 12601016, at *4. Upper Deck also cites to *Novartis Animal Health US, Inc. v. LM Connelly & Sons, Pty Ltd.*, No. 04 Civ. 10213(BSJ), 2005 WL 1902085, at *3 (S.D.N.Y. June 14, 2005); however, in that case Novartis Animal Health US, Inc. had standing to sue for trademark infringement because while it had an exclusive license of certain trademarks used in connection with pet medicine it was also an "indirect subsidiary" of the trademark owner, Novartis USA. *Id.* In this case, there is no corporate relationship between Upper Deck [Redacted] and *Novartis Animal Health US* is not supportive of Plaintiff's argument.

Further, "the structure of the [l]icense agreement does not suggest the parties intended the exclusive [l]icense to be equivalent to an assignment." *See Lasco Fittings*, 2014 WL 12601016, at *4. Throughout the Agreement are provisions requiring Upper Deck to obtain the [Redacted] of the licensor. The licensor's extended retention of control illustrate that the Agreement does not transfer all substantive rights in the Jordan Marks to Plaintiff, as the licensor retained the rights to (1) [Redacted] , (Dkt. No. 54, Agreement ¶ 4 (UNDER SEAL)), (2) [Redacted] (*id.* ¶ 25(A), (3) [Redacted] (*id.* ¶ 23 (UNDER SEAL)), (4) a [Redacted] , (*id.* ¶ 12 (UNDER SEAL)), and (5) [Redacted] , (*id.* ¶ 8(B) (UNDER SEAL)).

The Agreement does not grant Upper Deck a property interest in the trademark, or rights that amount to those of an assignee. *See Innovation Ventures*, 2013 WL 1007666, at *3. Accordingly, Plaintiff lacks standing to bring the second and third cause of action *13 and the Court GRANTS Defendant's motion to dismiss the second and third causes of action.[6]

13

> [6] Because the Court concludes that Plaintiff was not granted a property interest in the Jordan Marks that is akin to an assignment, which is dispositive of the standing issue, the Court need not address Defendant's additional argument that the Agreement did

not grant an exclusive license, (Dkt. No. 42 at 13-17). *See Halcyon Horizons, Inc.*, 2017 WL 1956997, at *3 (to establish standing the exclusive license must "[1] grant[] an exclusive license and [2] grant[] to the exclusive licensee a property interest in the trademark, or rights that amount to those of an assignee.").

**1. Extrinsic Evidence**

Plaintiff additionally argues that the Court should decline to address standing based solely on the Agreement because it should consider additional integral extrinsic evidence. (Dkt. No. 47 at 12-15.) Defendant replies the Agreement is clear and unambiguous. (Dkt No. 51 at 8-9.)

In California, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636; *Bank of the West v. Superior Ct.*, 2 Cal. 4th 1254, 1264 (1992). "If contractual language is clear and explicit, it governs." *Bank of the West*, 2 Cal. 4th at 1264.

Under California contract law, "[w]here parties dispute the meaning of contractual language, 'the first question to be decided is whether the disputed language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over." *Halicki*, 547 F.3d at 1223. The Court must provisionally receive extrinsic evidence to determine whether the contract at issue is "reasonably susceptible" to the interpretation urged by a party, even if the court concludes "'that the language of the contract appears to be clear and unambiguous on its face.'" *Id.* While extrinsic evidence may not "vary, alter or add to" the terms of a contract, it may be examined "'to prove a meaning to which the language of the instrument is reasonably susceptible'"; if the evidence supports the interpretation urged, then it is "'admitted to aid in . . . interpreting the contract.'" *Id.*; *14 see also Spin Master, Ltd. v. Zobmondo*

14

*Entm't*, LLC, Nos. CV 06-3459 ABC (PLAx), CV 07-0571 ABC (PLAx), 2011 WL 3714772, at *7 (C.D. Cal. Aug 22, 2011).

The Court concludes that the Agreement is unambiguous and not susceptible to different interpretations on the rights granted to Upper Deck in the Agreement to support standing on the second and third causes of action. Moreover, consideration of extrinsic evidence is not proper on a motion for judgment on the pleadings. However, even if the Court were to consider the extrinsic evidence, they do not offer an interpretation that differ from the explicit terms of the Agreement and are merely cumulative. Here, the extrinsic evidence offered by Plaintiff includes declarations by (1) Estee R. Portnoy, a personal representative of Michael Jordan, the licensor, (Dkt. No. 47-12, Portnoy Decl.); and (2) Jason Masherah, President of Upper Deck, (Dkt. No. 47-8. Masherah Decl.). First, they state that the licensor is fully aware of and support Plaintiff's legal action in this case, (Dkt. No. 47-12, Portnoy Decl. ¶ 7; Dkt. No. 47-8, Masherah Decl. ¶ 12.) However, [Redacted] , these declarations do not add any alternative interpretations. (*See* Dkt. No. 54, Agreement, ¶ 25(A) (UNDER SEAL) [Redacted]

Second, the declarations provide that "Jordan will not grant any rights of any kind to any competitor of Upper Deck (e.g. other trading card manufacturers)." (Dkt. No. 47-12, Portnoy Decl. ¶ 4; *see also* Dkt. No. 47-9 Masherah Decl. ¶ 5.) Because Nike is not a trading card manufacturer the Agreement should not be construed to limit Jordan's ability to license his rights for non-trading card products to Nike and its subsidiaries. (Dkt. No. 47-12, Portnoy Decl. ¶ 4; *see also* Dkt. No. 47-9 Masherah Decl. ¶ 5.) No other entity can make trading cards featuring Jordan's name or likeness during the term of the Agreement. (Dkt. No. 47-12, Portnoy Decl. ¶ 5; *see also* Dkt. No. 47-9, Masherah Decl. ¶ 7.)

15 Again, the declarations do not provide any alternative interpretation of the contract. (*See* Dkt. No. 54, Agreement ¶ 8(A) (UNDER SEAL) (" [Redacted] *15* )."); *id.* ¶ 11 (UNDER SEAL)) [Redacted] These declarations do not provide an interpretation of the contract that differ from the contract language.

Thus, in summary, the Court GRANTS Defendant's motion to dismiss the second cause of action for trademark dilution and third cause of action for trademark infringement.

## D. Fourth Cause of Action - Common Law Commercial Misappropriation and Fifth Cause of action - Right of Publicity

Defendant argues that Plaintiff lacks standing to pursue the fourth claim for common law commercial misappropriation and fifth claim for right of publicity because it is not the exclusive licensee of Jordan's publicity rights. (Dkt. No. 42 at 18.) Plaintiff responds that it has the right to sue as an assignee and as an exclusive licensee. (Dkt. No. 47 at 26.)

In California, "the right of publicity is both a statutory and a common law right." *Timed Out, LLC v. Youabian*, *Inc.*, 229 Cal. App. 4th 1001, 1005 (2014) (quoting *Comedy III Prods.*, *Inc. v. Gary Saderup*, *Inc.*, 25 Cal. 4th 387, 391 (2001)). Civil Code section 3344 "complements the common law tort of misappropriation of likeness." *Id.* at 1006. Both protect the "economic value of one's name, voice, signature, photograph, or likeness" and holder of the right of publicity possesses "a right to prevent others from misappropriating the economic value generated . . . through the merchandising of the 'name, voice, signature, photograph, or likeness' of the [holder]." *Id.* (quoting *Comedy III*, 25 Cal. 4th at 16  403). *16*

The right to publicity and section 3344 claims are assignable under California law. *Timed Out*, *LLC v. Youabian*, *Inc.*, 229 Cal. 4th 1001, 1008

(2014); *Del Amo v. Baccash*, No. CV 07-663 PSG (JWJx), 2008 WL 2780978, at *9 (C.D. Cal. July 15, 2008) (citing *KNB Enters. v. Matthews*, 78 Cal. App. 4th 362, 365 n. 2 (2000) (holding that "the right of publicity is assignable for purposes of a [§] 3344 claim.")).

In *Timed Out*, the plaintiff was a company that "specialize[d] in the protection of personal image rights." *Timed Out*, *LLC*, 229 Cal. App. 4th at 1004. Professional models who earned a living modeling and selling their images to companies for advertising products and services learned that the defendants had been using their images on their website without the models' consent. *Id*. After this was discovered, the models "assigned their rights to bring suit for misappropriation of their images" to the plaintiff. *Id*. Plaintiff sued the defendants for common law and statutory misappropriation of likeness based on the defendants' alleged unauthorized display of the models' images in connection with advertising the defendants' cosmetic medical services. *Id*. On the issue of standing, the court of appeal held that the pecuniary interest in the right of publicity and misappropriations claims are assignable. *Id*. at 1010. Moreover, the court of appeal rejected the defendant's argument that "even if a misappropriation of likeness claim can be assigned, an 'exclusive license' is required to assert the claim" because the right to sue necessarily suggests Plaintiff obtained an exclusive right even though it was a limited one. *Id*. at 1011. The court explained that the assignment does not have to transfer the entire right of publicity to be enforced. *Id*.

Here, the Agreement grants Upper Deck [Redacted] , (Dkt. No. 54, Agreement ¶ 25[7] (UNDER SEAL)), which the court of appeal in *Timed Out* held was sufficient to establish standing. Defendant's reliance on *Upper Deck* *17 *Authenticated Ltd. v. CPG Direct*, 971 F. Supp. 1337 (S.D. Cal. 1997) to support its position is not persuasive as the court of appeal in *Timed Out* criticized the standing analysis of Upper Deck as

not based in California law. *Timed Out*, *LLC*, 229 Cal. App. 4th at 1008 n. 6. The Court declines to rely on the ruling in *Upper Deck Authenticated Ltd*. and instead relies on the reasoning in *Timed Out*. Accordingly, the Court DENIES Defendant's motion for judgment on the pleadings on the fourth and fifth causes of action.

[7] Paragraph 25 provides, in part, that [Redacted] " (Dkt. No. 54, Agreement ¶ 25 (UNDER SEAL).) --------

## E. Unfair Competition

Finally, Defendant moves for judgment on the pleading for part of the sixth claim under the unlawful prong of the UCL claim based on violations of part of the first claim and fourth and fifth claims for common law and statutory rights of publicity. (Dkt. No. 42 at 19.) Plaintiff opposes.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted). A UCL claim based on the unlawful prong rises or falls with the underlying claim. *See Aleksick v. 7-Eleven*, *Inc.*, 205 Cal. App. 4th 1176, 1185 (2012) (a UCL cause of action under the "unlawful" prong fails if a statutory predicate is not stated); *Wolski v. Fremont Inv. & Loan*, 127 Cal. App. 4th 347, 357 (2005) (holding that a UCL claim rises or falls with the underlying claim on which it is predicated). Accordingly, because the Court DENIES dismissal of the claims on the first, fourth and fifth claims, the Court DENIES dismissal of the UCL claim based on these claims.

## F. Leave to Amend

Plaintiff seeks leave to amend if the Court grants dismissal of any of its claims. (Dkt. No. 47 at 29-30.) However, the Court concludes that it would be futile to grant leave to amend the second and

third causes of action. Accordingly, the Court DENIES Plaintiff's request seeking leave to amend. / / / *18

## Conclusion

Based on the above, the Courts GRANTS Defendant's motion for judgment on the pleadings on the second and third causes of action and DENIES on the first, fourth, fifth and sixth causes of action.

The hearing set on April 16, 2021 shall be **<u>vacated.</u>**

IT IS SO ORDERED. Dated: April 13, 2021

/s/ _____

Hon. Gonzalo P. Curiel

United States District Judge

[3] The Court must take as true the allegation in the SAC on a Rule 12(c) motion. Here, the SAC alleges that the Agreement covers Jordan's name and jersey number "23" trademarks.


casetext

10

# EXHIBIT C

**From:** Stephen Anderson <attorneys@brandxperts.com>
**Sent:** Thursday, May 20, 2021 1:18 PM
**To:** Craig Nicholas <CNicholas@nicholaslaw.org>; Shaun Markley <SMarkley@nicholaslaw.org>; Ethan Litney <ELitney@nicholaslaw.org>
**Subject:** Re: The Upper Deck Co. v Miguel Flores - San Diego Sup Ct

[External Email]

Gentlemen:

Following my teleconference with Ethan Litney, I must hereby clarify that what he has clearly mischaracterized as "threats to report an attorney to the State Bar, to obtain and advantage in civil litigation" is categorically untrue.

On the other hand, I have advised you and maintain that in my view, you have violated and continue to violate your respective duties under FRCP Rule 11 and Cal Civ Code 128.7.  Moreover, as you are no doubt aware, it is and remains my duty to report serious misconduct of counsel to the State Bar when required.

Today, it became evident, that unless I receive information and responsive evidence to the contrary, that possibility of escalation to the State Bar - and to Judge Curiel, has become much more likely than I had first believed when I sent you, in good faith, my letter of yesterday's date: to which you have yet to had reached out to discuss or otherwise even acknowledge let alone prepare any reply.

As I attempted to obtain answers to the simplest of questions, Mr. Litney's thoughtless, black-hearted and cavalier attitude towards my client and my letter was highlighted not only by his incessant laughter, and his interspersed threats of his own, wherein he hardly allowed me to get a word in edgewise and totally refused to answer the questions set forth in my earlier letter --- instead, he commanded my audience- and disregarded the burdens and hardships put upon Mr. Flores in this matter -- boldly stating such things as

"I didn't want to waste my time responding" to the substance of my letter, which he flatly stated "lacks merit" and then he began to suggst that I had somehow engaged in misconduct as noted so I was forced to trerminate the call  --  DESPITE THAT MY LETTER AND MY CALL WAS SENT AS A PART OF A MEET AND CONFER EFFORT - AND AS AN INITIAL NOTICE OF "SAFE HARBOR" TO YOU AND YOUR CLIENT - PRIOR TO BEING FORCED TO TAKE THE ACTIONS CONTEMPLATED THEREIN, WITHOUT LIMITATION!

But I digressed.  Right off the bat, Mr. Litney said he would be happy to consider granting my client an extension of time,  but not "for long" and only if he is first provided further information as to the type of "response" my client may make (thus, presumably, that I first identify whether that "response" might be by Motion, Answer, or otherwise --- not to mention which (State or Federal) Court (including venue)) before he might grant to Mr.  Flores, any extension of time to plead.

Rather than allowing me to respond, and rather than addressing the substance of any of various serious issues raised in my letter, (which he claimed to have had his secretary working on, at present) Mr. Littney concluded bluntly that my letter {which laid out in detail --- some (but hardly all) of my Mr. Flores position, was somehow erroneous, inflammatory or otherwise spurious}, simply stating as his initial observation --- that
"even assuming everything in the letter was true ---  the "entire defense - lacked merit" and that he "just wasn't interested in discussing"  the facts, OR THE LAW - (or any of the matters or requests covered in my letter).

Instead, he tried to turn the tables by accusing me that in my letter, I had somehow inappropriately made threats (e.g., to seek a change of venue, to remove the matter to the USDC, and/or to advise the Superior Court and/or  report your apparent misconduct to the State Bar) WITH REGARD TO THE FALSE AND MISLEADING STATEMENTS SUBMITTED TO COURT IN THE COMPLAINT ON FILE - that I have requested be stricken therefrom - namely which alleges (without reference to Judge Curiel's prior Order to the contrary) claiming that State and Federal Court's have approved Upper Deck's rights as a licensee of M. Jordan).

While that was hardly my original intention, rather I had intended to spur a discussion, not a war, but -- at this point Mr. Litney's brash approach leaves me with no other option but to again request your immediate written response to my prior correspondence -- as well as one further request: Unless Mr. Nicholas is prepared to discuss this matter with me in a more reasonable manner, at some time within the next 48 hours, I must request that all correspondence thereafter be in writing.

Sincerely,

Stephen L. Anderson
Anderson Law
WE PROTECT IMAGINATION®

Offices in Temecula, California --- WEBSITES EVERYWHERE!
email: attorneys@brandXperts.com

Anderson Law
41923 Second Street, Suite 201
Temecula, California 92590 U.S.A.
+(951) 296-1700 tel.



VISIT OUR VIRTUAL VILLAGE:
https://link.edgepilot.com/s/4c6254eb/PMETFiddEUimNrdQv91yfQ?
u=http://www.brandxperts.com/  TRADEMARKS
https://link.edgepilot.com/s/391d17d7/cZgrSi-BdUKQQ3GAN75tvA?
u=http://www.copyrightpros.com/    COPYRIGHTS
https://link.edgepilot.com/s/4b855cb5/4eSGmCTXp0W6Ayz6uMu_Pg?
u=http://www.namesavers.net/    DOMAIN NAMES
https://link.edgepilot.com/s/09c66904/oPjwgCs-e06w1cgAhQblWw?
u=http://www.mybrandsonline.com/    REGISTER NOW!
https://link.edgepilot.com/s/6d43dd6c/0kOUBxqToUu5C7tpz5psdA?
u=http://www.weprotectimagination.com/  IP SOLUTIONS

On May 19, 2021 2:53 PM Stephen Anderson <attorneys@brandxperts.com> wrote:


Gentlemen:

Please review and respond to the attached correspondence sent to you on behalf of
Defendant Miguel Flores.

In view of the seriousness of the apparently flawed allegations contained in your
client's Complaint, I look forward to promptly discussing the contents of the enclosed
with you.

Stephen L. Anderson
Anderson Law
WE PROTECT IMAGINATION®

Offices in Temecula, California --- WEBSITES EVERYWHERE!
email: attorneys@brandXperts.com

Anderson Law
41923 Second Street, Suite 201
Temecula, California 92590 U.S.A.
+(951) 296-1700 tel.



VISIT OUR VIRTUAL VILLAGE:
https://link.edgepilot.com/s/4c6254eb/PMETFiddEUimNrdQv91yfQ?
u=http://www.brandxperts.com/  TRADEMARKS
https://link.edgepilot.com/s/391d17d7/cZgrSi-BdUKQQ3GAN75tvA?
u=http://www.copyrightpros.com/  COPYRIGHTS
https://link.edgepilot.com/s/4b855cb5/4eSGmCTXp0W6Ayz6uMu_Pg?
u=http://www.namesavers.net/  DOMAIN NAMES
https://link.edgepilot.com/s/09c66904/oPjwgCs-e06w1cgAhQblWw?
u=http://www.mybrandsonline.com/  REGISTER NOW!
https://link.edgepilot.com/s/6d43dd6c/0kOUBxqToUu5C7tpz5psdA?
u=http://www.weprotectimagination.com/  IP SOLUTIONS


Links contained in this email have been replaced. If you click on a link in the email above, the link will be analyzed for known threats. If a known threat is found, you will not be able to proceed to the destination. If suspicious content is detected, you will see a warning.

# EXHIBIT D

**From:** Ethan Litney
**Sent:** Friday, May 21, 2021 5:12 PM
**To:** 'attorneys@brandxperts.com' <attorneys@brandxperts.com>
**Cc:** Craig Nicholas <CNicholas@nicholaslaw.org>; Shaun Markley <SMarkley@nicholaslaw.org>
**Subject:** The Upper Deck Co. v. Flores

Hello Stephen,

Please find a response to your May 19 letter attached.

Have a nice weekend.

Ethan



# EXHIBIT E

# NICHOLAS & TOMASEVIC LLP

### ATTORNEYS AT LAW

Tel: 619-325-0492                                                                    225 Broadway, 19th Floor
Fax: 619-325-0496                                                                    San Diego, CA 92101

May 21, 2021

**_VIA E-MAIL ONLY_**
Stephen L. Anderson, Esq.
**ANDERSON LAW**
200 Second Street, Suite 201
Temecula, California 92590
E-mail: attorneys@brandxperts.com

                    Re:      _Upper Deck v. Flores_

Dear Stephen:

We are perplexed by your course of conduct in this matter. First, you wrote to us the day before yesterday with a string of baseless, threatening positions. We address those below per your request. Next, you contacted our office and proceeded to yell at and berate me. You then unceremoniously hung up despite my protests that we should further discuss this matter. This conduct is unbecoming of a member of our State's Bar, and we trust that communications will be professional going forward. I have never had to insist on written-only communications, but we will in this case if you will insist on yelling at otherwise acting unprofessionally towards anyone from my office again.

Separately, note that we do not intend to respond to your ranting email following your call earlier today except to say that we strongly disagree with your depiction of the events that transpired (notably failing to reference your own tirade in addition to mischaracterizing my own comments). I simply sought to meet and confer regarding the basis for your upcoming pleadings challenge as is contemplated under CCP §§ 430.41, 435.5, and/or 439. Yelling and hanging up the phone in response is not productive to a meet and confer process.

Finally, before we respond to the points raised in your letter, please note that our office is preparing a preliminary injunction motion to ensure that your client discontinues any further sale of fake "reprint" Upper Deck-Jordan cards. Your letter appeared to suggest that your client did not create them and that he would be willing to share information regarding who did and provide evidence to that end. If your client is interested in fully cooperating, sharing what he has regarding the fake cards, paying to settle the claims, and signing a consent judgement, we can discuss this prior to filing of the preliminary injunction motion. Once the motion is filed and the time is further invested, Upper Deck's settlement posture will be different. Please advise by Tuesday if your client would like to explore cooperating so we can avoid spending further time on the motion. Also, as requested, a copy of the proof of personal service of the Complaint is attached to this letter.

We hope to have a productive and professional conversation in the coming days regarding your client's cooperation.

