**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Shaun Markley (SBN 291785)
Ethan T. Litney (SBN 295603)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: elitney@nicholaslaw.org

Attorneys for Plaintiff.
THE UPPER DECK COMPANY

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UPPER DECK COMPANY, a Nevada corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MIGUEL FLORES, an individual, and DOES 1-100, inclusive,<br><br>Defendants. | Case No. 3:21-cv-01182-GPC-KSC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS**<br><br>Date:  October 29, 2021<br>Time:  1:30 p.m.<br>Courtroom:  2D<br><br>**Judge**: Hon. Gonzalo P. Curiel<br>**Magistrate**: Hon. Karen S. Crawford<br><br>**Case Removed**: June 28, 2021<br>**Trial Date**: None Set |

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................1

II.    FACTUAL AND PROCEDURAL HISTORY ..........................................2

III.   LEGAL STANDARD ............................................................................2

IV.    ARGUMENT.........................................................................................3

    A.    Plaintiff's Initial Complaint is A Nullity, and Entirely
        Irrelevant.....................................................................................3

    B.    Defendant's Motion Should Be Stricken or Summarily
        Dismissed ....................................................................................4

    C.    The First Sale Doctrine Does Not Protect the Sale of
        Counterfeit Goods .......................................................................5

    D.    Plaintiff Adequately States a Claim for Its First Cause
        of Action under Section 1125(a)(1)(A) and Section
        1125(a)(1)(B) ...............................................................................6

        1.    *Plaintiff Adequately States a Claim under Section
            1125(a)(1)(A)* ......................................................................6

        2.    *Plaintiffs Adequately States A Claim Under
            Section 1125(a)(1)(B)* ........................................................7

    E.    Plaintiff Adequately States a Claim for Its Second
        Cause of Action for Trademark Dilution....................................9

    F.    Plaintiff Adequately States a Claim for Its Third
        Cause of Action for Trademark Infringement Under
        Section 1114...............................................................................10

    G.    Plaintiff Adequately States Claims for Its Fourth
        Cause of Action for Statutory Rights of Publicity and
        Its Fifth Cause of Action for Commercial
        Misappropriation/Common Law Rights of Publicity .................11

        1.    *Neither Jordan Nor GMA Grading Are
            Indispensable Parties* .........................................................14

    H.    Plaintiff's UCL Claims Cannot Be Dismissed .........................17

    I.    Defendant Fails to Challenge Plaintiff's Common Law
        Unfair Competition Claim.........................................................17

    J.    Plaintiff Adequately States a Claim for Unjust
        Enrichment/Quasi-Contract......................................................18

    K.    Defendant Fails to Justify Dismissal without Leave to
        Amend.......................................................................................19

V.     CONCLUSION ...................................................................................19

# **TABLE OF AUTHORITIES**

## **CASES**

*Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012).........................17

*Analog Devices, Inc. v. W. Pac. Indus.*, 152 F.3d 923 (9th Cir. 1998) .................5

*Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (9th Cir. 2015) ..................17

*Azad v. Tokio Marine HCC-Medical Ins. Svcs., LLC*, 2017 WL 3007040 (N.D. Cal. July 14, 2017).......................................................17

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)..............................................................................................17

*Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier*, 17 F.3d 1292, 1293 (10th Cir.1994) .....................................................15

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 391 (2001)............................................................................................11

*Commodity Futures Trading Comm'n v. Saffron*, 2020 WL 3060739, at *2 (D. Nev. June 9, 2020)...................................................................4

*Contractors Bonding and Insurance Company*, 2008 WL 4447680 at *2 (C.D. Cal. Oct. 1, 2008).......................................................15

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242 (9th Cir. 1990) ..................................................................8

*Davis v. Electronic Arts, Inc.*, 775 F.3d 1172, 1180, n. 5 (9th Cir. 2015) ...........................................................................................12

*Del Amo v. Baccash*, 2008 WL 2780978, at *9 (C.D. Cal. July 15, 2008)............................................................................................12

*Designer Skin, LLC v. S & L Vitamins, Inc.*, 2007 WL 841471, at *2 (D. Ariz. March 19, 2007) ....................................................................13

*DeSoto v. Yellow Freight Systems, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ...........................................................................................18

*Deus Ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn-Mayer Inc.*, 2020 WL 6875178, at *9 (C.D. Cal. Oct. 23, 2020) ...........................9

*Doe et al. v. Dairen Lake Theme Park & Camping Resort, Inc.*, 715 N.Y.S.2d 825, 825 (N.Y.App.Div.2000)........................................13

*EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 778 (9th Cir.2005) ....................14

*Eldredge v. Carpenters 46 N. California Ctys. Joint Apprenticeship & Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981)........................16

*Eminence Capital, LLC, v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) ...........................................................................................3

*FLIR Systems, Inc. v. Sierra Media, Inc.*, 903 F.Supp.2d 1120, 1130
(D. Or. 2012) ................................................................................................9

*Garity v. APWU Nat. Lab. Org.*, 828 F.3d 848 (9th Cir. 2016). ............................3

*Gibson v. BTS North, Inc.*, 2018 WL 888872, at *4 (S.D. Fla. Feb. 14,
2018) ...........................................................................................................8

*Grodin v. Liberty Cable*, 664 N.Y.S.2d 276, 276–77
(N.Y.App.Div.1997) .................................................................................13

*In re Ferrero Litig.*, 794 F.Supp.2d 1107, 1115 (S.D. Cal. 2011)...........................3

*Instant Checkmate, Inc. v. Background Alert, Inc.*, 2014 WL 12526275
(S.D. Cal. Dec. 5, 2014)..............................................................................8

*Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509 (7th Cir. 2014) ..........................8

*Ketayi v. Health Enrollment Group*, 516 F.Supp.3d 1092, 1140 (S.D.
Cal. 2021).....................................................................................................18

*KNB Enters. v. Matthews*, 78 Cal. App. 4th 362, 365 n. 2 (2000) .......................12

*Levi Strauss & Co. v. Shiloh*, 121 F.3d 1309, 1312 (9th Cir. 1997)......................7

*Lopez v. Fed. Nat. Mortg. Ass'n*, 2013 WL 7098634, at *5-6 (C.D. Cal.
Oct. 8, 2013) ...............................................................................................15

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)....................................................3

*Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir.1990) ........................15

*Mintz v. Subaru of America, Inc.*, 716 Fed.Appx. 618, 620 (9th Cir.
Dec. 12, 2017)..............................................................................................7

*Nautilus, Inc. v. Chunchai Yu*, 2011 WL 13213575, at *9 (C.D. Cal.
Dec. 19, 2011)..............................................................................................6

*Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir.
2008) ...........................................................................................................8

*Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691-92 (9th Cir. 1998) ...........11, 14

*Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043
(9th Cir.1983)..............................................................................................16

*Nutrition Distribution LLC v. PEP Research, LLC*, 2019 WL 652391
(S.D. Cal. Feb. 15, 2019) ............................................................................7

*Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D.
Cal. 2004).....................................................................................................6

*Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262 (10th Cir. 2000)......................8

*Ramirez v. County of San Bernadino*, 806 F.3d 1002, 1008 (9th Cir.
2015) ...........................................................................................................4

*Scott v. Citizen Watch Co. of America, Inc.*, 2018 WL 1626773, at *5

(N.D. Cal. Apr. 4, 2018) ........................................................................13

*Sebastian Int'l, Inc. v. Russolillo*, 2005 WL 1323127 (C.D. Cal. Feb. 22, 2005) .................................................................................................5

*Sebastian*, *Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1075 (9th Cir.1995) .......................................................................................5

*See Au-Tomotive Gold*, 603 F.3d 1133, 1136 (9th Cir. 2010) ...............................5

*Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134 (9th Cir. 1997) .................................................................................................7, 8

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ....................................................3

*Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 679 (2010) ......................11

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007) .................................................................................................7

*Timed Out, LLC v. Youabian, Inc.*, 229 Cal. App. 4th 1001 ..........................11, 12

*United States ex rel. Morongo Band of Mission Indians v. Rose*, 34 F.3d 901, 908 (9th Cir.1994) ...............................................................15

*United States of America v. Babichenko*, 2021 WL 1994227 (D. Idaho May 18, 2021) ........................................................................................5

*United States v. Bowen*, 172 F.3d 682, 688–89 (9th Cir.1999) ............................15

*Upper Deck Authenticated Ltd. v. CPG Direct*, 971 F. Supp. 1337 (S.D. Cal. 1997) ...................................................................................12

*Upper Deck v. Panini America, Inc.*, --- F.Supp.3d ----, 2021 WL 1388630, at *8-9 (S.D. Cal. Apr. 13, 2021) ......................................12

*Upper Deck v. Panini America, Inc.*, 469 F.Supp.3d 963, 986 (S.D. Cal. 2020) ...............................................................................................13

*Walter v. Drayson*, 496 F.Supp.2d 1162, 1172 (D. Haw. 2007) ..........................14

*Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ........................3

*Wolski v. Fremont Inv. & Loan*, 127 Cal. App. 4th 347, 357 (2005) ..................17

## STATUTES

15 U.S.C. § 1125(a) .................................................................................6

Cal. Bus. & Prof. Code, § 17204 .............................................................16

Fed. R. Civ. P. 15(a)(3)..............................................................................2

## RULES

Fed. R. Civ. P. 15(a)(2) ............................................................................3

Fed. R. Civ. P. 8(a) ..................................................................................2

# I.   <u>INTRODUCTION</u>

The Upper Deck Company has been a leading manufacturer of trading cards in the United States for over 30 years, and is a household name across America. Upper Deck, like other trading card manufacturers, strategically enters licensing partnerships with athletes to enhance and maintain its premium brand. Most notably, Upper Deck has a longstanding trading card contract with Michael Jordan ("Jordan"), one of the most famous and easily recognizable celebrity athletes on the planet. *See* First Amended Complaint, ¶ 17. Jordan's name, image, likeness, and autograph, individually and in combination, carry significant goodwill and consumer recognizability, much like Upper Deck's own trademarks. Together with Jordan, Upper Deck has produced some of the most sought-after trading cards ever produced, including the original and genuine version of one of the counterfeit cards at issue in this action.

Defendant Miguel Flores took advantage of Upper Deck's right to its own trademarks, and Upper Deck's right to enforce Jordan's name, image, likeness, and autograph in connection with its trading cards, by purchasing a counterfeit version of a 1999 Upper Deck trading card originally including an authentic personal autograph by Jordan, marketing the card, and reselling it on eBay to make a tremendous profit. Mr. Flores's decision to sell counterfeit Upper Deck cards undercut Upper Deck's contract with Jordan and the enormous resources spent to maintain that contract over several decades, diluted Upper Deck's trademarks and the value of authentic Upper Deck trading cards, and rendered Defendant liable from claims ranging from violations of federal trademark law to violations of California's unfair competition law.

