UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UPPER DECK COMPANY, a Nevada corporation,<br><br>                                        Plaintiff,<br><br>v.<br><br>MIGUEL FLORES AND DOES 1-100, inclusive,<br><br>                                        Defendant. | Case No.:  21cv1182-GPC(KSC)<br><br>**ORDER:**<br><br>**1) GRANTING DEFENDANT'S MOTION TO SET ASIDE DEFAULT;**<br><br>**2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>**[DKT. NOS. 8, 9.]** |

Before the Court is Defendant's motion to set aside default and motion to dismiss the first amended complaint.  (Dkt. Nos. 8, 9.)  Oppositions to these motions were filed by Plaintiff.  (Dkt. Nos. 11, 12.)  Defendant filed a reply to his motion to set aside default but did not file a reply to the motion to dismiss.  (Dkt. Nos. 13, 14.)  The Court finds that the matter is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1).  Based on the reasoning below, the Court GRANTS Defendant's motion to set aside default and GRANTS in part and DENIES in part Defendant's motion to dismiss with leave to amend.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Factual Background**

This trademark infringement case was removed to this Court on June 28, 2021. (Dkt. No. 1, Not. of Removal.)  After removal, on June 29, 2021, Plaintiff The Upper Deck Company ("Plaintiff" or "Upper Deck") filed a first amended complaint ("FAC") alleging eight causes of action for 1) false affiliation/endorsement, false advertising, and unfair competition under 15 U.S.C. § 1125(a); 2) trademark dilution under 15 U.S.C. § 1125(c); 3) trademark infringement and counterfeiting under 15 U.S.C. § 1114; 4) deprivation of rights of publicity pursuant to California Civil Code section 3344; 5) commercial misappropriation/violation of rights of publicity under California common law; 6) violation of California's Unfair Competition Law ("UCL") under California Business & Professions Code section 17200 *et seq*.; 7) violation of California common law unfair competition;[1] and  8) unjust enrichment/quasi-contract.  (Dkt. No. 4, FAC.)

According to the FAC, Upper Deck is a leading manufacturer of trading cards, holds exclusive licensing agreements with various professional athletes and maintains trademarked logos, designs and word marks.  (Dkt. No. 4, FAC ¶ 2.)  It has been one of the leading trading card manufacturers for over 30 years and has remained at the forefront of the industry since its inception around 1989.  (*Id.* ¶¶ 7, 9, 10.)  Upper Deck exclusively owns a number of trademarks and tradenames which are collectively referred to as the "Upper Deck Trademarks."  (*Id.* ¶ 11.)  Relevant to this case, Upper Deck owns the green diamond "UPPER DECK" logo, USPTO No. 2498524.  (*Id.*)

Plaintiff uses the "Upper Deck Trademarks" in its usual course of business in connection with its manufacture, marketing, and sale of sports trading cards in interstate commerce.  (*Id.* ¶ 12.)  The green diamond logo was Plaintiff's main logo displayed on its products from 1988 to 2008 and is still used today.  (*Id.* ¶ 16.)  Upper Deck also holds

---

[1] Plaintiff misnumbered the causes of action; therefore, instead of nine causes of action there are only eight causes of action.  (Dkt. No. 4, FAC at p. 13-14.)

21cv1182-GPC(KSC)

exclusive licenses and non-exclusive licenses with certain major sports leagues and athletes including retired athletes such as Michael Jordan.  (*Id.* ¶ 17.)

Defendant Miguel Flores ("Defendant" or "Flores") markets products for sale online throughout the United States through eBay.  (*Id.* ¶ 3.)  It is alleged that Defendant is advertising and selling counterfeit trading cards ("Cards") with the Upper Deck Trademarks and Jordan's likeness in interstate commerce without permission via his eBay store using the seller name "migflo_3800".  (*Id.* ¶¶ 19, 22.)  Defendant's products, including the trading cards, are counterfeits that were not created or distributed by or on behalf of Upper Deck and feature Upper Deck Trademarks as well as Jordan's name, image, likeness and/or autograph for which Plaintiff holds a license and assignment related to the use of Jordan's publicity rights on trading cards.  (*Id.* ¶ 24.)

Many of Defendant's products are illegally reprinted versions of authentic trading cards previously produced by Upper Deck that were created without its permission, consent, authority or approval.  (*Id.* ¶ 25.)  Even though Defendant's Cards were graded as "Facsimile Reprint" by GMA Grading, GMA Grading has recently acknowledged that reprint cards are counterfeits that "appears to use non-licensed images, logos, or likenesses" and has stopped providing grading to these counterfeit cards as of March 13, 2021.  (*Id.*)

## Discussion

### I.   Motion to Set Aside Default

The FAC was filed on June 29, 2021, (Dkt. No. 4), and Defendant had until July 14, 2021 to file a response.  Because no response was filed by Defendant, a request for default by Plaintiff was filed on July 16, 2021 which was entered on August 10, 2021. (Dkt. Nos. 6, 7.)  On the same day, Defendant filed its motion to set aside default and motion to dismiss.  (Dkt. Nos. 8, 9.)

"Judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits."  *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).  A court's discretion to set aside a default is "especially broad"

where no default judgment has been entered.  *O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir. 1994).

The court may set aside an entry of default for "good cause."  Fed. R. Civ. P. 55(c). Three factors govern the inquiry into "good cause" under Federal Rule of Civil Procedure ("Rule") 55(c).  *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010).  "Those factors, which courts consistently refer to as the *Falk* factors, are: (1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default."  *Brandt v. Am. Bankers Ins. Co. of Florid*a, 653 F.3d 1108, 1111 (9th Cir. 2011) (citing *Falk,* 739 F.2d at 463). "This standard, which is the same as is used to determine whether a default judgment should be set aside under Rule 60(b), is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default."  *Mesle*, 615 F.3d at 1091.

## A.    Defendant's Culpable Conduct[2]

Defendant moves to set aside the default arguing he did not engage in culpable conduct by intentionally failing to answer for the purpose of taking advantage of the opposing party, interfering with judicial decision making or manipulating the legal process.  (Dkt. No. 8 at 7-8.)  Instead, he explains that defense counsel's excusable neglect resulted in the default due to events concerning his personal life.  (Dkt. No. 8-1, Anderson Decl.[3])  These include the death of his mother on June 5, 2021, his mother's

---

[2] Unfortunately, the attorneys in the case have an acrimonious relationship as exhibited by the extensive attachments to the instant briefing on the motion to set aside default.  Because the attorneys' conduct is not before the Court, it declines to consider these attachments for purposes of the instant motion.  (Dkt. Nos. 8-1, 11-1, 14.)  Pursuant to this District's Civil Local Rules, attorneys are required to act with civility and professionalism.  *See* Civ. Local R. 2.1.  To the extent either party seeks sanctions for attorney misconduct, it must do so by an appropriate motion.

