```
 1  NICHOLAS & TOMASEVIC, LLP
    Craig M. Nicholas (SBN 178444)
 2  Shaun Markley (SBN 291785)
    Ethan T. Litney (SBN 295603)
 3  225 Broadway, 19th Floor
    San Diego, California 92101
 4  Tel: (619) 325-0492
    Fax: (619) 325-0496
 5  Email: cnicholas@nicholaslaw.org
    Email: smarkley@nicholaslaw.org
 6  Email: elitney@nicholaslaw.org

 7  Attorneys for Plaintiff.
    THE UPPER DECK COMPANY
 8
```

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UPPER DECK COMPANY, a Nevada corporation,<br><br>    Plaintiff,<br><br>v.<br><br>MIGUEL FLORES, an individual, and DOES 1-100, inclusive.<br><br>    Defendant. | Case No.: 3-21-cv-01182-GPC-KSC<br><br>~~FIRST~~ SECOND **AMENDED COMPLAINT FOR:**<br><br>**(1) FALSE AFFILIATION / ENDORSEMENT, FALSE ADVERTISING, AND UNFAIR COMPETITION (15 U.S.C. § 1125(a));**<br><br>**(2) TRADEMARK DILUTION (15 U.S.C. § 1125(c));**<br><br>**(3) REGISTERED TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114);**<br><br>**(4) RIGHT OF PUBLICITY;**<br><br>**(5) COMMERCIAL MISAPPROPRIATION;**<br><br>**(6) VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW; AND**<br><br>**(7) VIOLATION OF CALIFORNIA COMMON LAW UNFAIR COMPETITION**~~, AND~~<br><br>~~**(8) UNJUST ENRICHMENT / QUASI-CONTRACT**~~<br><br>**DEMAND FOR JURY TRIAL** |

1.	This is a civil action by Plaintiff THE UPPER DECK COMPANY ("Plaintiff" or "Upper Deck") against Defendant Miguel Flores ("Defendant") for violation of the Lanham Act, deprivation of the rights of publicity under California laws, for commercial misappropriation, for violation of California's Unfair Competition Law, and for violation of California common law unfair competition., and for unjust enrichment/quasi-contract.

## THE PARTIES

2.	Upper Deck is a leading manufacturer of, among other products, trading cards, holding exclusive licensing agreements with various professional athletes, and maintaining trademarked logos, designs, and word marks. Upper Deck is a corporation organized and existing under the laws of the State of Nevada. Upper Deck is authorized to conduct business in California, and has its principal place of business at 5830 El Camino Real, Carlsbad, County of San Diego, California.

3.	On information and belief, Miguel Flores is an individual who resides at 16919 Bell Avenue in Lake Elsinore, California. Defendant markets products for sale online throughout the United States of America, including the State of California and San Diego County, through eBay, under the eBay account name "migflo_3800."

4.	The true names and capacities of the defendants sued herein as Does 1 through 1000, inclusive, are unknown to Upper Deck, and Upper Deck accordingly sues these defendants by their fictitious names. Upper Deck will amend this complaint once the true names and capacities of these defendants have been ascertained.

## JURISDICTION AND VENUE

5.	This Court has jurisdiction pursuant to 28 U.S.C. § 1331 based on the federal Lanham Act claims at issue.

6.	Venue is proper in the Southern District of California pursuant to 28 U.S.C. § 1391(a) through (c). A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

**FACTS COMMON TO ALL CLAIMS**

7.  For over thirty years, Upper Deck has been a leading manufacturer of trading cards in the United States of America.

8.  Since its formation, Upper Deck designed, marketed, manufactured, distributed, promoted, and sold trading cards at one time featuring all four major sports (e.g., hockey, basketball, baseball, and football). By way of these products, Upper Deck holds exclusive and non-exclusive licenses with athletes and various professional sports league and players' associations.

9.  Upper Deck is renowned as one of the leading trading card manufacturers. The "Upper Deck" name is instantly recognized and respected among traders, ~~and~~ collectors, and the general public.

10.  Upper Deck remained at the forefront of the industry since its inception, so much so that it was named "Card Set of the Year" every year from 1989 to 2004.

