UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UPPER DECK COMPANY, a Nevada corporation,<br><br>                          Plaintiff,<br><br>v.<br><br>MIGUEL FLORES, an individual, and DOES 1 -100, inclusive,,<br><br>                          Defendant. | Case No.: 21CV1182-GPC(KSC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THIRD PARTY DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>[Dkt. No. 26.] |
| MIGUEL FLORES, an individual,<br><br>                          Third Party Plaintiff,<br><br>v.<br><br>ROCCO TENAGLIA, an individual, GEM MINT AUTHENTICATION, INC., a Florida corporation, and ALON KARPUCH, an individual,,<br><br>                          Third Party Defendants. | |

Before the Court is Third Party Defendants Gem Mint Authentication, Inc. and Alon Karpuch's motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) and 12(b)(6). (Dkt. No. 26.) An opposition was filed by Third Party Plaintiff

Miguel Flores. (Dkt. No. 34.) Third Party Defendants then filed their reply. (Dkt. No. 35.) The Court finds that the matter is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1). Based on the reasoning below, the Court GRANTS in part and DENIES in part Third Party Defendants' motion to dismiss with leave to amend.

## Background

According to the operative second amended complaint ("SAC"), Plaintiff The Upper Deck Company ("Plaintiff" or "Upper Deck") is a leading manufacturer of trading cards for over 30 years, has been in the forefront of the trading card industry since 1989, holds exclusive licensing agreements with various professional athletes, including Michael Jordan, and maintains its own trademarked logos, designs and word marks. (*Id.*, SAC ¶¶ 2, 7, 9, 10, 17.) Upper Deck exclusively owns a number of trademarks and tradenames which are collectively referred to as the "Upper Deck Trademarks", including the "green diamond" logo with the name "Upper Deck." (*Id.* ¶ 11.)

Defendant Miguel Flores ("Defendant" or "Flores") markets products for sale online throughout the United States through eBay. (*Id.* ¶ 3.) It is alleged that Defendant advertised and sold counterfeit trading cards with the Upper Deck Trademarks and Jordan's likeness in interstate commerce without permission via his eBay store using the seller name "migflo_3800". (*Id.* ¶¶ 19, 22.) Defendant's products, including the trading cards, are counterfeits that were not created or distributed by or on behalf of Upper Deck and feature Upper Deck Trademarks as well as Jordan's name, image, likeness and/or autograph for which Plaintiff holds a license and assignment related to the use of Jordan's publicity rights on trading cards. (*Id.* ¶ 24.)

Many of Defendant's products are illegally reprinted versions of authentic trading cards previously produced by Upper Deck that were created without its permission, consent, authority or approval. *(Id.* ¶ 25.) Even though Defendant's cards were graded as "Facsimile Reprint" by GMA Grading, GMA Grading has recently acknowledged that reprint cards are counterfeits that "appears to use non-licensed images, logos, or

likenesses" and has stopped providing grading to these counterfeit cards as of March 13, 2021. (*Id.*)

Due to Flores' alleged infringing conduct, Upper Deck filed suit alleging seven causes of action in the SAC for 1) false affiliation/endorsement, false advertising, and unfair competition under 15 U.S.C. § 1125(a); 2) trademark dilution under 15 U.S.C. § 1125(c); 3) trademark infringement and counterfeiting under 15 U.S.C. § 1114; 4) deprivation of rights of publicity pursuant to California Civil Code section 3344; 5) commercial misappropriation/violation of rights of publicity under California common law; 6) violation of California's Unfair Competition Law ("UCL") under California Business & Professions Code section 17200 *et seq.*; and 7) California common law unfair competition.[1] (Dkt. No. 20, SAC.)