Re: *Upper Deck v. Flores*
May 21, 2021
Page 2

_____

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

To the substance of your May 19, 2021 letter, it identifies "a number of preliminary issues and concerns" with Plaintiff's complaint, including:

1. The cards that Mr. Flores sold were not counterfeit.
2. Upper Deck's claims are barred by the first sale doctrine.
3. Upper Deck's inclusion of the phrase "Upper Deck's exclusive license related to Jordan has been recognized by state and federal courts" is inaccurate and sanctionable.
4. Plaintiff's failure to reference the *Panini* action is sanctionable.

Upper Deck's brief responses to your charges are below.

**1. Mr. Flores Knowingly and Intentionally Sold Counterfeit Goods**

This case involves blatantly counterfeit "reprint" cards. Your client's own eBay listings concede this, as seen below. As such, your contention that Mr. Flores did not sell counterfeit goods is not well understood and you provide no evidence of the authenticity of the products he sold.

 **Checkout**

How do you like our checkout? Tell us what you think

| Review item and shipping | | Subtotal (1 item) | $150.00 |
|---|---|---|---|



Seller: migflo_3800  |  Message to seller

1999 MICHAEL JORDAN UD AUTHENTICS AUTO REPRINT GMA 10
**$150.00**
Quantity 1

Subtotal (1 item)    $150.00
Shipping                    $7.75
Tax*                          $11.63

**Order total          $169.38**

By placing your order, you authorize PayPal to process your payment, and you agree to PayPal's user agreement and privacy

Still further, your client went out of his way to attempt to cloak his product in the trappings of a genuine Upper Deck product, including charging a substantial amount of money for the product, utilizing protected Upper Deck trademarks, and utilizing a "grading" service which suggests his product is a genuine Upper Deck product from 1999 (whose condition could have deteriorated) rather than a recent reprint that should be wholly undamaged, among other conduct.

As discussed above, the conduct here is so blatant that my client intends to move for a preliminary injunction ensuring that your client discontinues all sales of the "reprint" (e.g. counterfeit) cards and destroys any remaining in his possession.

Re: *Upper Deck v. Flores*
May 21, 2021
Page 3

_____

### 2.   The First Sale Doctrine Does Not Protect the Re-Sale of Counterfeit Products

Your letter cites some first sale copyright authorities, but these do not assist your client. Your own cited authority recognizes that the first sale doctrine only protects resale of *genuine* products. *See Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 61 (2d. Cir. 1992). Indeed, the re-sale of counterfeit goods is consistently held to be outside of the ambit of the first sale doctrine, for obvious reasons. Indeed, the day before you sent your letter a District Court in this Circuit held that the first sale doctrine is inapplicable to sales of counterfeit goods. *See United States of America v. Babichenko, et al.*, No. 1:18-CR-00258-BLW, 2021 WL 1994227, at *2 (D. Idaho May 18, 2021):

> The Court does not see how the first-sale doctrine is applicable in this case. *See Au-Tomotive Gold*, 603 F.3d at 1136 (We emphasized that this rule "preserves an area of competition by limiting the producer's power to control the resale of its product," while ensuring that "the consumer gets exactly what the consumer bargains for, the genuine product of the particular producer." (quoting *Sebastion*, 53 F.3d at 1075)). The Government is not alleging the defendants legitimately purchased cellphones or accessories from the trademark holder and then resold them to consumers. Instead, the Government is alleging that the defendants trafficked in goods with a counterfeit mark.

Given your client's admission as to the counterfeit nature of the products at issue, the first sale doctrine is entirely inapplicable. And you have provided no evidence of any prior "sale" in any case. For all Upper Deck knows, Mr. Flores is the one creating these products in the first place. This will be the subject of discovery.

### 3.   The Referenced Language in Footnote 1 is Accurate

Your construction of the *Panini* decision shows a lack of understanding of the ruling.

As a preliminary matter, Upper Deck's exclusive trading card and memorabilia license with Michael Jordan has been recognized by state and federal courts. The *Panini* decision itself recognizes that Upper Deck maintains exclusive rights relating to Michael Jordan's name, image, likeness, picture, signature, facsimile signature relating to trading cards. *See Upper Deck Co. v. Panini Am., Inc.*, No. 20CV185-GPC(KSC), 2021 WL 1388630, at *6 (S.D. Cal. Apr. 13, 2021). Therefore, the referenced statement is entirely accurate.

Furthermore, contrary to your suggestions, the *Panini* court never decided whether Upper Deck was an exclusive licensee of the marks at issue in that action, but rather rested its argument based on the (incorrect) determination that Upper Deck "was not granted a property interest in certain Jordan Marks that was akin to an assignment." *See Panini*, 2021 WL 1388630, at *6, n. 6. If you review the briefing on these issues or even read the *Panini* decision in detail, you will see there is a healthy split in district courts regarding standing for *certain* Lanham Act causes of action

Re: *Upper Deck v. Flores*
May 21, 2021
Page 4

and there is no binding precedent on the issue one way or the other. Judge Curiel expressly notes this.

Separately, Upper Deck reserves its right to appeal the ruling by Judge Curiel and plans to do so once judgement is entered after the parties in that case go to trial on the remaining claims.

Additionally, Judge Curiel's decision is not binding (let alone a final judgement). It is simply one of many lower court opinions to reach the issue of standing for *certain* causes of action at issue here. As you should be aware from your review of the order, Upper Deck's primary claims for false designation or origin, false advertisement, and right of publicity remain intact. This means, even if your client convinces the assigned judge Upper Deck lacks standing on *parts* of some claims as Panini managed to do, the primary claims in the complaint will survive and your client will face liability for his conduct.

Further, to the extent that Plaintiff does not later advocate the position contained in the footnote based solely on its inclusion in the Complaint, Rule 11 sanctions cannot lie. *See Perry v. Laidlaw Transit Servs., Inc.*, No. 05-CV-1565, 2006 WL 8455440, at *7 (S.D. Cal. May 4, 2006), *aff'd*, 234 F. App'x 634 (9th Cir. 2007) ("Plaintiff cannot be sanctioned under Rule 11 after removal for papers filed in state court before removal, nor may sanctions be imposed for failing to withdraw the pleadings after removal. *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 245 (5th Cir. 1998); *Worthington v. Wilson*, 8 F.3d 1253, 1257-58 (7th Cir. 1993). However, Rule 11 sanctions can be imposed " 'if after a notice of removal is filed, a party urges in federal court the allegations of a pleading filed in state court.' " *Buster v. Greisen*, 104 F.3d 1186, 1190 n.4 (9th Cir. 1997). Nevertheless, the record in this case does not support Rule 11 sanctions based on the First Amended Complaint. Plaintiff did not advocate the First Amended Complaint's allegations in opposition to the motion to dismiss, but instead asserted he would be seeking leave to amend.")

### 4. Upper Deck Cannot Be Sanctioned for Failing to Cite A District Court Case

Your suggestion that Upper Deck should have included a reference to the *Panini* decision in the Complaint lacks merit. Again, your own cited authority recognizes that sanctions may be issued where a party "knowingly fail[s] to disclose ***controlling*** authority that is directly adverse to the position he or she advocates." *See United States v. Blondeau,* No. 10-CR-3871-LAB, 2106 WL 1072849, at *1-2 (S.D. Cal. Mar. 15, 2016). Here, the term "controlling" is fatal to your threats of sanctions, and you have cited no authority suggesting that failure to disclose potentially persuasive authority is sanctionable.

District Court opinions, published or otherwise, are not controlling authority in California or federal courts. *Casteneda v. Department of Corrections & Rehabilitation*, 212 Cal.App.4th 1051, 1074 (2013) ("a decision of a federal district court has no precedential value in this court; at best, it is persuasive authority only."); *Alvarez v. NBTY, Inc.*, 2020 WL 42767, at *2 (S.D. Cal. Jan. 3, 2020) (District Court opinions are not controlling authority); *see also Reid v. BCBSM, Inc.,* 787 F.3d 892, 895 n.2 (8th Cir. 2015) (noting that district court rulings "cannot be used as stare

Re: *Upper Deck v. Flores*
May 21, 2021
Page 5

_____

decisis"); *McGinley v. Houston,* 361 F.3d 1328, 1331 (11th Cir. 2004) ("The general rule is that a district judge's decision neither binds another district judge nor binds him….").

  As noted above, the *Panini* decision is also not final and is still subject to appeal. As a licensee of various intellectual property rights, Upper Deck remains committed to taking these undecided and open questions of law up to appellate courts as they unfold.

  Therefore, the failure to cite a district court opinion cannot be sanctionable conduct under Section 128.7 or Federal Rule 11. More importantly, notwithstanding the myopic focus on a single footnote, Upper Deck has a colorable basis for all causes of action listed in its Complaint. Your client will have to answer for its infringing, blatant conduct.

  Finally, if your client and firm choose to go forward with removing this action to federal court and filing a sanctions motion on the grounds set forth in your letter, it will be met with a counter-motion for sanctions. *Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001) ("A party defending a Rule 11 motion need not comply with the separate document and safe harbor provisions when counter-requesting sanctions."). An aggressive letter and phone call do not change the core facts here nor do they unwind your client's illegal sale of fake Upper Deck cards.

Attachment

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| Nicholas & Tomasevic, LLP<br>Craig M. Nicholas, Esq. SBN 178444<br>225 Broadway 19th Floor<br>San Diego, CA 92101<br>　TELEPHONE NO: 619-325-0492　　　　FAX NO *(Optional)*:<br>ATTORNEY FOR *(Name)*:　Plaintiff | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF　San Diego
　STREET ADDRESS:　330 W. Broadway
　MAILING ADDRESS:
　CITY AND ZIP CODE:　San Diego, 92101
　BRANCH NAME:　San Diego County Superior Court - Hall of Justice

| PLAINTIFF / PETITIONER:　The Upper Deck Company, a Nevada corporation<br>DEFENDANT / RESPONDENT:　Miguel Flores, an individual, et al. | CASE NUMBER:<br>37-2021-00018912-CU-IP-CTL |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>5628485 |

*(Separate proof of service is required for each party served.)*

1.　At the time of service I was at least 18 years of age and not a party to this action.

2.　I served copies of:
　a.　[X]　Summons
　b.　[X]　Complaint
　c.　[X]　Alternative Dispute Resolution (ADR) Package
　d.　[X]　Civil Case Cover Sheet *(served in complex cases only)*
　e.　[ ]　Cross-Complaint
　f.　[X]　Other *(specify documents):*　Notice of Case Assignment and Case Management Conference (Civil); (Blank) Stipulation to Use Alternative Dispute Resolution (ADR)

3.　a.　Party served *(specify name of party as shown on documents served)*:
　　　Miguel Flores, an individual
　b.　[ ]　Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:

4.　Address where the party was served:
　　16919 Bell Ave., Lake Elsinore, CA 92530

5.　I served the party *(check proper box)*
　a.　[X]　**by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*　Tue, May 04 2021　　　　(2) at *(time):*　08:05 PM
　b.　[ ]　**by substituted service.** On *(date):*　　　　　　at *(time):*　　　　　　I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

　　　(1)　[ ]　**(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

　　　(2)　[ ]　**(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

　　　(3)　[ ]　**(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

　　　(4)　[ ]　I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*
　　　　　from *(city):*　　　　　　　　　　　　or [ ] a declaration of mailing is attached.

　　　(5)　[ ]　I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| PLAINTIFF / PETITIONER: The Upper Deck Company, a Nevada corporation | CASE NUMBER: |
|---|---|
| DEFENDANT / RESPONDENT: Miguel Flores, an individual, et al. | 37-2021-00018912-CU-IP-CTL |

5.  c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1)  on *(date)*:  (2)  from *(city)*:

(3)  ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgment of Receipt.)* (Code Civ. Proc., § 415.30.)

(4)  ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d.  ☐  **by other means** *(specify means of service and authorizing code section)*:

☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

a.  ☒  as an individual defendant.

b.  ☐  as the person sued under the fictitious name of *(specify)*:

c.  ☐  as occupant.

d.  ☐  On behalf of *(specify)*:

under the following Code of Civil Procedure section:

☐ 416.10 (corporation)  ☐ 415.95 (business organization, form unknown)

☐ 416.20 (defunct corporation)  ☐ 416.60 (minor)

☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)

☐ 416.40 (association or partnership)  ☐ 416.90 (authorized person)

☐ 416.50 (public entity)  ☐ 415.46 (occupant)

☐ other:

7.  **Person who served papers**

a.  Name:  Dianne Loch

b.  Address:  4651 Brookhollow Cir. Ste. C, Riverside, CA 92509

c.  Telephone number:  951-353-8281

d.  **The fee for service was:**  $89.95

e.  I am:

(1)  ☐  not a registered California process server.

(2)  ☐  exempt from registration under Business and Professions Code section 22350(b).

(3)  ☒  a registered California process server:

(i)  ☐ owner  ☐ employee  ☒ independent contractor

(ii)  Registration No:  1682

(iii)  County:  Riverside

8.  ☒  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9.  ☐  I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date:  05/05/2021

Dianne Loch

(NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL)  (SIGNATURE)

# EXHIBIT F

**From:** Ethan Litney
**Sent:** Wednesday, May 26, 2021 1:32 PM
**To:** attorneys@brandxperts.com
**Cc:** Craig Nicholas <CNicholas@nicholaslaw.org>; Shaun Markley <SMarkley@nicholaslaw.org>
**Subject:** RE: The Upper Deck Co. v. Flores

Hello Stephen,

My understanding is that you called our office earlier today regarding an extension to respond to the Complaint. I'm presently in a deposition so I couldn't take your call.

We are more than happy to stipulate to an a 30-day extension to respond to the Complaint, on the condition that you agree to accept service on behalf of your client in this matter so that Plaintiff is not prejudiced by Defendant's delay in filing a responsive pleading. Please let me know if you agree.

We would also still like to discuss your client's potential cooperation to resolve this matter to avoid further unnecessary waste of the parties' resources. If your client remains willing to cooperate in disclosing the alleged origin of the counterfeit products, please let us know immediately.

Thanks,

Ethan



**From:** Ethan Litney
**Sent:** Friday, May 21, 2021 5:12 PM
**To:** 'attorneys@brandxperts.com' <attorneys@brandxperts.com>
**Cc:** Craig Nicholas <CNicholas@nicholaslaw.org>; Shaun Markley <SMarkley@nicholaslaw.org>
**Subject:** The Upper Deck Co. v. Flores

Hello Stephen,

Please find a response to your May 19 letter attached.

Have a nice weekend.

Ethan

# EXHIBIT G

**From:** attorneys@brandxperts.com <attorneys@brandxperts.com>
**Sent:** Wednesday, May 26, 2021 2:50 PM
**To:** Ethan Litney <ELitney@nicholaslaw.org>
**Cc:** Craig Nicholas <CNicholas@nicholaslaw.org>; Shaun Markley <SMarkley@nicholaslaw.org>
**Subject:** RE: The Upper Deck Co. v. Flores

[External Email]

We appreciate the extension of time to plead in this matter, through and including June 24, 2021.

Be advised, that as far as I am aware, my client was the purchaser of a lot of 33 trading cards - in total - of which only 4 were UPPER DECK cards and 8 featured the image of Michael Jordan.

Among those, my client has also provided me with three cards that meet the description of those identified your client's complaint. Thus at best, your allegations involve the sale of less than ten trading cards, and involves de minimus damages at best!

These "reprint" cards were purchased by my client and were sent out for grading - when the cards returned, he was advised they are "REPRINTS" but they are not counterfeit!

Indeed, Mr. Flores' sale of these handful of cards barely netted enough to cover the net costs of grading, packaging, advertising and shipping these few cards,  and thus, I simply cannot comprehend why you chose to file this case, let alone to persist in your past, present and ongoing threats to pursue your client's claims herein.

Please note = Dozens, if not hundreds, or even thousand of similar and identical cards are presently being offered and sold by many diverse traders,
I have attached a few examples.

Under the first sale doctrine, Mr. Flores has no liability and indeed, as noted within my prior correspondence, your client has no apparent standing to assert the trademark (let alone the State or common law "personality rights" of Michael Jordan) and certainly we have no fair notice that you serve as Mr. Jordan (let alone any other potential related or unrelated sports figure entity or licensing company's) representative  in connection with the claims made in the Complaint. Moreover, I have repeatedly identified defects in your Complaint and your underlying legal theories, (as well

as the clear and black-letter law defenses to the claims therein) especially in view of Judge Curiel's prior ruling in Upper Deck v. Panini.

Nonetheless, as I advised you at the outset, my client is indeed willing to provide information regarding his acquisition and sale of the cards at issue and in exchange for a dismissal with prejudice, a complete release of all claims and covenant not to sue, Mr. Flores would be happy to provide you  with the three page catalog and the Invoice he received from the seller of these allegedly relevant trading cards, as well as a few screenshots of the webpages and advertisements used by the seller that Mr. Flores may have available at this time.

In other words, while we are eager to get this action resolved, and while we are happy to cooperate with your client, thus far, your approach has been more than somewhat unreasonable and totally overbearing demands.

In the alternative, please be advised that my client now, hereby serves upon you his formal Offer to Compromise this matter, herewith.

If you should fail to accept this offer, or rather, more appropriately simply agree to dismiss the matter with prejudice in exchange for the information regarding the seller where he procured his handful of cards, undoubtedly the parties shall engage in hotly contested litigation wherein your client has NOTHING to gain, yet much to lose, particularly in view, not only of the attached Section 408 Offer to Compromise, but, rather more importantly, with respect to what I consider to be sanctionable conduct, including, inter alia, -submitting false and overruled suggestions of facts and law to the Superior Court within the Complaint, your own knowing refusal and failure to strike and/or correct such incorrect and false information to a tribunal; fraudulent and malicious prosecution against Mr. Flores, and finally, your and Mr. NICHOLAS' own acts, conduct and OMISSIONS in this already "uncivil" action.

ONE FINAL NOTE- I do not actually plan to file a RESPONSE to the Complaint until after the time for your client to accept the Offer to Compromise has expired and indeed, WE HAVE NO INTENT TO DEFAULT IN THIS ACTION AND THEREBY DEMAND THAT IN ANY FUTURE FILINGS YOU ADVISE THE COURT THAT COUNSEL FOR DEFENDANT HAS ADVISED YOU IN WRITING THAT WE WILL FILE A RESPONSE TO THE COMPLAINT ON JUNE 28, 2021.

SHOULD YOU FILE A REQUEST FOR DEFAULT; FILE ANY MOTION OF ANY KIND; OR TAKE ANY ACTION OTHER THAN 1) DISMISSING THE ACTION IN ITS ENTIRETY - OR 2) FILING AND SERVING ACCEPTANCE OF THE STATUTORY OFFER TO COMPROMISE - AT ANY TIME PRIOR TO JUNE 29, 2021, (TO AVOID A MANIFEST UNFAIRNESS AND MISCARRIAGE OF JUSTICE - I SHALL THEREAFTER HANDLE THIS MATTER PRO BONO AND SHALL SWIFTLY AND METICULOUSLY TAKE ANY AND ALL APPROPRIATE LEGAL ACTION AGAINST YOU AND YOUR CLIENT!

Based on my own personal experience with you and your firm to date, while you would likely learn much, it would come at a high price to all of us!

With the above in mind, and with an open, but saddened heart, I invite you to just do the right thing and drop your unwarranted action as well as your latest threats against Mr. Flores and move on to greener pastures.

Sincerely yours,

Stephen L. Anderson

Anderson Law
WE PROTECT IMAGINATION®

Offices in Temecula, California --- WEBSITES EVERYWHERE!
email: attorneys@brandXperts.com

Anderson Law

41923 Second Street, Suite 201
Temecula, California 92590 U.S.A.
+(951) 296-1700 tel.



VISIT OUR VIRTUAL VILLAGE:
https://link.edgepilot.com/s/b1bb384a/FChg3MDPAECGH9uOhNfbtw?u=http://www.brandxperts.com/  TRADEMARKS
https://link.edgepilot.com/s/21d7d7dd/XZW5A2i3mUKUk2zikL1snQ?u=http://www.copyrightpros.com/  COPYRIGHTS
https://link.edgepilot.com/s/6706b20a/NITaPLCXKE6s5tjiGfpkVw?u=http://www.namesavers.net/        DOMAIN
NAMES
https://link.edgepilot.com/s/d4d25659/ZIgREBtfPUOjWlrV8ovUsg?u=http://www.mybrandsonline.com/        REGISTER
NOW!
https://link.edgepilot.com/s/213aff7d/NO_EnlJwW06ccJXbRCm50g?u=http://www.weprotectimagination.com/   IP
SOLUTIONS

On May 26, 2021 1:32 PM Ethan Litney <elitney@nicholaslaw.org> wrote:


Hello Stephen,


My understanding is that you called our office earlier today regarding an extension to respond to the
Complaint. I'm presently in a deposition so I couldn't take your call.


We are more than happy to stipulate to an a 30-day extension to respond to the Complaint, on the
condition that you agree to accept service on behalf of your client in this matter so that Plaintiff is not
prejudiced by Defendant's delay in filing a responsive pleading. Please let me know if you agree.


We would also still like to discuss your client's potential cooperation to resolve this matter to avoid
further unnecessary waste of the parties' resources. If your client remains willing to cooperate in
disclosing the alleged origin of the counterfeit products, please let us know immediately.


Thanks,


Ethan



From: Ethan Litney
Sent: Friday, May 21, 2021 5:12 PM
To: 'attorneys@brandxperts.com' <attorneys@brandxperts.com>
Cc: Craig Nicholas <CNicholas@nicholaslaw.org>; Shaun Markley <SMarkley@nicholaslaw.org>
Subject: The Upper Deck Co. v. Flores

Hello Stephen,

Please find a response to your May 19 letter attached.