Now, rather than actually addressing the merits of Plaintiff's claims, Mr. Flores seeks dismissal of Plaintiff's claims based on his alleged ignorance regarding his unlawful conduct, the assertion of defenses that are entirely inapplicable in the context of marketing and selling counterfeit trading cards, and claiming that

PLAINTIFF'S OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS

Plaintiff failed to allege sufficient facts to state claims against Mr. Flores. Notably, Mr. Flores does not assert any substantive and meritorious defenses against Plaintiff's claims, and indeed admits that he marketed and sold the primary counterfeit trading card at issue for $150. Mr. Flores instead ignores the controlling legal standard at this pleadings stage and simply disputes Upper Deck's allegations and associated evidence – that the Court must accept as true.

The Court should deny Mr. Flores' motion to dismiss in its entirety or, alternatively, grant Upper Deck leave to amend to cure any identified deficiencies.

## II.   FACTUAL AND PROCEDURAL HISTORY

The relevant factual and procedural history is described in detail in Plaintiff's concurrently filed opposition to Defendant's motion to set aside his default. Dkt. No. 11, pp. 2-11, and for purposes of brevity Plaintiff provides a more limited history in this opposition.

On April 28, 2021, Plaintiff The Upper Deck Company ("Plaintiff") filed its Complaint against Defendant Miguel Flores ("Defendant") in the Superior Court for the County of San Diego, Case No. 37-2021-00018912-CU-IT-CTL. Dkt. No. 1-2, Ex. B. On June 28, 2021, Defendant removed this action to this District. *See* Dkt. No. 1-2. On June 29, 2021, Plaintiff filed its First Amended Complaint ("FAC"). Dkt. No. 4. Defendant's deadline to file a responsive pleading was July 13, 2021. Fed. R. Civ. P. 15(a)(3). Defendant failed to timely file a responsive pleading. *See generally* Docket.

On August 10, 2021, the Court entered default against Defendant as he had not yet filed a responsive pleading. Dkt. No. 7. The same day, Defendant filed a motion to set aside his default and the instant motion to dismiss. Dkt. Nos. 8 and 9.

## III.   LEGAL STANDARD

The Federal Rules set forth a liberal pleading standard, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A complaint satisfies this standard where it "contain[s]

sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and "the factual allegations that are taken as true [and reasonable inferences therefrom] plausibly suggest an entitlement to relief. . . ." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Indeed, a "complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." *Id*. Further, on a motion to dismiss the Court must construe the pleadings in the light most favorable to the nonmoving party. *Garity v. APWU Nat. Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016).

In particular, "it is a 'rare situation' where granting a motion to dismiss claims" under California's unfair competition statutes is appropriate. *In re Ferrero Litig.,* 794 F.Supp.2d 1107, 1115 (S.D. Cal. 2011) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008). "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Williams*, 552 F.3d at 939.

Finally, if a court grants any part of a motion to dismiss, the plaintiff should receive leave to amend. *See* Fed. R. Civ. P. 15(a)(2); *Eminence Capital, LLC, v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) (leave to amend should be applied with "extreme liberality"); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (rejecting "defendants' reading [under which] legitimate claims with curable defects would be dismissed without leave to amend.").

## IV.   ARGUMENT

### A.   Plaintiff's Initial Complaint is A Nullity, and Entirely Irrelevant to Defendant's Rule 12(b)(6) Motion to Dismiss

As a preliminary matter, Defendant spends several pages discussing language exclusive to Plaintiff's initial complaint. Motion, pp. 3-5. The operative complaint in this action is the First Amended Complaint ("FAC") (Dkt. No. 4), which rendered

the original Complaint in this action a nullity as soon as the FAC was filed. *Ramirez v. County of San Bernadino*, 806 F.3d 1002, 1008 (9th Cir. 2015). Therefore, Defendant's discussion of allegations contained in the original Complaint should be disregarded as wholly irrelevant.

### B. Defendant's Motion Should Be Stricken or Summarily Denied As Untimely

Defendant's Rule 12(b)(6) motion should be summarily denied or stricken as Defendant ignored the appropriate timeline for filing a responsive pleading, and is presently in default. Fed. R. Civ. P. 12(a); 15(a)(3). As described in detail in the concurrently filed opposition to Defendant's motion to set aside default (Dkt. No. 11), Defendant appears to admit that he simply ignored the applicable deadlines until he was satisfied with Defendant's "complex points and authorities" in support of Defendant's instant motion to dismiss. Dkt No. 8, p. 4 ("on August 10, 2021, the Defendant filed … his Motion to Dismiss, which itself, plainly shows the merits of Defendant's Flores [sic] defenses and further bears the earmarks that demonstrate that during the brief time afforded to prepare the complex points and authorities and documentation filed herewith, Defendant had no culpable conduct nor any intention nor effect of delaying this action."). Such reckless disregard for the Federal Rules of Civil Procedure warrants a finding of a waiver to bring an improper Rule 12(b)(6) motion. *See, e.g., Commodity Futures Trading Comm'n v. Saffron*, 2020 WL 3060739, at *2 (D. Nev. June 9, 2020) ("Typically, striking a late motion or brief is an appropriate means to correct course when a litigant or attorney proceeds according to his own timetable and not the one set by the court and the rules of procedure."). Therefore, the Court should summarily deny this motion, and require Defendant to file a proposed Answer to Plaintiff's FAC.