[3] While the original filed declaration by defense counsel was not signed under penalty of perjury, in the courtesy copy to the Court, defense counsel signed the declaration.  (Dkt. No. 8-1.)  However, for a proper record, Defendant must file a signed declaration of defense counsel's declaration on the Court's electronic filing system.

funeral on June 9, 2021, time off from work due to family and personal issues due to his mother's death, his child's surgery on July 11, 2021, the demands and deadlines of his other cases, and his own personal health issues requiring medical care since July 1, 2021. (Dkt. No. 8 at 5-6; Dkt. No. 8-1, Anderson Decl. ¶¶ 16-18.)  Further, defense counsel states that due to COVID, he laid off most of his staff and accepted this case in June 2021 before all his personal and health issues arose.  (*Id.* ¶ 15.)  He also explains that he defaulted because he needed additional time to prepare a complicated motion to dismiss which was filed on the same date as the motion to set aside default which demonstrates he had no intention of delaying the action.  (Dkt. No. 8 at 5; Dkt. No. 8-1, Anderson Decl. ¶ 13.)  Plaintiff responds that because Defendant was represented by counsel, he is subject to the sophisticated party culpability standard and his reasons strain credibility. (Dkt. No. 11 at 20.)  But under either the sophisticated or unsophisticated party standard, Plaintiff asserts that Defendant's conduct was culpable.  (*Id.* at 20-21.)

A defendant's conduct is culpable if he has "received actual or constructive notice of the filing of the action and *intentionally* failed to answer."  *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001) (emphasis in original).  Cases have used "intentional" to mean "willful, deliberate, or evidence of bad faith."  *See id.*  The term "intentionally" does not mean the court can treat a party as culpable "simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process."  *Mesle,* 615 F.3d at 1092 (internal quotations omitted).  "Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision-making, or otherwise manipulate the legal process is not 'intentional' under default cases."  *TCI Grp.*, 244 F.3d at 697-98.

The standard on culpability depends on whether the party is "legally sophisticated."  *Mesle*, 615 F.3d at 1093.  Where a party is not legally sophisticated, the

Ninth Circuit has "held that a defendant's conduct was culpable . . . where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *TCI Grp.*, 244 F.3d at 698. But where a legally sophisticated party is concerned, "conduct may be considered culpable if the defendant has received actual or constructive notice" and failed to answer. *Mesle*, 615 F.3d at 1093. This is because "[w]hen considering a legally sophisticated party's culpability in a default, an understanding of the consequences of its actions may be assumed, and with it, intentionality." *Id.* In the context of culpability under the good cause standard, defense counsel's conduct is attributable to Defendant because, "[a]s a general rule, parties are bound by the actions of their lawyers." *Casey v. Albertson's, Inc.,* 362 F.3d 1254, 1260 (9th Cir. 2004); *see also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 396 (1993) (explaining that "petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.").

Here, even under the legally sophisticated standard, the Court finds that Defendant is not culpable. When defense counsel undertook this case, a number of unfortunate events in his personal life occurred which caused the delay. However, defense counsel should have communicated with Plaintiff's counsel or sought leave of Court if he needed additional time to respond to the FAC. Nonetheless, the Court does not find that Defendant's failure to respond was deliberate, willful, or in bad faith and even though defense counsel knew about the consequences of his actions, while in default, he drafted a motion to set aside default and a motion to dismiss that was promptly filed when the default was entered. In light of these circumstances, the Court concludes the case should be decided on the merits and concludes that Defendant is not culpable. However, Defendant and his counsel are on notice that, in the future, they must comply with the Federal Rules of Civil Procedure, Southern District of California's Civil Local Rule and the undersigned chambers rules.

/ / /

6

21cv1182-GPC(KSC)

### B.   Meritorious Defense

Defendant incorporates by reference the motion to dismiss he concurrently filed with the motion to set aside default to argue that he has a meritorious defense.  (Dkt. No. 8.)  Plaintiff argues the Court should strike Defendant's Rule 12(b)(6) motion for failing to comply with the deadlines set by the Rules.  (Dkt. No. 11 at 28.)  Moreover, even if the Court considers the motion to dismiss, Defendant does not challenge factual allegations but address the sufficiently of the allegations and as such, does not meet the meritorious standard factor.  (*Id.*)

"A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense," but "the burden on a party seeking to vacate a default judgment is not extraordinarily heavy."  *TCI Grp.*, 244 F.3d at 700 (citations omitted).  Defendants have a "minimal" burden in establishing a meritorious defense.  *Mesle*, 615 F.3d at 1094.  To satisfy the "meritorious defense" requirement, all that is necessary is to "allege sufficient facts that, if true, would constitute a defense."  *Id*.  The Court need not consider truth of those factual allegations and assumes their truth at this stage.  *Id.*

District courts have held that the filing or even joinder in a motion to dismiss "articulates a sufficiently colorable defense for the purpose of . . . [a] motion to set aside default."  *Maciel Builders LLC v. U.S. Framing Int'l LLC*, Case No. 19-cv-03660-BLF, 2020 WL 553942, at *3 (N.D. Cal. Feb. 4, 2020); *E. & J. Gallo Winery v. Cantine Rallo, S.p.A.,* 430 F. Supp. 2d 1064, 1091–92 (E.D. Cal. 2005) (setting aside default judgment on meritorious defense factor stating, "[t]he law does not require that defendant show it will prevail on its defense."); *Kaszuba v. Fidelity Nat'l Default Servs.,* No. 11CV129 DMS (NLS), 2011 WL 2445860, at *3 (S.D. Cal. June 17, 2011) (meritorious defense demonstrated after review of draft motion to dismiss submitted by the defense); *Park v. U.S. Bank Nat'l Ass'n*, No. 10cv1546–WQH–WMc, 2010 WL 4809652, at *3 (S.D. Cal. Nov. 19, 2010) (reviewing defendants' proposed motion to dismiss and finding they have sufficiently shown a meritorious defense).  Here, a review of the motion to dismiss

21cv1182-GPC(KSC)

demonstrates that Defendant has raised meritorious defenses.  Accordingly, this factor has been met.

### C.      Prejudice to Plaintiff

Finally, Defendant maintains that Plaintiff will not suffer any prejudice by an unavoidable few days of delay in the filing of his motion to dismiss.  (Dkt. No. 8 at 8.)  Plaintiff asserts it will be prejudiced because it alerted Defendant about concerns it had about delaying resolution of this case from its inception, (Dkt. No. 11-2, Litney Decl., Ex. F at 37), and recently learned that Defendant has destroyed relevant evidence of the marketing and selling of counterfeit products, including using the Upper Deck Trademarks.  (Dkt. No. 11-2, Litney Decl., Exs. K, L.)