11.  Upper Deck is the owner of the unique and proprietary trademarks and tradenames. Some of the trademarks at issue in this action are identified and/or pictured below (collectively the "Upper Deck Trademarks"):

    a.  the green diamond "UPPER DECK" logo, USPTO No. 2498524;

    b.  the "UPPER DECK" security hologram, USPTO No. 2710652;

    c.  Diamond Hologram Logo, USPTO No. 2796625;

    d.  Upper Deck Logo, USPTO No. 1589910;

    e.  Upper Deck Logo, USPTO No. 2498524;

    f.  Upper Deck Logo, USPTO No. 2112501;

    g.  Upper Deck Logo, USPTO No. 2228889;

    h.  Upper Deck Logo, USPTO No. 3807558;

i. Upper Deck Logo, USPTO No. 5061014;

j. Upper Deck Logo, USPTO No. 5770095;

k. Upper Deck Logo, USPTO Application No. 90/604,339;

l. Upper Deck (word mark), USPTO No. 2498525;

m. Upper Deck (word mark), USPTO No. 1986925;

n. Upper Deck (word mark), USPTO No. 2112500;

o. Upper Deck (word mark), USPTO No. 2554963;

p. Upper Deck (word mark), USPTO Application No. 90/604337;

q. Upper Deck Authenticated (word mark), USPTO No. 2487940;

r. Upper Deck Authenticated (word mark), USPTO No. 2635601;

s. Upper Deck Authenticated (word mark), USPTO No. 2487941;

t. Upper Deck Authenticated (word mark), USPTO No. 2485529.

12. Upper Deck uses the Upper Deck Trademarks in its usual course of business in connection with its manufacture, marketing, and sale of sports trading cards in interstate commerce, during at least the times referenced above. Upper Deck's ownership of the Upper Deck Trademarks is evidenced, in part, but the above-referenced USPTO registration and application numbers.

13. Under 15 U.S.C. § 1065, Upper Deck's exclusive right to use its registered Upper Deck Trademarks in connection with goods covered by its identified federal registrations has become incontestable.

14. Upper Deck is the exclusive owner of the Upper Deck Trademarks.

15. In particular, the green diamond logo in question was Upper Deck's main logo displayed on its products from the year of its founding in 1988 to 2008, and is still used today.

16. With Upper Deck's long history, international reach, and record-breaking industry standards, Upper Deck's use of its trademarks in connection with its products led to favorable public acceptance and association with the recognized quality and substantial goodwill the Upper Deck's name holds.

17. Upper Deck holds exclusive licenses and non-exclusive licenses with certain major

sports leagues and athletes, including retired athletes such as with Michael Jordan ("Jordan") being an example of a license Upper Deck holds. Jordan's likeness is famous and distinctive in the United States and worldwide.[1]

18. Upper Deck's license with Jordan includes the ability to enforce Jordan's publicity rights in connection with the use of Jordan's likeness on, among other products, trading cards.

19. With a knowing disregard for Upper Deck's rights, Defendant is advertising and selling counterfeit trading cards with the Upper Deck Trademarks and Jordan's likeness ("Products") in interstate commerce via their eBay Store using the seller name "migflo_3800" ("Store").

20. Defendant's use of the Upper Deck Trademarks began after Upper Deck's Trademarks became famous.

21. Defendant's use of Jordan's likeness began after Jordan became famous and Upper Deck held a license for Jordan's likeness on, among other products, trading cards.

22. Defendant is selling non-authentic, counterfeit trading cards with the Upper Deck Trademarks and featuring Jordan's likeness without Upper Deck's or Jordan's permission, consent, authority, or approval.

[Intentionally left blank]

---

[1] For example, the Seventh Circuit Court of Appeals has recognized: "[Michael] Jordan is a sports icon whose name and image are deeply embedded in the popular culture and easily recognized around the globe. His singular achievements on the basketball court have made him highly sought after as a celebrity endorser; as a retired player who continues to reap the economic value of his reputation in the history of the game, he understandably guards the use of his identity very closely." (*See Jordan v. Jewel Food Stores, Inc.* (7th Cir. 2014) 743 F.3d 509, 513.)