On November 26, 2021, Defendant Flores filed his answer and a third party complaint ("TPC") against Rocco Tenaglia ("Tenaglia"), the seller of the cards at issue in the SAC, Gem Mint Authentication, Inc. ("GMA"), the appraiser, authenticator and grader of the cards at issue in the SAC, and Alon Karpuch ("Karpuch"), the alleged owner and sole employee and grader of GMA. (Dkt. No. 21-1, Third Party Complaint ("TPC") ¶¶ 3, 4, 17.) The TPC alleges six causes of action for 1) breach of the warranty of title; 2) inducement; 3) violation of California Business & Professions Code section 21672(a); 4) violation of California Civil Code section 1739.7; 5) breach of contract/breach of the covenant of good faith and fair dealing; and 6) declaratory judgment. (Dkt. No. 21-1, TPC.) Flores describes his TPC as seeking equitable apportionment, contributory indemnity and damages in impleader. (Dkt. No. 34 at 3.[2]) While the TPC does not specifically identify which cause of action is alleged against which defendant, in his opposition, Flores asserts that the first, second, fifth and sixth

---

[1] The case was removed to this Court on June 28, 2021. (Dkt. No. 1, Not. of Removal.)
[2] Page numbers are based on the CM/ECF pagination.

causes of action are alleged against GMA and Karpuch and all causes of action except the fifth one are alleged against Tenaglia.[3] (Dkt. No. 34 at 3-4.)

GMA and Karpuch move to dismiss the TPC for lack of personal jurisdiction as to Karpuch under Rule 12(b)(2), and failure to state a claim under Rule 12(b)(6) and Rule 9(b) and is fully briefed.

## Legal Standards

### A. Legal Standard on Federal Rule of Civil Procedure 12(b)(2)

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re Western States Wholesale Natural Gas Antitrust Litig. v. Oneok, Inc.*, 715 F.3d 716, 741 (9th Cir. 2013). In this case, where the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Bryton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009). In such a case, "we only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). On a prima facie showing, the court resolves all contested facts in favor of the non-moving party. *In re Western States*, 715 F.3d at 741; *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (if conflicted facts are contained in the parties' affidavits, the facts must be resolved in favor of the plaintiff for purposes of determining whether a prima facie case of personal jurisdiction has been established). "The plaintiff cannot simply rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quotation marks and citation omitted).

---

[3] Default was entered against Tenaglia on January 18, 2022. (Dkt. No. 33.)

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *Id.* (citations omitted). California's long-arm statute is "coextensive with the outer limits of due process under the state and federal constitutions, as those limits have been defined by the United States Supreme Court." *Republic Int'l Corp. v. Amco Eng'rs, Inc.*, 516 F.2d 161, 167 (9th Cir. 1976) (quoting *Threlkeld v. Tucker*, 496 F.2d 1101, 1103 (9th Cir. 1974)).  As such, the Court need only consider the requirements of due process.  Due process requires that nonresident defendants have "minimum contact" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Personal jurisdiction can be either "general" or "specific." *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415-16 (1984).

**B.     Legal Standard on Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).  Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See DeSoto,* 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

C.  **Legal Standard on Federal Rule of Civil Procedure 9**

Where a claim alleges fraud or is grounded in fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* A party must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (internal quotation marks omitted). As such "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

As to multiple fraud defendants, a plaintiff "must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Vegas v. JPMorgan Chase Bank, N.A.*, 654 F. Supp. 2d 1104, 1115 (E.D. Cal. 2009) (quoting *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F. Supp. 2d 1158, 1163 (C.D. Cal. 1998)).  In such a context, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 541 (9th Cir. 1989).  A plaintiff cannot lump multiple defendants but must state the allegations as to each defendant separately concerning that defendant's alleged participation in the fraud.  *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (quotation omitted).  As to a fraud action against a corporation, a plaintiff must "allege the names of the employees or agents who purportedly made the fraudulent representations or omissions, or at a minimum identify them by their titles and/or job responsibilities." *UMG Recordings. Inc. v. Global Eagle Ent'm, Inc.*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015).

## Discussion

### A   Specific Personal Jurisdiction

As noted above, a court may exercise jurisdiction over a non-resident defendant if it has general or specific jurisdiction over that defendant. *See Helicopteros Nacionales,* 466 U.S. at 415-16.  On this motion, Third Party Defendant Karpuch argues that the fiduciary shield doctrine precludes the Court's exercise of specific personal jurisdiction over him because the allegations against Karpuch are solely based on the conduct of GMA or acts performed by him in his capacity as owner or employee of GMA.  (Dkt. No. 26 at 13-14; Dkt. No. 35 at 4.)  Flores responds that Karpuch, himself, purposely advertised, offered and directed his activities in California and availed himself of the benefits of doing business in California by hosting a website offering his services of authenticating, grading and appraising collectable sports trading cards for payment on at least five occasions.  (Dkt. No. 34 at 12-13.)