Have a nice weekend.

Ethan



Links contained in this email have been replaced. If you click on a link in the email above, the link will be analyzed for known threats. If a known threat is found, you will not be able to proceed to the destination. If suspicious content is detected, you will see a warning.

# EXHIBIT H

**From:** Stephen Anderson <namesavers@gmail.com>
**Sent:** Wednesday, June 30, 2021 8:27 AM
**To:** Ethan Litney <ELitney@nicholaslaw.org>
**Subject:** Re: Upper Deck v. Flores

[External Email]

You amended the Complaint?  You What is wrong with you?  You didn't serve it either...
?   No. I won't be talking to you for a long time now.. I have 40 more days to answer and a sanctions motion to pursue.

You will regret your cavalier and black hearted approach...

On Wed, Jun 30, 2021, 6:18 AM Ethan Litney <ELitney@nicholaslaw.org> wrote:

Good morning Stephen,

Please let me know your availability for the FRCP 26(f) conference. I have availability on July 1, July 7, July 8 and July 9.

Thanks,

Ethan



1

# EXHIBIT I

**From:** Ethan Litney
**Sent:** Wednesday, July 14, 2021 7:44 AM
**To:** Stephen Anderson <attorneys@brandxperts.com>
**Cc:** Shaun Markley <SMarkley@nicholaslaw.org>; Craig Nicholas <CNicholas@nicholaslaw.org>
**Subject:** Upper Deck v. Flores

Good morning Stephen,

Your client is in default.

Coupled with your earlier categorical refusal to conduct a Rule 26(f) conference after receiving the First Amended Complaint ("No. I won't be talking to you for a long time now"), we can only interpret your client's failure to defend as deliberate, and intended to improperly delay or otherwise hinder my client's ability to prosecute this action. *See* Fed. R. Civ. P. 26(f) ("[T]he parties must confer as soon as practicable"). As you know, this action involves allegations of continuing violations of the Lanham Act (among other claims involving my client's intellectual property rights), and seeks injunctive relief relating to the same. Time is of the essence, and a delay in prosecution is prejudicial to my client.

No notice to a defaulting party is required prior to entry of a default. *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 512 (9th Cir. 1986). However, rather than immediately entering a default against your client, as a professional courtesy we will agree not to seek entry of default against your client at this time, or otherwise challenge your client's answer in its entirety on the grounds of untimeliness if: (1) your client files an answer by tomorrow; **and** (2) you participate in a Rule 26(f) conference within 48 hours of your client filing an answer.

Thanks,

Ethan



# EXHIBIT J

**From:** Ethan Litney
**Sent:** Tuesday, August 10, 2021 12:36 PM
**To:** Stephen Anderson <attorneys@brandxperts.com>
**Cc:** Shaun Markley <SMarkley@nicholaslaw.org>; Craig Nicholas <CNicholas@nicholaslaw.org>
**Subject:** RE: Upper Deck v. Flores

Hi Stephen,

I just received word that you called our office, which is the first communication we've received from you since June 30, 2021.

Given our substantial disagreements regarding the nature our last meet and confer call in this case, I'd ask that you follow-up via email. I will try to provide you a response as soon as possible.

Also, pursuant to your previous agreement to accept service on behalf of your client as a condition of accepting our initial extension to respond to the original complaint (see your May 26, 2021 email), we intend to shortly serve you electronically with subpoenas for documents in your client's possession, custody, or control relating to the allegations in the operative complaint. If you intend to contest this manner of service notwithstanding your previous written agreement, I would ask that you let me know now given our respective responsibilities as members of the bar under Southern District Local Rule 2.1(a)(f) and 2.1(a)(g), so that we may attempt to resolve the dispute without unnecessary waste of judicial resources.

Thanks,

Ethan



**From:** Ethan Litney
**Sent:** Wednesday, July 14, 2021 7:44 AM
**To:** Stephen Anderson <attorneys@brandxperts.com>
**Cc:** Shaun Markley <SMarkley@nicholaslaw.org>; Craig Nicholas <CNicholas@nicholaslaw.org>
**Subject:** Upper Deck v. Flores

Good morning Stephen,

Your client is in default.

Coupled with your earlier categorical refusal to conduct a Rule 26(f) conference after receiving the First Amended Complaint ("No. I won't be talking to you for a long time now"), we can only interpret your client's failure to defend as deliberate, and intended to improperly delay or otherwise hinder my client's ability to prosecute this action. *See* Fed. R. Civ. P. 26(f) ("[T]he parties must confer as soon as practicable"). As you know, this action involves allegations of continuing violations of the Lanham Act (among other claims involving my client's intellectual property rights), and seeks injunctive relief relating to the same. Time is of the essence, and a delay in prosecution is prejudicial to my client.

No notice to a defaulting party is required prior to entry of a default. *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 512 (9th Cir. 1986). However, rather than immediately entering a default against your client, as a professional courtesy we will agree not to seek entry of default against your client at this time, or otherwise challenge your client's answer in its entirety on the grounds of untimeliness if: (1) your client files an answer by tomorrow; **and** (2) you participate in a Rule 26(f) conference within 48 hours of your client filing an answer.

Thanks,

Ethan



# EXHIBIT K

**From:** Ethan Litney
**Sent:** Monday, August 16, 2021 1:52 PM
**To:** Stephen Anderson <attorneys@brandxperts.com>
**Cc:** Craig Nicholas <CNicholas@nicholaslaw.org>; Shaun Markley <SMarkley@nicholaslaw.org>
**Subject:** RE: Upper Deck v. Flores - Concerns Regarding Spoliation of Evidence

Hi Stephen,

Hopefully this suffices for a prompt reply.

As a preliminary matter, given your recent representations in your motion to set aside default, we remain perplexed as to why you are taking such a hostile posture in our communications, or how you or your client believe this is a beneficial litigation strategy. You have represented to the Court that my client is attempting to harass your client. My client does not intend to harass your client, who indisputably sold counterfeit Upper Deck products. Rather, as we have maintained since our first communication, we wish to learn more about where your client obtained his counterfeit goods, and request sufficient information to confirm that your client is not the progenitor of the same. My client is dealing with an incredible degree of trademark infringement, which you yourself have identified in your previous May 26, 2021 email attaching brazen examples of violations of Upper Deck's copyright. Yet you have refused to provide substantiation of this information relating to your own client unless my client wholly capitulated in this litigation, i.e., releasing your client and **then** learning about where your client obtained the counterfeit produces. Surely you can appreciate the untenable nature of such a request.

As to your email, your request attempts to put my client in a further untenable position by requesting that we identify every incidence of spoliation of which we are aware. Obviously, this could facilitate your client admitting only to the spoliation attempts that we know about, while taking additional efforts to conceal further spoliation of evidence.

However, as a representation of our good faith and proof of our charge against your client, we will disclose one incident of known spoliation. In particular, we will represent that we have information that suggests your client previously marketed a counterfeit Upper Deck product on his Instagram account @check_dz_out08, the URL of the post in question was https://instagram.com/p/CGT3kb6HcaW, as has deleted this post subsequent to the filing of this action.

I sincerely hope you appreciate that your consistent recalcitrance to taking this matter seriously necessarily amplifies our suspicion that your client had a substantial role in the counterfeiting of Upper Deck's trademarks and goods.

I would appreciate your prompt confirmation as to whether your client will consent to the subpoenas I previously identified. If you and your client are telling us the truth, surely the subpoenas will substantiate your client's inadvertence and/or lack of culpability.

Ethan

1



**From:** Stephen Anderson <attorneys@brandXperts.com>
**Sent:** Monday, August 16, 2021 1:01 PM
**To:** Ethan Litney <ELitney@nicholaslaw.org>
**Cc:** Craig Nicholas <CNicholas@nicholaslaw.org>; Shaun Markley <SMarkley@nicholaslaw.org>
**Subject:** Re: Upper Deck v. Flores - Concerns Regarding Spoliation of Evidence

[External Email]

Dear Counsel:

Please provide any evidence whcih supports your latest (baseless and spurious) claim that you "have learned your client appears to have destroyed relevant evidence relating to this action, including, but not limited to, social media (e.g., Instagram) posts evidencing past advertisement of counterfeit Upper Deck cards."

My client has responded that he has no idea what you are alleging now....

MY CLIENT STATES: I never advertised anything about any counterfeit (cards) on any of my social media or even on EBay. I only advertised them on EBay as reprints like they stated when I bought them. I am not sure what they are speaking about. Please advise?

Once again, you are apparently continuing to harass my client and vexaciously increase the costs of your ill-founded litigation.

With the above in mind, I look forward to your prompt reply.

Sincerely yours,

Stephen L. Anderson
Anderson Law
WE PROTECT IMAGINATION®

Offices in Temecula, California --- WEBSITES EVERYWHERE!
email: attorneys@brandXperts.com

Anderson Law
41923 Second Street, Suite 201
Temecula, California 92590 U.S.A.
+(951) 296-1700 tel.



VISIT OUR VIRTUAL VILLAGE:

https://link.edgepilot.com/s/15c1950b/djW5i7e7OUm6DBjE1WAjEg?u=http://www.brandxperts.com/  TRADEMARKS
https://link.edgepilot.com/s/e4c6d387/LvGiO3GDek2SqnzKZNwiJw?u=http://www.copyrightpros.com/  COPYRIGHTS
https://link.edgepilot.com/s/76654e4c/FFHS_ybVREO0MPiEUrLU5A?u=http://www.namesavers.net/       DOMAIN
NAMES
https://link.edgepilot.com/s/b7df21b1/yHXjfG4xyUy7Fqu_V6tbbw?u=http://www.mybrandsonline.com/       REGISTER
NOW!
https://link.edgepilot.com/s/5821bbb2/DmLWUP8XKUmTu8Wr6cdX4A?u=http://www.weprotectimagination.com/  IP
SOLUTIONS

On August 13, 2021 10:19 AM Ethan Litney <elitney@nicholaslaw.org> wrote:

Good morning Stephen,

I write to inform you that we have learned your client appears to have destroyed relevant evidence relating to this action, including, but not limited to, social media (e.g., Instagram) posts evidencing past advertisement of counterfeit Upper Deck cards. In the alternative, if your client has separately maintained records of any destroyed evidence, please let us know when those records will be produced.

Relevantly, "[s]poliation of evidence is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009) (citation omitted). "The court has inherent power to sanction parties or their attorneys for improper conduct ... which includes spoliation of evidence." *Glass v. Beer*, 2007 WL 1456059, at *2 (E.D. Cal. May 17, 2007); *see also Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992).

In addition to the Court's inherent power to sanction parties for spoliation, Federal Rule of Civil Procedure 37(e) expressly provides an alternative basis for spoliation sanctions. Pursuant to Rule 37(e): "If electronically stored information ("ESI") that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." "The range of measures is quite broad if they are necessary for this purpose," and "[m]uch is entrusted to the court's discretion." Rule 37(e)(1) Committee Notes. District Courts employ curative measures including monetary sanctions, attorneys' fees, adverse inference instruction, preclusion of evidence, permit parties to present evidence and argument of spoliation and lost ESI at trial, amongst others. *See e.g., Blumenthal Distributing, Inc. v. Herman Miller*, 2016 WL 6609208, at *26 (C.D. Cal. July 12, 2016), adopted in part by 2016 WL 6901696 (C.D. Cal. Sept. 2, 2016); *Matthew Enterprise, Inc. v. Chrysler Group LLC*, 2016 WL 2957133, at *5 (N.D. Cal. May 23, 2016); *Spencer v. Lunada Bay Boys*, 2018 WL 839862, at *2 (C.D. Cal. Feb. 12, 2018) (Court

3

employed Rule 37(e)(1) remedies including monetary sanctions in form of attorneys' fees, adverse inference, and costs of newly ordered deposition, where spoliating party deleted unrecoverable text messages); *Painter v. Atwood*, 2014 WL 1089694 (D. Nev. Mar. 18, 2014) (Adverse inference instruction granted **where Plaintiff deleted relevant Facebook comments with a culpable state of mind**.) (emphasis added).

Under either authority, spoliation sanctions are appropriate where: (1) the person in control of the evidence had a duty to preserve it; (2) the loss/destruction of the evidence was done with a "culpable state of mind"; and (3) the lost evidence was "relevant" to a claim or defense at issue. *See, e.g., Clear-View Techs., Inc. v. Rasnick*, 2015 WL 2251005, at *7 (N.D. Cal. May 13, 2015); *Montoya v. Orange Cnty. Sheriff's Dept.*, 2013 WL 6705992, at *7 (C.D. Cal. Dec. 18, 2013).

Of course, every party has a duty to preserve relevant evidence. *Leon v. IDX Sys. Corp.,* 464 F.3d 951, 959 (9th Cir. 2006). Litigants have a duty to preserve "what [they know], or should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Toppan Photomasks, Inc. v. Park*, No. 13–CV–03323–MMC, 2014 WL 2567914, at *5 (N.D. Cal. 2014).

This duty "arises as soon as a potential claim is identified." *Zest IP Holdings, LLC v. Implant Direct Mfg*. LLC, 2014 WL 6851607, at *9 (S.D. Cal. June 16, 2014) (citation omitted); *Scalia v. KP Poultry, Inc.,* 2020 WL 6694315, at *4 (C.D. Cal. Nov. 6, 2020) ("As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which [he or she] knows or reasonably should know is relevant to the action."). Once the duty to preserve evidence is triggered, it continues throughout the litigation. *Jimenez v. Menzies Aviation Inc.,* 2016 WL 3232793, at *4 (N.D. Cal. June 13, 2016).

A "culpable state of mind," includes negligence. *See, e.g., Cottle-Banks v. Cox Commc'ns, Inc.*, 2013 WL 2244333, at *14 (S.D. Cal. May 21, 2013); *see also Unigard Sec. Ins. Co*., 982 F.2d at 368-69 (spoliation sanctions were warranted where a party negligently allowed evidence to be destroyed, even though disposal occurred when the party believed it had no legal claim). Where a party loses evidence or fails to protect it from destruction after having "some notice" that it is potentially relevant to pending or contemplated litigation, the "culpable state of mind" element is satisfied. *Leon*, 464 F.3d at 959; *see also Glover v. BIC Corp*., 6 F.3d 1318, 1329 (9th Cir. 1993) ("Surely a finding of bad faith will suffice, but so will simple notice of 'potential relevance to the litigation.'").

Therefore, I would ask that you please immediately instruct your client to cease from committing any further spoliation, and clarify the full extent of the destruction of documents or electronically stored information that has taken place thus far, including but not limited to deletion of posts on your client's Instagram account. In order to mitigate Plaintiff's prejudice and potentially avoid further unnecessary waste of the resources of the parties and the Court, we ask that your client immediately provides his consent under the Stored Communications Act for Plaintiff to subpoena Instagram, Facebook, and eBay relating to his accounts on those platforms. We are willing to discuss protocols to maintain the confidentiality of any irrelevant information that is produced in response to these subpoenas, as we are

4

only interested in the relevant evidence that your client has destroyed. **Time is absolutely of the essence** given the limited periods of time in which deleted information is retained by these platforms, so we ask that you obtain your client's consent as soon as possible to minimize any prejudice to Plaintiff. We will provide appropriate consent forms for your review if your client is in agreement.

If you have any questions, please do not hesitate to follow-up via email.

Thanks,

Ethan



Links contained in this email have been replaced. If you click on a link in the email above, the link will be analyzed for known threats. If a known threat is found, you will not be able to proceed to the destination. If suspicious content is detected, you will see a warning.

# EXHIBIT L



# EXHIBIT M

1 | **NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
2 | Shaun Markley (SBN 291785)
Ethan T. Litney (SBN 295603)
3 | 225 Broadway, 19th Floor
San Diego, California 92101
4 | Tel: (619) 325-0492
Fax: (619) 325-0496
5 | Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
6 | Email: elitney@nichoalslaw.org

7 | Attorneys for Plaintiff

8

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**08/17/2020** at 05:09:42 PM

Clerk of the Superior Court
By Jose Hernandez, Deputy Clerk

9 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10 | **IN AND FOR THE COUNTY OF SAN DIEGO – CENTRAL DIVISION**

| | |
|---|---|
| 11 THE UPPER DECK COMPANY, a Nevada corporation,<br><br>12<br><br>13        Plaintiff,<br><br>14    v.<br><br>15 CHARLES CATALFAMO, an individual,<br><br>16       Defendant.<br><br>17<br><br>18<br><br>19<br><br>20<br><br>21<br><br>22<br><br>23<br><br>24<br><br>25<br><br>26<br><br>27 | Case No.:  37-2020-00028826-CU-IP-CTL<br><br>**COMPLAINT FOR:**<br><br>**(1) FEDERAL TRADEMARK INFRINGEMENT;**<br><br>**(2) TRADEMARK DILUTION;**<br><br>**(3) REGISTERED TRADEMARK INFRINGEMENT AND COUNTERFEITING;**<br><br>**(4) DEPRIVATION OF RIGHTS OF PUBLICITY;**<br><br>**(5) VIOLATION OF RIGHTS OF PUBLICITY UNDER CALIFORNIA COMMON LAW;**<br><br>**(6) VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW;**<br><br>**(7) VIOLATION OF CALIFORNIA COMMON LAW UNFAIR COMPETITION; and**<br><br>**(8) UNJUST ENRICHMENT / QUASI-CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

28

COMPLAINT

**NATURE OF THE ACTION**

1.      This is a civil action by Plaintiff The Upper Deck Company ("Upper Deck") against Defendant Charles Catalfamo ("Defendant") for federal trademark infringement, violation of the Lanham Act, federal trademark dilution, violation and deprivation of the rights of publicity under California laws, violation of California's Unfair Competition Law, California common law unfair competition, and unjust enrichment/quasi-contract.

**THE PARTIES**

2.      Upper Deck is a leading manufacturer of, among other products, sports trading cards, holding exclusive licensing agreements with various professional athletes, and maintaining trademarked logos and designs. Upper Deck is a Nevada Corporation with its principle place of business in Carlsbad, California.

3.      On information and belief, Charles Catalfamo is an individual who resides at 915 Shepard Court, Bel Air, Maryland. Defendant markets products for sale online throughout the United States, including the State of California and San Diego County, through eBay, under the eBay account name "char-cata." Defendant's eBay account was created on or around May 25, 2015.

**JURISDICTION AND VENUE**

4.      The amount in controversy arising from the actions and statutory violations as further described below is sufficient to implicate the general unlimited jurisdiction of the Superior Court in and for San Diego County.

5.      Venue is proper in this judicial district, pursuant to California Code of Civil Procedure section 395, as Upper Deck's principle place of business is in San Diego County, and Defendant conducts business within San Diego County.

**FACTS COMMON TO ALL CLAIMS**

6.      For over thirty years, Upper Deck has been a leading manufacturer of sports trading cards in the United States of America.

7.      Since its formation, Upper Deck designed, marketed, manufactured, distributed, promoted, and sold trading cards at one time featuring all four major sports (e.g., hockey,

basketball, baseball, and football). By way of these products, Upper Deck holds exclusive and non-exclusive licenses with athletes and various professional sports league and players' associations, including athletes Michael Jordan and LeBron James.

8. Upper Deck is renown as one of the leading sports trading card manufacturers. The "Upper Deck" name is instantly recognized and respected among traders and collectors alike. For example, just two months after Upper Deck's license by Major League Baseball, in February 1989, Upper Deck delivered its first two cases of baseball cards to a baseball card store in Tulsa, Oklahoma. Upper Deck sold out its baseball cards midway through the inaugural year and pre-sold its entire 1990 baseball stock before the year began. Upper Deck established itself so quickly that it rivaled Topps, which started its business more than thirty years before Upper Deck.

9. Upper Deck remained at the forefront of the industry since its inception, so much so that it was named "Card Set of the Year" every year from 1989 to 2004.

10. Upper Deck is the owner of the unique and proprietary trademarks and tradenames. Some of the trademarks at issue in this action are identified and pictured below (collectively the "Upper Deck Trademarks"):

    a. the trademark "EXQUISITE", evidenced by United States Patent and Trademark Office Registration ("USPTO") No. 3989696.

EXQUISITE

    b. the green diamond "UPPER DECK" logo, USPTO No. 2498524



    c. the "UPPER DECK" security hologram, USPTO No. 76275803.



11. Upper Deck uses the Upper Deck Trademarks in its usual course of business in connection with its marketing and sale of sports trading cards in interstate commerce, during at least the times referenced above. Upper Deck's ownership of the Upper Deck Trademarks is evidenced, in part, but the above-referenced USPTO registration numbers.

12.     Under 15 U.S.C. § 1065, Upper Deck's exclusive right to use its registered Upper Deck Trademarks in connection with goods covered by its identified federal registrations has become incontestable.

13.     Upper Deck is the exclusive owner of the Upper Deck Trademarks.

14.     In particular, the green diamond logo in question was Upper Deck's main logo displayed on its products from the year of its founding in 1988 to 2008, and still used today.

15.     With Upper Deck's long history, international reach, and record-breaking industry standards, Upper Deck's use of its trademarks in connection with its products led to favorable public acceptance and association with the recognized quality and substantial goodwill the Upper Deck's name holds.

16.     Upper Deck also holds exclusive licenses and non-exclusive licenses with certain major sports leagues and players, Michael Jordan and LeBron James (collectively the "Athletes") being two examples of exclusive licenses[1] Upper Deck holds. The Athletes' likenesses and marks are famous and distinctive in the United States and worldwide.[2]

17.     Upper Deck's licenses with the Athletes include the ability to enforce the publicity rights of the Athletes in connection with the use of the Athletes' likenesses on sports trading cards.