### C.      The First Sale Doctrine Does Not Protect Defendant's Sale of Counterfeit Goods

Defendant claims the First Sale Doctrine (17 U.S.C. § 109) provides a general defense to Plaintiff's claims, because it protects his right to sell, trade, and dispose of his own property. However, this runs counter to the law of this Circuit:

> The Court does not see how the first-sale doctrine is applicable in this case. *See Au-Tomotive Gold*, 603 F.3d [1133,] 1136 [(9th Cir. 2010)] (We emphasized that this rule "preserves an area of competition by limiting the producer's power to control the resale of its product," while ensuring that "the consumer gets exactly what the consumer bargains for, the genuine product of the particular producer." (quoting *Sebastian*, [*Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1075 (9th Cir.1995)]). The Government is not alleging the defendants legitimately purchased cellphones or accessories from the trademark holder and then resold them to consumers. **Instead, the Government is alleging that the defendants trafficked in goods with a counterfeit mark.**

*United States of America v. Babichenko*, 2021 WL 1994227, at *2 (D. Idaho May 18, 2021) (bold added); *see Analog Devices, Inc. v. W. Pac. Indus.*, 152 F.3d 923 (9th Cir. 1998) ("The first sale doctrine limits the producer's power to control the resale of **genuine goods bearing a true mark** even though such sale is without the mark owner's consent.") (bold added); *Apple, Inc. v. Psystar Corp.*, 673 F.Supp.2d 931, 937 ("Section 109 provides immunity only when copies are "lawfully made." The copies at issue here were not lawfully manufactured with the authorization of the copyright owner… The first-sale defense does not apply to those unauthorized copies."); *Sebastian Int'l, Inc. v. Russolillo*, 2005 WL 1323127, at *2 (C.D. Cal. Feb. 22, 2005) ("the parties believe that the trademark dilution claim only addresses counterfeit goods, not genuine products, so the "first sale" doctrine would not apply to the trademark dilution claim."). Here, Plaintiff has sufficiently pled that the trading cards sold by Defendant are not genuine, but are rather unauthorized and counterfeit reprints of genuine cards. FAC, ¶ 25. Therefore, the First Sale Doctrine

is not a meritorious defense to any of Plaintiff's claims against Defendant, and does not warrant dismissal of any of Plaintiff's claims.

### D.     Plaintiff Adequately States a Claim under Section 1125(a)(1)(A) and Section 1125(a)(1)(B)

#### *1.  Plaintiff Adequately States a Claim under Section 1125(a)(1)(A)*

As detailed in the FAC, Defendant's intentional and unlicensed use of Plaintiff's trademarks deceives consumers into believing that Defendant is re-selling authentic Upper Deck cards, rather than selling counterfeit trading cards that are virtually identical and illegally reprinted versions of Plaintiff's authentic trading cards. FAC, ¶¶ 11, 19-26 (discussing and demonstrating the similarity of the counterfeit cards and authentic Upper Deck cards and marks). This constitutes false endorsement under Section 1125(a)(1)(A) and false advertising under Section 1125(a)(1)(B).

Defendant's suggestion that Plaintiff does not describe how any consumer might be confused by Mr. Flores' counterfeit card is meritless. As a preliminary matter, Plaintiff sufficiently alleges that the cards at issue are counterfeit. *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) ("However, 'in cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination ... because counterfeit marks are inherently confusing.'" (quoting *Philip Morris USA Inc. v. Felizardo*, 2004 WL 1375277 (S.D.N.Y. June 18, 2004)).

Further, Plaintiff discusses in detail that Defendant sold virtually identical counterfeit cards, and Plaintiff explicitly identifies its protected marks, and shows an image of one of the counterfeit cards at issue. *Compare* FAC ¶ 11 *with* ¶ 23; *see Nautilus, Inc. v. Chunchai Yu*, 2011 WL 13213575, at *9 (C.D. Cal. Dec. 19, 2011) ("Since plaintiff has alleged facts tending to show that defendants' counterfeit goods are substantially identical to its products, such confusion appears inevitable. Accepting the truth of plaintiff's allegations, as the court must, plaintiff has stated a

claim for false designation of origin under § 1125(a).”); *Levi Strauss & Co. v. Shiloh*, 121 F.3d 1309, 1312 (9th Cir. 1997) (“Certainly the counterfeit Levi's tags, labels, and jeans were intended to cause confusion, or to cause mistake or to deceive.”). Defendant’s suggestion that there are hundreds of thousands of sellers on eBay and hundreds of thousands of card traders online is wholly irrelevant to the Section 1125(a)(1)(A) analysis.

Further, *Mintz v. Subaru of America, Inc.*, 716 Fed.Appx. 618, 620 (9th Cir. Dec. 12, 2017), cited by Defendant, is also entirely opposite, as it involved a case where the parties had obviously dissimilar marks, and ignores that counterfeit products are inherently confusing. *Id.* Indeed, in *Mintz* the Ninth Circuit recognized that adjudication of the likelihood of causing confusion at the pleading stage is appropriate only “where the parties have obviously dissimilar marks.” *Id.* As that is not the case in this action, evaluation of the likelihood of Defendant causing confusion is inappropriate at this initial stage.

### 2. Plaintiff Adequately States A Claim Under Section 1125(a)(1)(B)

Plaintiff also adequately alleges a claim for false advertising under Section 1125(a)(1)(B). Under the Lanham Act, an actionable false statement is one that is literally false, either on its face or by necessary implication, or literally true but likely to mislead or confuse consumers. *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1139-40 (9th Cir. 1997). For literal falsity, courts evaluate “the message conveyed in full context” to determine if “consumer[s] will necessarily and unavoidably receive a false message. . . .” *Nutrition Distribution LLC v. PEP Research, LLC*, 2019 WL 652391, at *4 (S.D. Cal. Feb. 15, 2019) (*citing Southland*, 108 F.3d 1134, 1139). Otherwise stated, “[i]f the words or images, considered in context, necessarily imply a false message, the advertisement is literally false, and no extrinsic evidence of consumer confusion is required.” *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007).