"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case."  *Mesle,* 615 F.3d at 1095 (quoting *TCI Grp.*, 244 F.3d at 701).  Mere delay and litigation costs are not sufficient prejudice to justify refusing to set aside a default. *See TCI Group*, 244 F.3d at 701 (finding the Plaintiff suffered no cognizable prejudice merely by incurring costs in litigating the default).  "The standard is whether his ability to pursue his claim will be hindered", *Falk*, 739 F.2d at 463, such as by "loss of evidence" or "increased difficulties of discovery," *TCI Grp.*, 244 F.3d at 701.

Plaintiff's concerns about delaying resolution of the case does not demonstrate prejudice.  *See Mesle,* 615 F.3d at 1095.  As to Plaintiff's concern of recent spoliation of evidence by Defendant by the removal of an Instagram post, such conduct may be addressed during discovery.  *See Hu and Assocs., LLC v. New Life Senior Wellness Ctr, LLC*, Case No. LA CV16-03078 JAK (MRWx), 2017 WL 10591751, at *3 (C.D. Cal. Nov. 20, 2017) (setting aside default and stating, "if any spoliation of evidence is shown, other remedies, including an appropriate jury instruction, may be granted.").  Further, the delay in the case has been minimal.  *See Francois & Co., LLC v. Nadeau*, 334 F.R.D. 588, 599 (C.D. Cal. 2020) (granting request to set aside default despite concluding that

8

two-year delay since the filing of the complaint did not constitute cognizable prejudice). Therefore, no prejudice has been shown to Plaintiff.

Because the *Falk* factors supports the setting aside the default, the Court GRANTS Defendant's motion to set aside default.  The Court now considers Defendant's motion to dismiss even though it is not procedurally proper.  However, instead of having Defendant re-file the motion to dismiss, the Court considers it in the interest of judicial economy and efficiency.

**II.     Motion to Dismiss for Failure to State a Claim**

**A.     Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).  Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009)

(quotations omitted).  In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff.  *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to amend would be futile, the Court may deny leave to amend.  *See DeSoto,* 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

**B.     First Cause of Action-False Affiliation/Endorsement, False Advertising, and Unfair Competition under 15 U.S.C. § 1125**

Defendant moves to dismiss the false affiliation/endorsement claim under 15 U.S.C. § 1125(a)(1)(A) and false advertising claim under 15 U.S.C. § 1125(a)(1)(B). (Dkt. No. 9-1 at 14-20.)  Plaintiff maintains it has adequately stated a claim under both provisions.  (Dkt. No. 12 at 11-14.)

The Lanham Act was intended to make "actionable the deceptive and misleading use of marks," and "to protect persons engaged in . . . commerce against unfair competition."  15 U.S.C. § 1127.  Section 43(a) of the Lanham Act provides, in pertinent part:

> (1) Any person who, on or in connection with any goods or services… uses in commerce…[any] false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

21cv1182-GPC(KSC)

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  "Section 1125(a) creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014).

### 1.    15 U.S.C. § 1125(a)(1)(A)

To assert a claim under § 1125(a)(1)(A), a plaintiff must allege that "(1) defendant uses a designation (any word, term, name, device, or any combination thereof) or false designation of origin; (2) the use was in interstate commerce; (3) the use was in connection with goods or services; (4) the designation or false designation is likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of defendant with another person, or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) the plaintiff has been or is likely to be damaged by these acts."  *Zamfir v. Casperlabs, LLC*, --F. Supp. 3d --, 2021 WL 1164985, at *4 (S.D. Cal. 2021) (quoting *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1015 (N.D. Cal. 2015) (citing *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 928 (C.D. Cal. 1996)).

Under § 1125(a)(1)(A), the Ninth Circuit has also held that the unauthorized use of a celebrity's persona, image or likeness, may be brought as a false endorsement claim. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1239 (9th Cir. 2013) (claims may be brought under "§ 43(a) relating to the use of a public figure's persona, likeness, or other uniquely distinguishing characteristic to cause such confusion."); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir. 1992) (*abrogated on other grounds by Lexmark Int'l, Inc.*, 572 U.S. at 118) ("A false endorsement claim based on unauthorized use of a celebrity's identity is a type of false association claim . . .which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product.").

21cv1182-GPC(KSC)

1    Where the goods the defendant sold are identical or similar to the trademark

2    owner's goods, there is a presumption of a likelihood of confusion.  *Arcona, Inc. v.*

3    *Farmacy Beauty, LLC*, 976 F.3d 1074, 1080 (9th Cir. 2020) (citing *Stone Creek Inc. v.*

4    *Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017) ("identical marks paired

5    with identical goods can be case-dispositive" in a case involving an "exact replica" of a

6    competitor's logo)).

7         In its motion, Defendant challenges the first and fourth factors arguing Plaintiff

8    does not identify an act where Flores "uses" any of the Upper Deck Trademarks or

9    Jordan's likeness and does not sufficiently allege that use of the Upper Deck Trademarks

10   or Jordan's likeness is likely to cause consumer confusion as to origin, sponsorship, or

11   approval based on his sale of one trading card on eBay.  (Dkt. No. 9-1 at 15-16.)  Plaintiff

12   responds it has adequately alleged a violation of § 1125(a)(1)(A) violation based on

13   Defendant's intentional and unlicensed use of its protected marks and Jordan's likeness

14   and deceiving consumers into believing that Defendant is re-selling authentic Upper

15   Deck cards but is instead selling counterfeit trading cards that are identical and illegally

16   reprinted versions of Plaintiff's authentic trading cards.  (Dkt. No. 12 at 11.)

17        Here, the FAC alleges that Defendant is selling counterfeit trading cards with the

18   Upper Deck Trademarks and Jordan's likeness in interstate commerce through eBay.

19   (Dkt. No. 4, FAC ¶ 19.)  Defendant is selling non-authentic, counterfeit trading cards

20   with the Upper Deck Trademarks and featuring Jordan's likeness without Upper Deck's

21   or Jordan's permission consent, authority or approval.  (*Id.* ¶¶ 22, 23, 24.)  The illegal

22   and unauthorized reprinting of Upper Deck's products harms Plaintiff because the

23   similarity between the authorized products and the illegal reprints causes and will cause

24   confusion and mistake.  (*Id.* ¶ 26.)  It will also deceive consumers who wish to purchase

25   Upper Deck products as to the affiliation, connection or association of Upper Deck with

26   Defendant or as to the origin, sponsorship, or approval of Defendant's products by Upper

27   Deck and Jordan and destroys the goodwill and reputation built by Upper Deck and

28   Jordan and harms the collectors of authentic Upper Deck Products.  (*Id.*)

21cv1182-GPC(KSC)

Contrary to Defendant's argument, the FAC specifically claims that Defendant used the Upper Deck Trademarks and Jordan's marks in connection with the sale of Defendant's unauthorized products in interstate commerce, (Dkt. No. 4, FAC ¶ 32), as well as alleges a likelihood of confusion for such use, (*id.* ¶¶ 26, 33). Moreover, Plaintiff alleges Defendant's products are counterfeit reprinted cards of the exact replica of Plaintiff's trading cards. (*Id.* ¶ 25.) Therefore, likelihood of confusion is also presumed. *See Arcona, Inc.*, 976 F.3d at 1080. These allegations sufficiently allege a claim under § 1125(a)(1)(A) that Defendant's counterfeits will lead consumers to be deceived as to the trading cards affiliation with Plaintiff.