23. Examples of Defendant's Products (the "Cards") for sale featuring the Upper Deck Trademarks and Jordan's name, image, likeness, and/or autograph on the listings can be seen below:

**FRONT**                                              **BACK**



24. Defendant's Products, including the Cards, are counterfeits that were not created or distributed by or on behalf of Upper Deck, and feature the Upper Deck Trademarks and Jordan's name, image, likeness, and/or autograph for which Upper Deck holds a license and assignment related to the use of Jordan's publicity rights on trading cards.

25. Upper Deck is informed and believes the Cards, like many of Defendant's Products, are illegally reprinted versions of authentic trading cards previously produced by Upper

Deck that were created without Upper Deck's permission, consent, authority, or approval. Indeed, the Product depicted above explicitly states that it is a "Facsimile Reprint" by the card grading company utilized by Defendant, GMA Grading. Upper Deck is informed and believes that GMA Grading was one of the only, if not the only, card quality grader that graded counterfeit cards. Upper Deck is informed and believes that GMA Grading has recently acknowledged that reprint cards are nothing more than counterfeits, that "appear to use non-licensed images, logos, or likenesses," as seen in the below image from the GMA Grading Facebook page, and has wisely stopped providing grading to such counterfeit cards as of approximately May 13, 2021.

[Image: Facebook post from GMA Grading dated May 13 at 5:09 AM, titled "GMA Grading Suspends Grading and Encapsulation for Reprints and Custom Cards," explaining suspension of grading for custom trading cards and reprints due to inability to guarantee provenance and use of non-licensed images, logos, or likenesses. 90 reactions, 24 Comments, 5 Shares. Comment from CJ Haskill: "I must be an a-hole, because the only word that comes to mind is DUH."]

26.  The illegal and unauthorized reprinting of Upper Deck's products harms Upper Deck as the similarity between the authorized products and the illegal reprints causes, and will continue to cause confusion and mistake, and will deceive customers who wish to purchase Upper Deck products and others as to the affiliation, connection, or association of Upper Deck with Defendant, or as to the origin, sponsorship, or approval of Defendant's Products by Upper Deck

and Jordan, destroys the goodwill and reputation established by Upper Deck and Jordan, and harms collectors who purchased authentic Upper Deck products.

## FIRST CAUSE OF ACTION
### False Affiliation/Endorsement, False Advertising, And Unfair Competition
### Against All Defendants
### (Lanham Act, 15 U.S.C. § 1125(a))

27. Upper Deck repeats and incorporates by reference the allegations in the preceding paragraphs.

28. Upper Deck has the exclusive rights to use the Upper Deck Trademarks which are famous and distinctive within the meaning of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

29. Upper Deck similarly has the rights to use Jordan's likeness and marks which are famous and distinctive within the meaning of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

30. All of the marks have been in use for many years and play a prominent role of the Upper Deck's and Jordan's marketing, advertising, and popularity of their products, services, and commercial activities across many different media outlets. Jordan has gained widespread publicity and public recognition throughout the United States, including in California.

31. The Upper Deck Trademarks and Jordan's likeness and marks were famous long before Defendant began using unauthorized reproductions, counterfeits, copies, and colorable imitations on its unauthorized Products.

32. Defendant infringed on Upper Deck's rights by using the Upper Deck Trademarks and Jordan's marks, on and in connection with the sale of Defendant's unauthorized Products in interstate commerce. Defendant did so without the permission of Upper Deck or Jordan. By continuing to sell the Products, Defendant is intentionally infringing on Upper Deck's and Jordan's rights.

33. Defendant's acts as alleged constitute false affiliation/endorsement, false advertising, and unfair competition. These acts are: (A) is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, right to use, or association of Defendant with Upper Deck or Jordan and as to the origin, sponsorship, or approval of Defendant's Products by Upper Deck or Jordan; and (B) in commercial advertising or promotion, misrepresents the

nature, characteristics, qualities or origin of Defendant's Products, and/or Upper Deck's or Jordan's authorized products, services, or commercial activities.

34. Defendant's actions constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a). As a result of Defendant's unlawful acts, Defendant has been unjustly enriched and Upper Deck has been damaged.