Specific jurisdiction exists when a case "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 414 n. 8. The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation." *Walden v. Riore*, 134 S. Ct. 1115, 1121 (2014). Specific jurisdiction is limited to ruling on "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (citation omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the States." *Bristol-Myers Squibb Co. v. Superior Ct. of California*, 137 S. Ct. 1771, 1781 (2017).

"Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prods., Inc.,* 885 F.2d 515, 520 (9th Cir. 1989) (citation omitted). However, the corporate form may be ignored where "the corporation is the agent or alter ego of the individual defendant", "where there is an identity of interests between the corporation and the individuals", *id.* at 520-21, or where the corporate officers are the "guiding spirit" or the "central figure" behind the challenged corporate activity. *Id.* at 523 n.10.

Further, an employee or corporate officer may not hide behind the fiduciary shield; instead, the Court must look to each defendant's activities in the forum state. *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984) ("Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually"); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781, n. 13 (1984) ("we today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity. But jurisdiction over an employee does not automatically follow

from jurisdiction over the corporation which employs him . . . Each defendant's contacts with the forum State must be assessed individually."); *Allstar Mkt'g Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1120 (C.D. Cal. 2009) ("The mere fact that defendants took actions constituting sufficient contacts with the state on behalf of a corporate employer, however, will not shield the individuals from being subjected to jurisdiction.").

In *Calder*, a California resident, filed suit against a national magazine and its reporter and an editor, both residents of Florida, claiming she had been libeled. 465 U.S. at 784. On the issue of whether the court had personal jurisdiction over them, the reporter and editor claimed they were not responsible for the circulation of the article in California because they had no direct economic stake in their employer's sales and as employees did not control their employer's marketing activities. *Id.* at 789. The Court rejected their arguments concluding their actions were intentional and expressly aimed at California because they wrote and edited an article they knew would have "potentially devastating impact" upon the plaintiff and knew that injury would be felt by her in California. *Id.* at 789-90.

Similarly, in *Allstar Marketing Group,* because non-resident corporate officer defendants were the moving force behind the allegedly infringing activity in the forum, the fiduciary shield doctrine did not protect them. 666 F. Supp. 2d at 1120. The uncontested allegations in the complaint that the defendants personally participated and encouraged the sales of allegedly infringing products were sufficient to show that they were the moving force behind the infringing activity. *Id.* at 1121.

In this case, the third party complaint alleges that Karpuch is an individual residing in Florida and is the owner and sole employee/appraiser/grader of GMA. (Dkt. No. 21-2, TPC ¶ 4.) Prior to offering his trading cards for re-sale, Flores engaged the services of GMA and Karpuch to identify, authenticate and grade the cards he had purchased from Defendant Tenaglia. (*Id.* ¶ 19.) GMA and Karpuch agreed to "authenticate, grade, certify, number and return Flores' trading card(s) at issue . . .with an additional GMA

Grading display card which numbered, identified and graded each card, based on common, well accepted industry standards." (*Id.* ¶ 20.) Flores alleges that he sent the cards to GMA and GMA returned the respective card to Flores, each sealed in a plastic display case with an additional GMA Grading display card. (*Id.* ¶ 21.) GMA and Karpuch did not caution, warn or advise Flores that the card at issue in the SAC was a counterfeit card. (*Id.* ¶¶ 22, 25). As a result, Flores was sued by Upper Deck for trademark infringement and other causes of action for his re-sale of the trading card. (*Id.* ¶¶ 29, 32, 33, 36, 37, 38.) In response, Karpuch provides a declaration stating he resides in Florida and works at GMA, which is located in Florida. (Dkt. No. 26-1, Karpuch Decl. ¶ 2.) He also states that he has never resided or worked in California and never had an office or business in California. (*Id.* ¶¶ 3, 4.)

Karpuch's declaration does not challenge any of the allegations in the TPC; therefore, the uncontested allegations in the TPC are taken as true. *See Marvix Photo,* 647 F.3d at 1223. Because the TPC separately alleges that Flores engaged the services of Karpuch and he agreed to authenticate, grade, certify and number Flores' cards, Flores has sufficiently alleged that Karpuch was a central figure in the challenged conduct.[4] (Dkt. No. 21-1, TPC ¶¶ 19, 20.) Therefore, the Court concludes that the fiduciary shield doctrine does not apply in this case and DENIES Defendant Karpuch's motion to dismiss for lack of specific personal jurisdiction.