18.     With disregard for Upper Deck's rights, Defendant is advertising and selling counterfeit sports trading cards with the Upper Deck Trademarks and the Athletes' likenesses ("Products") in interstate commerce via their eBay Store using the seller name "char-cata" ("Store").

---

[1] Indeed, Upper Deck's exclusive licenses relating to the Athletes have been recognized by state and federal courts. *See, e.g., Merrick Mint, Inc. v. Upper Deck Co.*, (D. Nev. Sept. 21, 2007) 2007 WL 9754544, at *1.

[2] For example, the Seventh Circuit Court of Appeals has recognized: "[Michael] Jordan is a sports icon whose name and image are deeply embedded in the popular culture and easily recognized around the globe. His singular achievements on the basketball court have made him highly sought after as a celebrity endorser; as a retired player who continues to reap the economic value of his reputation in the history of the game, he understandably guards the use of his identity very closely." *See Jordan v. Jewel Food Stores, Inc.* (7th Cir. 2014) 743 F.3d 509, 513.

19.     Defendant's use of the Upper Deck Trademarks began after Upper Deck's Trademarks became famous. Defendant's use of the Athletes' likenesses began after they became famous and Upper Deck held exclusive licenses with the Athletes.

20.     Defendant is featuring non-authentic, counterfeit trading cards with the Upper Deck Trademarks and the Athletes' likenesses without Upper Deck's permission, consent, authority, or approval.

21.     For example, one of Defendant's Products for sale is titled "2006-07 Dual Exquisite Michael Jordan/Lebron James Patch Image Facsimile Card" (the "Card"), the front and back of which can be seen below:

(Front)




(Back)



22.   Further, Defendant has recently sold the exact same Card, as seen below:

Bidding has ended on this item. The seller has relisted this item or one like this.

**2006-07 Dual Exquisite Michael Jordan / Lebron James Patch Image Facsimile Card**



| | |
|---|---|
| Condition: | **Brand New** |
| Ended: | Jun 13, 2020 , 8:45PM |
| Winning bid: | **US $76.00**  [ 42 bids ] |
| Shipping: | $3.00  Standard Shipping |
| Item location: | Bel Air, Maryland, United States |
| Seller: | char-cata (1512 ★)  |  Seller's other items |

Sell one like this

23.   Defendant's Products, including the Card, are counterfeits that were not created or distributed by Upper Deck, but contain marks that are identical to, substantially identical to, or confusingly similar to Upper Deck's Trademarks.

24.   Specifically, the front side of the Card contains the "EXQUISITE" trademark and "UPPER DECK" security hologram in gold, as identified below:



and "UPPER DECK" security hologram, and the EXQUISITE mark:



26.     Further, as stated above, Upper Deck holds exclusive licenses relating to use of likenesses of the Athletes on sports trading cards. The Athletes both appear on the front side of the Card, as identified below:



27.     Upper Deck is informed and believes the Card, like many of Defendant's Products, is an illegally reprinted version of an authentic sports trading card previously produced by Upper Deck without Upper Deck's permission, consent, authority, or approval.

28.     The illegal and unauthorized reprinting of Upper Deck's products harms Upper Deck as the similarity between the authorized products and the illegal reprints causes, and will continue to cause confusion and mistake, and will deceive customers who wish to purchase Upper Deck products and others as to the affiliation, connection, or association of Upper Deck with Defendant, or as to the origin, sponsorship, or approval of Defendant's Products by Upper Deck and the Athletes destroys the goodwill and reputation established by Upper Deck and the Athletes, and harms collectors who purchased authentic Upper Deck products.

**FIRST CAUSE OF ACTION**
**Federal Trademark Infringement**
**(15 U.S.C. § 1125(a))**

29.     Upper Deck repeats and incorporates by reference the allegations in the preceding paragraphs.

30.     Upper Deck has the exclusive rights to use the Upper Deck Trademarks which are famous and distinctive within the meaning of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

31.     Upper Deck similarly has the exclusive rights to use the Athletes' likenesses/marks which are famous and distinctive within the meaning of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

32.     All of the marks have been in use for many years and play a prominent role of the Upper Deck's and the Athletes' marketing, advertising, and popularity of their products, services, and commercial activities across many different media outlets. The Athletes have gained widespread publicity and public recognition throughout the United States, including in California.

33.     The Upper Deck Trademarks and Athletes' marks were famous long before Defendant began using unauthorized reproductions, counterfeits, copies, and colorable imitations on their unauthorized Products.

34.     Defendant infringed Upper Deck's rights by using the Upper Deck Trademarks and the Athletes' marks, on and in connection with the sale of Defendant's unauthorized Products in interstate commerce. Defendant did so without the permission of Upper Deck. By continuing to sell the Products, Defendant intentionally infringes on Upper Deck's rights.

35.     Defendant's acts as alleged constitute trademark infringement, false designation of origin, false or misleading representation, and false or misleading description which (A) is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, right to use, or association of Defendant with Upper Deck or the Athletes and as to the origin, sponsorship, or approval of Defendant's Products by Upper Deck or the Athletes; and (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or origin of Defendant's Products, and/or Upper Deck's or the Athletes' authorized products, services, or commercial activities.

36.     Defendant's actions constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a). As a result of Defendant's unlawful acts, Defendant has been unjustly enriched and Upper Deck has been damaged.

37.     Defendant's unlawful activities have caused, and unless enjoined, will continue to cause, irreparable injury and other damage to Upper Deck in terms of their business, reputation, and goodwill in the Upper Deck Trademarks, Athlete', marks and related rights to use those marks.

38.     Upper Deck is also damaged and will continue to be damaged by Defendant's false descriptions and representations through direct diversion of sales and/or through a lessening of goodwill associated with Upper Deck's products and the Athletes' marks. Upper Deck pays large premiums for the exclusive right to use the Athletes' rights, including their marks described above, on trading card products. Upper Deck intends to foster and promote the goodwill associated with the Athletes and their marks and to have continuing and ongoing relationships with them that create mutual benefit to both parties. Defendant's alleged acts also negatively impact customers' perceived value of Upper Deck's products by increasing the appearance of total cards available on the market. Neither Upper Deck nor the Athletes have any adequate remedy at law.

39.     Upper Deck seeks injunctive relief, compensatory damages, disgorgement of profits, punitive damages, and recovery of its costs and attorney's fees against Defendant for its various and continuing acts of infringement, false affiliation, false advertising, and false competition.

## SECOND CAUSE OF ACTION
### Trademark Dilution
### (15 U.S.C. § 1125(c))

40.     Upper Deck repeats and incorporates by reference the allegations in the preceding paragraphs.

41.     Defendant has used the trademarks of Upper Deck and the Athletes, on and in connection with the sale of Defendant's unauthorized products in interstate commerce. Defendant has done so without the permission of Upper Deck or the Athletes.

42.     Defendant's acts as alleged dilute and/or are likely to dilute the distinctive quality of those marks described above, and to lessen the capacity of such marks to identify and distinguish Upper Deck's trading cards.

43.     Defendant's unlawful use of the Athletes' marks in connection with inferior and counterfeit goods is also likely to tarnish those marks and negatively impact customers' perceived value of Upper Deck's products by increasing the appearance of total cards available on the market, thereby lessening the value of the marks as well as the value of Upper Deck's products, and lessening the demand for Upper Deck's products.

44.     Defendant's unlawful activities caused, and unless enjoined, will continue to cause, irreparable injury and other damage to Upper Deck does not have any adequate remedy at law.

45.     Upper Deck seeks injunctive relief, compensatory damages, disgorgement of profits, and punitive damages against Defendant for its various and continuing acts of dilution.

**THIRD CAUSE OF ACTION**
**Registered Trademark Infringement and Counterfeiting**
**(15 U.S.C. § 1114)**

46.     Upper Deck repeats and incorporates by reference the allegations in the preceding paragraphs.

47.     Defendant used in commerce reproductions, counterfeits, copies, and/or colorable imitations of Upper Deck's and the Athletes' registered marks in connection with the sale, offering for sale, distribution, or advertising of its Products. Defendant's use of these registered marks is causing or is likely to cause confusion, or to cause mistake, or to deceive consumers and the public into believing that Defendant's products are the products of Upper Deck.

48.     Defendant also reproduced, counterfeited, copied, and/or colorably imitated Upper Deck's and the Athletes' registered marks and applied such reproductions, counterfeits, copies, and/or colorable imitations to its Products, and intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, and advertising of its Products.

49.     Defendant used the registered marks without the permission of Upper Deck.

50.     Defendant's acts as alleged are causing, and unless enjoined, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Upper Deck and the Athletes' goodwill and reputation, for which neither Upper Deck has any adequate remedy at law.

51.      Defendant's acts demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Upper Deck's and the Athletes' marks to Upper Deck's great and irreparable harm.

52.     Upper Deck seeks injunctive relief, compensatory damages, disgorgement of profits, punitive damages, destruction of the infringing articles under 15 U.S.C.A. Section 1118, and recovery of its costs and attorneys' fees against Defendant for its various and continuing acts of infringement and counterfeiting.

**FOURTH CAUSE OF ACTION**
**Deprivation of Rights of Publicity**
**(Cal. Civ. Code § 3344)**

53.     Upper Deck repeats and incorporates by reference the allegations in the preceding paragraphs.

54.     Defendant knowingly, and without authorization, used the likenesses of the Athletes in their Products, including the Card, that were sold in interstate commerce via their Store.

55.     Upper Deck has an exclusive license to utilize the likenesses of the Athletes in connection with sports trading cards and has the right to assert claims for deprivation of rights of publicity in connection with sports trading cards. Defendant's Products are sports trading cards.

56.     As a direct and proximate result of Defendant's wrongful acts, Upper Deck has been damaged in an amount that is not less than $750 per use of each Athlete's likeness in each unauthorized and infringing Product. When Upper Deck has ascertained the full amount of damages, it may seek leave of court to amend the complaint accordingly. Upper Deck further seeks an award of punitive damages under Civil Code section 3344(a).

57.     As a direct and proximate result of Defendant's wrongful acts, Upper Deck has incurred, and will continue to incur, substantial attorneys' fees and costs. Upper Deck is entitled

1  to an award of its attorneys' fees and costs incurred in connection with this matter pursuant to

2  California Civil Code section 3344(a).

3       58.    By reason of Defendant's wrongful acts, in addition to the relief sought above,

4  Upper Deck is entitled to an accounting of all gross revenue and profits received, directly and

5  indirectly, by Defendant as a result of the unauthorized use of the likenesses of the Athletes and to

6  an award of all such sums. By reasons of Defendant's wrongful acts as alleged above, Defendant

7  is an involuntary trustee holding all such sums in its possession under a constructive trust for the

8  benefit of Upper Deck with a duty to transfer the same to Upper Deck forthwith.

9                **FIFTH CAUSE OF ACTION**

10      **Violation of Rights of Publicity under California Common Law**

11       59.    Upper Deck repeats and incorporates by reference the allegations in the preceding

12  paragraphs.

13       60.    Defendant knowingly, intentionally, and without authorization used the likenesses

14  of the Athletes in their Products, including the Card, that were sold in interstate commerce via

15  their Store.

16       61.    Upper Deck has an exclusive license to utilize the likeness of the Athletes in

17  connection with sports trading cards and has the right to assert claims for deprivation of rights of

18  publicity in connection with sports trading cards. Defendant's Products are sports trading cards.

19       62.    As a direct and proximate result of Defendant's misappropriation of the Athletes'

20  publicity rights, Defendant injured Upper Deck.

21       63.    Defendant's actions, as described herein, were committed maliciously,

22  intentionally, fraudulently and with a willful and conscious disregard of Upper Deck's rights,

23  making an award of punitive damages appropriate in order to punish and deter Defendant from

24  engaging in the conduct alleged herein.

25                **SIXTH CAUSE OF ACTION**

26      **Violation of California Unfair Competition Law**
       **(Cal. Bus. & Prof. Code § 17200 et seq.)**

27       64.    Upper Deck repeats and incorporates by reference the allegations in the preceding

28  paragraphs.

65.     California Business and Professions Code § 17200, et seq., prohibits businesses from engaging in any unlawful, unfair, or fraudulent business acts or practices.

66.     Defendant's misappropriation of the Upper Deck Trademarks and the Athletes' likenesses permit, and will permit, Defendant to use and benefit from the goodwill and reputation of Upper Deck and the Athletes. By selling sports trading cards which bear Upper Deck's name and the Athletes' likenesses, Defendant is benefitting from the positive reputation and value customers have given Upper Deck products which Defendant would not otherwise have, at Upper Deck's expense.

67.     Further, as described above, Defendant has been and is passing off its Products as those of Upper Deck, causing confusion and misunderstanding for the buyer as to the source, sponsorship, or approval of the Products.

68.     Defendant's conduct constitutes unlawful, unfair, and deceptive trade practices and unfair completion in violation of California Business & Professions Code § 17200 et seq.

69.     By continuing to sell the misappropriated Products, Upper Deck will suffer substantial injury, including possible loss of customers who will lose trust in the Upper Deck name, and injury to its business relationship with the Athletes.

## SEVENTH CAUSE OF ACTION
### Violation of California Common Law Unfair Competition

70.     Upper Deck repeats and incorporates by reference the allegations in the preceding paragraphs.

71.     Defendant's acts constitute common law trademark infringement and unfair competition, and have created and will continue to create, irreparable injury to Upper Deck who will have no adequate remedy at law.

72.     On information and belief, Defendant acted with full knowledge of Upper Deck's use of, and statutory common law rights to, the Upper Deck Trademarks and the Athletes' likenesses without regard to the likelihood of confusion to the public.

73.     Defendant clearly acted in an intentional manner to benefit from Upper Deck's and the Athletes' reputable and respected names.

74. As a result of Defendant's actions, Upper Deck suffered substantial injury, loss, and damage. Therefore, Upper Deck is entitled injunctive relief to account for loss of profit and damages to Upper Deck.

**EIGHTH CAUSE OF ACTION**
**Unjust Enrichment / Quasi-Contract**

75. Upper Deck repeats and incorporates by reference the allegations in the preceding paragraphs.

76. By unlawfully using the Upper Deck Trademarks and the Athletes' likenesses for their own commercial benefit, Defendant unjustly profited from the goodwill and reputation associated with Upper Deck and the Athletes. Defendant's acts created a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Upper Deck. Because Defendant's retention of its ill-gotten gains would be unjust and inequitable, Defendant must pay restitution to Upper Deck.

**JURY DEMAND**

77. Upper Deck respectfully requests a jury trial on all claims and issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Upper Deck requests it be rewarded the following relief:

78. Defendant and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Defendant, or in concert or participation with Defendant, and each of them, be enjoined from:

    a. advertising, marketing, promoting, offering for sale, distributing, or selling the Products including the Card;

    b. using the Upper Deck Trademarks or the Athletes' likenesses on or in connection with any of Defendant's trading card goods;

    c. using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendant's trading card goods that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any of the Upper

Deck Trademarks, trade dresses, names, or logos, or the Athletes' name, marks, or likenesses;

    d.   using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendant's trading card goods that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Upper Deck, or are sponsored or authorized by Upper Deck or the Athletes, or are in any way connected or related to Upper Deck or the Athletes;

    e.   using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendant's goods that dilutes or is likely to dilute the distinctiveness of the Upper Deck Trademarks, trade dresses, names, or logos;

    f.   passing off, palming off, or assisting in passing off or palming off Defendant's goods as those of Upper Deck, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

    g.   advertising, promoting, offering for sale, or selling the Products or other similar goods; and

    h.   representing to any person or entity that Defendant has authority to use the Upper Deck Trademarks or the Athletes' name, marks, or likenesses;

79.    Injunctive relief preventing Defendant's continued infringement, including an injunction against Defendant's continued use of the Upper Deck Trademarks and the Athletes' name, marks, and likenesses;

80.    An award to Upper Deck of damages from sold, marketed, advertised, and promoted Products with Upper Deck Trademarks and the Athletes' likenesses, in an amount not less than $4.5 million;

81.    That Defendant be ordered to destroy all remaining inventory which carry Upper Deck Trademarks and the Athletes' name, marks, or likenesses;

82.    That Defendant report to Upper Deck any and all profits derived from the selling or distribution of Products;

83. That Upper Deck receive and recover from Defendant Upper Deck's (a) actual damages under applicable state statutory and common law, (b) costs of court, (c) statutory damages based on Lanham Act, (d) enhanced damages or profits under the Lanham Act, (e) attorneys' fees pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 505, California Civil Code § 3344, and any other applicable provision of law;

84. That Upper Deck be awarded punitive damages to prevent future willful and deliberate infringement and/or dilution of the Upper Deck Trademarks and the Athletes' likenesses, as well as deprivation the Athletes' rights to publicity under California law;

85. That Upper Deck be awarded prejudgment and post-judgment interest on all monetary Awards; and

86. That Upper Deck be awarded such other and further relief as the court may deem just and proper.


Respectfully submitted:              **NICHOLAS & TOMASEVIC, LLP**


Dated: August 17, 2020          By: _____

                                     Craig M. Nicholas
                                     Shaun Markley
                                     Ethan T. Litney


                                     Attorneys for Plaintiff
                                     The Upper Deck Company

---

# EXHIBIT N

**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Shaun Markley (SBN 291785)
Ethan T. Litney (SBN 295603)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: elitney@nicholaslaw.org

Attorneys for Plaintiff,
THE UPPER DECK COMPANY

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**05/03/2021** at 10:41:33 AM

Clerk of the Superior Court
By Erika Engel, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF SAN DIEGO**

| | |
|---|---|
| THE UPPER DECK COMPANY, a Nevada corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WILLIAM TRUDSOE, an individual, and DOES 1 through 100, inclusive,<br><br>　　　　　Defendants. | Case No.: 37-2021-00019632-CU-IP-CTL<br><br>**COMPLAINT FOR:**<br><br>**(1) FEDERAL TRADEMARK INFRINGEMENT;**<br><br>**(2) TRADEMARK DILUTION;**<br><br>**(3) REGISTERED TRADEMARK INFRINGEMENT AND COUNTERFEITING;**<br><br>**(4) DEPRIVATION OF RIGHTS OF PUBLICITY;**<br><br>**(5) VIOLATION OF RIGHTS OF PUBLICITY UNDER CALIFORNIA COMMON LAW;**<br><br>**(6) VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW;**<br><br>**(7) VIOLATION OF CALIFORNIA COMMON LAW UNFAIR COMPETITION; AND**<br><br>**(8) UNJUST ENRICHMENT / QUASI-CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

1.     This is a civil action by Plaintiff THE UPPER DECK COMPANY ("Plaintiff" or "Upper Deck") against Defendant William Trudsoe ("Defendant") for federal trademark infringement, violation of the Lanham Act, federal trademark dilution, violation and deprivation of the rights of publicity under California laws, violation of California's Unfair Competition Law, California common law unfair competition, and unjust enrichment/quasi-contract.

## THE PARTIES

2.     Upper Deck is a leading manufacturer of, among other products, trading cards, holding exclusive licensing agreements with various professional athletes, and maintaining trademarked logos and designs. Upper Deck is a Nevada corporation with its principal place of business in Carlsbad, California.

3.     On information and belief, William Trudsoe is an individual who resides at 4955 Lake Shore Drive, Apt. A in Bolton Landing, New York. Defendant markets products for sale online throughout the United States of America, including the State of California and San Diego County, through eBay, under the eBay account name "Jonnyoaks45."

4.     The true names and capacities of the defendants sued herein as Does 1 through 100, inclusive, are unknown to Upper Deck, and Upper Deck accordingly sues these defendants by their fictitious names. Upper Deck will amend this complaint in accordance with Section 474 of the California Code of Civil Procedure once the true names and capacities of these defendants have been ascertained.

## JURISDICTION AND VENUE

5.     The amount in controversy arising from the actions and statutory violations as further described below is sufficient to implicate the general unlimited jurisdiction of the Superior Court in and for San Diego County.

6.     Venue is proper in this judicial district, pursuant to California Code of Civil Procedure section 395, as Upper Deck's principal place of business is in San Diego County, and Defendant conducts business within San Diego County.

**FACTS COMMON TO ALL CLAIMS**

7.     For over thirty years, Upper Deck has been a leading manufacturer of trading cards in the United States of America.

8.     Since its formation, Upper Deck designed, marketed, manufactured, distributed, promoted, and sold trading cards at one time featuring all four major sports (e.g., hockey, basketball, baseball, and football). By way of these products, Upper Deck holds exclusive and non-exclusive licenses with athletes and various professional sports league and players' associations.

9.     Upper Deck is renowned as one of the leading sports trading card manufacturers. The "Upper Deck" name is instantly recognized and respected among traders and collectors alike.

10.     Upper Deck remained at the forefront of the industry since its inception, so much so that it was named "Card Set of the Year" every year from 1989 to 2004.

11.     Upper Deck is the owner of the unique and proprietary trademarks and tradenames. Some of the trademarks at issue in this action are identified and pictured below (collectively the "Upper Deck Trademarks"):

  a.     the trademark "EXQUISITE", evidenced by United States Patent and Trademark Office Registration ("USPTO") No. 3989696.

EXQUISITE

  b.     the green diamond "UPPER DECK" logo, USPTO No. 2498524



  c.     the "UPPER DECK" security hologram, USPTO No. 76275803.



12.     Upper Deck uses the Upper Deck Trademarks in its usual course of business in connection with its manufacture, marketing, and sale of trading cards in interstate commerce, during at least the times referenced above. Upper Deck's ownership of the Upper Deck Trademarks is evidenced, in part, but the above-referenced USPTO registration numbers.