For non-false, literally true statements, the Lanham Act bars advertisements

that mislead, confuse, or deceive consumers. *Southland*, 108 F.3d 1134, 1140. False advertising reaches situations beyond literal falsehoods because "[w]ere it otherwise, clever use of innuendo, indirect intimations, and ambiguous suggestions could shield the advertisement from scrutiny precisely when protection against such sophisticated deception is most needed." *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.,* 911 F.2d 242, 245 (9th Cir. 1990)). Courts broadly search for statements that mislead or confuse consumers in light of the Lanham Act's intent to serve as a federal unfair competition law. *Cf. Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1272-73 (10th Cir. 2000). And, broadly extending protections is necessary because "corporations cultivate their images and values through a wide array of activities, including celebrity endorsements, sponsorships, and charitable giving." *Id.* and *see Jordan v. Jewel Food Stores, Inc*., 743 F.3d 509, 518 (7th Cir. 2014) (also recognizing that "advertising occupies diverse media, draws on a limitless array of imaginative techniques, and is often supported by sophisticated marketing research. It is highly creative, sometimes abstract, and frequently relies on subtle cues.").

Importantly here, "the question of whether a particular statement is false and misleading is a question of fact that is inappropriate for adjudication on a motion to dismiss." *Instant Checkmate, Inc. v. Background Alert, Inc.*, 2014 WL 12526275, at *5 (S.D. Cal. Dec. 5, 2014) (*citing Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008)). Therefore, Defendant's motion to dismiss should be denied.

Further, as this issue is generally inappropriate for adjudication on a motion to dismiss, Defendant's cited authority is inapposite, as it generally involves motions for summary judgment rather than pleading motions. For example, *Gibson v. BTS North, Inc*., 2018 WL 888872, at *4 (S.D. Fla. Feb. 14, 2018), relied upon by Defendant, was a summary judgment opinion that did not hold false advertisement claims relating to the use of an actual photograph "could not be

actionable." *Id.* Instead, the *Gibson* court refused to enter summary judgment for the plaintiffs, finding that the defendant raised triable issues as to whether the use of the photos mislead consumers. *Id.* Similarly, *FLIR Systems, Inc. v. Sierra Media, Inc.*, 903 F.Supp.2d 1120, 1130 (D. Or. 2012) involved cross motions for summary judgment, where the Court found there was a genuine dispute of material fact as to whether the applicable advertisements were literally false under the applicable law. *Id.* at 1130-31.

Of course, Defendant's marketing and sale of counterfeit cards including almost identical imitations of Plaintiff's and Jordan's marks misleads potential customers by mispresenting that Upper Deck and/or Jordan authorizes the sale of Defendant's counterfeit products, when they do not. Indeed, Defendant's marketing and sale of the counterfeit cards is likely to deceive buyers who believe they are buying a genuine product. *See* FAC, ¶ 26. For these reasons, Plaintiff's first cause of action should not be dismissed.

### E. Plaintiff Adequately States a Claim for Its Second Cause of Action for Trademark Dilution

As a preliminary matter, Plaintiff's second cause of action for trademark dilution is explicitly limited to Plaintiff's trademarks, not any asserted rights of Jordan. *See* Dkt. No. 4, ¶¶ 38-43. As Plaintiff is the owner of all of the marks explicitly identified in the FAC, Defendant's arguments regarding Plaintiff's alleged lack of ownership or an exclusive license is frivolous, and should be entirely disregarded. Further, Plaintiff has successfully pled its ownership of the marks, the famous nature of Plaintiff and its trademarks, the fact that Defendant used the marks commercially, the fact that Defendant used the marks after they became famous, and that Defendant's use of the marks dilutes their quality. *See* Dkt. No. 4, ¶¶ 7-16, 20-26, 38-43. Further, Defendant's attempt to challenge whether Plaintiff or the marks at issue are sufficiently famous is not appropriate at the pleadings stage given that Plaintiff's well-pled allegations must be accepted as true, and the fact that Plaintiff

has pled "more than conclusory allegations of fame," and indeed pled "facts that support a plausible inference that its mark qualified as a household name." *See Deus Ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn-Mayer Inc.*, 2020 WL 6875178, at *9 (C.D. Cal. Oct. 23, 2020) (providing standard for establishing sufficient fame to survive a motion to dismiss); FAC, ¶¶ 2, 7-10, 15-16. As Defendant provides no authority to the contrary, Plaintiff's second cause of action should not be dismissed.

### F. Plaintiff Adequately States a Claim for Its Third Cause of Action for Trademark Infringement Under Section 1114

Again, Plaintiff's third cause of action for trademark infringement is explicitly limited to Plaintiff's trademarks, and not any asserted rights of Michael Jordan. *See* Dkt. No. 4, ¶¶ 44-50. As Plaintiff is the owner of all of the marks explicitly identified in the FAC, Defendant's arguments regarding Plaintiff's alleged lack of ownership or an exclusive license relating to Michael Jordan is frivolous, and should be entirely disregarded.

Further, contrary to Defendant's suggestions, Plaintiff has explicitly identified a number of marks it owns in the FAC by Unites States Patent and Trademark Office number, and includes pictures of two of the trademarked images at issue that are present and immediately ascertainable in the image of the counterfeit card that Defendant admits he marketed and sold for $150. *Compare* FAC ¶ 11 *with* ¶ 23; *see* Dkt. No. 9-1, ¶ 2 (admitting sale of card identified in ¶ 23 of FAC); Ex. A (sales invoice reflecting sale of card for $150); *Cook v. Reinke,* 484 Fed. Appx. 110, 112 (9th Cir.2012) (unpublished) (holding that court could construe defendant's admission in his memorandum to motion to dismiss as a binding judicial admission).