By referencing his sale of trading cards featuring an Upper Deck Trademark and Jordan's likeness in the singular, Defendant appears to arguing that one identified sale to Plaintiff's counsel is not sufficient to support a false affiliation claim. On this argument, Flores is disputing a factual allegation in the FAC and relies on documents outside the FAC concerning the one sale to Plaintiff's counsel, (Dkt. No. 9-1, Ex. A at 32); however, disputing a factual allegation and considering evidence outside the FAC are not proper on a motion to dismiss. Therefore, taking the allegations in the FAC as true on a motion to dismiss, the Court DENIES Defendant's motion to dismiss the 15 U.S.C. § 1125(a)(1)(A) cause of action for false affiliation/false endorsement.[4]

/ / /

---

[4]Defendant appears to complain that he was merely selling a few of his own cards that he purchased online unaware of their authenticity and should not be subject to liability. However, courts have held that a reseller of counterfeit goods, or intermediary sellers, can be liable for trademark infringement and unfair competition. *See Microsoft Corp. v. Compusource Distribs., Inc*., 115 F. Supp. 2d 800, 806-07 (E.D. Mich. Aug. 28, 2000) (reseller of software liable for trademark infringement and false designation of origin by acquiring counterfeit software bearing manufacturer's trademarks but actually manufactured by another party, and reselling software); *El Greco Leather Prods. Co., Inc. v. Shoe World, Inc*., 806 F.2d 392, 396 (2d Cir.1986), *cert. denied*, 484 U.S. 817 (1987) (reseller's "sale of the shoes was sufficient 'use' for it to be liable for the results of such infringement and its claimed lack of knowledge of its suppliers' infringement, even if true, provides no defense"); *Adolph Coors Co. v. A. Genderson & Sons, Inc*., 486 F. Supp. 131, 135-36 (D. Colo.1980) (unauthorized beer distributor infringed brewer's trademark by failing to follow brewer's quality control standards and reselling a product of inferior quality).

13

## 2.   15 U.S.C. § 1125(a)(1)(B)

Defendant claims Plaintiff has failed to state a § 1125(a)(1)(B) cause of action because it has not alleged a false statement of material fact.  (Dkt. No. 9-1 at 16-18.) Plaintiff opposes.

Under the Lanham Act, a false advertising claim, "requires a showing that (1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product."  *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1052 (9th Cir. 2008) (quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002)).

Defendant challenges the first and third factors.  Plaintiff generally argues that the issue of whether a statement is false and misleading is a question of fact that is inappropriate on a motion to dismiss.  (Dkt. No. 12 at 13-14.)  Further, it avers that the marketing and sale of Defendant's counterfeit cards misleads potential customers by misrepresenting that it and Jordan authorize the sale of Defendant's counterfeit products when they do not.  (*Id.* at 14.)  Moreover, Defendant's sale of the counterfeit products is likely to deceive buyers who believe they are buying a genuine product.  (*Id.*)

### a.   Actionable False Statement

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citation omitted).  "However, a false advertising cause of action under the Act is not limited to literal falsehoods; it extends to false representations made by implication or innuendo."

14

21cv1182-GPC(KSC)

*PhotoMedex, Inc. v. Irwin*, 919, 932 (9th Cir. 2010) (citing *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 245 (9th Cir. 1990)).  For example, "[a] statement actionable under the Lanham Act may be an affirmatively misleading statement, a partially incorrect statement, or a statement which is untrue as a result of a failure to disclose a material fact."  *Skil Corp. v. Rockwell Int'l Corp.*, 375 F. Supp. 777, 783 n.11 (N.D. Ill. 1974).   On the other theory of falsehood, "[c]ourts have also recognized that a statement can be literally true, but nevertheless misleading in the way it is presented."  *U–Haul Int'l, Inc. v. Jartran, Inc.*, 522 F. Supp. 1238, 1247 (D. Ariz.1981), *aff'd*, 681 F.2d 1159 (9th Cir. 1982); *Southland Sod Farms*, 108 F.3d at 1139.

Defendant argues that it had the right to use the Upper Deck Trademarks and Jordan's likeness that accurately describes the products in his listing.  (Dkt. No. 9-1 at 17.)  He further contends that the listing, as depicted in the FAC, of one trading card states that GMA Grading numbered and graded the card and the card states it is a "Facsimile Reprint."  He claims that there is no false statement about this card and no consumer would be confused about the listing.  Plaintiff does not address this argument and does not articulate whether the Defendant's use was literally false or literally true but likely to mislead or confuse consumers.

However, upon a review of the FAC, it appears Plaintiff may be relying on a false statement that is literally true, but nevertheless misleading in the way it is presented.  The FAC alleges that Defendant's sale of Upper Deck's trading cards as a "Facsimile Reprint" creates the false impression that Upper Deck sells reprinted versions of its trading cards, which it did not permit, consent, or approve, and that the trading cards are likely to mislead or confuse consumers into believing that Upper Deck endorses these counterfeits, when, in fact, they do not.  (Dkt. No. 4, FAC ¶¶ 23-26.)  On this theory, Plaintiff has sufficiently alleged a false statement.

Defendant also maintains that the defense of the first sale doctrine under 17 U.S.C. § 109 allows him to sell his own property.  (Dkt. No. 9-1 at 19.)  Plaintiff responds that the first sale doctrine does not protect the sale of counterfeit goods.  (Dkt. No. 12 at 10.)

Section 109 provides immunity only when copies are "lawfully made."  17 U.S.C. § 109.

The "first sale" doctrine limits the producer's power to control the resale of "genuine

goods bearing a true mark even though such sale is without the mark owner's consent."

*NEC Elecs. v. Cal Circuit ABCO*, 810 F.2d 1506, 1509 (9th Cir. 1987). "[T]rademark law

is designed to prevent sellers from confusing or deceiving consumers about the origin or

make of a product, which confusion ordinarily does not exist when a genuine article

bearing a true mark is sold." *Id.*

Here, because Plaintiff alleges the sale of counterfeit trading cards, the first-sale

defense does not apply in this case. *See Apple, Inc. v. Psystar Corp*., 673 F. Supp. 2d 931,

937 (N.D. Cal. 2009) ("The first-sale defense does not apply to those unauthorized

copies").  Accordingly, the Court concludes that Plaintiff has alleged an actionable false

statement.