35. Defendant's unlawful activities have caused, and unless enjoined, will continue to cause, irreparable injury and other damage to Upper Deck in terms of their business, reputation, and goodwill in the Upper Deck Trademarks, Jordan's likenesses, rights, marks, and related rights to use those marks.

36. Upper Deck is also damaged and will continue to be damaged by Defendant's false descriptions and representations through direct diversion of sales and/or through a lessening of goodwill associated with Upper Deck's products and Jordan's likeness and marks. Upper Deck pays large premiums for the right to use Jordan's rights, including their marks described above, on trading card products. Upper Deck intends to foster and promote the goodwill associated with Jordan and his marks and to have continuing and ongoing relationships with him that creates mutual benefit to both parties. Defendant's alleged acts also negatively impact customers' perceived value of Upper Deck's products by increasing the appearance of total cards available on the market. Upper Deck does not have any adequate remedy at law.

37. Upper Deck seeks injunctive relief, compensatory damages, disgorgement of profits, punitive damages, and recovery of its costs and attorney's fees against Defendant for Defendant's various and continuing acts of infringement, false affiliation, false advertising, and false competition.

**SECOND CAUSE OF ACTION**
**Trademark Dilution**
**Against All Defendants**
**(15 U.S.C. § 1125(c))**

38. Upper Deck repeats and incorporates by reference the allegations in the preceding paragraphs.

39. Defendant has used the trademarks of Upper Deck, on and in connection with the sale of Defendant's unauthorized Products in interstate commerce. Defendant has done so without

8
FIRST SECOND AMENDED COMPLAINT

1  the permission of Upper Deck.

2  40. As described above, Upper Deck's marks, including the green diamond logo (which was Upper Deck's main logo displayed on its products from the year of its founding in 1988 to 2008, and is still used today) are famous and distinctive, are widely recognized by the general consuming public of the United States and across the globe, and are truly prominent and renowned. In particular, Upper Deck has prominently displayed the green diamond logo in national and international advertising campaigns, including many national television commercials over 30 years prominently displaying Upper Deck's green diamond logo and involving the world's most popular athletes, including Jordan, Joe Montana, Wayne Gretsky, Cal Ripken, Jr., Ken Griffey, Jr., and Reggie Jackson, among many others.[2] Upper Deck has also partnered with universally famous brands such as McDonald's to market its trading cards with its marks, including, for example, McDonald's commercials that prominently display Upper Deck's green diamond logo.[3]

41. Further, Upper Deck has marketed and sold millions of products with its marks internationally for at least 30 years, and has spent tens of millions of dollars advertising the marks in the North America and across the globe. In addition, Upper Deck has realized hundreds of millions of dollars in revenues relating to national and international sales of products with its marks; Upper Deck's sales were over $200 million in 1991 alone.

42. Defendant's acts as alleged dilute and/or are likely to dilute the distinctive quality of those marks described above, and to lessen the capacity of such marks to identify and distinguish Upper Deck's trading cards.

---

[2] *See, e.g.,* https://www.youtube.com/watch?v=SuZU2dIapZw (1995 Upper Deck "Heroes" commercial prominently displaying Upper Deck's green diamond logo); https://www.youtube.com/watch?v=rVo3ZfEQcx4 (Upper Deck "What Do You Collect" commercial prominently displaying Upper Deck's green diamond logo; https://www.youtube.com/watch?v=VHOs5bI97Fg (1991 Upper Deck commercial prominently displaying Upper Deck's green diamond logo); https://www.youtube.com/watch?v=_w8FoWvIQ1I (1994 Upper Deck "Crash the Card" commercial prominently displaying Upper Deck green diamond logo).

[3] *See, e.g.,* https://www.youtube.com/watch?v=UotW-eICMjM (1993 McDonald's commercial prominently displaying Upper Deck's green diamond logo); https://www.youtube.com/watch?v=fkCe7V28XLA (1993 McDonald's commercial featuring Michael Jordan and prominently displaying Upper Deck's green diamond logo on trading cards).

43. Defendant's unlawful use of Upper Deck's marks in connection with inferior and counterfeit goods is also likely to tarnish those marks and negatively impact customers' perceived value of Upper Deck's products by increasing the appearance of total cards available on the market, thereby lessening the value of the marks as well as the value of Upper Deck's products, and lessening the demand for Upper Deck's products.