/ / /

/ / /

/ / /

---

[4] Karpuch relies solely on paragraph 21 of the TPC that only names GMA as being the entity that performed the grading of Flores' cards. (Dkt. No. 26 at 14.) However, paragraph 21 states that Flores sent his cards to GMA and GMA returned them to Flores with the additional GMA grading display card. (Dkt. No. 21-1, TPC ¶ 21.) This paragraph addresses mailing to and receiving back the graded cards from GMA but does not state that GMA, itself, graded the cards. Other allegations in the TPC maintain that Karpuch was directly involved in the grading of Flores' cards for payment and support specific personal jurisdiction over him. (*Id*. ¶¶ 19-21.)

**B.     Motion to Dismiss – Rule 12(b)(6)**

    **1.     First Cause of Action - Warranty of Title**

GMA and Karpuch argue that the warranty of title under the California Commercial Code fails because Flores fails to allege that they were "sellers" of the cards as defined under the Commercial Code; instead, Flores alleges that Tenaglia was the seller. (Dkt. No. 26 at 15.) Flores does not address the argument raised by GMA and Karpuch but responds with detailed argument that he has sufficiently alleged a claim for contributory trademark infringement, a cause of action not alleged in the TPC. (Dkt. No. 34 at 16-21.)

The TPC alleges a claim for breach of the warranty of title under California Commercial Code section 2102 *et seq.*, including section 2312. (Dkt. No. 21-1, TPC ¶ 28.) Flores alleges that as providers of appraiser/authentication services and labeling Flores' cards as "Facsimile Reprint", GMA and Karpuch have expressly and/or impliedly warranted that such cards are authentic and his title and right to ownership in such cards is warranted against any claims of infringement or inauthenticity by any third party, including Upper Deck. (*Id.* ¶ 31.) The TPC claims that GMA and Karpuch failed to notify Flores that the cards they authenticated were not authentic and violated the intellectual property or publicity rights of Upper Deck. (*Id.* ¶ 32.)

California Commercial Code section 2312 provides,

> Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications.

Cal. Comm. Code § 2312(3). A seller is defined as "a person who sells or contracts to sell goods." Cal. Comm. Code § 2103(d). To seek relief under this section, Flores must allege that GMA and Karpuch were sellers regularly dealing in the goods of the kind. *See id.* Here, the TPC does not allege GMA and Karpush were sellers and Flores does

not dispute their argument; therefore, the warranty claim fails to state a claim. Flores' attempt to allege a contributory infringement cause of action in his opposition is procedurally defective and the Court declines to consider his arguments on the warranty of title claim. Accordingly, the Court GRANTS Karpuch's motion to dismiss the first cause of action for breach of warranty.

### 2. Second Cause of Action – "Inducement"

GMA and Karpuch claim that the second cause of action for inducement must be dismissed for failing to allege fraud with specificity as required under Rule 9(b). (Dkt. No. 26 at 15-16.) Again, Flores does not oppose the Rule 9(b) argument but as with the warranty claim, presents argument concerning contributory trademark infringement, a cause of action not specifically alleged in the TPC. (Dkt. No. 34 at 16-21.)

On the second claim for "inducement", the TPC alleges that Flores only offered for sale and sold the card at issue and did not manufacture, grade, rate or make any representations about the trading card; instead, they were made by Third Party Defendants. (Dkt. No. 21-1, TPC ¶ 35.) Therefore, any liability that may be determined to violate Upper Deck's trademarks or publicity rights as a result of Flores' conduct was caused by Third Party Defendants and amounts to inducement of infringement. (*Id.* ¶ 36.) Because Third Party Defendants made false representations, false statements and failed to advise Flores, they are liable for any damages that he incurs on the SAC. (*Id.* ¶ 37.) Flores' liability is secondary, vicarious and imputed. (*Id.* ¶ 38.)

Based on arguments in his opposition and reference to "inducement of infringement" in the TPC, it appears that Flores may be seeking to allege a cause of action for contributory trademark infringement.