2
COMPLAINT

13.     Under 15 U.S.C. § 1065, Upper Deck's exclusive right to use its registered Upper Deck Trademarks in connection with goods covered by its identified federal registrations has become incontestable.

14.     Upper Deck is the exclusive owner of the Upper Deck Trademarks.

15.     In particular, the green diamond logo in question was Upper Deck's main logo displayed on its products from the year of its founding in 1988 to 2008, and is still used today.

16.     With Upper Deck's long history, international reach, and record-breaking industry standards, Upper Deck's use of its trademarks in connection with its products led to favorable public acceptance and association with the recognized quality and substantial goodwill the Upper Deck's name holds.

17.     Upper Deck holds exclusive licenses and non-exclusive licenses with certain major sports leagues and athletes, including retired athletes such as with Michael Jordan "("Jordan") being an example of an exclusive license[1] Upper Deck holds. Jordan's likeness is famous and distinctive in the United States and worldwide.[2]

18.     Upper Deck's license with Jordan includes the ability to enforce Jordan's publicity rights in connection with the use of Jordan's likeness on, among other products, trading cards.

19.     With a knowing disregard for Upper Deck's rights, Defendant is advertising and selling counterfeit trading cards with the Upper Deck Trademark's and Jordan's likeness ("Products") in interstate commerce via their eBay Store using the seller name "Jonnyoaks45" ("Store").

20.     Defendant's use of the Upper Deck Trademarks began after Upper Deck's Trademarks became famous.

---

[1] Indeed, Upper Deck's exclusive license related to Jordan has been recognized by state and federal courts. (*See, e.g., Merrick Mint, Inc. v. Upper Deck Co.*, (D. Nev. Sept. 21, 2007) 2007 WL 9754544, at *1.)

[2] For example, the Seventh Circuit Court of Appeals has recognized: "[Michael] Jordan is a sports icon whose name and image are deeply embedded in the popular culture and easily recognized around the globe. His singular achievements on the basketball court have made him highly sought after as a celebrity endorser; as a retired player who continues to reap the economic value of his reputation in the history of the game, he understandably guards the use of his identity very closely." (*See Jordan v. Jewel Food Stores, Inc.* (7th Cir. 2014) 743 F.3d 509, 513.)

21.     Defendant's use of Jordan's likeness began after Jordan became famous and Upper Deck held an exclusive license for Jordan's likeness on, among other products, trading cards.

22.     Defendant is selling non-authentic, counterfeit trading cards with the Upper Deck Trademarks and featuring Jordan's likeness without Upper Deck's or Jordan's permission, consent, authority, or approval.

23.     Examples of Defendant's Products (the "Cards") for sale featuring the Upper Deck Trademarks and Jordan's name, image, likeness, and/or autograph on the listings can be seen below. Specifically as to the Upper Deck Trademarks, the front side of the Cards contains the "EXQUISITE" trademark and "UPPER DECK" security hologram in gold, as identified below:



[This space intentionally left blank]

24.   Similarly, the back side of the Cards contains the green diamond "UPPER DECK" logo, and "UPPER DECK" security hologram, and the EXQUISITE mark:



25.     Further, as stated above, Upper Deck holds exclusive licenses relating to use of Jordan's likeness and/or autograph, which are immediately apparently on the Cards.

26.     Defendant's Products, including the Cards, are counterfeits that were not created or distributed by or on behalf of Upper Deck, and feature the Upper Deck Trademarks and Jordan's name, image, likeness, and/or autograph for which Upper Deck holds an exclusive license related to the use of Jordan's publicity rights on trading cards.

27.     Upper Deck is informed and believes the Cards, like many of Defendant's Products, are illegally reprinted versions of authentic trading cards previously produced by Upper Deck that were created without Upper Deck's permission, consent, authority, or approval.

28.     The illegal and unauthorized reprinting of Upper Deck's products harms Upper Deck as the similarity between the authorized products and the illegal reprints causes, and will continue to cause confusion and mistake, and will deceive customers who wish to purchase Upper Deck products and others as to the affiliation, connection, or association of Upper Deck with Defendant, or as to the origin, sponsorship, or approval of Defendant's Products by Upper Deck and Jordan, destroys the goodwill and reputation established by Upper Deck and Jordan, and harms collectors who purchased authentic Upper Deck products.

**FIRST CAUSE OF ACTION**
**Federal Trademark Infringement – Against All Defendants**
**(15 U.S.C. § 1125(a))**

29.     Upper Deck repeats and incorporates by reference the allegations in the preceding paragraphs.

30.     Upper Deck has the exclusive rights to use the Upper Deck Trademarks which are famous and distinctive within the meaning of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

31.     Upper Deck similarly has the exclusive rights to use Jordan's likeness and marks which are famous and distinctive within the meaning of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

32.     All of the marks have been in use for many years and play a prominent role of the Upper Deck's and Jordan's marketing, advertising, and popularity of their products, services, and

commercial activities across many different media outlets. Jordan has gained widespread publicity and public recognition throughout the United States, including in California.

33.    The Upper Deck Trademarks and Jordan's likeness and marks were famous long before Defendant began using unauthorized reproductions, counterfeits, copies, and colorable imitations on its unauthorized Products.

34.    Defendant infringed on Upper Deck's rights by using the Upper Deck Trademarks and Jordan's marks, on and in connection with the sale of Defendant's unauthorized Products in interstate commerce. Defendant did so without the permission of Upper Deck or Jordan. By continuing to sell the Products, Defendant is intentionally infringing on Upper Deck's and Jordan's rights.

35.    Defendant's acts as alleged constitute trademark infringement, false designation of origin, false or misleading representation, and false or misleading description which (A) is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, right to use, or association of Defendant with Upper Deck or Jordan and as to the origin, sponsorship, or approval of Defendant's Products by Upper Deck or Jordan; and (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or origin of Defendant's Products, and/or Upper Deck's or Jordan's authorized products, services, or commercial activities.

36.    Defendant's actions constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a). As a result of Defendant's unlawful acts, Defendant has been unjustly enriched and Upper Deck has been damaged.

37.    Defendant's unlawful activities have caused, and unless enjoined, will continue to cause, irreparable injury and other damage to Upper Deck in terms of their business, reputation, and goodwill in the Upper Deck Trademarks, Jordan's likenesses, rights, marks and related rights to use those marks.

38.    Upper Deck is also damaged and will continue to be damaged by Defendant's false descriptions and representations through direct diversion of sales and/or through a lessening of goodwill associated with Upper Deck's products and Jordan's likeness and marks. Upper Deck pays large premiums for the exclusive right to use Jordan's rights, including their marks described

above, on trading card products. Upper Deck intends to foster and promote the goodwill associated with Jordan and his marks and to have continuing and ongoing relationships with him that creates mutual benefit to both parties. Defendant's alleged acts also negatively impact customers' perceived value of Upper Deck's products by increasing the appearance of total cards available on the market. Upper Deck does not have any adequate remedy at law.

39.     Upper Deck seeks injunctive relief, compensatory damages, disgorgement of profits, punitive damages, and recovery of its costs and attorney's fees against Defendant for Defendant's various and continuing acts of infringement, false affiliation, false advertising, and false competition.

**SECOND CAUSE OF ACTION**
**Trademark Dilution – Against All Defendants**
**(15 U.S.C. § 1125(c))**

40.     Upper Deck repeats and incorporates by reference the allegations in the preceding paragraphs.

41.     Defendant has used the trademarks of Upper Deck and Jordan, on and in connection with the sale of Defendant's unauthorized Products in interstate commerce. Defendant has done so without the permission of Upper Deck or Jordan.

42.     Defendant's acts as alleged dilute and/or are likely to dilute the distinctive quality of those marks described above, and to lessen the capacity of such marks to identify and distinguish Upper Deck's trading cards.

43.     Defendant's unlawful use of Jordan's marks in connection with inferior and counterfeit goods is also likely to tarnish those marks and negatively impact customers' perceived value of Upper Deck's products by increasing the appearance of total cards available on the market, thereby lessening the value of the marks as well as the value of Upper Deck's products, and lessening the demand for Upper Deck's products.

44.     Defendant's unlawful activities caused, and unless enjoined, will continue to cause, irreparable injury and other damage to Upper Deck, which does not have any adequate remedy at law.

45.     Upper Deck seeks injunctive relief, compensatory damages, disgorgement of profits, and punitive damages against Defendants for their various and continuing acts of dilution.

### THIRD CAUSE OF ACTION
### Registered Trademark Infringement and Counterfeiting – Against All Defendants
### (15 U.S.C. § 1114)

46.     Upper Deck repeats and incorporates by reference the allegations in the preceding paragraphs.

47.     Defendant used in commerce reproductions, counterfeits, copies, and/or colorable imitations of Upper Deck's and Jordan's registered marks in connection with the sale, offering for sale, distribution, or advertising of its Products. Defendant's use of these registered marks is causing or is likely to cause confusion, or to cause mistake, or to deceive consumers and the public into believing that Defendant's products are the products of Upper Deck.

48.     Defendant also reproduced, counterfeited, copied, and/or colorably imitated Upper Deck's and Jordan's registered marks and applied such reproductions, counterfeits, copies, and/or colorable imitations to their Products, and intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, and advertising of their Products.

49.     Defendant used the registered marks without the permission of Upper Deck.

50.     Defendant's acts as alleged are causing, and unless enjoined, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Upper Deck and Jordan's goodwill and reputation, for which Upper Deck does not have any adequate remedy at law.

51.      Defendant's acts demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Upper Deck's and Jordan's marks to Upper Deck's great and irreparable harm.

52.     Upper Deck seeks injunctive relief, compensatory damages, disgorgement of profits, punitive damages, destruction of the infringing articles under 15 U.S.C.A. § 1118, and recovery of its costs and attorneys' fees against Defendant for their various and continuing acts of infringement and counterfeiting.

**FOURTH CAUSE OF ACTION**
**Deprivation of Rights of Publicity – Against All Defendants**
**(Cal. Civ. Code § 3344)**

53.    Upper Deck repeats and incorporates by reference the allegations in the preceding paragraphs.

54.    Defendant knowingly, and without authorization, used Jordan's name, image, likeness, and/or autograph in its Products, including the Cards, that were sold in interstate commerce via their Store among other channels.

55.    Upper Deck has an exclusive license to utilize Jordan's likeness in connection with trading cards and has the right to assert claims for deprivation of rights of publicity in connection with trading cards. Defendant's Products include trading cards.

56.    As a direct and proximate result of Defendant's wrongful acts, Upper Deck has been damaged in an amount that is not less than $750 per use of Jordan's likeness in each unauthorized and infringing Product. When Upper Deck has ascertained the full amount of damages, it may seek leave of court to amend the complaint accordingly. Upper Deck further seeks an award of punitive damages under Civil Code section 3344(a) for Defendant's knowing use of Jordan's name, image, likeness, and/or autograph without Upper Deck's or Jordan's authorization

57.    As a direct and proximate result of Defendant's wrongful acts, Upper Deck has incurred, and will continue to incur, substantial attorneys' fees and costs. Upper Deck is entitled to an award of its attorneys' fees and costs incurred in connection with this matter pursuant to California Civil Code section 3344(a).

58.    By reason of Defendant's wrongful acts, in addition to the relief sought above, Upper Deck is entitled to an accounting of all gross revenue and profits received, directly and indirectly, by Defendant as a result of the unauthorized use of Jordan's likeness and to an award of all such sums. By reasons of Defendant's wrongful acts as alleged above, Defendant is an involuntary trustee holding all such sums in its possession under a constructive trust for the benefit of Upper Deck with a duty to transfer the same to Upper Deck forthwith.

**FIFTH CAUSE OF ACTION**
**Violation of Rights of Publicity – California Common Law – Against All Defendants**

59.     Upper Deck repeats and incorporates by reference the allegations in the preceding paragraphs.

60.     Defendant knowingly, intentionally, and without authorization used Jordan's name, image, likeness, and/or autograph in its Products, including the Cards, that were sold in interstate commerce via their Store, among other channels, all without Upper Deck's or Jordan's authorization.

61.     Upper Deck has an exclusive license to utilize Jordan's name, image, likeness, and/or autograph in connection with trading cards and has the right to assert claims for deprivation of rights of publicity in connection with trading cards. Defendant's Products are trading cards.

62.     As a direct and proximate result of Defendant's misappropriation of Jordan's publicity rights, Defendant injured Upper Deck.

63.     Defendant's actions, as described herein, were committed maliciously, intentionally, fraudulently and with a willful and conscious disregard of Upper Deck's rights, making an award of punitive damages appropriate in order to punish and deter Defendant from engaging in the conduct alleged herein.

**SIXTH CAUSE OF ACTION**
**Violation of California Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200 et seq.)**

64.     Upper Deck repeats and incorporates by reference the allegations in the preceding paragraphs.

65.     California Business and Professions Code § 17200, et seq., prohibits businesses from engaging in any unlawful, unfair, or fraudulent business acts or practices.

66.     Defendant's misappropriation of the Upper Deck Trademarks, and Jordan's name, image, likeness, and/or autograph permit, and will permit, Defendant to use and benefit from the goodwill and reputation of Jordan. By selling trading cards which bear the Upper Deck Trademarks or Jordan's likeness, Defendant is benefitting from the positive reputation and value

customers have given Upper Deck and Jordan to which Defendant would not otherwise have, at Upper Deck's expense.

67.     Defendant's conduct constitutes unlawful, unfair, and deceptive trade practices and unfair completion in violation of California Business & Professions Code § 17200 et seq.

68.     By continuing to sell the misappropriated Products, Upper Deck will suffer substantial injury, including possible loss of customers who will lose trust in the Upper Deck name, brand, and tenet to provide authentic products, and injury to its business relationship with Jordan.

### SEVENTH CAUSE OF ACTION
### <u>Violation of California Common Law Unfair Competition</u>

69.     Upper Deck repeats and incorporates by reference the allegations in the preceding paragraphs.

70.     Defendant's acts constitute common law unfair competition, and have created and will continue to create, irreparable injury to Upper Deck who will have no adequate remedy at law.

71.     On information and belief, Defendant acted with full knowledge of Upper Deck's use of, and statutory common law rights to the Upper Deck Trademarks and Jordan's likeness without regard to the likelihood of confusion to the public.

72.     Defendant clearly acted in an intentional manner to benefit from Upper Deck's and Jordan's reputable and respected names and goodwill.

73.     As a result of Defendant's actions, Upper Deck suffered substantial injury, loss, and damage. Therefore, Upper Deck is entitled injunctive relief to account for loss of profit and damages to Upper Deck.

### EIGHTH CAUSE OF ACTION
### <u>Unjust Enrichment / Quasi-Contract</u>

74.     Upper Deck repeats and incorporates by reference the allegations in the preceding paragraphs.

75.     By unlawfully using the Upper Deck Trademarks and Jordan's likeness for its own commercial benefit, Defendant unjustly profited from the goodwill and reputation associated with Upper Deck and Jordan. Defendant's acts created a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Upper Deck. Because Defendant's retention of its ill-gotten gains would be unjust and inequitable, Defendant must pay restitution to Upper Deck.

## JURY DEMAND

76.     Upper Deck respectfully requests a jury trial on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Upper Deck requests it be rewarded the following relief:

1.     Defendant and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Defendant, or in concert or participation with Defendant, and each of them, be enjoined from:

a.     advertising, marketing, promoting, offering for sale, distributing, or selling the Products including the Cards;

b.     using Upper Deck Trademarks or Jordan's name, image, likeness, autograph, or other publicity rights on or in connection with any of Defendant's trading card goods;

c.     using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendant's trading card goods that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any Upper Deck trademarks, trade dresses, names, or logos, or Jordan's name or likeness;

d.     using any trademark, name, likeness, logo, design, or source designation of any kind on or in connection with Defendant's trading card goods that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Upper Deck, or are sponsored or authorized by Upper Deck or Jordan, or are in any way connected or related to Upper Deck or Jordan;

e. passing off, palming off, or assisting in passing off or palming off Defendant's goods as those of Upper Deck, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

f. advertising, promoting, offering for sale, or selling the Products or other similar goods; and

g. representing to any person or entity that Defendant has authority to use the Jordan's name, image, autograph, likeness, or any other publicity right;

2. Injunctive relief preventing Defendant's continued use of the Jordan's name, image, likeness, autograph, or any other publicity right.

3. An award to Upper Deck of damages from sold, marketed, advertised, and promoted Products with Jordan's name or likeness, in an amount not less than $4.5 million;

4. That Defendant be ordered to destroy all remaining sports cards and products which carry Upper Deck Trademarks or Jordan's name, image, likeness, autograph, or publicity right;

5. That Defendant report to Upper Deck any and all profits derived from the selling or distribution of Products, as well as any trading cards that use Upper Deck Trademarks or Jordan's name, image, autograph, or likeness;

6. That Upper Deck receive and recover from Defendant Upper Deck's (a) actual damages under applicable state statutory and common law, (b) costs of court, (c) statutory damages based on Lanham Act, (d) enhanced damages or profits under the Lanham Act, (e) attorneys' fees pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 505, California Civil Code § 3344, and any other applicable provision of law;

7. That Upper Deck be awarded punitive damages to prevent future willful and deliberate dilution of the Upper Deck Trademarks and Jordan's likeness, as well as deprivation of Jordan's rights of publicity under California law;

8. That Upper Deck be awarded prejudgment and post-judgment interest on all monetary Awards; and

9.      That Upper Deck be awarded such other and further relief as the court may deem just and proper.

Respectfully submitted:                      **NICHOLAS & TOMASEVIC, LLP**
Dated: April 28, 2021

By:    _____
Craig M. Nicholas (SBN 178444)
Shaun Markley (SBN 291785)
Ethan T. Litney (SBN 295603)

Attorneys for Plaintiff.
THE UPPER DECK COMPANY

# EXHIBIT O

**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Shaun Markley (SBN 291785)
Ethan T. Litney (SBN 295603)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: elitney@nicholaslaw.org

Attorneys for Plaintiff.
THE UPPER DECK COMPANY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UPPER DECK COMPANY, a Nevada corporation,<br><br>               Plaintiff,<br><br>      vs.<br><br>MIGUEL FLORES, an individual, and DOES 1-100, inclusive,<br><br>              Defendants. | Case No. 3:21-cv-01182-GPC-KSC<br><br>**PLAINTIFF'S NOTICE OF SUBPOENA TO DEFENDANT MIGUEL FLORES TO PRODUCE DOCUMENTS IN A CIVIL ACTION**<br><br>**Judge**: Hon. Gonzalo P. Curiel<br>**Magistrate**: Hon. Karen S. Crawford<br><br>**Case Removed**: June 28, 2021<br>**Trial Date**: None Set |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 45, Plaintiff The Upper Deck Company, through counsel, will serve the attached Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action ("Subpoena") upon Miguel Flores, requiring him to produce documents. The Subpoena is attached hereto as **Exhibit 1** and is incorporated herein by reference.

Respectfully submitted:
DATED:   August 31, 2021

                                                    **NICHOLAS & TOMASEVIC, LLP**

                                    By:      _/s/ Ethan Litney_
                                             Craig M. Nicholas (SBN 178444)
                                             Shaun Markley (SBN 291785)
                                             Ethan T. Litney (SBN 295603)
                                             225 Broadway, 19th Floor
                                             San Diego, California 92101
                                             Tel: (619) 325-0492
                                             Fax: (619) 325-0496
                                             Email: cnicholas@nicholaslaw.org
                                             Email: smarkley@nicholaslaw.org
                                             Email: elitney@nicholaslaw.org

                                             Attorneys for Plaintiff.
                                             THE UPPER DECK COMPANY

# EXHIBIT 1

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| The Upper Deck Company | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No. 3:21-cv-01182-GPC-KSC |
| Miguel Flores | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: 
Miguel Flores, 16919 Bell Avenue, Lake Elsinore, California 92530
c/o Stephen Anderson, Esq. | Email: attorneys@brandxperts.com

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Ace Attorney Service, Inc. 310 West 3rd Street Artists Village Santa Ana, CA 92701 | Date and Time: 09/15/2021 10:00 am |
|---|---|

❑ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   08/31/2021

|  | | |
|---|---|---|
| CLERK OF COURT | OR | |
| _Signature of Clerk or Deputy Clerk_ | | /s/ Ethan T. Litney |
| | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ ___Plaintiff___
___The Upper Deck Company___ , who issues or requests this subpoena, are:

Nicholas & Tomasevic, LLP, 225 Broadway, Floor 19, San Diego, CA 92101; elitney@nicholaslaw.org; 619-325-0492

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   3:21-cv-01182-GPC-KSC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑  I served the subpoena by delivering a copy to the named person as follows: _____

_____  on *(date)* _____ ; or

❑  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

*The Upper Deck Company v. Miguel Flores*
U.S. District Court – Southern California
Case No. 3:21-cv-01182-GPC-KSC

## ATTACHMENT A

Subpoena to Produce Documents, Information, or Objects in a Civil Action
**MIGUEL FLORES**

## DEFINITIONS

The term "DOCUMENT" or "DOCUMENTS" shall, shall have the most expansive possible meaning under the Federal Rules of Civil Procedure, and shall be construed broadly to include any medium upon which intelligence or information can be recorded or retrieved, and includes, without limitation, the following, whether printed, typewritten, recorded, filmed or reproduced by any mechanical process or written or produced by hand, and whether an original, master or copy, and whether or not claimed to be privileged from discovery, including: worksheets, agreements, books, records, letters, accounts, notes, summaries, forecasts, appraisals, surveys, estimates, diaries, desk calendars, reports, communications (including intra-company communications), correspondence, facsimiles, electronic mail messages, telegrams, memoranda (including intra-company memoranda), summaries, notes and records of telephone conversations (including voicemail messages), meetings, and conferences, notes in reference to personal conversations or interviews, contracts, notices, drafts of any document, business records, charts, schedules, diaries, computer printouts, electronically-stored and computer-stored data (including emails), computer tapes or computer disks, microfilm, microfiche, photographs, slides, negatives, motion pictures, video recordings, tape or other voice recordings and transcriptions thereof, data compilations from which information can be obtained or translated and any other information contained on paper, in writing, in graphical media, in any computer readable media, or in any other physical form in your actual or constructive possession, custody or control.