In addition, Plaintiff firmly identifies a factual basis for its claim that the card at issue is counterfeit. *See* FAC ¶ 24 (Clarifying that the counterfeit card was not created or distributed by on behalf of Plaintiff). Plaintiff, as the sole owner of the marks at issue, can identify without speculation when it did not create or distribute

a particular card containing its marks, rendering it counterfeit. Again, Defendant's own motion confirms the relevant "who, what, when, where, and how" of Defendant's misconduct, including the same for $150.

Admittedly, Plaintiff does not suggest it is aware of every instance of Defendant's trademark infringement. But Plaintiff is not required to do so at the pleading stage without the benefit of discovery, and Defendant provides no authority to the contrary. Therefore, Plaintiff's third cause of action should not be dismissed.

### G. Plaintiff Adequately States Claims for Its Fourth Cause of Action for Statutory Rights of Publicity and Its Fifth Cause of Action for Commercial Misappropriation/Common Law Rights of Publicity

In California, "the right of publicity is both a statutory and a common law right." *Timed Out, LLC v. Youabian, Inc.*, 229 Cal. App. 4th 1001, 1005, (quoting *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 391 (2001)). Civil Code section 3344 "complements the common law tort of misappropriation of likeness." *Id.* at 1006. Both protect the "economic value of one's name, voice, signature, photograph, or likeness" and holder of the right of publicity possesses "a right to prevent others from misappropriating the economic value generated ... through the merchandising of the 'name, voice, signature, photograph, or likeness' of the [holder]." *Id.* (quoting *Comedy III*, 25 Cal. 4th at 403).

The elements of a right-of-publicity claim under California common law are: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 679 (2010). A statutory claim for right to publicity under California Civil Code section 3344 requires a plaintiff to prove "all the elements of the common law cause of action" plus "a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose." *Id.* California's statutory right of publicity "complement[s]" the common law right of publicity but "neither

replaces nor codifies the common law cause of action." *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691-92 (9th Cir. 1998). Here, Plaintiff has pled facts sufficient to state a claim for right of publicity under section 3344 and the common law, which Defendant's own admissions confirm. *See* FAC ¶¶ 19, 21-26; 51-56.

Further, the common law right to publicity and section 3344 claims are assignable under California law. *Timed Out, LLC v. Youabian, Inc.*, 229 Cal. App. 4th 1001, 1008 (2014); *Del Amo v. Baccash*, 2008 WL 2780978, at *9 (C.D. Cal. July 15, 2008) (citing *KNB Enters. v. Matthews*, 78 Cal. App. 4th 362, 365 n. 2 (2000) (holding that "the right of publicity is assignable for purposes of a [§] 3344 claim.")). Here, Plaintiff has additionally pled that it "has a license to utilize Jordan's name, image, likeness, and/or autograph in connection with trading cards and has been assigned the right to assert claims for deprivation of rights of publicity in connection with trading cards." FAC, ¶ 58.

Defendant's reliance on *Upper Deck Authenticated Ltd. v. CPG Direct*, 971 F. Supp. 1337 (S.D. Cal. 1997) for the position that an *exclusive* license is required for standing to bring a claim for right of publicity is meritless. Indeed, this Court has recently rejected an identical argument involving Upper Deck's license with Michael Jordan. In *Upper Deck v. Panini America, Inc.*, --- F.Supp.3d ----, 2021 WL 1388630, at *8-9 (S.D. Cal. Apr. 13, 2021) (Curiel, J.) ("*Panini America II*"), this Court explicitly rejected the analysis in *Upper Deck Authenticated Ltd. v. CPG Direct*, 971 F. Supp. 1337 (S.D. Cal. 1997) as "not persuasive as the court of appeal in *Timed Out* criticized the standing analysis of *Upper Deck* as not based in California law." *Panini America II*, 2021 WL 1388630, at *9 (citing *Timed Out, LLC*, 229 Cal. 4th at 1008 n. 6.). This Court "decline[d] to rely on the ruling in *Upper Deck Authenticated Ltd.* and instead relie[d] on the reasoning in *Timed Out*." Plaintiff respectfully requests the Court find the same in this action, and deny Defendant's motion to dismiss on this ground.

Further, Defendant's argument that Jordan's name, likeness, and signature are

incidental in the counterfeit card pictured in the FAC in unavailing. Motion, pp. 17-18. First, as Defendant's own authority recognizes, it is not clear whether incidental use is a defense to right of publicity claims under California law, making dismissal particularly inappropriate. *Davis v. Electronic Arts, Inc.*, 775 F.3d 1172, 1180, n. 5 (9th Cir. 2015) (assuming incidental use defense applies **because the parties agreed it did**, but noting that "California courts have not yet held that the incidental use defense applies to right-of-publicity claims," notwithstanding the wide recognition of the defense elsewhere) (bold added). Further, to the extent the defense is applicable to right of publicity claims, the determination of whether Jordan's name, likeness, and signature is "plainly incidental" is appropriately a jury question. *Scott v. Citizen Watch Co. of America, Inc.*, 2018 WL 1626773, at *5 (N.D. Cal. Apr. 4, 2018) ("Ultimately, the gravity of Scott's identity in Defendants' advertising—determining whether it has "a unique quality or value" that adds commercial value or "contributes something of significance"—is a jury question. But because the evidence here permits an inference of deliberate, commercially valuable use, summary judgment for Defendants under the incidental use doctrine is not warranted."); *see also Doe et al. v. Dairen Lake Theme Park & Camping Resort, Inc.,* 715 N.Y.S.2d 825, 825 (N.Y.App.Div.2000) (denying motion to dismiss based on incidental use doctrine under New York law because "the applicability of the [incidental use] exception is an issue of fact for the jury."); *Grodin v. Liberty Cable,* 664 N.Y.S.2d 276, 276–77 (N.Y.App.Div.1997) (same in the context of a motion for summary judgment).