### b.      Actual Deception or Tendency to Deceive a Substantial Segment of its Audience

Under the third factor, "where a statement is literally false or the defendant

intentionally set out to deceive, . . . actual deception" is presumed.  *AECOM Energy &*

*Constr., Inc. v. Ripley*, 348 F. Supp. 3d 1038, 1056 (C.D. Cal. 2018); *see William H.*

*Morris Co. Grp. W, Inc*., 66 F.3d 255, 258 (9th Cir. 1995) (failure to establish that a

significant number of consumers were actually deceived is not necessarily fatal because if

the plaintiff intentionally misled consumers, we would presume consumers were in fact

deceived and the defendant would have the burden of demonstrating otherwise).  Here,

the alleged false statement is not literally false; however, the FAC alleges that

Defendant's conduct will deceive consumers who wish to purchase Upper Deck products

and deceive consumers by misrepresenting the nature, characteristic, qualities or origin of

Defendant's products and/or Upper Deck's or Jordan's authorized products.   (Dkt. No. 4,

FAC ¶¶ 26, 33.)  Therefore, Plaintiff has alleged the third factor.  Accordingly, the Court

DENIES Defendant's motion to dismiss the cause of action under § 1125(a)(1)(B).

**C.      Second Cause of Action - Trademark Dilution, 15 U.S.C. § 1125(c)(1)**

Defendant next argues that the trademark dilution claim fails to state a claim because the Upper Deck Trademarks are not sufficiently famous and Upper Deck is not the owner of any rights of Jordan.  (Dkt. No. 9-1 at 20-21.)  He further summarily claims that Plaintiff has failed to identify or describe any act constituting dilution of its alleged marks, failed to allege the manner in which any of Plaintiff's trademarks were "used" by Flores in connection with the sale of any products, and failed to identify any act by Defendant that would confuse the public or harm any of Plaintiff's alleged rights in its trademarks.  (*Id.* at 21.)  Plaintiff responds that the FAC only alleged a dilution claim as to the Upper Deck Trademarks, not any rights of Jordan.  (Dkt. No. 12 at 14.)  Next, Upper Deck argues that it has alleged ownership of the marks, the famous nature of the trademarks, that Defendant used the marks commercially after they became famous and that Defendant's use dilutes the quality.  (*Id.* (citing Dkt. No. 4, FAC ¶¶ 7-16, 20-26, 38-43).)

The FAC alleges that Upper Deck is a leading manufacturer of trading cards since its inception in 1988/1989 until the present and renowned as one of the leading trading card manufacturers.  (Dkt. No. 4, FAC ¶¶ 7, 9, 10.)  Upper Deck is instantly recognized and respected among traders and collectors.  (*Id.* ¶ 9.)  Due to its long history, international reach and record-breaking industry standards, its use of its trademarks with its products "led to favorable public acceptance and association with the recognized quality and substantial goodwill the Upper Deck's name holds."  (*Id.* ¶ 16.)   The FAC complains that Defendant used the Upper Deck Trademarks in connection with the sale of Defendant's unauthorized Products in interstate commerce without Upper Deck's permission.  (*Id.* ¶ 39.)

"In order to prove a violation, a plaintiff must show that (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*,

518 F.3d 628, 634 (9th Cir. 2008) (citing 15 U.S.C. § 1125(c)(1)).  A plaintiff must also show that "the mark used by the alleged diluter is identical, or nearly identical, to the protected mark."  *Nissan Motor Co. v. Nissan Computer Corp*., 378 F.3d 1002, 1011 (9th Cir. 2004) (quoting *Thane Intern., Inc. v. Trek Bicycle Corp*., 305 F.3d 894, 905 (9th Cir. 2002)).

A mark qualifies as famous "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2).[5]  Trademark dilution "is a cause of action reserved for a select class of marks -- those marks with such powerful consumer associations that even noncompeting uses can impinge on their value."  *Nissan Motor Co.*, 378 F.3d at 1011 (Consequently, "dilution protection [extends] only to those whose mark is a 'household name.'"); *see also Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999) ("[T]o meet the 'famousness' element of protection under the dilution statutes, a mark [must] be truly prominent and renowned.") (internal quotations and citations omitted); *Dahon N. Am., Inc. v. Hon*, No. 2:11cv5835-ODW(JCGx), 2012 WL 1413681, at *9 (C.D. Cal. Apr. 24, 2012) ("[T]rademark dilution claims are restricted to truly famous marks, such as Budweiser beer, Camel cigarettes, and Barbie dolls.").

Dilution protection does not apply to marks that are in a "niche" market.  *Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn-Mayer Inc*., Case No.: CV 20-4822-PLA, 2020 WL 6875178, at *8 (C.D. Cal. Oct. 23, 2020) (dismissing dilution claim where the complaint only alleged the mark is widely recognized among discrete group "males aged 18 to 30 who are drawn to custom motorcycle and vintage surf culture"); *see also Planet Coffee Roasters, Inc. v. Dam*, No. SACV 09–00571–MLG, 2009 WL

---

[5] Courts should consider the following factors in determining whether a mark is famous: "(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties[;] (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark[;] (iii) The extent of actual recognition of the mark[;] [and] (iv) Whether the mark was registered . . .  on the principal register."  15 U.S.C. § 1125(c)(2)(A)(i)-(iv).

2486457, at *3 (C.D. Cal. Aug. 12, 2009) (federal trademark dilution statute was amended "to deny protection to marks that are famous only in 'niche' markets"); *MGA Ent., Inc. v. Dynacraft BSC, Inc.,* Case No. 2:17–cv–08222–ODW–KS, 2018 WL 2448123, at *6 (C.D. Cal. May 30, 2018) (same); *McCall's Country Canning, Inc. v. Paula Deen Ent.,* Inc., CASE NO. 09cv0952-LAB (BLM), 2010 WL 11508996, at *3 (S.D. Cal. Feb. 8, 2010) (same).

Here, with the exception of famousness, the FAC pleads all the elements of a dilution claim, (*see* Dkt. No. 4, FAC ¶¶ 7-16, 20-26, 39-43). As to whether the mark is famous, Plaintiff alleges that Upper Deck has been a leading manufacturer of trading cards for over thirty years and its name is "recognized and respected among traders and collectors alike". (*Id.* ¶¶ 7, 9.) Upper Deck has remained at the forefront of the industry since its inception and has a long history, international reach and record-breaking industry standards that have led to favorable public acceptance and association with its name. (*Id.* ¶¶ 10, 16.) These allegations do not sufficiently allege that Upper Deck Trademarks are famous as contemplated by the Lanham Act and merely allege they are famous in the niche market of trading card collectors. The FAC does not allege the Upper Deck Trademarks are "widely recognized by the general consuming public of the United States", 15 U.S.C. § 1125(a)(2)(A), and "truly prominent and renowned." *See Avery Dennison Corp.*, 189 F.3d at 875 (reach of dilution cause of action is narrow). Accordingly, the Court GRANTS Defendant's motion to dismiss the second cause of action for dilution under 15 U.S.C. § 1125(c)(1).