44. Defendant's unlawful activities caused, and unless enjoined, will continue to cause, irreparable injury and other damage to Upper Deck, which does not have any adequate remedy at law.

45. Upper Deck seeks injunctive relief, compensatory damages, disgorgement of profits, and punitive damages against Defendants for their various and continuing acts of dilution.

### THIRD CAUSE OF ACTION
### Registered Trademark Infringement and Counterfeiting
### Against All Defendants
### (15 U.S.C. § 1114)

46. Upper Deck repeats and incorporates by reference the allegations in the preceding paragraphs.

47. Defendant used in commerce reproductions, counterfeits, copies, and/or colorable imitations of Upper Deck's registered marks in connection with the sale, offering for sale, distribution, or advertising of its Products. Defendant's use of these registered marks is causing or is likely to cause confusion, or to cause mistake, or to deceive consumers and the public into believing that Defendant's products are the products of Upper Deck.

48. Defendant also reproduced, counterfeited, copied, and/or colorably imitated Upper Deck's registered marks and applied such reproductions, counterfeits, copies, and/or colorable imitations to their Products, and intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, and advertising of their Products.

49. Defendant used the registered marks without the permission of Upper Deck.

50. Defendant's acts as alleged are causing, and unless enjoined, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Upper Deck's goodwill and reputation, for which Upper Deck does not have any adequate remedy at law.

51. Defendant's acts demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Upper Deck's marks to Upper Deck's great and irreparable harm.

52. Upper Deck seeks injunctive relief, compensatory damages, disgorgement of profits, punitive damages, destruction of the infringing articles under 15 U.S.C.A. § 1118, and recovery of its costs and attorneys' fees against Defendant for their various and continuing acts of infringement and counterfeiting.

**FOURTH CAUSE OF ACTION**
**Deprivation of Rights of Publicity**
**Against All Defendants**
**(Cal. Civ. Code § 3344)**

53. Upper Deck repeats and incorporates by reference the allegations in the preceding paragraphs.

54. Defendant knowingly, and without authorization, used Jordan's name, image, likeness, and/or autograph in its Products, including the Cards, that were sold in interstate commerce via their Store among other channels.

55. Upper Deck has a license to utilize Jordan's likeness in connection with trading cards and has the right to assert claims for deprivation of rights of publicity in connection with trading cards. Defendant's Products include trading cards.

56. As a direct and proximate result of Defendant's wrongful acts, Upper Deck has been damaged in an amount that is not less than $750 per use of Jordan's likeness in each unauthorized and infringing Product. When Upper Deck has ascertained the full amount of damages, it may seek leave of court to amend the complaint accordingly. Upper Deck further seeks an award of punitive damages under Civil Code section 3344(a) for Defendant's knowing use of Jordan's name, image, likeness, and/or autograph without Upper Deck's or Jordan's authorization.

57. As a direct and proximate result of Defendant's wrongful acts, Upper Deck has incurred, and will continue to incur, substantial attorneys' fees and costs. Upper Deck is entitled to an award of its attorneys' fees and costs incurred in connection with this matter pursuant to California Civil Code section 3344(a).

58. By reason of Defendant's wrongful acts, in addition to the relief sought above, Upper Deck is entitled to an accounting of all gross revenue and profits received, directly and indirectly, by Defendant as a result of the unauthorized use of Jordan's likeness and to an award of all such sums. By reasons of Defendant's wrongful acts as alleged above, Defendant is an involuntary trustee holding all such sums in its possession under a constructive trust for the benefit of Upper Deck with a duty to transfer the same to Upper Deck forthwith.

**FIFTH CAUSE OF ACTION**
**Commercial Misappropriation /**
**Violation of Rights of Publicity under California Common Law**
**Against All Defendants**

59. Upper Deck repeats and incorporates by reference the allegations in the preceding paragraphs.

60. Upper Deck has a license to utilize Jordan's name, image, likeness, and/or autograph in connection with trading cards and has been assigned the right to assert claims for deprivation of rights of publicity in connection with trading cards. Defendant's Products are trading cards.