"To be liable for contributory trademark infringement, a defendant must have (1) 'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982)).

Further, "[w]hen the alleged direct infringer supplies a service rather than a product, under the second prong of this test, the court must 'consider the extent of control exercised by the defendant over the third party's means of infringement.'" *Id.* (quoting *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 984 (9th Cir. 1999)). There must be "[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark." *Id.*

Here, the TPC clearly fails to allege a cause of action for contributory infringement; therefore, the Court GRANTS GMA and Karpuch's motion to dismiss.[5]

To the extent the "inducement" or contributory infringement cause of action alleging misrepresentations and false statements sound in fraud, it must comply with Rule 9(b). First, Flores lumps GMA and Karpuch together as "Third Party Defendants" without specifically alleging the alleged fraudulent conduct of each third party defendant. *See Swartz*, 476 F.3d at 764-65. Next, the TPC fails to allege the who, what, when, where and how of the alleged misrepresentation. *See Kearns*, 567 F.3d at 1124. Accordingly, the Court additionally GRANTS Third Party Defendants' motion to dismiss for failure to allege fraud under Rule 9(b).

**3.  Fifth Cause of Action - Breach of Contract/Breach of the Covenant of Good Faith and Fair Dealing**

Third Party Defendants argue that the breach of contract and breach of the covenant of good faith and fair dealing claims must fail because the TPC fails to allege the terms of the contract and any breach. (Dkt. No. 26 at 18.) In response, Flores merely recites the allegations in the TPC without addressing the arguments raised by GMA and Karpuch. (Dkt. No. 34 at 22-23.)

---

[5] GMA and Karpuch contend that even if Flores is relying on a contributory infringement theory, it is misplaced because Flores is not the owner of the trademark at issue. (Dkt. No. 35 at 5.) Because the contributory trademark infringement claim is not clearly identified or alleged in the TPC, the Court declines to opine on this issue at this time.

In California, the elements for breach of contract are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). "A claim for breach of the implied covenant of good faith and fair dealing requires the same elements [as a claim for breach of contract], except that instead of showing that defendant breached a contractual duty, the plaintiff must show, in essence, that defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting." *Patera v. Citibank, N.A.,* 79 F. Supp. 3d 1074, 1090 (N.D. Cal. 2015) (quoting *Levy v. JP Morgan Chase,* No. 10-01493, 2010 WL 4641033, at *3 (S.D. Cal. Nov. 5, 2010)). The covenant of good faith and fair dealing, implied by California law in every contract, exists to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement or hindering the other party's performance. *Guz v. Bechtel Nat'l, Inc*., 24 Cal. 4th 317, 349 (2000). However, there is no covenant if there is no contract. *Smith v. City and Cnty. of San Francisco*, 225 Cal. App. 3d 38, 49 (1990) ("The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract.").

The TPC alleges that on at least five occasions, Flores entered into agreements with GMA and Karpuch where he agreed to pay for the authentication, grading and certification services of GMA and Karpuch. (Dkt. No. 21-1, TPC ¶ 51.) Flores claims that Third Party Defendants failed to authenticate and grade Flores' cards which "bore the tell-tell signs that they were not authentic", according to common and well accepted industry standards and failed to question or identify any counterfeit cards. (*Id.* ¶ 52.) As a result, GMA and Karpuch breached the contract and Flores was injured and suffered damages. (*Id.* ¶ 53.)

Flores fails to assert the existence of a specific contract and the specific terms allegedly breached by GMA and Karpuch.[6]  Accordingly, the Court GRANTS GMA and Karpuch's motion to dismiss the breach of contract claim.  Because a breach of contract has not been alleged, the Court also GRANTS the motion to dismiss the cause of action for breach of the covenant of good faith and fair dealing.

### 4. Sixth Cause of Action – Declaratory Judgment Act

Third Party Defendants finally contend that declaratory relief is a remedy and not an independent claim, and even if it were an independent claim, no controversy exists because Flores' relief for indemnification is not ripe because he has not yet been found liable. (Dkt. No. 26 at 20.)  In response, Flores argues that he has adequately alleged a declaratory judgment act claim because there are currently pending claims against him by Upper Deck.  (Dkt. No. 34 at 23-24.)