The term "ELECTRONICALLY STORED INFORMATION" or "ESI" shall mean native files (including all embedded files and metadata) of electronic data stored in any medium, including, but not limited to, electronic email ("email"), voicemail, word processing documents and spreadsheets, audio and video recordings, and any other electronically stored files regardless of the storage medium in which it resides, including, but not limited to, computer hard drives (for example, laptops, desktops, and servers), removable storage media (for example, tapes, disks, cards, and flash memory devices), PDAs, networked drives and optical storage devices such as CDs and DVDs. This definition includes information contained on backup tapes and all other recovery and archival systems. To the extent that YOU

possess data in non-standard formats (including legacy data), YOU shall translate such information into a reasonably usable format and produce both the source non-translated data and the translated version.

The terms "COMMUNICATION" or "COMMUNICATIONS" mean ALL inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters correspondence, notes, telegrams, facsimiles, electronic mail (email), text messages, memoranda, documents, writings, or other forms of communications, including but not limited to both oral and written communications.

The term "YOU" or "YOUR" means Miguel Flores, his respective officers, agents, servants, employees, independent contractors, attorneys, predecessors, successors and assigns, representatives, and all other persons acting or who have acted on his behalf

## INSTRUCTIONS

1.      Each request contained herein extends to all DOCUMENTS in YOUR possession, custody, or control.

2.      These requests specifically require the production of all responsive DOCUMENTS, including all responsive ESI.

3.      All ESI that does not exist in a standard file format shall be translated by YOU into a reasonably usable format.

4.      If DOCUMENTS exist in both electronic and non-electronic form, or if multiple copies of the same document exist in the same form, YOU shall produce all copies and may not selectively choose which format or version will be produced.

5.      If DOCUMENTS responsive to any request have been destroyed, state the circumstances of their destruction.

6.      In construing any request, the singular form of a word shall be interpreted as plural and plural as singular as necessary to bring within the scope of the request any information or documents which might otherwise be construed to be outside its scope.

7.      In construing any request, whenever appropriate, "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within

the scope of the request any information which might otherwise be construed to be outside its scope; and "all" shall mean "any and all," unless the context requires otherwise.

8.     Each request shall be construed independently and not with reference to any other request herein for purposes of limitation, unless a request so specifies.

## DOCUMENTS TO BE PRODUCED

1.     Produce all DOCUMENTS evidencing YOUR sales of trading cards containing The Upper Deck Company's intellectual property, including the marks identified in the First Amended Complaint, (Docket Entry No. 5-1) in the above-referenced action, or trading cards that include the terms "Upper Deck" or "UD" between April 28, 2017 and the present.

2.     Produce all DOCUMENTS reflecting COMMUNICATIONS between YOU and any person relating to the sale of trading cards containing The Upper Deck Company's intellectual property, including the marks identified in the First Amended Complaint, (Docket Entry No. 5-1) in the above-referenced action, or trading cards that include the terms "Upper Deck" or "UD" between April 28, 2017 and the present.

3.     Produce all DOCUMENTS reflecting COMMUNICATIONS between YOU and GMA Grading between April 28, 2017 and the present.

4.     Produce all DOCUMENTS reflecting business transactions between YOU and GMA Grading between April 28, 2017 and the present.

5.     Produce all DOCUMENTS reflecting YOUR purchase of any reprint trading cards between April 28, 2017 and the present.

6.     Produce all DOCUMENTS reflecting YOUR sale of any reprint trading cards between April 28, 2017 and the present.

7.     Produce all DOCUMENTS reflecting YOUR grading or YOUR request for grading of any reprint trading cards between April 28, 2017 and the present.

8.     Produce all DOCUMENTS reflecting YOUR understanding of the meaning of the term "reprint" in the context of trading cards.

9.      Produce all DOCUMENTS supporting YOUR claim that the trading card referenced in the First Amended Complaint (aka "1999 UD Authentics Michael Jordan #MJ Facsimile Reprint," shown between paragraphs 23 and 24 of the First Amended Complaint in the above-referenced action) is not counterfeit.

10.     Produce sufficient DOCUMENTS to identify the amount of money YOU have obtained selling reprint trading cards containing The Upper Deck Company's intellectual property, including the marks identified in the First Amended Complaint, (Docket Entry No. 5-1) in the above-referenced action, or trading cards that include the terms "Upper Deck" or "UD" between April 28, 2017 and the present.

11.     Produce sufficient DOCUMENTS to identify all of Stephen Anderson's hourly fees or fee schedules regarding legal work performed in connection with this action. *See* Dkt. No. 8 ("the undersigned is a sole practitioner who initially took this matter on, on a highly reduced and practically 'pro bono' fee schedule to defend Mr. Flores from the claims improperly filed in State Court").

12.     Produce sufficient DOCUMENTS to evidence any posts, messages, or other communications on YOUR social media accounts, including Facebook, Youtube, Whatsapp, Instagram, Reddit, Pinterest, Snapchat, Twitter or TikTok relating to reprint trading cards between April 28, 2017 and the present.

13.     Produce sufficient DOCUMENTS to evidence any posts, messages, or other communications on YOUR social media accounts, including Facebook, Youtube, Whatsapp, Instagram, Reddit, Pinterest, Snapchat, Twitter or TikTok relating to trading cards containing The Upper Deck Company's intellectual property, including the marks identified in the First Amended Complaint, (Docket Entry No. 5-1) in the above-referenced action, or trading cards that include the term "Upper Deck" between April 28, 2017 and the present, including posts YOU may have deleted.

14.     Produce all DOCUMENTS supporting the assertion by Stephen Anderson in his declaration in support of YOUR motion to set aside default (Docket Entry 8-1) that "On June 11, 2021, my youngest child underwent surgery in Tucson Arizona. For nearly a week, my wife was away traveling for my child's care while I took on several additional duties, visited several Doctors, and fell into a bout of depression."

15.     Produce all DOCUMENTS supporting the assertions by Stephen Anderson in his declaration in support of YOUR motion to set aside default (Docket Entry 8-1) that "other than immediate engagements, I did not work at any time for more than two weeks later, during which time I developed an cranio-facial infection as well as an infection on my right buttocks which made it difficult to sit and type. In addition, I have been suffering from Irritable Bowel Disease for more than one year, which typically flares up when I am stressed or do not have a proper diet." Docket Entry 8-1, ¶ 16.

16.     Produce all DOCUMENTS evidencing medical consultation or treatment for the cranio-facial infection referenced by Stephen Anderson in his declaration in support of YOUR motion to set aside default between June 1, 2021 and August 10, 2021. Docket Entry 8-1, ¶ 16.

17.     Produce all DOCUMENTS evidencing medical consultation or treatment for the irritable bowel syndrome referenced by Stephen Anderson in his declaration in support of YOUR motion to set aside default. Docket Entry 8-1, ¶ 16.

18.     Produce all DOCUMENTS evidencing medical consultation or treatment for the buttock infection referenced by Stephen Anderson in his declaration in support of YOUR motion to set aside default. Docket Entry 8-1, ¶ 16.

19.     Produce all DOCUMENTS supporting the assertions by Stephen Anderson in his declaration in support of YOUR motion to set aside default (Docket Entry 8-1) that "On June 11, 2021, my youngest child underwent surgery in Tucson Arizona. For nearly a week, my wife was away traveling for my child's care while I took on several additional duties, visited several Doctors, and fell into a bout of depression." Docket Entry 8-1, ¶ 17.

20.     Produce sufficient DOCUMENTS to evidencing medical or psychological consultation or treatment for the depression referenced by Stephen Anderson in his declaration in support of YOUR motion to set aside default between June 1, 2021 and August 10, 2021. Docket Entry 8-1, ¶ 17.

21.     Produce all DOCUMENTS supporting the assertions by Stephen Anderson in his declaration in support of YOUR motion to set aside default (Docket Entry 8-1) that "All the while, I have tried to earn a living, meeting with other clients and prospective clients, and I am presently engaged in a number of other pressing

legal matters which have also demanded my time and attention." Docket Entry 8-1, ¶ 18.

1  **NICHOLAS & TOMASEVIC, LLP**
   Craig M. Nicholas (SBN 178444)
2  Shaun Markley (SBN 291785)
   Ethan T. Litney (SBN 295603)
3  225 Broadway, 19th Floor
   San Diego, California 92101
4  Tel: (619) 325-0492
   Fax: (619) 325-0496
5  Email: cnicholas@nicholaslaw.org
   Email: smarkley@nicholaslaw.org
6  Email: elitney@nicholaslaw.org

7  Attorneys for Plaintiff.
   THE UPPER DECK COMPANY
8

9                **UNITED STATES DISTRICT COURT**

10              **SOUTHERN DISTRICT OF CALIFORNIA**

11 THE UPPER DECK COMPANY, a        Case No. 3:21-cv-01182-GPC-KSC
   Nevada corporation,
12                                   **PROOF OF SERVICE**
                      Plaintiff,
13         vs.                       **Judge**: Hon. Gonzalo P. Curiel
                                     **Magistrate**: Hon. Karen S. Crawford
14 MIGUEL FLORES, an individual, and
   DOES 1-100, inclusive,           **Case Removed**: June 28, 2021
15                                   **Trial Date**: None Set
16                    Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

---
                                                    3:21-cv-01182-GPC-KSC
                        PROOF OF SERVICE

I, **Emilia S. Carrillo**, declare that I am over the age of 18 years and am not a party to the case; I am employed in the County of San Diego, California, where the mailing occurs; and my business address is 225 Broadway, 19th Floor, San Diego, California 92101.

On August 31, 2021, I served the within: **SEE ATTACHED LIST** on the interested parties in said action by:

[X] **BY ELECTRONIC MAIL:** I caused all of the pages of the above-entitled document(s) to be served, via electronic mail (e-mail), to the e-mail address of the addressee(s) so indicated.

[ ] **BY ELECTRONIC FILING:** I caused all of the pages of the above-entitled document(s) to be electronically filed and served on designated recipients through the Electronic Case Filing system for the above-entitled case. Please see attached list of documents and recipients served. The file transmission was reported as successful and a copy of the Electronic Case Filing Receipt will be maintained with the original document(s) in our office.

[X] **BY MAIL:** as follows:

[ ] BY OVERNIGHT COURIER: I placed the above-referenced document(s) in an envelope for collection and delivery on this date in accordance with standard FEDERAL EXPRESS overnight delivery procedures.

[X] By placing a copy thereof in a sealed envelope addressed as follows: **SEE ATTACHED LIST.**

I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service; and that the correspondence shall be deposited with the United States Postal Service via First Class Mail on that same day in the ordinary course of business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on August 31, 2021, at San Diego, California.

_____
Emilia S. Carrillo

*__The Upper Deck Company v. Miguel Flores__*
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
Case No. 3:21-cv-01182-GPC-KSC

**PROOF OF SERVICE**

**DOCUMENTS SERVED :**

1.   **PLAINTIFF'S NOTICE OF SUBPOENA TO DEFENDANT MIGUEL FLORES TO PRODUCE DOCUMENTS IN A CIVIL ACTION; and**
2.   **SUBPOENA TO PRODUCE DOCUMENTS IN A CIVIL ACTION TO MIGUEL FLORES.**

**PARTIES SERVED:**

Stephen L. Anderson (SBN 150860)
**ANDERSON LAW**
41923 Second Street, Suite 201
Temecula, California 92590
Tel. (951) 296-1700
Fax (951) 296-0614
email: attorneys@brandxperts.com

Attorneys for Defendant
MIGUEL FLORES

# EXHIBIT P

**From:** attorneys@brandxperts.com <attorneys@brandxperts.com>
**Sent:** Wednesday, September 1, 2021 5:30 PM
**To:** Emilia Carrillo <ECarrillo@nicholaslaw.org>
**Cc:** Craig Nicholas <CNicholas@nicholaslaw.org>; Shaun Markley <SMarkley@nicholaslaw.org>; Ethan Litney
<ELitney@nicholaslaw.org>; Valerie Garcia <vgarcia@NicholasLaw.org>
**Subject:** Re: The Upper Deck Company v. Miguel Flores | Subpoena

[External Email]

Dear Mr. Litney:

Please refer and respond to the enclosed correspondence. In particular, please advise me immediately when you are available to meet and confer / discuss a Motion to Quash/Motion For Protective Order as is imminently anticipated should you fail to withdraw the overbroad, premature and unreasonable subpoena that you emailed me last evening.

I look forward to your prompt and thoughtful response.

Sincerely yours,

Stephen L. Anderson
Anderson Law
WE PROTECT IMAGINATION®

Offices in Temecula, California --- WEBSITES EVERYWHERE!
email: attorneys@brandXperts.com

Anderson Law
41923 Second Street, Suite 201
Temecula, California 92590 U.S.A.
+(951) 296-1700 tel.



VISIT OUR VIRTUAL VILLAGE:
https://link.edgepilot.com/s/c543869d/kxHOjTjd5ES-RIQnJw83kA?u=http://www.brandxperts.com/   TRADEMARKS
https://link.edgepilot.com/s/0d21947b/yCcaZ-PnDUq7t1VxtQ2V7w?u=http://www.copyrightpros.com/   COPYRIGHTS
https://link.edgepilot.com/s/bb05d873/BxxPXtPQ90KGb8lKR1ICIQ?u=http://www.namesavers.net/        DOMAIN
NAMES
https://link.edgepilot.com/s/ceab1932/ofZQLA5XPkm10NhEU-oQeg?u=http://www.mybrandsonline.com/      REGISTER
NOW!
https://link.edgepilot.com/s/dd95d56c/0RD8JqtFOkWFqCZimQzxZw?u=http://www.weprotectimagination.com/   IP
SOLUTIONS

On August 31, 2021 4:45 PM Emilia Carrillo <ecarrillo@nicholaslaw.org> wrote:


Dear Counsel:


Please find attached Plaintiff's Notice of Subpoena & Subpoena to Produce Documents to Miguel Flores –
a copy of the attached will follow via mail.


Please note that Plaintiff will also accept production of documents by email on or before 5:00 p.m. PST on
the listed date of compliance at: elitney@nicholaslaw.org.


Thank you,

Emilia S. Carrillo | Legal Assistant

**Nicholas & Tomasevic, LLP**

225 Broadway, 19th Floor, San Diego, CA 92101

Ph: (619) 325-0492 | Fax: (619) 325-0496

https://link.edgepilot.com/s/726e179a/EovI0B2-Rkm6lbTsxcPGpg?u=http://www.nicholaslaw.org/


Links contained in this email have been replaced. If you click on a link in the email above, the link will be analyzed for
known threats. If you click on a link in the email above, the link will be analyzed for
known threats. If a known threat is found, you will not be able to proceed to the destination. If suspicious content is
detected, you will see a warning.

**Anderson Law - We Protect Imagination**®

41923 2nd Street #201
Temecula, California 92590
(951) 296-1700
attorneys@brandxperts.com

®

September 1, 2021

Ethan T. Litney
Craig M. Nicholas and/or Shaun Markley
Nicholas & Tomasevic, LLP
225 Broadway 19th Floor
San Diego, CA 92101

  and via email to: cnicholas@nicholaslaw.org, smarkley@nicholaslaw.org,
  ELitney@nicholaslaw.org

  RE:  The Upper Deck Company v. Miguel Flores
     USDC –SDCA - Case No.:  3:21-cv-01182-GPC-KSC

Dear Mr. Litney:

  This letter serves as my objections to, and is part of my effort to meet and confer concerning the Subpoena that I received via email from your law clerk last evening after working hours.  On behalf of my client, and on behalf of myself, personally, we hereby strenuously object to your overbroad, vindictive and plainly vexatious Subpoena for a litany of reasons discussed below and we therefore demand that you immediately send a Notice of Withdrawal revoking and rescinding same.

  Although I hope this letter will be the final word on this subject, please be advised that I am available to discuss the subpoena with you (prior to the preparation of Motions to Quash and/or for a Protective Order) on behalf of both me, and Mr. Flores.  You may contact me tomorrow, September 2, at any time between 11:00 am to 2:45 pm, or Friday, at any time between 10:40 am and 3:00 pm via my mobile number, or you can leave me a callback number via email or voice mail. If those times are not available, please advise me and I will try to accommodate you.

  Turning to the Subpoena, as I advised you via email on August 16, 2021, any discovery at this point, while my client remains **in default** and prior to the Rule 26 conference of counsel, is certainly premature[1], inappropriate and highly irregular.

  Moreover, having now reviewed your Attachment to the Subpoena, it appears that your requests are not only highly objectionable, they also appear to be highly abusive, annoying and vexatious – to the extent that they may likely form the basis for sanctions to be awarded against you[2], on grounds that they violate a number of laws, as well as the limits of plain decency.

---

[1] Discovery is Stayed Until a Rule 26(f) Conference Occurs - No discovery can occur before the Rule 26(f) conference, unless the case is excluded by the Rule itself, is stipulated otherwise, or unless the court so orders. Fed. R. Civ. P. 26(d). The party seeking expedited discovery in advance of a Rule 26(f) conference has the burden of showing good cause for the requested departure from the usual discovery procedures. P*odNers, LLC v. Northern Feed & Bean of Lucerne, Ltd. Liability Co*., 204 F.R.D. 675, 676 (D. Colo. 2002).

[2] The party or attorney responsible for issuing and serving the subpoena must take reasonable steps to avoid imposing an undue burden or expense on the person subpoenaed. The court for the district where compliance is required must

Ethan Litney – for The Upper Deck Company
September 1, 2021
Page **2**

As you are aware, the Subpoena is premature because Fed. R. Civ. P. 26(a)(1)(B) provides that a "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure … or when authorized by these rules, by stipulation, or by court order." Here, the defendant is in default, a Moption to Dismiss is pending and the parties have not conferred, so any discovery must be specifically authorized and, if not, must be quashed. See, e.g., *Deuss v. Siso*, Case No. 14-cv-00710-YGR (JSC), 2014 WL 4275715 (N.D. Cal. Aug. 29, 2014) (quashing subpoenas issued to nonparties in violation of Fed. R. Civ. P. 26(d)(1) and imposing sanctions where a party did not withdraw the subpoenas even after the violation was brought to its attention).

Somewhat ironically, the Subpoena you emailed me last night, calling for compliance by Mr. Flores, on or before September 15, 2021 was also untimely  - and unreasonable because Plaintiff did not permit the subpoenaed parties a reasonable time to respond. I am writing you now, before I take any more time addressing the overbroad, unfair and MISDIRECTED subpoena.

Notably, you failed to serve either me or Mr. Flores the Notice to Consumer as required by Cal. CCP Section 1985.3 inasmuch as it seeks the personal records of Mr. Flores, and I, each consumers who are entitled to specific notice, direct service, and sufficient time to respond to the Subpoena seeking our Personal Records.

Next, under Federal Rule of Civil Procedure 45(a)(1)(c), while any party may serve a subpoena commanding a nonparty "to attend and give testimony or to produce and permit inspection and copying of" documents, the subpoena is subject to the relevance and proportionality limitations set forth in Rule 26.  Thus, the subpoena may typically command the production of documents which are "not privileged" and are "relevant to the subject matter" or "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

However, the subpoena will not be enforced if the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;  . . . or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Of course, objections are permitted to be lodged by the non-party who is the subject of the subpoena. Fed. R. Civ. P. 45(d)(2)(a) ("A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection . . . .") (emphasis added).In this case, your requests for my personal and confidential medical information, as well as your requests for my protected communications with my client regarding fees are just so objectionable as to be borderline outrageous.

---

enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply. Fed. R. Civ. P. 45(c).

Ethan Litney – for The Upper Deck Company
September 1, 2021
Page **3**

Indeed, the majority of your cavalier requests seek protected communications between attorney and client[3] and my own personal medical information that has no bearing on the facts of the case, nor is supported by any request, nor order for such irregular and extensive EARLY DISCOVERY. (See: Fed. R. Civ. P. 26(b)(4)(B and C)

What you should know is that on timely motion," a court "must quash or modify a subpoena that," as relevant here, "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). In addition—or in the alternative—"the nonparty served with the subpoena duces tecum may make objections . . . within 14 days after service or before the time for compliance, if less than 14 days." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005); see also *McCoy v. Sw. Airlines Co.,* 211 F.R.D. 381, 385 (C.D. Cal. 2002).

As you should also know, under F.R.C.P Rule 26(g) (1), every …discovery request … must be signed by at least one attorney of record . . . By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
(B) with respect to a discovery request, …, it is:
(i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
(ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
(iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

As discussed further below, your Subpoena, which is no doubt overbroad on its face, (and which curiously requests that my client produce MY medical records) further violates these provisions. "Courts have found . . . the subpoena is overbroad on its face and exceeds the bounds of fair discovery and the subpoenaed witness is a non-party acting in good faith." *Moon,* 232 F.R.D. at 636 (collecting cases); see also *McCoy,* 211 F.R.D. at 385.