This Court has ruled similarly. In *Upper Deck v. Panini America, Inc.*, 469 F.Supp.3d 963, 986 (S.D. Cal. 2020) (Curiel, J.) ("*Panini America I*"), this Court recognized that "it is highly unusual for a court to dismiss a complaint on the basis that a defendant has proven an affirmative defense" and refused to dismiss a nearly identical claim on the basis of the incidental use defense where Plaintiff alleged intentional use of Jordan's likeness for economic benefit. *Panini America I*, 469

F.Supp.3d at 968 (quoting *Designer Skin, LLC v. S & L Vitamins, Inc.*, 2007 WL 841471, at *2 (D. Ariz. March 19, 2007)). Here, as in *Panini America I*, Plaintiff pleads that Defendant's use of Jordan's name, image, likeness, and autograph was knowing and intentional to obtain a commercial benefit, and not merely incidental. *See* FAC ¶¶ 19, 23, 32, 51-62, 71.

Further, under section 3344 a "person shall be deemed to be readily identifiable from a photograph when one who views the photograph with the naked eye can reasonably determine that the person depicted in the photograph is the same person who is complaining of its unauthorized use." Cal. Civ. Code § 3344(b)(1). The statute expressly provides that liability based on a photograph requires that the person to be "readily identifiable." Cal. Civ. Code § 3344(a). The Ninth Circuit has held that the same "readily identifiable" standard applies to claims based on alleged misappropriation of "likeness." *Newcombe*, 157 F.3d at 692. Here, Jordan's name, image, and likeness are prominently figured on both sides of the counterfeit card shown in the FAC, and no other athlete's name, image, or likeness is present. FAC ¶ 23. There can be no dispute that Jordan is readily identifiable.

Further, the obvious apparent value of the genuine version of the counterfeit card at issue is that it was "personally autographed by Michael Jordan," "sent to Upper Deck directly from Michael Jordan," and warrants "the authenticity of the depicted athlete's signature." *Id.* It strains credulity to suggest that Jordan's name, image, likeness, or autograph were merely incidental to the apparent $150 value of the counterfeit card marketed by Defendant. Therefore, the Court should refuse to determine as a matter of law that Jordan's inclusion was "incidental."

### 1. Neither Jordan Nor GMA Grading Are Indispensable Parties

Defendant's argument that Jordan and GMA Grading must be joined lacks merit. First, Defendant fails to properly raise a Rule 12(b)(7) motion to dismiss, particularly as Defendant's notice of motion identifies that the sole basis for dismissal is Rule 12(b)(6). Dkt. No. 9. However, even if Defendant properly raised

a Rule 12(b)(7) motion, Defendant would fail to meet his burden to demonstrate that any non-parties must be joined.

A Rule 12(b)(7) motion to dismiss evaluates whether any non-parties must be joined to an action under Rule 19 of the Federal Rules of Civil Procedure. *Walter v. Drayson*, 496 F.Supp.2d 1162, 1172 (D. Haw. 2007) (*citing EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 778 (9th Cir.2005), cert. denied, 546 U.S. 1150, (2006)). Rule 19(a) states, in relevant part:

> "A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

When seeking dismissal for nonjoinder of a necessary and indispensable party under Rules 12(b)(7) and 19, the moving party bears the burden of adducing evidence in support of the motion. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir.1990); *Contractors Bonding and Insurance Company*, 2008 WL 4447680 at *2 (C.D. Cal. Oct. 1, 2008) (*citing Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier*, 17 F.3d 1292, 1293 (10th Cir.1994)).

Therefore, it is Defendant's burden to adduce evidence that an absent person must be joined because either: "(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the that person claims an interest relating to the subject of the action…." Fed. R. Civ. P. 13. Here, Defendant fails to adduce evidence to demonstrate any non-party meets either criteria warranting joinder.

First, Defendant has not demonstrated that either Jordan or GMA Grading have "claimed an interest relating to the subject of the action." "Under the 'claimed interest' clause of Rule 19, 'it is inappropriate for one defendant to attempt to

champion [the] absent party's interests.'" *Lopez v. Fed. Nat. Mortg. Ass'n*, 2013 WL 7098634, at \*5-6 (C.D. Cal. Oct. 8, 2013) (citing *United States ex rel. Morongo Band of Mission Indians v. Rose*, 34 F.3d 901, 908 (9th Cir.1994). "Stated differently, unless the absent party has actually claimed it has a legally protected interest in the action, [they] cannot be deemed a necessary party under Rule 19." *Id.* (citing *United States v. Bowen*, 172 F.3d 682, 688–89 (9th Cir.1999). Indeed, "[j]oinder [under Rule 19(a)(1)(B)] is 'contingent … upon an initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action.'" *Bowen*, 172 F.3d at 689 (citing *Northrop Corp. v. McDonnell Douglas Corp.,* 705 F.2d 1030, 1043 (9th Cir.1983)).  Neither Jordan nor GMA Grading have done so, and nothing in the four corners of the FAC suggests otherwise on this motion to dismiss. Notably, Defendant provides absolutely no authority suggesting otherwise.