**D.    Third Cause of Action – Trademark Infringement and Counterfeiting, 15 U.S.C. § 1114**

Similar to the arguments raised on the § 1125(a)(1)(A) cause of action, Defendant argues that Plaintiff cannot bring a trademark infringement claim as to Jordan's likeness and failed to identify any "use" by him to constitute infringement of the Upper Deck Trademarks. (Dkt. No. 9-1 at 21-22.) Moreover, he claims that Upper Deck does not identify, produce or attached any trademark registration certificate it purportedly relies

on.  (*Id.* at 22.)  Plaintiff responds that it does not seek assert the rights of Michael Jordan and that it has asserted sufficient facts to support infringement as to the Upper Deck Trademarks.  (Dkt. No. 12 at 15.)  Upper Deck acknowledges that it is not aware of each instance of infringement by Defendant because it does not have the benefit of discovery, but at this stage, it has sufficiently alleged a claim.  (*Id.* at 16.)

The same legal elements apply to allege a trademark infringement claim under 15 U.S.C. § 1114 and an unfair competition claim under 15 U.S.C. § 1125(a)(1)(A). *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.,* 174 F.3d 1036, 1046 n. 6 (9th Cir. 1999) (holding the same legal standard applies to sections 32(1) and 43(a) of the Lanham Act); *see also Philip Morris USA, Inc. v. Liu*, 489 F. Supp. 2d 1119, 1122 (C.D. Cal. 2007).  "Liability is established under both Section 32 and Section 43(a) if the plaintiff demonstrates (1) it owns a valid and protectable trademark, and (2) the defendant used in commerce a similar mark without authorization in a manner likely to cause consumer confusion, deception, or mistake."  *Philip Morris USA, Inc*., 489 F. Supp. 2d at 1122.  Because the Court held that Plaintiff had alleged a claim under 15 U.S.C. § 1125(a)(1)(A), the Court also necessarily holds that Plaintiff has alleged a claim for trademark infringement.

Defendant additionally argues that Plaintiff has not shown that it is the registrant or owner of the Upper Deck Trademarks.  15 U.S.C. § 1114 allows an action for trademark infringement to be brought by the "registrant" of the mark.  15 U.S.C. § 1114.  The term registrant includes the "legal representatives, predecessors, successors and assigns of such applicant or registrant."  15 U.S.C. § 1127.  "To establish standing to sue for trademark infringement under the Lanham Act, a plaintiff must show that he or she is either (1) the owner of a federal mark registration, (2) the owner of an unregistered mark, or (3) a nonowner with a cognizable interest in the allegedly infringed trademark." *Halicki Films, LLC v. Sanderson Sales and Mktg*., 547 F.3d 1213, 1225 (9th Cir. 2008). Typically, "[r]egistration of a mark 'on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark

and of [the registrant's] exclusive right to use the mark on the goods and services, specified in the registration.'" *Applied Info. Scis. Corp. v. eBay, Inc*., 511 F.3d 966, 970 (9th Cir. 2007) (quoting *Brookfield Commc'ns*, 174 F.3d at 1047).

Here, the FAC alleges that Upper Deck is the owner of the Upper Deck Trademarks and provides the specific USPTO registration number and provides two of the Upper Deck's trademark images.  (Dkt. No. 4, FAC ¶¶ 11, 23.)  Plaintiff has sufficiently alleged it is the owner of the Upper Deck Trademarks and has standing to assert a trademark infringement cause of action.  The Court DENIES Defendant's motion to dismiss the trademark infringement cause of action.[6]

## E.    Fourth and Fifth Causes of Action - Right of Publicity Claims

The elements of a right of publicity claim under California common law are: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 679 (2010).  A statutory claim for right of publicity under California Civil Code section 3344 requires a plaintiff to prove "all the elements of the common law cause of action" plus "a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose." *Id.*  California's statutory right of publicity "complement[s]" the common law right of publicity but "neither replaces nor codifies the common law cause of action." *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691-92 (9th Cir. 1998).

---

[6] Defendant also argues that Plaintiff has failed to allege a trademark infringement claim under Rule 9(b).  (Dkt. No. 9-1 at 22-23.)  However, he failed to provide legal authority that Rule 9(b) applies to trademark infringement or counterfeiting claims.  *See Rolex Watch U.S.A., inv. v. Agarwal*, Case No. CV 12-06400 MMM (MRWx), 2012 WL 12886444, at *3 (C.D. Cal. Dec. 17, 2012) (court was unable to find cases where Rule 9(b) was applied to trademark infringement; in fact, authority is to the contrary) (citing *Indiaweekly.com, LLC v. Nehaflix.com, Inc*., 596 F. Supp. 2d 497, 502 (D. Conn. 2009) ("No court in this district has ever dismissed a Lanham Act claim for failure to comply with Rule 9(b), nor has the Second Circuit ever held that it should"); *Stubbs Collections, Inc. v. Davis*, No. CIV. A. 3–99CV2440–P, 2000 WL 381947, *4 (N.D. Tex. Apr. 14, 2000) ("a claim of infringement under 15 U.S.C. § 1114 does not constitute a claim subject to the heightened pleading requirements of Rule 9(b)")).  Accordingly, Defendant's Rule 9(b) argument is without merit.

### 1.   Standing

Defendant claims that Plaintiff has no standing to allege the right of publicity claims because Upper Deck's claims the rights of publicity of a third party, Michael Jordan, for whom it has no standing.  (Dkt. No. 9-1 at 24.)  Flores specifically claims that Plaintiff does not allege it is an exclusive licensee of Jordan's right of publicity.  (*Id.*) Plaintiff responds that it has alleged standing to assert Jordan's right of publicity claim because Jordan assigned this right to Upper Deck.  (Dkt. No. 12 at 17.)

The right of publicity and section 3344 claims are assignable under California law. *Timed Out, LLC v. Youabian, Inc*., 229 Cal. App. 4th 1001, 1008 (2014); *Del Amo v. Baccash*, No. CV 07-663 PSG (JWJx), 2008 WL 2780978, at *9 (C.D. Cal. July 15, 2008) (citing *KNB Enters. v. Matthews*, 78 Cal. App. 4th 362, 365 n. 2 (2000) (holding that "the right of publicity is assignable for purposes of a [§] 3344 claim.")).  The Ninth Circuit has not determined whether a non-exclusive licensee of an individual's right of publicity has standing to sue, but earlier this year, this Court relied on the California court of appeal ruling of *Timed Out, LLC*, 229 Cal. App. 4th at 1004, holding that a non-exclusive license is sufficient to support standing, *Upper Deck Co. v. Panini America, Inc*., --- F.Supp.3d ---, 2021 WL 1388630, at *8 (S.D. Cal. Apr. 13, 2021), and rejected the ruling in *Upper Deck Authenticated, Ltd. v. CPG Direct*, 971 F. Supp. 1337, 1349 (S.D. Cal. 1997) holding that an exclusive license is necessary to support standing on a right of publicity claim.