61. Defendant knowingly, intentionally, and without authorization used Jordan's name, image, likeness, and/or autograph in its Products, including the Cards, that were sold in interstate commerce via their Store, among other channels, all without Upper Deck's or Jordan's authorization. This resulted in commercial benefit to Defendant.

62. Defendant knows it had not right to use these publicity rights on trading cards. Defendant did not obtain any consent from Upper Deck to use Jordan's publicity rights on trading cards.

63. As a direct and proximate result of Defendant's misappropriation of Jordan's publicity rights, Defendant injured Upper Deck, by, among other things, diverting sales of trading cards bearing Jordan's publicity rights, diluting the market and demand for such cards, and diminishing Jordan's ability to control the value of his own brand by controlling which companies to contract with and how many cards to produce. This harms Jordan's and Upper Deck's goodwill and future ability to generate earnings from use of Jordan's name and likeness.

64. Defendant's actions, as described herein, were committed maliciously, intentionally, fraudulently and with a willful and conscious disregard of Upper Deck's rights, making an award of punitive damages appropriate in order to punish and deter Defendant from engaging in the conduct alleged herein.

**SIXTH CAUSE OF ACTION**
**Violation of California Unfair Competition Law**
**Against All Defendants**
**(Cal. Bus. & Prof. Code § 17200 et seq.)**

65. Upper Deck repeats and incorporates by reference the allegations in the preceding paragraphs.

66. California Business and Professions Code § 17200, et seq., ("UCL") prohibits businesses from engaging in any unlawful, unfair, or fraudulent business acts or practices. As described above and in the first five causes of action, Defendant's conduct described herein violates the UCL, including, but not limited to the following:

   a. Violating the Lanham Act, 15 U.S.C. § 1125(a), prohibiting false affiliation/endorsement, false advertising, and unfair competition, as well as false representations in the advertising and sale of goods and services;

   b. Violating the Lanham Act, 15 U.S.C. § 1125(c), prohibiting trademark dilution;

   c. Violating the Lanham Act, 15 U.S.C. § 1114, prohibiting registered trademark infringement and counterfeiting; and

   ~~a.~~ d. Violating Jordan's common law and statutory rights of publicity.

67. ~~Defendant's misappropriation of the Upper Deck Trademarks, and Jordan's name, image, likeness, and/or autograph permit, and will permit, Defendant to use and benefit from the goodwill and reputation of Jordan. By selling trading cards which bear the Upper Deck Trademarks or Jordan's likeness, Defendant is benefitting from the positive reputation and value customers have given Upper Deck and Jordan to which Defendant would not otherwise have, at Upper Deck's expense.~~ The unlawful business practices described above have proximately caused monetary damages to Upper Deck whose rights are violated by Defendant's conduct. Upper Deck has lost money as a result of Defendant's acts of unfair competition. Upper Deck is also entitled to injunctive relief putting an end to this illegal activity.

13
~~FIRST~~ SECOND AMENDED COMPLAINT

1    68.    Pursuant to the UCL, Upper Deck is entitled to restitution of monies acquired by Defendant by means of such unlawful business practices, in amounts not yet known, but to be ascertained at trial.

    ~~66.~~69.   Private enforcement of these rights is necessary as no public agency has pursued enforcement. There is a financial burden incurred in pursuing this action, and it would be against the interests of justice to require the payment of attorneys' fees from any recovery in this action. Upper Deck is therefore entitled to an award of attorney's fees and costs of suit pursuant to California Code of Civil Procedure § 1021.5.

    ~~67.    Defendant's conduct constitutes unlawful, unfair, and deceptive trade practices and unfair completion in violation of California Business & Professions Code § 17200 et seq.~~

    ~~68.    By continuing to sell the misappropriated Products, Upper Deck will suffer substantial injury, including possible loss of customers who will lose trust in the Upper Deck name, brand, and tenet to provide authentic products, and injury to its business relationship with Jordan.~~

### ~~EIGHTH~~ SEVENTH CAUSE OF ACTION
### Violation of California Common Law Unfair Competition
### Against All Defendants

    ~~69.~~70.   Upper Deck repeats and incorporates by reference the allegations in the preceding paragraphs.

    ~~70.~~71.   Defendant's acts constitute common law unfair competition, and have created and will continue to create irreparable injury to Upper Deck who will have no adequate remedy at law.