The sixth cause of action seeks a declaration that Tenaglia, GMA and Karpuch "have a legal duty to indemnify, defend and hold Flores harmless for the amount of any judgment, including interest, costs and attorneys' fees," from claims alleged by Upper Deck in the SAC.  (Dkt. No. 21-1, TPC ¶ 58.)  Further, each of the Third Party Defendants contributed to the damages sustained by Upper Deck concerning Flores' advertisement and sale of the card at issue on Ebay.  (*Id*. ¶ 59.)  Flores also seeks judgment for contribution based on comparative liability of Tenaglia, GMA and Karpuch for any damages Upper Deck may recover against Flores.  (*Id.* ¶ 60.)

The proposition that declaratory judgment is a remedy and not an independent cause of action clarifies "that the Declaratory Judgment Act 'does not itself confer federal subject-matter jurisdiction' and that a plaintiff seeking declaratory relief must

---

[6] In response, Flores asserts that he can produce copies of the sales receipts and invoices implicitly maintaining that they constitute contracts. (Dkt. No. 34 at 23.)  However, the sales receipts and invoices as contracts are not alleged in the TPC and Flores has not provided legal authority that they are contracts.  *See India Paint & Lacquer Co. v. United Steel Prods*., *Corp*., 123 Cal. App. 2d 597, 607-08 (1954) ("an invoice, standing alone, is not a contract" but a "mere detailed statement of the nature, quantity and the cost or price of the things invoiced").

independently establish that it has standing to seek relief." *Cnty. of Santa Clara v. Trump*, 267 F. Supp. 3d 1201, 1215-16 (N.D. Cal. 2017); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950) (holding that Declaratory Judgment Act is not independent source of federal jurisdiction). Here, Third Party Defendants do not challenge Flores' standing to bring a Declaratory Judgment Act claim; therefore, their summary argument without explanation that declaratory relief is a remedy and not an independent claim is without merit.

Next, a third party complaint for indemnification or contribution may be contingent at the time of pleading. *See Glens Falls Indem. Co. v. U.S. ex rel. and to use of Westinghouse Elec. Supply Co.,* 229 F.2d 370, 374 (9th Cir. 1955) ("Rules 13 and 14 [third party practice] . . . authorize the assertion of cross-claims and third-party claims contingent upon ultimate adjudication of claimant's liability to plaintiff."); *Wada v. Aloha King, LLC*, 154 F. Supp. 3d 981, 1003 (D. Haw. 2015) ("[a] crossclaim can be contingent upon the ultimate adjudication of the crossclaimant's liability to plaintiff."). Therefore, Third Party Defendants' ripeness argument is not legally supported.

Lastly, Third Party Defendants implicitly argue that the declaratory relief seeking indemnification is duplicative. (Dkt. No. 26 at 20.) "A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action." *Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009) (granting dismissal of declaratory relief claim was "commensurate with the relief sought through their other causes of action" and duplicative). In this case, the TPC seeks indemnification in all the causes of action alleged against the GMA and Karpuch, (*see* Dkt. No. 21-1, TPC ¶¶ 33, 38, 54, 57); therefore, the Court GRANTS Defendant's motion to dismiss the declaratory relief claim as to indemnification as duplicative and unnecessary. However, Flores also seeks a declaration on contribution which is not duplicative. Accordingly, the Court GRANTS Third Party Defendants' motion to dismiss the sixth cause of action as to a declaration on indemnification and DENIES the motion as to a declaration on contribution.

1 **C.    Leave to Amend**

2    In the event the Court dismisses any causes of action, Flores seeks leave to amend.
3 (Dkt. No. 34 at 24.)  Because granting leave to amend would not be futile in this case, the
4 Court GRANTS Third Party Plaintiff's request for leave to file an amended third party
5 complaint.  *See DeSoto,* 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

6                                                              **Conclusion**

7    Based on the reasoning above, the Court GRANTS in part and DENIES in part
8 Third Party Defendants' motion to dismiss with leave to amend.  Third Party Plaintiff
9 shall file an amended third party complaint on or before **March 25, 2022**.

10    IT IS SO ORDERED.

11 Dated:  March 8, 2022

12                                                              Hon. Gonzalo P. Curiel
13                                                              United States District Judge