Finally, I have set forth below a basic overview of our objections to the Specific Requests contained in your Subpoena. It is not intended to be a limitation of the applicable objections which may be raised by Motion or otherwise. Again, I hope that you will agree to rescind the subpoena and these requests immediately, as based on the foregoing as well as the following:

---

[3] The California Supreme Court has held that legal invoices are protected by the attorney-client privilege, and therefore, with some exceptions, need not be disclosed. (L*os Angeles County Board of Supervisors v. Superior Court* (Dec. 29, 2016) 2016 WL 7473802. California law recognizes certain privileges that protect documents and communications from disclosure to third parties. The attorney-client privilege, which protects the confidential relationship between clients and attorneys, "has been a hallmark of Anglo-American jurisprudence for almost 400 years." (*Mitchell v. Superior Court* (1984) 37 Cal.3d 591, 599.) *See also* Section 950 Cal. Evidence Code.

Ethan Litney – for The Upper Deck Company
September 1, 2021
Page **4**

## SPECIFIC REQUESTS AND OBJECTIONS

We hereby object to your prefatory "Definitions" and "Instructions" to the extent that they contain any special meaning or otherwise impose any duties on Defendant or counsel, beyond the requirements of the Federal Rules of Civil Procedure. We further object to the extent that the terms "YOU" and "YOUR" as used in the requests, is overbroad and includes non-parties to the action, who have not received proper notice and service of the Subpoena nor any Notice to Consumer under California law.

## ITEMS IDENTIFIED IN ATTACHMENT A TO THE SUBPOENA

1.      Produce all DOCUMENTS evidencing YOUR sales of trading cards containing The Upper Deck Company's intellectual property, including the marks identified in the First Amended Complaint, (Docket Entry No. 5-1) in the above referenced action, or trading cards that include the terms "Upper Deck" or "UD" between April 28, 2017 and the present.

Objection. This request is premature. This request is vague and ambiguous and fails to identify the subject matter with any reasonable particularity. This request requires a legal conclusion and attorney opinion. This request assumes facts not pled nor in evidence, and calls for a negative pregnant. This request is unduly burdensome and the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

2. Produce all DOCUMENTS reflecting COMMUNICATIONS between YOU and any person relating to the sale of trading cards containing The Upper Deck Company's intellectual property, including the marks identified in the First Amended Complaint, (Docket Entry No. 5-1) in the above-referenced action, or trading cards that include the terms "Upper Deck" or "UD" between April 28, 2017 and the present.

Objection. This request is premature. This request is vague and ambiguous and fails to identify the subject matter with any reasonable particularity. This request assumes facts not pled nor in evidence, and calls for a negative pregnant.  This request requires a legal conclusion and attorney opinion.  This request calls for attorney-client communications. This request is unduly burdensome and the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

3. Produce all DOCUMENTS reflecting COMMUNICATIONS between YOU and GMA Grading between April 28, 2017 and the present.

Objection. This request is premature. This request is vague and ambiguous and fails to identify the subject matter with any reasonable particularity. This request requires a legal conclusion and attorney opinion. This request is unduly burdensome and the burden or expense of

Ethan Litney – for The Upper Deck Company
September 1, 2021
Page **5**

the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

4. Produce all DOCUMENTS reflecting business transactions between YOU and GMA Grading between April 28, 2017 and the present.

Objection. This request is premature. This request is vague and ambiguous and fails to identify the subject matter with any reasonable particularity. This request requires a legal conclusion and attorney opinion. This request is unduly burdensome and the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

5. Produce all DOCUMENTS reflecting YOUR purchase of any reprint trading cards between April 28, 2017 and the present.

Objection. This request is premature. This request is vague and ambiguous and fails to identify the subject matter with any reasonable particularity. This request requires a legal conclusion and attorney opinion. This request is unduly burdensome and the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

6. Produce all DOCUMENTS reflecting YOUR sale of any reprint trading cards between April 28, 2017 and the present.

Objection. This request is premature. This request is vague and ambiguous and fails to identify the subject matter with any reasonable particularity. This request requires a legal conclusion and attorney opinion. This request is unduly burdensome and the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

7. Produce all DOCUMENTS reflecting YOUR grading or YOUR request for grading of any reprint trading cards between April 28, 2017 and the present.

Objection. This request is premature. This request is vague and ambiguous and fails to identify the subject matter with any reasonable particularity. This request requires a legal conclusion and attorney opinion. This request is unduly burdensome and the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Ethan Litney – for The Upper Deck Company
September 1, 2021
Page **6**

8. Produce all DOCUMENTS reflecting YOUR understanding of the meaning of the term "reprint" in the context of trading cards.

Objection. This request is premature. This request is vague and ambiguous and fails to identify the subject matter with any reasonable particularity. This request requires a legal conclusion and attorney opinion. This request is unduly burdensome and the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

9. Produce all DOCUMENTS supporting YOUR claim that the trading card referenced in the First Amended Complaint (aka "1999 UD Authentics Michael Jordan #MJ Facsimile Reprint," shown between paragraphs 23 and 24 of the First Amended Complaint in the above-referenced action) is not counterfeit.

Objection. This request is premature. This request is vague and ambiguous and fails to identify the subject matter with any reasonable particularity. This request requires a legal conclusion and attorney opinion. This request calls for a negative pregnant.  This request is unduly burdensome and the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

10. Produce sufficient DOCUMENTS to identify the amount of money YOU have obtained selling reprint trading cards containing The Upper Deck Company's intellectual property, including the marks identified in the First Amended Complaint, (Docket Entry No. 5-1) in the above-referenced action, or trading cards that include the terms "Upper Deck" or "UD" between April 28, 2017 and the present.

Objection. This request is premature. This request is vague and ambiguous and fails to identify the subject matter with any reasonable particularity. This request requires a legal conclusion and attorney opinion. This request assumes facts not pled nor in evidence, and calls for a negative pregnant. This request is unduly burdensome and the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

11. Produce sufficient DOCUMENTS to identify all of Stephen Anderson's hourly fees or fee schedules regarding legal work performed in connection with this action. See Dkt. No. 8 ("the undersigned is a sole practitioner who initially took this matter on, on a highly reduced and practically 'pro bono' fee schedule to defend Mr. Flores from the claims improperly filed in State Court").

Objection. This request is overbroad and seeks information not reasonably related to this action. The request is premature. This request is vague and ambiguous and fails to identify the subject matter with any reasonable particularity. This request requires a legal conclusion and

Ethan Litney – for The Upper Deck Company
September 1, 2021
Page **7**

attorney opinion. This request calls for attorney client communications and work product.  This request is unduly burdensome and the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

12. Produce sufficient DOCUMENTS to evidence any posts, messages, or other communications on YOUR social media accounts, including Facebook, Youtube, Whatsapp, Instagram, Reddit, Pinterest, Snapchat, Twitter or TikTok relating to reprint trading cards between April 28, 2017 and the present.

Objection. This request is overbroad and seeks information not reasonably related to this action. The request is premature. This request is compound, vague and ambiguous and fails to identify the subject matter with any reasonable particularity. This request requires a legal conclusion and attorney opinion. This request is unduly burdensome and the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

13. Produce sufficient DOCUMENTS to evidence any posts, messages, or other communications on YOUR social media accounts, including Facebook, Youtube, Whatsapp, Instagram, Reddit, Pinterest, Snapchat, Twitter or TikTok relating to trading cards containing The Upper Deck Company's intellectual property, including the marks identified in the First Amended Complaint, (Docket Entry No. 5-1) in the above-referenced action, or trading cards that include the term "Upper Deck" between April 28, 2017 and the present, including posts YOU may have deleted.

Objection. This request is overbroad and seeks information not reasonably related to this action. The request is premature. This request is compound, vague and ambiguous and fails to identify the subject matter with any reasonable particularity. This request assumes facts not pled nor in evidence, and calls for a negative pregnant.This request requires a legal conclusion and attorney opinion. This request is unduly burdensome and the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

14. Produce all DOCUMENTS supporting the assertion by Stephen Anderson in his declaration in support of YOUR motion to set aside default (Docket Entry 8-1) that "On June 11, 2021, my youngest child underwent surgery in Tucson Arizona. For nearly a week, my wife was away traveling for my child's care while I took on several additional duties, visited several Doctors, and fell into a bout of depression."

Objection. This request seeks the confidential personal and medical information of counsel, which Defendant has never possessed nor has any interest in.  The Request is abusive, unreasonable and seeks information not reasonably related to this action. The request is premature. This request is

Ethan Litney – for The Upper Deck Company
September 1, 2021
Page **8**

compound, vague and ambiguous and fails to identify the subject matter with any reasonable particularity. This request requires a legal conclusion and attorney opinion. This request is unduly burdensome and the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.  This request seeks medical information about counsel's daughter – and insufficient grounds for such personal medical information exists herein!

15. Produce all DOCUMENTS supporting the assertions by Stephen Anderson in his declaration in support of YOUR motion to set aside default (Docket Entry 8-1) that "other than immediate engagements, I did not work at any time for more than two weeks later, during which time I developed an cranio-facial infection as well as an infection on my right buttocks which made it difficult to sit and type. In addition, I have been suffering from Irritable Bowel Disease for more than one year, which typically flares up when I am stressed or do not have a proper diet." Docket Entry 8-1, ¶ 16.

Objection. This request seeks the confidential personal and medical information of counsel, which Defendant has never possessed nor has any interest in.  The Request is abusive, unreasonable and seeks information not reasonably related to this action. The request is premature. This request is compound, vague and ambiguous and fails to identify the subject matter with any reasonable particularity. This request requires a legal conclusion and attorney opinion. This request is unduly burdensome and the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Notwithstanding said objections, counsel attaches a photograph of his ass for Mr. Litney.

16. Produce all DOCUMENTS evidencing medical consultation or treatment for the cranio-facial infection referenced by Stephen Anderson in his declaration in support of YOUR motion to set aside default between June 1, 2021 and August 10, 2021. Docket Entry 8-1, ¶ 16.

Objection. This request seeks the confidential personal and medical information of counsel, which Defendant has never possessed nor has any interest in.  The Request is abusive, unreasonable and seeks information not reasonably related to this action. The request is premature. This request is compound, vague and ambiguous and fails to identify the subject matter with any reasonable particularity. This request requires a legal conclusion and attorney opinion. This request is unduly burdensome and the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

17. Produce all DOCUMENTS evidencing medical consultation or treatment for the irritable bowel syndrome referenced by Stephen Anderson in his declaration in support of YOUR motion to set aside default. Docket Entry 8-1, ¶ 16.

Ethan Litney – for The Upper Deck Company
September 1, 2021
Page **9**

Objection. This request seeks the confidential personal and medical information of counsel, which Defendant has never possessed nor has any interest in.  The Request is abusive, unreasonable and seeks information not reasonably related to this action. The request is premature. This request is compound, vague and ambiguous and fails to identify the subject matter with any reasonable particularity. This request requires a legal conclusion and attorney opinion. This request is unduly burdensome and the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

18. Produce all DOCUMENTS evidencing medical consultation or treatment for the buttock infection referenced by Stephen Anderson in his declaration in support of YOUR motion to set aside default. Docket Entry 8-1, ¶ 16.

Objection. This request seeks the confidential personal and medical information of counsel, which Defendant has never possessed nor has any interest in.  The Request is abusive, unreasonable and seeks information not reasonably related to this action. The request is premature. This request is compound, vague and ambiguous and fails to identify the subject matter with any reasonable particularity. This request requires a legal conclusion and attorney opinion. This request is unduly burdensome and the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

19. Produce all DOCUMENTS supporting the assertions by Stephen Anderson in his declaration in support of YOUR motion to set aside default (Docket Entry 8-1) that "On June 11, 2021, my youngest child underwent surgery in Tucson Arizona. For nearly a week, my wife was away traveling for my child's care while I took on several additional duties, visited several Doctors, and fell into a bout of depression." Docket Entry 8-1, ¶ 17.

Objection. This ABUSIVE REQUEST WAS ASKED AT NO. 14 ABOVE!  *Get with it counsel*!  Your request seeks the confidential personal, family and medical information of counsel, (and of his daughter!) which Defendant has never possessed nor has any interest in.  The Request is abusive, unreasonable and seeks information not reasonably related to this action. The request is premature. This request is compound, vague and ambiguous and fails to identify the subject matter with any reasonable particularity. This request requires a legal conclusion and attorney opinion. This request is unduly burdensome and the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

20. Produce sufficient DOCUMENTS to evidencing medical or psychological consultation or treatment for the depression referenced by Stephen Anderson in his declaration in support of YOUR motion to set aside default between June 1, 2021 and August 10, 2021. Docket Entry 8-1, ¶ 17.

Objection. This request seeks the confidential personal and medical information of counsel, which Defendant has never possessed nor has any interest in.  The Request is abusive, unreasonable

Ethan Litney – for The Upper Deck Company
September 1, 2021
Page **10**

and seeks information not reasonably related to this action. The request is premature. This request is compound, vague and ambiguous and fails to identify the subject matter with any reasonable particularity. This request requires a legal conclusion and attorney opinion. This request is unduly burdensome and the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

21. Produce all DOCUMENTS supporting the assertions by Stephen Anderson in his declaration in support of YOUR motion to set aside default (Docket Entry 8-1) that "All the while, I have tried to earn a living, meeting with other clients and prospective clients, and I am presently engaged in a number of other pressing legal matters which have also demanded my time and attention." Docket Entry 8-1, ¶ 18

This overbroad and unreasonable request seeks the confidential business records of counsel and third parties which Defendant has never possessed nor has any interest in.  The Request is abusive, unreasonable and seeks information not reasonably related to this action. The request is premature. This request is compound, vague and ambiguous and fails to identify the subject matter with any reasonable particularity. This request requires a legal conclusion and attorney opinion. This request seeks confidential attorney client communications and proprietary information owned by third parties not related in any manner to this action. This request is unduly burdensome and the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

With the above in mind, I look forward to your prompt and thoughtful response.
Please be further advised that I reserve the right to include in any Motion submitted to the Court your prior emails and missives, which collectively demonstrate your continued cavalier and black-hearted approach to this case, wherein you and the Plaintiff have neither responded to our prior settlement overtures, nor bothered to even provide one stitch of evidence or authority for your misguided and trumped up allegations against Mr. Flores.

Please let me know if you have any questions.

Sincerely yours,

/S/
*Stephen L. Anderson*


cc: Miguel Flores

# EXHIBIT Q

**From:** Ethan Litney
**Sent:** Monday, September 13, 2021 6:14 PM
**To:** attorneys@brandxperts.com
**Cc:** Craig Nicholas <CNicholas@nicholaslaw.org>; Shaun Markley <SMarkley@nicholaslaw.org>; Emilia Carrillo <ECarrillo@nicholaslaw.org>; Valerie Garcia <vgarcia@NicholasLaw.org>
**Subject:** RE: The Upper Deck Company v. Miguel Flores | Subpoena

Hi Stephen,

Please see a further response to your meet and confer letter below (excerpts from your letter in full bold). For clarity, many issues mentioned two weeks ago are reiterated:

**As you are aware, the Subpoena is premature because Fed. R. Civ. P. 26(a)(1)(B) provides that a "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure … or when authorized by these rules, by stipulation, or by court order." Here, the defendant is in default, a Moption to Dismiss is pending and the parties have not conferred, so any discovery must be specifically authorized and, if not, must be quashed. See, e.g., *Deuss v. Siso*, Case No. 14-cv-00710-YGR (JSC), 2014 WL 4275715 (N.D. Cal. Aug. 29, 2014) (quashing subpoenas issued to nonparties in violation of Fed. R. Civ. P. 26(d)(1) and imposing sanctions where a party did not withdraw the subpoenas even after the violation was brought to its attention) First of all, you are correct that generally a Rule 26(f) conference is required prior to serving discovery in the Ninth Circuit. However, such a conference is not required prior to serving discovery on a defaulted defendant via a Rule 45 subpoena.**

This objection lacks merit. Recently, in *Trustees of U.A. Union Local No. 290 Plumber, Steamfitter, and Shipfitter Industry Pension Trust*, 2020 WL 1673326, at *2 (D. Or. Apr. 6, 2020), the District of Oregon recognized this nuance when evaluating an attempt to compel production from a party that had not yet been successfully served (emphasis added):

> Plaintiffs' motion to compel is procedurally improper. Plaintiffs have not provided—nor is the Court aware of—any authority supporting Plaintiffs' contention that Rule 37(a) is the appropriate vehicle for compelling discovery from a party that is not before the Court. **Generally, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)."** Fed. R. Civ. P. 26(d). Given that the parties have not conducted a Rule 26(f) conference, Defendant is not even considered to have been served with Plaintiffs' First Request for Production. See Fed. R. Civ. P. 26(d)(2)(B). Therefore, Plaintiffs' motion is procedurally deficient.

> Plaintiffs could, however, proceed by moving for an entry of default as Defendant "has failed to plead or otherwise defend" itself in this action. Fed. R. Civ. P. 55(a). Although Plaintiffs contend that they "cannot file for a default because [D]efendant's books and records are needed ... to perform [a] payroll examination," an entry of default does not foreclose Plaintiffs' ability to seek the documents they need. Pl. Resp. 2. **For example, once an order of default is entered, "a defaulted defendant should be treated as a non-party," and can be commanded to produce documents pursuant to a properly issued subpoena. *Jules Jordan Video, Inc. v.***

*144942 Canada Inc.*, 617 F.3d 1146, 1159 (9th Cir. 2010); Fed R. Civ. P. 45. Accordingly, Plaintiffs' Motion to Compel is denied.

*Duess v. Siso* is distinguishable because Nicola Angie Siso was not defaulted when the subpoenas were issued. Further, the Plaintiff is *Siso* served the subpoenas concurrently with the complaint, before service, rendering those subpoenas particularly inappropriate and distinguishable from the instant action. Here, if your client remains defaulted, there is no party other than Plaintiff who could possibly participate in a Rule 26(f) conference. To extend the logic of your meet and confer letter would preclude any discovery from defaulted parties who refused to participate in a Rule 26(f) conference prior to defaulting, which would be most defaulting parties. Further, if this proceeds to a motion, we will also assert that your blanket refusal to engage in a Rule 26(f) conference additionally distinguishes this matter from *Siso.*

**Somewhat ironically, the Subpoena you emailed me last night, calling for compliance by Mr. Flores, on or before September 15, 2021 was also untimely - and unreasonable because Plaintiff did not permit the subpoenaed parties a reasonable time to respond. I am writing you now, before I take any more time addressing the overbroad, unfair and MISDIRECTED subpoena.**

This objection lacks merit. Regarding the timeline to respond, 15 days is admittedly less than parties are entitled to under Rule 34, but the suggestion that it is per se unreasonable has been routinely rejected by the Southern District of California. *See, e.g., Oliver v. In-N-Out Burgers*, 2013 WL 12415761, at *4 (S.D. Cal. Feb. 7, 2013) (emphasis added):

> Plaintiff contends that the subpoenas must be quashed because they required production of documents thirteen or fourteen days after service of the subpoenas, thus failing to provide the witnesses with a reasonable time to produce the requested documents. (ECF No. 44 at 13:20-14:17.) Rule 45 requires that a subpoena must be quashed or modified if it "fails to allow a reasonable time to comply." FED. R. CIV. P. 45(c)(3)(A)(I). Plaintiff contends that because a party is afforded thirty days to produce documents (see FED. R. CIV. P. 34(b)(2)), it is "clearly unreasonable" to require non-parties to produce documents in less than half that time. (ECF No. 44 at 14:2-3.) **However, Plaintiff's argument fails. The provisions of Rule 45 relating to objections to a subpoena imply that less than fourteen days for production of documents may be reasonable**. See FED. R. CIV. P. 45(c)(2)(B) (requiring that "objections must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served").

Also, the date of compliance is also immediately before the deadline for my client's opposition to your motion to set aside default. As described below, much of the discovery at issue is directly targeting statements in your declaration in support of that motion that Plaintiff has no other plausible method of verifying. Also, we attempting to tailor the requests in such a way that you would not have difficulty complying. For the most part they merely ask you to substantiate your declaration which we anticipate should not be difficult.

**Notably, you failed to serve either me or Mr. Flores the Notice to Consumer as required by Cal. CCP Section 1985.3 inasmuch as it seeks the personal records of Mr. Flores, and I, each consumers who are entitled to specific notice, direct service, and sufficient time to respond to the Subpoena seeking our Personal Records.**

This objection lacks merit. A notice to consumer is a requirement of the California Code of Civil Procedure that is inapplicable to this action as you have compelled my client to litigate in federal court. *See RBS Sec. Inc. v. Plaza Home Mortg., Inc.*, 2012 WL 3957894, at *1 (S.D. Cal. Sept. 10, 2012) ("A subpoena duces tecum issued under the Federal Rules of Civil Procedure is not subject to CCP 1985.3 which, by its terms, is limited to subpoenas issued under the CCP.").