Second, Defendant has not demonstrated that the Court cannot accord complete relief among existing parties without joining Jordan or GMA Grading. "This portion of [Rule 19] is concerned only with 'relief as between the persons already parties, not as between a party and an absent person whose joinder is sought.'" *Eldredge v. Carpenters 46 N. California Ctys. Joint Apprenticeship & Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981). In turn, Defendant can and will provide Plaintiff with complete relief and Plaintiff alleges the same.

Finally, Defendant provides no factual specificity in support of his claims that Jordan or GMA Grading must be joined, and simply quotes Rule 19 by stating that their interests will be impaired if not joined, and that Defendant may be subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. *See* Fed. R. Civ. P. 19(a). Here, as described above, Defendant cannot champion these non-parties rights if they have not claimed a legally protected interest relating to the subject matter of the action. Further, Defendant provides no explanation why the Court cannot afford complete relief among the present parties to this action.

## H. Plaintiff's UCL Claims Cannot Be Dismissed

Defendant also argues that Plaintiff's derivative Unfair Competition Law ("UCL") claims fail because all other causes of action fail. This is not so for the reasons stated above.

Independently, to the extent the Court dismisses any claims based on statutory standing, the claim should survive under the UCL. A UCL claim can be brought by any "person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. In turn, unfair competition is "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). A UCL claim based on the unlawful prong rises or falls with the underlying claim. *See Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012) (a UCL cause of action under the "unlawful" prong fails if a statutory predicate is not stated); *Wolski v. Fremont Inv. & Loan*, 127 Cal. App. 4th 347, 357 (2005) (holding that a UCL claim rises or falls with the underlying claim on which it is predicated). Here, Plaintiff's first through fifth causes of action identify various unlawful conduct by Defendant, notwithstanding Defendant's suggestions to the contrary. Thus, Plaintiff maintains UCL standing to pursue all illegal practices at issue in all others causes of action, and Plaintiff's UCL claims cannot be dismissed.

## I. Defendant Fails to Challenge Plaintiff's Common Law Unfair Competition Claim

While Defendant seeks to dismiss Plaintiff's UCL claims, Defendant makes no cognizable argument regarding Plaintiff's California common law unfair competition claims. *See* Motion, pp. 18-21. As such, Plaintiff's common law unfair competition claim should not be dismissed.

### J. Plaintiff Adequately States a Claim for Unjust Enrichment/Quasi-Contract

The Ninth Circuit recognizes that "unjust enrichment" is essentially a claim in "quasi-contract" that seeks restitution. *Astiana v. Hain Celestial Group, Inc.,* 783 F.3d 753, 762-63 (9th Cir. 2015) (reversing District Court's dismissal of quasi-contract claim); *Azad v. Tokio Marine HCC-Medical Ins. Svcs., LLC*, 2017 WL 3007040 (N.D. Cal. July 14, 2017).

While Defendant attempts to distinguish its own cited authority from the instant action on the basis that there is typically some direct relationship between the parties, no such relationship is required in order to bring a quasi-contractual cause of action, as this Court has recognized. *See Ketayi v. Health Enrollment Group*, 516 F.Supp.3d 1092, 1140 (S.D. Cal. 2021) (Curiel, J.). In *Ketayi*, this Court found that a cause of action for unjust enrichment may lie where "Defendants received a benefit, *directly or indirectly*, from Plaintiffs …; it is of no consequence whether there was a direct payment or privity between Plaintiffs and the particular Defendant." *Ketayi,* 516 F.Supp.3d at 1140 (emphasis added).

Here, as described in the FAC, Defendant unjustly profited from the goodwill and reputation associated with Plaintiff's and Jordan's marks to sell counterfeit trading cards. Defendant is not entitled to retain the ill-gotten gains obtained through improper use of Plaintiff and Jordan's intellectual property and good will, and Defendant's actions created a quasi-contractual obligation to pay restitution to Plaintiff relating to the same. The fact that there is no privity or prior relationship between Plaintiff and Defendant is irrelevant, as the quasi-contract is a legal fiction based on Defendant's unjust acts and related profits. As Defendant has provided no authority that a quasi-contractual relationship cannot be created under such circumstances, Plaintiff's claims for unjust enrichment/quasi-contract should not be dismissed.

### K. Defendant Fails to Justify Dismissal without Leave to Amend

While Plaintiff maintains that Defendant's motion lacks merit in its entirety, Defendant notably fails to justify his request for dismissal without leave to amend. Where a motion to dismiss is granted, leave to amend should be granted "unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *DeSoto v. Yellow Freight Systems, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co.,* 806 F.2d at 1401). In other words, denial of leave to amend is only proper where leave to amend would be entirely futile; otherwise leave to amend should be freely granted. *See Desoto,* 957 F.2d at 658*; Schreiber,* 806 F.2d at 1401. Here, Defendant's motion primarily focuses on Plaintiff's alleged failure to plead sufficient facts to state a cause of action. *See generally* Motion. As Defendant largely fails to demonstrate that leave to amend would be futile even if dismissal were warranted, the Court should grant Plaintiff leave to amend to cure any dismissed causes of action.

## V. <u>CONCLUSION</u>

For the above reasons, the Court should deny Defendant's motion in its entirety. To the extent the Court dismisses any cause of action, Upper Deck respectfully seeks leave to amend to cure any deficiencies.

Respectfully submitted:
Dated: September 17, 2021                    **NICHOLAS & TOMASEVIC, LLP**

By:    */s/ Ethan T. Litney*
Craig M. Nicholas (SBN 178444)
Shaun Markley (SBN 291785)
Ethan T. Litney (SBN 295603)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: elitney@nicholaslaw.org

Attorneys for Plaintiff,
THE UPPER DECK COMPANY