Therefore, Plaintiff's allegation that is has a "license to use Jordan's name, image, likeness and/or autograph in connection with trading cards and has been assigned the right to assert claims for deprivation of rights of publicity in connection with trading cards", (Dkt. No. 4, FAC ¶ 58), sufficiently alleges standing on the right of publicity claims.  The Court DENIES Defendant's motion to dismiss on this issue.

### 2.   Failure to State a Claim

Defendant also moves to dismiss the statutory and common law right of publicity claims because these claims cannot be supported by the resale of one trading card and

the incidental use defense applies to Flores's trivial or incidental use of Jordan's name, photograph or likeness.   (Dkt. No. 9-1 at 24-25.)  Plaintiff disagrees arguing that the question of whether use of Jordan's name, likeness and signature is "plainly incidental" is an issue of fact for the jury.  (Dkt. No. 12 at 18.)  Moreover, Jordan's name, image and likeness are prominently featured on both sides of Defendant's counterfeit card and the value of the card is based on Jordan's prominence in the trading card as well as his personal autograph which generated a $150 value.  (*Id.* at 19.)

Incidental use is a defense for right of publicity and commercial misappropriation claims.  *Davis v. Elec. Arts Inc*., 775 F.3d 1172, 1180 n.5 (9th Cir. 2015) ("Although California courts have not yet held that the incidental use defense applies to right-of-publicity claims, the defense is widely recognized.").  Incidental use of a plaintiff's name or likeness does not give rise to liability under a common law claim of commercial misappropriation or a claim under section 3344.  *Aligo v. Time–Life Books, Inc*., No. C 94–20707 JW, 1994 WL 715605, at *2 (N.D. Cal. Dec. 19, 1994); *see also* 1 J. Thomas McCarthy, *Rights of Publicity and Privacy* § 6:31 (2d ed.2014) (citing "the general rule that an insignificant or fleeting use of plaintiff's identity is not an infringement").  "The rationale underlying this doctrine is that an incidental use has no commercial value, and allowing recovery to anyone briefly depicted or referred to would unduly burden expressive activity."  *Pooley v. Nat. Hole–In–One Ass'n*, 89 F. Supp. 2d 1108, 1112 (D. Ariz. 2000); *see also Yeager v. Cingular Wireless, LLC*, 673 F. Supp. 2d 1089, 1100 (E.D. Cal. 2009).

The Ninth Circuit in applying the incidental use defense has considered factors of "(1) whether the use has a unique quality or value that would result in commercial profit to the defendant, (2) whether the use contributes something of significance, (3) the relationship between the reference to the plaintiff and the purpose and subject of the work, and (4) the duration, prominence or repetition of the likeness relative to the rest of the publication."  *Davis,* 775 F.3d at 1180 (citing *Aligo,* 1994 WL 715605, at *3 (internal citations omitted)).  Moreover, it is "highly unusual for a court to dismiss a complaint on

the basis that a defendant has proven an affirmative defense." *Designer Skin, LLC v. S & L Vitamins, Inc*., CV 05–3699, 2007 WL 841471, at *2 (D. Ariz. March 19, 2007). "However, where the court can discern from the face of the pleadings that an affirmative defense applies as a matter of law, dismissal pursuant to Rule 12(b)(6) may be appropriate." *Yeager*, 673 F. Supp. 2d at 1177 (citing *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n. 1 (9th Cir. 1997).

The FAC alleges Defendant's unauthorized use of Jordan's name, image, likeness and/or autograph on its products, including trading cards. (Dkt. No. 4, FAC ¶¶ 52, 59.) A replica picture of Jordan name, image and autograph are prominently featured on both sides of the card. (*Id.* ¶ 23). Accepting the allegations as true, the Court cannot conclude that use of Jordan's name, image and autograph are incidental. Moreover, Defendant's argument that one sale is incidental is not supported by the FAC where it alleges the sale of more than one product. Thus, the Court DENIES Defendant's motion to dismiss the statutory and common law right of publicity causes of action.

## F.   Indispensable Parties

In two sentences, Flores summarily moves to dismiss the FAC because Plaintiff has failed to include Michael Jordan and GMA Grading as "indispensable parties" within the meaning of Rule 19. (Dkt. No. 9-1 at 25.) Plaintiff opposes. (Dkt. No. 12 at 19-21.)

Under Rule 12(b)(7), a defendant may move to dismiss for a failure to join a party under Rule 19(b) and bears the burden to demonstrate grounds for dismissal. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). A Rule 19 motion poses "three successive inquiries." *EEOC v. Peabody W. Coal Co*., 400 F.3d 774, 779 (9th Cir. 2005). "First, the court must determine whether a nonparty should be joined under Rule 19(a)." *Id.* "If an absentee is a necessary party under Rule 19(a), the second stage is for the court to determine whether it is feasible to order that the absentee be joined." *Id.* "Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such that the action must be dismissed." *Id.*

1    Because Defendant has failed to conduct any analysis under Rule 19, he has failed

2    to meet his burden on dismissal.  Thus, the Court DENIES Defendant's motion to dismiss

3    for failing to join indispensable parties.

4    **G.    Sixth and Seventh Causes of Action - Unfair Competition under Cal. Bus. &**

5    **Prof. Code section 17200 and Common Law**

6    Flores next contends that Plaintiff has not alleged any predicate act to support the

7    unlawful prong of the UCL.[7]  (Dkt. No. 9-1 at 26.)  In response, Plaintiff argues that the

8    FAC sufficiently alleges the unlawful conduct by Defendant as asserted in the first five

9    causes of action which may be used to assert a claim under the UCL.  (Dkt. No. 12 at 22.)

10   Moreover, Plaintiff argues that Defendant fails to challenge the common law unfair

11   competition claim.  (*Id.*)

12   The UCL broadly prohibits "any unlawful, unfair or fraudulent business act or

13   practice." Cal. Bus. & Prof. Code § 17200.  Each of these three adjectives captures "a

14   separate and distinct theory of liability."  *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1127

15   (9th Cir. 2009) (citation omitted).  Under the "unlawful" prong, "[t]he UCL 'borrows

16   violations of other laws and treats them as unlawful practices that the unfair competition

17   law makes independently actionable.'"  *Wilson v. Hewlett–Packard Co*., 668 F.3d 1136,

18   1140 (9th Cir. 2012) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co*., 20 Cal.

19   4th 163, 180 (1999)).