    ~~71.~~72.   On information and belief, Defendant acted with full knowledge of Upper Deck's use of, and statutory common law rights to the Upper Deck Trademarks and Jordan's likeness without regard to the likelihood of confusion to the public.

    ~~72.~~73.   Defendant clearly acted in an intentional manner to benefit from Upper Deck's and Jordan's reputable and respected names and goodwill.

73.74.  As a result of Defendant's actions, Upper Deck suffered substantial injury, loss, and damage. Therefore, Upper Deck is entitled injunctive relief to account for loss of profit and damages to Upper Deck.

<del>**NINTH CAUSE OF ACTION**
**Unjust Enrichment / Quasi-Contract**
**Against All Defendants**</del>

<del>74.   Upper Deck repeats and incorporates by reference the allegations in the preceding paragraphs.</del>

<del>75.   By unlawfully using the Upper Deck Trademarks and Jordan's likeness for its own commercial benefit, Defendant unjustly profited from the goodwill and reputation associated with Upper Deck and Jordan. Defendant's acts created a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Upper Deck. Because Defendant's retention of its ill-gotten gains would be unjust and inequitable, Defendant must pay restitution to Upper Deck.</del>

**JURY DEMAND**

76.75.  Upper Deck respectfully requests a jury trial on all claims and issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Upper Deck requests it be rewarded the following relief:

77.76.  Defendant and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Defendant, or in concert or participation with Defendant, and each of them, be enjoined from:

    a.    advertising, marketing, promoting, offering for sale, distributing, or selling the Products including the Cards;

    b.    using Upper Deck Trademarks or Jordan's name, image, likeness, autograph, or other publicity rights on or in connection with any of Defendant's trading card goods;

    c.    using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendant's trading card goods that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any Upper Deck trademarks, trade dresses, names, or logos, or Jordan's name or likeness;

|   |   |   |
|---|---|---|
| | d. | using any trademark, name, likeness, logo, design, or source designation of any kind on or in connection with Defendant's trading card goods that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Upper Deck, or are sponsored or authorized by Upper Deck or Jordan, or are in any way connected or related to Upper Deck or Jordan; |
| | e. | passing off, palming off, or assisting in passing off or palming off Defendant's goods as those of Upper Deck, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint; |
| | f. | advertising, promoting, offering for sale, or selling the Products or other similar goods; and |
| | g. | representing to any person or entity that Defendant has authority to use the Jordan's name, image, autograph, likeness, or any other publicity right; |

78.77. Injunctive relief preventing Defendant's continued use of the Jordan's name, image, likeness, autograph, or any other publicity right;

79.78. An award to Upper Deck of damages from sold, marketed, advertised, and promoted Products with Jordan's name or likeness, in an amount not less than $4.5 million;

80.79. That Defendant be ordered to destroy all remaining sports cards and other products which carry Upper Deck Trademarks or Jordan's name, image, likeness, autograph, or publicity right;

81.80. That Defendant report to Upper Deck any and all profits derived from the selling or distribution of Products, as well as any trading cards that use Upper Deck Trademarks or Jordan's name, image, autograph, or likeness;

82.81. That Upper Deck receive and recover from Defendant Upper Deck's (a) actual damages under applicable state statutory and common law, (b) costs of court, (c) statutory damages based on Lanham Act, (d) enhanced damages or profits under the Lanham Act, (e) attorneys' fees pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 505, California Civil Code § 3344, and any other applicable provision of law;

83.82. That Upper Deck be awarded punitive damages to prevent future willful and deliberate dilution of the Upper Deck Trademarks and Jordan's likeness, as well as deprivation of Jordan's rights of publicity under California law;

84.83. That Upper Deck be awarded prejudgment and post-judgment interest on all monetary Awards; and

85.84. That Upper Deck be awarded such other and further relief as the court may deem just and proper.

Respectfully submitted:                          **NICHOLAS & TOMASEVIC, LLP**

Dated: November 11, 2021          By:        */s/ Ethan T. Litney*
                                             Craig M. Nicholas
                                             Shaun Markley
                                             Ethan T. Litney

                                             Attorneys for Plaintiff
                                             The Upper Deck Company