**Next, under Federal Rule of Civil Procedure 45(a)(1)(c), while any party may serve a subpoena commanding a nonparty "to attend and give testimony or to produce and permit inspection and copying of" documents, the subpoena is subject to the relevance and proportionality limitations set forth in Rule 26. Thus, the subpoena may typically command the production of documents which are "not privileged" and are "relevant to the subject matter" or "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).**

**However, the subpoena will not be enforced if the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; . . . or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).**

As a preliminary matter, as a defaulted party, Mr. Flores is not entitled to the same protections as true non-parties to an action, notwithstanding the fact that Rule 45 is the appropriate mechanism for seeking production of documents from a defaulted party. Further, Mr. Flores has not identified with particularity the undue burdens imposed by the requests at issue. Instead, you only reference burden in a generalized and conclusory fashion. This is insufficient to support a motion to quash. *See Rich v. Butowsky*, 2020 WL 5910069, at *2 (N.D. Cal. Oct. 6, 2020) ("On a Rule 45 motion to quash a subpoena, the moving party has the burden of persuasion … Therefore, the party resisting discovery bears the burden to demonstrate why discovery should not be permitted."). As described below, Mr. Flores fails to demonstrate burden with any specificity or particularity.

## Other Specific Objections

### Attorney-Client Privilege

This objection lacks merit. Regarding your fee arrangement with Defendant, you have attempted to directly put those matters as issue, and have waived any attorney-client or attorney work product privilege or any privacy protection as to those records. What you are suggesting is quintessential use of a potentially privileged communication as a "sword and shield," which is not allowed in this Circuit, and warrants a finding of a subject matter waiver under Federal Rule of Evidence 502.

Relevantly, Rule 502 provides:

> When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:

> (1) the waiver is intentional;

> (2) the disclosed and undisclosed communications or information concern the same subject matter; and

> (3) they ought in fairness to be considered together.

Fed. R. Civ. P. 502; *see Munguia-Brown v. Equity* Residential, 2020 WL 3057502, at *2 (N.D. Cal. June 9, 2020); *see also Munguia-Brown v. Equity Residential*, 337 F.R.D. 509, 512 (N.D. Cal. 2021).

In *Munguia-Brown*, the Court held that where one party sought to use privilege as a sword, it could not also use it as a shield, finding "fairness required that this story be subjected to meaningful cross-examination. After all, what if Defendants were lying about what their lawyers told them? What if different lawyers told them different things? Defendants have testified to the high-level conclusion that many lawyers analyzed the late fee and they all advised it was legal. If the truth was anything more nuanced than that, their story could quickly fall apart. The only way to test Defendants' story was to consider the undisclosed communications together with the disclosed ones. Otherwise, cross-examination was impossible." *Munguia-Brown v. Equity* Residential, 2020 WL 3057502, at *6-7. Similarly, my client is entitled to substantiation of your fee agreement with Mr. Flores.

In summary, we maintain that you cannot selectively disclose favorable privileged facts, while disallowing cross-examination of those facts under the attorney-client privilege; we are entitled to discovery to substantiate arguably privileged facts which your client or yourself attempted to put at issue in order to obtain a favorable ruling from the Court on your motion to set aside default.

Similarly, we maintain that you cannot selectively disclose favorable private facts (including your medical conditions), while disallowing cross-examination of those facts under the right of privacy. *See Flournoy v. Maness,* 2015 WL 6523472, at *2 (E.D. Cal. Oct. 27, 2015) (A party may waive his right to privacy in his medical records by placing them at issue in a case.). In summary, we are entitled to discovery to substantiate arguably privileged and/or private facts which your client or yourself attempted to put at issue in order to obtain a favorable ruling from the Court on your motion to set aside default.

Medical Privacy/Privilege

These objections lacks merit. The California Supreme Court has determined that an individual may waive patient-physician privilege under California law by placing a medical condition at issue. *See in re Lifschutz,* 2 Cal.3d 415, 433-34 (1970). Similarly, an individual may waive the right of privacy under the California constitution by placing a medical condition at issue. *See Thomas v. Carrasco,* No. 1:04-CV-05793-MJS PC, 2010 WL 4024930, at *3 (E.D. Cal. Oct. 13, 2010), aff'd, 474 F. App'x 692 (9th Cir. 2012) ("The Ninth Circuit has yet to address this issue, but multiple district courts have held that the right to privacy of medical records is waived when the plaintiff's medical condition is 'at issue' in a grievance or lawsuit.")

Thus, you have waived any privilege and privacy concerns relating to the medical conditions you voluntarily disclosed in support of your motion to set aside the default in this action. While your client may never have been in possession of your medical records or other responsive documents relating the conditions you disclosed, those documents are in your client's control. *See Martinez v. Allison,* 2013 WL 1982678, at *1-2 (E.D. Cal. May 13, 2013) ("Actual possession, custody or control is not required. 'A party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document' ... **Such documents also include documents under the control of the party's attorney.**") (bold added); *Martinez-Sanchez v. Anthony Vineyards, Inc.,* 2021 WL 847835 (E.D. Cal. Mar. 5, 2021) (same).

In summary, we maintain that you cannot selectively disclose favorable private facts (including your medical conditions), while disallowing cross-examination of those facts under the right of privacy; we are entitled to discovery to substantiate arguably privileged and/or private facts which your client or yourself attempted to put at issue in order to obtain a favorable ruling from the Court on your motion to set aside default.

Vagueness/Ambiguity/Burden/Compound

These objections lacks merit. Courts "often conclude that that a non-party's objections under Rule 45(d)(2)(B) should be subject to the same requirements facing a party objecting to discovery under Rule 34, including the same prohibition on general or boiler-plate objections and requirements that the objections must be made with specificity." *A&F Bahamas, LLC v. World Venture Group, Inc.*, 2018 WL 5961297, at *4 (C.D. Cal. Oct. 19, 2018).

Therefore, your "general, boilerplate objections are inappropriate under the Federal Rules of Civil Procedure." *Taylor v. Cty. of Calaveras*, 2019 WL 6341131, at *4 (E.D. Cal. Nov. 27, 2019) (citing *Dolarian Capital, Inc.*, 2012 WL 4026818, at *2 (E.D. Cal. Sept. 12, 2012)); *see Marti v. Baires*, 2012 WL 2029720 (E.D. Cal. June 5, 2012) (reliance on boilerplate objections is an abuse of the discovery process); Fed. R. Civ. P. 33(b)(4). Further, The burden of clarifying and explaining these objections rests on Mr. Flores. *See Garcia v. Clark*, 2014 WL 1232315, at *2 (E.D. Cal. Apr. 12, 2012) (citing *Roesberg v. Johnson-Manville Corp.*, 85 F.R.D. 292, 297 (E.D. Pa. 1980).

Mr. Flores objections as to vagueness, ambiguity, and burden do not provide and specificity or particularity, and cannot support a motion to quash. Further, Plaintiff specifically limited requests, where possible, to the relevant statutory

period at issue (see Requests 1-7, 10, 12-13), other requests were even more limited in time (see Request 16, limiting the time period from June 1, 2021 and August 10, 2021). Further, Plaintiff specifically asked for "sufficient" documents, rather than "all" documents, where appropriate, further evidencing Plaintiff's attempt to minimize the burden on Mr. Flores (see Requests 11-13, 20).

<u>Assumes Facts</u>

This objection lacks merit. In addition to the same infirmities discussed above regarding vagueness and overbreadth, these objections are patently improper and must not be asserted. *Taylor*, 2019 WL 6341131, at *4 ("Objections that a request assumes facts not in evidence, calls for speculation, or lacks foundation are not proper in the course of written discovery."). To

<u>Legal Conclusion/Attorney Opinion</u>

These objections lacks merit. In addition to the same infirmities discussed above regarding vagueness and overbreadth, these objections are patently improper and must not be asserted. "[L]egal conclusion objections to discovery requests are frivolous." *SEC v. Mazzo*, 2013 WL 1217628, at *10 (C.D. Cal. Oct. 24, 2013) (citing *Board of Trustees of Leland Stanford Junior University*, 253 F. R. D. at 522 (C.D. Cal. 2013) (finding objection to discovery request as calling for legal conclusion is meritless)).

Contrary to your above objections, Plaintiff's subpoena seeks records directly relating to the allegations of the First Amended Complaint, and documents attempting to substantiate your declaration offered in support of Mr. Flores' motion to set aside default. The requests are clearly targeting such documents, and are narrowly tailored to obtain only documents that are proportional. I reiterate that it is particularly improper to preclude discovery into the very facts that you are attempting to rely on in support of your motion, particularly given the conduct in this case thus far, and your personal history.

Also, it's been almost two weeks since I previously sent the majority of the above response, yet we have not heard anything else back regarding your position on these issues or our cited authority, and we have not received any request for an extension regarding requests other than Nos. 11, and 14-21 (as described on September 1, we unfortunately cannot agree to an extension regarding Request Nos. 11, and 14-21).

Finally, we apologize for inadvertent inclusion of Request No. 19, which is largely duplicative of Request No. 14. Request No. 19 is hereby withdrawn and does not require a response.

We hope that further motion practice is not necessary to resolve Plaintiff's straightforward subpoena.

Thanks,

Ethan



**From:** attorneys@brandxperts.com <attorneys@brandxperts.com>
**Sent:** Thursday, September 2, 2021 3:04 PM
**To:** Ethan Litney <ELitney@nicholaslaw.org>
**Cc:** Craig Nicholas <CNicholas@nicholaslaw.org>; Shaun Markley <SMarkley@nicholaslaw.org>; Valerie Garcia <vgarcia@NicholasLaw.org>; Emilia Carrillo <ECarrillo@nicholaslaw.org>
**Subject:** RE: The Upper Deck Company v. Miguel Flores | Subpoena

[External Email]

Anything else?

Stephen L. Anderson
Anderson Law
WE PROTECT IMAGINATION®

Offices in Temecula, California --- WEBSITES EVERYWHERE!
email: attorneys@brandXperts.com

Anderson Law
41923 Second Street, Suite 201
Temecula, California 92590 U.S.A.
+(951) 296-1700 tel.



®

VISIT OUR VIRTUAL VILLAGE:
https://link.edgepilot.com/s/b2aefdc1/6L1VF1fGgEOKoMloF55jKw?u=http://www.brandxperts.com/  TRADEMARKS
https://link.edgepilot.com/s/cc96589e/vgoQONzcu02DRixYNAY5zQ?u=http://www.copyrightpros.com/   COPYRIGHTS
https://link.edgepilot.com/s/3a66ac46/NyVXa-S2BEqD_nOJap3MVQ?u=http://www.namesavers.net/        DOMAIN
NAMES
https://link.edgepilot.com/s/4dfe3701/O89_Lt9FAU2zvi0k8A_eKg?u=http://www.mybrandsonline.com/     REGISTER
NOW!
https://link.edgepilot.com/s/1486effd/IYhz6ok7aUOeR6JTiD3PpQ?u=http://www.weprotectimagination.com/  IP
SOLUTIONS

On September 1, 2021 7:04 PM Ethan Litney <elitney@nicholaslaw.org> wrote:


Hi Stephen,


I apologize I omitted discussion of one of the preliminary procedural issues you raised.


A notice to consumer is a requirement of the California Code of Civil Procedure that is inapplicable to this action as you have compelled my client to litigate in federal court. *See RBS Sec. Inc. v. Plaza Home Mortg., Inc.*, 2012 WL 3957894, at *1 (S.D. Cal. Sept. 10, 2012) ("A subpoena duces tecum issued under the Federal Rules of Civil Procedure is not subject to CCP 1985.3 which, by its terms, is limited to subpoenas issued under the CCP.").

Thanks again,

Ethan



**From:** Ethan Litney
**Sent:** Wednesday, September 1, 2021 6:41 PM
**To:** attorneys@brandxperts.com
**Cc:** Craig Nicholas <CNicholas@nicholaslaw.org>; Shaun Markley <SMarkley@nicholaslaw.org>; Valerie Garcia <vgarcia@NicholasLaw.org>; Emilia Carrillo <ECarrillo@nicholaslaw.org>
**Subject:** RE: The Upper Deck Company v. Miguel Flores | Subpoena

Hi Steven,

Thank you for the meet and confer letter, I will review the authority you've provided and your specific objections. Also, I would appreciate it if you could clarify the image you attached in response to my client's subpoena so we can evaluate whether it satisfies any of our requests.

While I cannot address all of the issues you've raised immediately, I wanted to immediately clarify some of the threshold procedural, privilege, and privacy concerns you've raised as the earliest opportunity.

First of all, you are correct that generally a Rule 26(f) conference is required prior to serving discovery in the Ninth Circuit. However, such a conference is not required prior to serving discovery on a defaulted defendant via a Rule 45 subpoena.

Recently, in *Trustees of U.A. Union Local No. 290 Plumber, Steamfitter, and Shipfitter Industry Pension Trust*, 2020 WL 1673326, at *2 (D. Or. Apr. 6, 2020), the District of Oregon recognized this nuance when evaluating an attempt to compel production from a party that had not yet been successfully served (emphasis added):

> Plaintiffs' motion to compel is procedurally improper. Plaintiffs have not provided—nor is the Court aware of—any authority supporting Plaintiffs' contention that Rule 37(a) is the

appropriate vehicle for compelling discovery from a party that is not before the Court. **Generally, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)."** Fed. R. Civ. P. 26(d). Given that the parties have not conducted a Rule 26(f) conference, Defendant is not even considered to have been served with Plaintiffs' First Request for Production. See Fed. R. Civ. P. 26(d)(2)(B). Therefore, Plaintiffs' motion is procedurally deficient.

Plaintiffs could, however, proceed by moving for an entry of default as Defendant "has failed to plead or otherwise defend" itself in this action. Fed. R. Civ. P. 55(a). Although Plaintiffs contend that they "cannot file for a default because [D]efendant's books and records are needed ... to perform [a] payroll examination," an entry of default does not foreclose Plaintiffs' ability to seek the documents they need. Pl. Resp. 2. **For example, once an order of default is entered, "a defaulted defendant should be treated as a non-party," and can be commanded to produce documents pursuant to a properly issued subpoena.** *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, **617 F.3d 1146, 1159 (9th Cir. 2010); Fed R. Civ. P. 45.** Accordingly, Plaintiffs' Motion to Compel is denied.

*Duess v. Siso* is distinguishable because Nicola Angie Siso was not defaulted when the subpoenas were issued. Further, the Plaintiff is *Siso* served the subpoenas concurrently with the complaint, before service, rendering those subpoenas particularly inappropriate and distinguishable from the instant action. If this proceeds to a motion, we will also assert that your blanket refusal to engage in a Rule 26(f) conference distinguishes this matter from *Siso*.

Regarding the timeline to respond, 15 days is admittedly less than parties are entitled to under Rule 34, but the suggestion that it is per se unreasonable has been routinely rejected by the Southern District of California. *See, e.g., Oliver v. In-N-Out Burgers*, 2013 WL 12415761, at *4 (S.D. Cal. Feb. 7, 2013) (emphasis added):

Plaintiff contends that the subpoenas must be quashed because they required production of documents thirteen or fourteen days after service of the subpoenas, thus failing to provide the witnesses with a reasonable time to produce the requested documents. (ECF No. 44 at 13:20-14:17.) Rule 45 requires that a subpoena must be quashed or modified if it "fails to allow a reasonable time to comply." FED. R. CIV. P. 45(c)(3)(A)(I). Plaintiff contends that because a party is afforded thirty days to produce documents (see FED. R. CIV. P. 34(b)(2)), it is "clearly unreasonable" to require non-parties to produce documents in less than half that time. (ECF No. 44 at 14:2-3.) **However, Plaintiff's argument fails. The provisions of Rule 45 relating to objections to a subpoena imply that less than fourteen days for production of documents may be reasonable**. See FED. R. CIV. P. 45(c)(2)(B) (requiring that "objections must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served").

Also, the date of compliance is also immediately before the deadline for my client's opposition to your motion to set aside default. As described below, much of the discovery at issue is directly targeting

statements in your declaration in support of that motion that Plaintiff has no other plausible method of verifying. Also, we attempting to tailor the requests in such a way that you would not have difficulty complying. For the most part they merely ask you to substantiate your declaration which we anticipate should not be difficult.

Regarding the privacy of your medical records and your fee arrangement with Defendant, you have attempted to directly put those matters as issue, and have waived any attorney-client or attorney work product privilege or any privacy protection as to those records. What you are suggesting is quintessential use of a potentially privileged communication as a "sword and shield," which is not allowed in this Circuit, and warrants a finding of a subject matter waiver under Federal Rule of Evidence 502.

Relevantly, Rule 502 provides:

> When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
>
> (1) the waiver is intentional;
>
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>
> (3) they ought in fairness to be considered together.

Fed. R. Civ. P. 502; *see Munguia-Brown v. Equity* Residential, 2020 WL 3057502, at *2 (N.D. Cal. June 9, 2020); *see also Munguia-Brown v. Equity Residential*, 337 F.R.D. 509, 512 (N.D. Cal. 2021).

In *Munguia-Brown*, the Court held that where one party sought to use privilege as a sword, it could not also use it as a shield, finding "fairness required that this story be subjected to meaningful cross-examination. After all, what if Defendants were lying about what their lawyers told them? What if different lawyers told them different things? Defendants have testified to the high-level conclusion that many lawyers analyzed the late fee and they all advised it was legal. If the truth was anything more nuanced than that, their story could quickly fall apart. The only way to test Defendants' story was to consider the undisclosed communications together with the disclosed ones. Otherwise, cross-examination was impossible." *Munguia-Brown v. Equity* Residential, 2020 WL 3057502, at *6-7. Similarly, my client is entitled to substantiation of your fee agreement with Mr. Flores.

Similarly, we maintain that you cannot selectively disclose favorable private facts (including your medical conditions), while disallowing cross-examination of those facts under the right of privacy. *See*

9

*Flournoy v. Maness,* 2015 WL 6523472, at *2 (E.D. Cal. Oct. 27, 2015) (A party may waive his right to privacy in his medical records by placing them at issue in a case.). In summary, we are entitled to discovery to substantiate arguably privileged and/or private facts which your client or yourself attempted to put at issue in order to obtain a favorable ruling from the Court on your motion to set aside default.

Finally, I will say that while we would normally be amenable to a reasonable extension to the date of compliance, we unfortunately cannot agree to an extension regarding Request Nos. 11, and 14-21, given the imminent deadline to respond to Defendant's motion to set aside default and motion to dismiss. That being said, we anticipate that you may be able to provide documents that quickly substantiate the representations made in your declaration (e.g., a medical record substantiating one of the claimed conditions during the time period referenced), at which point we would reconsider in good faith whether our requests remained proportional to our needs. We are happy to discuss reasonable extensions to certain of the other requests if that would facilitate production.

Thanks again,

Ethan



---

**From:** attorneys@brandxperts.com <attorneys@brandxperts.com>
**Sent:** Wednesday, September 1, 2021 5:30 PM
**To:** Emilia Carrillo <ECarrillo@nicholaslaw.org>
**Cc:** Craig Nicholas <CNicholas@nicholaslaw.org>; Shaun Markley <SMarkley@nicholaslaw.org>; Ethan Litney <ELitney@nicholaslaw.org>; Valerie Garcia <vgarcia@NicholasLaw.org>
**Subject:** Re: The Upper Deck Company v. Miguel Flores | Subpoena

[External Email]

Dear Mr. Litney:

Please refer and respond to the enclosed correspondence. In particular, please advise me immediately when you are available to meet and confer / discuss a Motion to Quash/Motion For Protective Order as is imminently anticipated should you fail to withdraw the overbroad, premature and unreasonable subpoena that you emailed me last evening.

I look forward to your prompt and thoughtful response.

Sincerely yours,

Stephen L. Anderson
Anderson Law
WE PROTECT IMAGINATION®

Offices in Temecula, California --- WEBSITES EVERYWHERE!
email: attorneys@brandXperts.com

Anderson Law
41923 Second Street, Suite 201
Temecula, California 92590 U.S.A.
+(951) 296-1700 tel.



®

VISIT OUR VIRTUAL VILLAGE:
https://link.edgepilot.com/s/c543869d/kxHOjTjd5ES-
RIQnJw83kA?u=http://www.brandxperts.com/  TRADEMARKS
https://link.edgepilot.com/s/0d21947b/yCcaZ-
PnDUq7t1VxtQ2V7w?u=http://www.copyrightpros.com/   COPYRIGHTS
https://link.edgepilot.com/s/bb05d873/BxxPXtPQ90KGb8lKR1ICIQ?u=http://www.namesavers.net/
  DOMAIN NAMES
https://link.edgepilot.com/s/ceab1932/ofZQLA5XPkm10NhEU-
oQeg?u=http://www.mybrandsonline.com/      REGISTER NOW!
https://link.edgepilot.com/s/dd95d56c/0RD8JqtFOkWFqCZimQzxZw?u=http://www.weprotectimaginati
on.com/  IP SOLUTIONS

On August 31, 2021 4:45 PM Emilia Carrillo <ecarrillo@nicholaslaw.org> wrote:

Dear Counsel:

Please find attached Plaintiff's Notice of Subpoena & Subpoena to Produce Documents to
Miguel Flores – a copy of the attached will follow via mail.

Please note that Plaintiff will also accept production of documents by email on or before 5:00 p.m. PST on the listed date of compliance at: elitney@nicholaslaw.org.

Thank you,

Emilia S. Carrillo | Legal Assistant

**Nicholas & Tomasevic, LLP**

225 Broadway, 19th Floor, San Diego, CA 92101

Ph: (619) 325-0492 | Fax: (619) 325-0496

https://link.edgepilot.com/s/726e179a/EovI0B2-Rkm6lbTsxcPGpg?u=http://www.nicholaslaw.org/

Links contained in this email have been replaced. If you click on a link in the email above, the link will be analyzed for known threats. If a known threat is found, you will not be able to proceed to the destination. If suspicious content is detected, you will see a warning.

Links contained in this email have been replaced. If you click on a link in the email above, the link will be analyzed for known threats. If a known threat is found, you will not be able to proceed to the destination. If suspicious content is detected, you will see a warning.