20   The Court agrees with Defendant that the unlawful prong of the UCL does not

21   allege the "other laws" that will serve as a predicate to this cause of action.  The UCL

22   claim only alleges "misappropriation", (Dkt. No. 4, FAC ¶ 65), yet Plaintiff argues that it

23   brings a claim under the unlawful prong of the UCL based on the first five causes of

---

[7] Defendant also alleged the Plaintiff has not alleged any harm by claiming any actual disruption to its
relationship with anyone to support a UCL claim.  But, on this issue, Defendant solely cite to cases
addressing claims for intentional interference with prospective economic relations and intentional
interference with contractual relations, not cases addressing harm to support a UCL claim.  (Dkt. No. 9-1
at 27.)  Therefore, Defendant's argument concerning harm on the UCL claim is without merit and not
supported.

21cv1182-GPC(KSC)

action.  Because the FAC fails to allege an underlying violation to support its unlawful prong of the UCL claim, the Court GRANTS Defendant's motion to dismiss the UCL claim.  Further, because Flores fails to provide any analysis on the unfair competition claim under the common law, the Court DENIES his request to dismiss the common law UCL claim.

**H.      Eighth Cause of Action – Unjust Enrichment/Quasi Contract**

Finally, Defendant argues that the unjust enrichment/quasi-contract claim fails because Plaintiff fails to allege a direct relationship between the parties such as a prior contractual obligation or duty to the other party to support a quasi-contract claim seeking restitution.  (Dkt. No. 9-1 at 29.)  Plaintiff disagrees claiming that no direct relationship is required to bring a quasi-contractual cause of action.  (Dkt. No. 12 at 23.)

California courts have held that unjust enrichment is not a cause of action but a "general principle underlying various doctrines and remedies, including quasi-contract." *Jogani v. Superior Ct.,* 165 Cal. App. 4th 901, 911 (2008); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) ("[T]here is no cause of action in California for unjust enrichment. . .[ ] and is synonymous with restitution.").  Relying on *Jogani* and *Durell*, the Ninth Circuit has stated, "in California, there is not a standalone cause of action for unjust enrichment, which is synonymous with restitution." *Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 762 (9th Cir. 2015) (quotation omitted).  As such, unjust enrichment may be construed as a "quasi-contract claim seeking restitution." *Id.*

To allege a claim for quasi-contract or unjust enrichment, a plaintiff must assert "[1] receipt of a benefit and [2] unjust retention of the benefit at the expense of another." *Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 1593 (2008).  "Under the law of restitution, '[a]n individual is required to make restitution if he or she is unjustly enriched at the expense of another. . . The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is unjust for the person to retain it.'" *Durell,* 183 Cal. App. 4th at 1370 (internal citations omitted).  In *Astiana*, the court held that the plaintiff's allegation that the defendant had

"entic[ed]" her to purchase its products through "false and misleading" labeling, and that defendant was "unjustly enriched" was sufficient to state a cause of action for quasi-contract. *Astiana,* 783 F.3d at 762. "The doctrine applies where plaintiffs, having no enforceable contract, nonetheless have conferred a benefit on defendant which defendant has knowingly accepted under circumstances that make it inequitable for the defendant to retain the benefit without paying for its value." *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938 (2009); *Smith v. Pac. Props. & Dev. Corp*., 358 F.3d 1097, 1106 (9th Cir. 2004) ("the remedy of disgorgement only arises where a prior relationship between the parties subject to and benefitting from disgorgement originally resulted in unjust enrichment").

District courts have also held that "[a]n unjust enrichment claim that restates a trademark infringement claim, without alleging any quasi-contractual relationship, fails as a matter of law." *Gearsource Holdings, LLC v. Google LLC*, Case No. 18-cv-03812-HSG 2020 WL 3833258, at *13 (N.D. Cal. July 8, 2020) (citing *Sugarfina, Inc. v. Sweet Pete's LLC*, No. 17-cv-4456-RSWL-JEM, 2017 WL 4271133, at *6 (C.D. Cal. 2017) (granting motion to dismiss because Plaintiff's unjust enrichment allegations are "inextricably intertwined" with Plaintiff's trademark claims and "do not give rise to a separate theory of quasi-contract.")).  In *Sugarfina,* the district court noted that the plaintiff, as the owner of intellectual property rights, had no affiliation or connection with the competitor defendant to invoke the quasi-contract theory.  *Sugarfina*, 2017 WL 4271133 at *8.

Here, Plaintiff alleges that by unlawfully using the Upper Deck Trademarks and Jordan's likeness for its own commercial benefit, Defendant unjustly profited from the goodwill and reputation associated with Upper Deck and Jordan.  (Dkt. No. 4, FAC ¶ 74.) Defendant's acts created a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Upper Deck.  (*Id*.)  Because Defendant's retained ill-gotten gains would be unjust and inequitable, Defendant must pay restitution to Upper Deck.  (*Id*.)

These allegations do not support a quasi-contract between Plaintiff and Defendant. While privity or a direct relationship between the parties is not required, Plaintiff must

have conferred a benefit to Defendant which it unjustly retained.  The FAC fails to allege that Defendant unjustly retained any benefit from Plaintiff.  *See Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) ("The elements of an unjust enrichment claim are the receipt of a benefit and the unjust retention of the benefit at the expense of another."); *Am Video Duplicating, Inc. v. City of Nat'l Bank,* No. 20-cv-4036, 2020 WL 6882735, at *6 (C. D. Cal. Nov. 20, 2020) ("The only benefit Defendants allegedly received – a lender fee – came from SBA, not from Plaintiff.").

Moreover, while Plaintiff uses the term "quasi-contract" in the FAC, threadbare recital to an element of a cause of action, with no facts in support, does not state a cause of action.  *See Iqbal*, 556 U.S. at 678.  Similar to the facts in *Sugarfina*, Plaintiff, as the owner of the Upper Deck Trademarks and licensee of Jordan's likeness, did not confer a benefit to Defendant, the alleged infringer, that was unjustly retained by him. Accordingly, the Court GRANTS Defendant's motion to dismiss the unjust enrichment/quasi-contract cause of action with prejudice.

**I.    Leave to Amend**

In the event the Court dismisses any causes of action, Plaintiff seeks leave to amend.  (Dkt. No. 12 at 24.)  Because granting leave to amend would not be futile in this case, the Court GRANTS Plaintiffs' request for leave to file a second amended complaint.  *See DeSoto,* 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

**Conclusion**

Based on the above, the Court GRANTS Defendant's motion to set aside default and GRANTS in part and DENIES in part Defendant's motion to dismiss with leave to amend.  The Court GRANTS dismissal of the 15 U.S.C. § 1125(c)(3) dilution claim, the UCL claim, and unjust enrichment/quasi-contract causes of action.  Defense counsel is also directed to file a signed copy of his declaration, Dkt. No. 8-1 within five days of the

/ / /

/ / /

/ / /

21cv1182-GPC(KSC)

filed date of this Order.  Plaintiff shall file a second amended complaint within two weeks of the filed date of this Order.

　　　　IT IS SO ORDERED.

Dated:  October 28, 2021

Hon. Gonzalo P. Curiel
United States District Judge

21cv1182-GPC(KSC)